UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARIA L., on behalf of herself and others
similarly situated;

NANCY M., on behalf of herself and others
similarly situated;

IMMIGRANT LEGAL RESOURCE
CENTER, 1458 Howard Street, San
Francisco, CA 94103;

       *Plaintiffs*,

       v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security;

U.S. DEPARTMENT OF HOMELAND
SECURITY;

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT;

U.S. CUSTOMS AND BORDER
PROTECTION;

RODNEY SCOTT, in his official capacity as
Commissioner of U.S. Customs and Border
Protection;

TODD LYONS, in his official capacity as
Acting Director of U.S. Immigration and
Customs Enforcement;

PAMELA BONDI, in her official capacity as
Attorney General of the United States;

U.S. DEPARTMENT OF JUSTICE;

Case No. _____

**CLASS ACTION COMPLAINT
FOR VACATUR,
DECLARATORY RELIEF, AND
INJUNCTIVE RELIEF**

DAREN MARGOLIN, in his official capacity as Director of the Executive Office of Immigration Review; and

EXECUTIVE OFFICE OF IMMIGRATION REVIEW,

     *Defendants.*

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................ 1

**JURISDICTION AND VENUE** ................................................................................ 3

**PARTIES** ...................................................................................................................... 4

**FACTUAL ALLEGATIONS** ..................................................................................... 6

    I.    Congress Passes Sections 1229c and 1324d to Impose Civil Penalties for Willful and Voluntary Violations of the Law. ........................... 6

    II.   President Trump Imposes Civil Penalties Under Sections 1229c and 1324d for the First Time. ........................................................................ 8

    III.  The Second Trump Administration Abruptly Revives the Civil Fines Program.... 10

    IV.  Defendants Have Unlawfully Imposed Civil Penalties Since Early 2025. ............. 12

    V.    To Impose Civil Penalties "Swiftly and at Scale," Defendants Promulgate the IFR. ........................................................................................................ 14

    VI.  Defendants Claim the Authority to Impose Civil Penalties in Violation of the U.S. Constitution. ................................................................................. 19

    VII.  Defendants Pursue Collections of Civil Penalties. .................................... 22

    VIII. Individual Plaintiffs Receive Fines for Hundreds of Thousands of Dollars. .......... 24

    IX.  The Lack of Notice and Comment on the IFR Harms ILRC. ................................ 27

**CLASS ACTION ALLEGATIONS** ......................................................................... 28

**CLAIMS FOR RELIEF** ............................................................................................ 30

**PRAYER FOR RELIEF** ........................................................................................... 36

## INTRODUCTION

1.      Maria L. and Nancy M.[1] (collectively, the "Individual Plaintiffs") are hardworking individuals facing significant personal hardships who, like millions in this country, have been navigating the U.S. immigration system. With no regard for their individual circumstances or their efforts to pursue a path to legal status, U.S. Immigration and Customs Enforcement ("ICE") sent Maria L. and Nancy M. notices informing them they owe huge fines ranging from hundreds of thousands of dollars to roughly $1.8 million. Maria L. and Nancy M. are among tens of thousands of people whom ICE has exorbitantly fined for allegedly willfully or voluntarily failing to depart the country. Defendants impose these civil penalties without finding, or even considering, whether the fines are appropriate in an individual case. And under new regulations published without public input earlier this year, Defendants have deprived people assessed with these fines of any meaningful opportunity to contest them. Left undisturbed, these fines will drive Maria L., Nancy M., and thousands of other people living in the U.S. into ruinous debt, in violation of the U.S. Constitution, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").

2.      Neither of the Individual Plaintiffs committed a violation of the law that would give rise to these civil penalties, but Defendants imposed the penalties anyway. Each of the Individual Plaintiffs is in the process of pursuing legal relief that would allow them to obtain lawful status and remain present in the country. One is even present with the permission of ICE under an order of supervision.

3.      The INA authorizes certain monetary civil penalties when a noncitizen willfully fails to depart the country, or otherwise conspires to or takes action to hamper departure, following

---

[1] A motion for leave for Maria L. and Nancy M. to proceed under pseudonyms will be filed with the Court promptly following the initiation of this case.

a final order of removal, 8 U.S.C. § 1324d(a)(1) (INA § 274D(a)(1)) (hereinafter, "Section 1324d"); or when a noncitizen voluntarily fails to depart the country after a voluntary departure order, 8 U.S.C. § 1229c(d)(1) (INA § 240B(d)(1)) (hereinafter, "Section 1229c").[2]

4.    Since the introduction of civil penalties via the enactment of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") in 1996, only President Trump has ever sought to impose civil penalties on noncitizens under these provisions.

5.    During President Trump's first Administration, efforts to impose civil penalties were plagued by legal controversy and widely criticized by implementing officials and targeted individuals alike. After reviewing the program, the Biden Administration ultimately concluded that the civil penalties were overly punitive and ineffective and rescinded the delegation memos authorizing ICE to issue these fines.

6.    Nonetheless, on the first day of President Trump's second term, January 20, 2025, the President revived the policy and directed Defendants to assess and collect the fines at issue.

7.    Defendants resumed imposing civil penalties in the Spring of 2025, deciding that all statutory requirements for a penalty—including whether the alleged violation was willful or voluntary—can be inferred from the mere facts that a removal order exists and that the individual remains in the United States, with no individualized inquiry.

8.    By the end of June 2025, Defendants had imposed roughly 10,000 fines.

9.    Then, on June 27, 2025, Defendants promulgated an interim final rule to impose these civil penalties under Sections 1229c and 1324d "swiftly and at [] scale" and to "achieve the

---

[2] This complaint uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (*citing Nasrallah v. Barr*, 590 U. S. 573, 578 n. 2 (2020) (slip op., at 4, n. 2)).

Administration's immigration enforcement and border security objectives." 90 Fed. Reg. 27,439, 27,446 (June 27, 2025) (the "IFR").

10.     Defendants promulgated the IFR without notice and comment or a well-reasoned explanation for the drastic change in policy, adopting overnight a flawed new policy of imposing excessive fines while gutting what process had been available to targeted individuals under prior, longstanding regulations.

11.     Both before and after issuing the IFR, Defendants have imposed these substantial civil penalties in violation of the plain language of the INA; the Eighth Amendment's prohibition on excessive fines; the Seventh Amendment's jury trial guarantee; the Fifth Amendment to the U.S. Constitution; and the APA.

12.     Although each of the Individual Plaintiffs were assessed civil penalties under Section 1324d, none meets the statutory criteria for either willfully failing or refusing to depart and/or conspiring or taking any action designed to prevent departure. *See* 8 U.S.C. § 1324d(a)(1), (2).

13.     In sum, Defendants' actions are unlawful and have harmed Plaintiffs. Judicial intervention is, therefore, required to protect Plaintiffs' rights, grant relief from Defendants' unlawful actions, and vacate the IFR.

### JURISDICTION AND VENUE

14.     This case arises under the United States Constitution; the APA, 5 U.S.C. § 701 *et seq*.; and the INA, 8 U.S.C. § 1101 *et seq*., and its implementing regulations.

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (action to redress deprivation of rights secured by the Constitution of the United States).

16.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Plaintiff Maria L. resides in this district and no real property is involved in this action.

17.     Pursuant to Local Rule 40.1, assignment to this Court's Eastern Division is proper because Maria L. resides in an Eastern Division county.

## PARTIES

18.     Plaintiff Maria L. is a resident of eastern Massachusetts. She is subject to a final order of removal and remains present in the United States to pursue humanitarian immigration relief that would allow her to adjust her status and become a lawful permanent resident (*i.e.*, receive a green card). Defendants charged her hundreds of thousands of dollars in civil penalties under Section 1324d.

19.     Plaintiff Nancy M. is a resident of southern Florida. She is subject to a final order of removal. Ms. M. is present in the United States with the permission of ICE under an order of supervision requiring annual check-ins, and she has complied with that order since it was put in place. She remains present in the United States to pursue family-based immigration relief that would allow her to become a lawful permanent resident. Defendants charged her roughly $1.8 million dollars in civil penalties under Section 1324d.

20.     Plaintiff Immigrant Legal Resource Center ("ILRC") is a non-profit organization that works with immigrants, community organizations, legal professionals, and policy makers to build a democratic society that values diversity and the rights of all people. ILRC maintains its principal place of business in San Francisco, California. ILRC submitted a public comment to the IFR on July 28, 2025.

21.     Defendant Kristi Noem is the Secretary of Homeland Security and head of the U.S. Department of Homeland Security ("DHS"). She is sued in her official capacity.

22.     Defendant DHS is a department of the executive branch of the United States government. DHS and its components, ICE and Customs and Border Protection ("CBP"), are the agencies of the federal government principally charged with coordinating immigration enforcement actions.

23.     Defendant ICE is a component of DHS. Among ICE's duties is the administration of civil monetary penalties under the INA and reviewing appeals of such penalties. ICE is also responsible for the promulgation of the IFR.

24.     Defendant CBP is a component of DHS. CBP administers and collects civil monetary penalties under the INA.

25.     Defendant Rodney Scott is the Commissioner of CBP. He is sued in his official capacity.

26.     Defendant Todd Lyons is the Acting Director of ICE. He is sued in his official capacity.

27.     Defendant Pamela Bondi is the Attorney General of the United States and the head of the U.S. Department of Justice ("DOJ"). She is sued in her official capacity.

28.     Defendant DOJ is the head law enforcement agency for the United States government and houses the Executive Office of Immigration Review ("EOIR").

29.     Defendant Daren Margolin is the Director of EOIR. He is sued in his official capacity.

30.     Defendant EOIR is a component of DOJ. EOIR is also responsible for the promulgation of the IFR.

## FACTUAL ALLEGATIONS

**I.  Congress Passes Sections 1229c and 1324d to Impose Civil Penalties for Willful and Voluntary Violations of the Law.**

31.     Congress passed the INA in 1952. Five years later, the Attorney General promulgated regulations on the "imposition and collection of fines" against noncitizens. 22 Fed. Reg. 9765, 9807 (Dec. 6, 1957). Those regulations were codified as 8 C.F.R. part 280 and applied where "a district director has reason to believe that any person has violated any of the provisions of the Immigration and Nationality Act and has thereby become liable to the imposition of an administrative fine under the Immigration and Nationality Act." *Id.*

32.     Those original regulations—setting procedural safeguards on the imposition and collection of fines under the INA—are remarkably similar to the present-day version of 8 C.F.R. part 280. They require that: "Whenever a district director . . . has reason to believe that any person has violated any of the provision of the [INA] and has thereby become liable to the imposition of an administrative fine under the [INA], he shall cause a Notice of Intention to Fine, Form I-79, to be served" on the individual subject to the fine, 8 C.F.R. § 280.1, by personal service effectuated by in-person service, mail, or delivery to the individual's office, *id.* § 280.11. Following service, the individual has 30 days to respond, and that deadline can be extended for an additional 30 days for good cause. *Id.* § 280.12. The individual can request an interview. *Id.* Upon receiving the response, an "immigration officer shall prepare a report summarizing the evidence and containing his findings and recommendation[s]," "including [a] recommendation." *Id.* § 280.13(b). The decision is reviewed by the "district director," who informs the individual of the decision and "the reasons for such decision." *Id.* The record upon review includes "the evidence upon which such Notice was based." *Id.* § 280.14. The person then has 30 days to appeal an adverse decision to the Board of Immigration Appeals. *Id.* §§ 280.13, 1003.3(a)(2).

33.     In 1996, Congress enacted IIRIRA, which established several new civil penalties.

34.     One such penalty, codified in 8 U.S.C. § 1324d, imposes a fine of "not more than $500 . . . for each day" a noncitizen "willfully fails or refuses to" "depart from the United States" after receiving a final order of removal or "conspires to or takes any action designed to prevent or hamper" departure under such an order. A noncitizen receives a final order of removal if DHS finds they are subject to a fast-track procedure called "expedited removal" and do not have a significant possibility of showing eligibility for asylum or related relief, *see* 8 U.S.C. § 1225(b)(1), or if an immigration judge orders them removed following removal proceedings in immigration court, *see id.* § 1229a.

35.     Another penalty in IIRIRA concerns voluntary departure, which is an order allowing a respondent in removal proceedings to leave the United States by a date certain, without being subject to a removal order. 8 U.S.C. § 1229c(a). The penalty imposes a fine of "not less than $1,000 and not more than $5,000" against a noncitizen who is "permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified." 8 U.S.C. § 1229c(d)(1).

36.     Both penalties are subject to the presumptive five-year statute of limitations for civil fines. 28 U.S.C. § 2462.

37.     IIRIRA also "established in the general fund of the Treasury a separate account which shall be known as the 'Immigration Enforcement Account'" and provided that any amounts collected from penalties assessed under Sections 1229c and 1324d would be deposited in that account. IIRIRA §§ 382(b)(1), (b)(1)(2)(B). Congress specified that this account would refund the Executive Branch for immigration enforcement activities. IIRIRA § 382(a)(b)(3)(A).

38.     Defendants did not alter the procedures for assessing and collecting civil penalties in the wake of IIRIRA. To the contrary, until promulgating the IFR, Defendants used the longstanding procedures in 8 C.F.R. part 280 for the collection of all civil penalties in the INA.

## II. President Trump Imposes Civil Penalties Under Sections 1229c and 1324d for the First Time.

39.     From 1996 to 2017, no President assessed any fines under Sections 1229c or 1324d.

40.     In 2017, during his first term, President Trump issued Executive Order 13768, which ordered the Secretary of DHS to "ensure the assessment and collections of all fines and penalties . . . from [noncitizens] unlawfully present in the United States." 82 Fed. Reg. 8799, 8800 (Jan. 30, 2017).

41.     Under that Executive Order, ICE Acting Director Thomas Homan issued ICE Directive 10088.1, which provided ICE's official "policy regarding assessment and collection of fines and penalties for civil violations of immigration law." *Austin Sanctuary Network v. USCIS*, No. 20-cv-1686, 2022 WL 4356732, at *1 (S.D.N.Y. Sept. 19, 2022).

42.     Starting in August 2018, ICE began issuing fines pursuant to a Notice of Intention to Fine. The civil penalties assessed from 2018 to 2021 used the procedures under 8 C.F.R. part 280 in effect at the time. *Id*.

43.     The intent notice used at that time, Form I-79B, contained blank spaces to allow the official issuing the fine to include individualized allegations regarding the alleged punishable conduct.

44.     Between December 2018 through March 2019, over 75% of mailed notices of intent to fine were returned as undeliverable or were lost in the postal system. According to ICE's records, as of May 20, 2020, it had sent notices to 233 individuals. Of those 233 notices, 23.6% were delivered by the U.S. Postal Service, while 67.8% were not delivered and 12.4% were cancelled.

8

45.     Of the small number of individuals who did receive fines, several challenged the fines as unlawful.

46.     By the end of the first Trump Administration, ICE retained twenty-six active civil penalties cases. 90 Fed. Reg. at 27,441. ICE records confirmed that the agency had sought to collect on 20 fines totaling $83,628. From these invoices assessed, ICE collected a total of $4,215.

47.     On January 20, 2021, President Biden rescinded the executive order underpinning ICE's attempts to impose penalties. *See* 86 Fed. Reg. 7051 (Jan. 20, 2021).

48.     Then-Secretary of Homeland Security Alejandro N. Mayorkas rescinded the delegation memos that had authorized ICE to issue fines for failure to depart and worked with the U.S. Department of the Treasury (the "Treasury Department" or "Treasury") to cancel existing debts. In announcing the rescission of the policy, Secretary Mayorkas stated that "[t]here is no indication that these penalties promoted compliance with noncitizens' departure obligations. We can enforce our immigration laws without resorting to ineffective and unnecessary punitive measures." *DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021).[3]

49.     Under the Biden Administration, DHS did not impose any fines against immigrants for failure to depart—in line with every other administration prior to the first Trump Administration.

50.     While civil fines were no longer enforced against immigrants for failure to depart, statutory authorization for civil penalties remained. The amount of daily fines has increased incrementally over time because of the Civil Penalties Inflation Adjustment Act Improvements

---

[3] https://www.dhs.gov/archive/news/2021/04/23/dhs-announces-rescission-civil-penalties-failure-depart.

Act of 2015, and as a result are now $998 per day under Section 1324d, 90 Fed. Reg. 1 (Jan. 2, 2025), and a presumptive $3,000 total fine under Section 1229c, 8 C.F.R. § 1240.26(l).

51.    In announcing the increase to the Section 1324d penalty amount, DHS stated that the adjustment was designed to "improve the effectiveness of civil monetary penalties and [] maintain their deterrent effect." 90 Fed. Reg. at 1.

**III. The Second Trump Administration Abruptly Revives the Civil Fines Program.**

52.    On January 20, 2025, President Trump issued Executive Order 14159, which directed DHS Secretary Noem to take "all appropriate action to ensure the assessment and collection of all fines and penalties that [DHS] is authorized by law to assess and collect from [noncitizens] unlawfully present in the United States, including [noncitizens] who unlawfully entered or unlawfully attempted to enter the United States." 90 Fed. Reg. 8443, 8444–45 (Jan. 20, 2025).

53.    On or about January 21, 2025, Acting ICE Director Caleb Vitello signed two internal ICE delegation memos authorizing the enforcement of civil penalties under Sections 1229c and 1324d.

54.    On or about February 18, 2025, Joseph Mazzara, Acting General Counsel for DHS, issued a memorandum to Secretary Noem acknowledging that ICE had begun identifying individuals to fine under Sections 1229c and 1324d. *See also* 90 Fed. Reg. at 27,442 (citing ICE Deleg. Order No. 003–2025, *Delegation of Authority to Administer and Enforce Certain Provisions Relating to Civil Penalties for Failure to Depart* (Mar. 17, 2025); ERO Deleg. Order No. DO99–002, *Redelegation of Authority to Administer and Enforce Provisions Relating to Civil Penalties for Failure to Depart* (Mar. 24, 2025)).

55.    On May 9, 2025, the White House issued Proclamation 10935. 90 Fed. Reg. 20,357 (May 9, 2025) (the "Proclamation"). The Proclamation announced certain actions to address what

the White House characterized, without support, as a "full-scale invasion of [noncitizens] entering and remaining in the country illegally." *Id.* at 20,357. These actions included "financial incentives to encourage and assist [noncitizens] illegally in the country to elect to depart from the United States." *Id.*

56.     The Proclamation instructed the DHS Secretary to "conduct a nationwide communications campaign to notify" unspecified noncitizens of "the sweeping consequences" of remaining present in the country. *Id.* at 20,358. Among the consequences specifically highlighted by the Proclamation were threats of "the garnishment of wages[] and the confiscation of savings and personal property, including homes and vehicles." *Id.*

57.     On information and belief, Defendants began assessing civil penalties under Sections 1229c and 1324d in the Spring of 2025. Unlike prior iterations of the Form I-79, the intent notices used by Defendants did not include blank spaces to fill in with the individualized assessments—as required by Sections 1229c and 1324d—explaining how the fined individual had willfully or voluntarily failed to depart.

58.     Defendants assess civil penalties under Section 1229c for $3,000 and under Section 1324d at a rate of $998 per day, which can add up to approximately $1.8 million under the applicable five-year statute of limitations.

59.     On June 9, 2025, DHS announced it had "issued over 9,000 fine notices to [noncitizens] for a total of almost $3 billion." *DHS Announces It Will Forgive Failure to Depart Fines for Illegal Aliens Who Self-Deport Through the CBP Home App*, DHS (June 9, 2025).[4]

---

[4] https://www.dhs.gov/news/2025/06/09/dhs-announces-it-will-forgive-failure-depart-fines-illegal-aliens-who-self-deport.

60. As part of its June 9th announcement, DHS asserted that it would "forgive" any civil penalties imposed for any individual who chose to "self-deport through the CBP Home App." *Id.*

61. Of the first 10,000 civil penalties DHS issued, individuals "responded in approximately 100 cases to contest the fine, ask for additional time to respond, or request more information." 90 Fed. Reg. at 27,442. DHS has not revealed the number of individuals whose fine notices were delivered.

62. Fines that pre-date the IFR are governed by the procedures in 8 C.F.R. part 280. 8 C.F.R. § 281.1(h). Under those regulations, individuals subject to civil penalties: receive an intent notice via in-person service or certified mail, 8 C.F.R. § 280.11 (2011); have thirty days to challenge a decision, *id.* § 280.12; may receive an additional thirty-day extension upon a showing of good cause, *id.*; may request an in-person interview, *id.*; are entitled to review by "the district director or the Associate Commissioner for Examinations, or the Director for the National Fines Office," *id.* § 280.13(b); may appeal a decision to the Board of Immigration Appeals ("BIA"), *id.*; and may request "mitigation or remission" of a civil penalty decision, *id.* § 280.51.

**IV. Defendants Have Unlawfully Imposed Civil Penalties Since Early 2025.**

63. Even before promulgating the IFR (and continuing to this day), Defendants have imposed civil penalties erroneously, without an individualized assessment as to whether an individual meets the requirements for having committed a willful or voluntary violation under Sections 1229c or 1324d, and in violation of the Fifth, Seventh, and Eighth Amendments to the U.S. Constitution.

64. DHS may assess penalties for a failure to depart only if the failure to depart is willful (in the case of Section 1324d) or voluntary (in the case of Section 1229c).

65.    On information and belief, since early 2025, Defendants have applied a policy or practice of imposing civil penalties without making individualized assessments of willfulness or voluntariness and without considering mitigating evidence.

66.    On information and belief, since early 2025, Defendants have applied a policy or practice of affirming civil penalty decisions on appeal without making individualized assessments of willfulness or voluntariness and without considering mitigating evidence.

67.    Without making individualized assessments of willfulness or voluntariness, Defendants fail to meet the statutory prerequisites for imposing civil penalties under Sections 1229c or 1324d.

68.    By imposing civil penalties without considering evidence of mitigation, Defendants exceed their authority under Sections 1229c and 1324d.

69.    Since early 2025, Defendants have applied a policy or practice of finalizing civil penalties determinations without providing evidence and without otherwise corroborating the allegations that an individual has committed a violation of the INA. For example, on information and belief, Defendants have fined individuals with voluntary departure orders that were issued more than five years prior to Defendants issuing a fine.

70.    Since early 2025, Defendants have systematically failed to consider the applicable statute of limitations when imposing civil penalties under either Sections 1229c or 1324d. 28 U.S.C. § 2462.

71.    Because the amounts collected for civil penalties under Sections 1229c and 1324d are used for Defendants' immigration enforcement activities, Defendants have a monetary incentive to impose, maintain, and collect civil penalties.

72.    Defendants have imposed these penalties using the Form I-79 intent notice.

73.     The Form I-79 intent notice updated in April 2025 contains no blank spaces for substantive allegations about willfulness or voluntariness. Nor does it provide space for any evidence supporting alleged violations of Sections 1229c or 1324d.

74.     Instead, the April 2025 version of the Form I-79 intent notice contains minimal, generic allegations that an individual: (1) is "not a citizen or national of the United States"; (2) was either "permitted to depart voluntarily" or subject to a final order of removal; and (3) that they either (a) "voluntarily failed to depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for travel or other documents necessary for departure," or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." Aside from this boilerplate, the form does not otherwise provide the basis for an alleged violation of Sections 1229c or 1234d and does not inform the individual why ICE alleges that they have committed a violation. The form concludes, "IT IS INTENDED that: a civil penalty be imposed upon you."

**V.  To Impose Civil Penalties "Swiftly and at Scale," Defendants Promulgate the IFR.**

75.     On June 27, 2025, DHS and DOJ promulgated the IFR, which governs only three of the many types of civil penalties under the INA—including the penalties in Sections 1229c and 1324d. The IFR took effect immediately and without notice and comment under the APA.

76.     DHS and DOJ dispensed with notice and comment on the purported basis that the IFR falls within the exceptions to APA procedures for actions involving a "foreign affairs function of the United States," 5 U.S.C. § 553(a)(1), and "rules of agency organization, procedure, or practice," *id.* § 553(b)(A).  *See* 90 Fed Reg. at 27,454–56.

77.     The IFR replaces the process provided under 8 C.F.R. part 280 with a new, extraordinarily limited process under 8 C.F.R. part 281.

78.     According to the IFR, "immigration court records" establish a "sufficient inference that the [noncitizen has] willfully or voluntarily failed to depart." *Id.* at 27,443. The IFR draws this conclusion because it asserts that those records "will typically demonstrate that the [noncitizen] was aware of the obligation to depart." *Id.* The IFR therefore substitutes the statutory requirement—the determination of whether a failure to depart was willful or voluntary—with mere consideration of the noncitizen's continued presence in the country.

79.     The IFR places the burden on the individual to rebut the stated "inference" of liability for civil penalties, *id.* at 27,450, by submitting records.

80.     The IFR assumes, without evidence or explanation, that records rebutting liability under Sections 1229c and 1324d will be "in the[] possession" of the individual subject to civil penalties. *E.g.*, *id.* at 27,443.

81.     The IFR dispenses with the previous requirement that intent notices be delivered via personal service or certified mail in favor of service by regular mail. *Id.* at 27,453. The change is notable given that over 75% of mailed notices of intent to fine that were issued from December 2018 through March 2019 had been returned as undeliverable or were lost in the postal system.

82.     The IFR allows any "[i]mmigration officer[] of [DHS], as defined in 8 C.F.R. § 1.2" to issue civil penalties decisions. 8 C.F.R. § 281.1(b). That regulation, in turn, refers to a host of federal employees, including those employed as an "aircraft pilot, airplane pilot," "fingerprint specialist" or "helicopter pilot." 8 C.F.R. § 1.2.

83.     Once the notice has been mailed, the IFR contemplates that "[t]he immigration officer's decision and order will inform the [noncitizen] of the statutory basis for the penalty and the amount and type of penalty being imposed, and will include a brief statement of the reasons for the decision." 90 Fed. Reg. at 27,449.

84.    Individuals then have 15 business days to respond, reduced from a maximum of 60 days under the prior regulations, and there is no longer an opportunity to request an interview. *Id.* at 27,450.

85.    If an individual responds to the notice within 15 business days, the "appeal will be reviewed by a supervisory immigration officer who did not issue the original decision," and that reviewing officer "shall review the record de novo within 10 days after the notice of appeal is filed." 8 C.F.R. § 281.1(e)(2).

86.    The record to be reviewed on appeal includes "the immigration officer's decision, evidence contained in the Department's administrative files, and any written filings, briefs, documentary evidence, or other relevant material timely filed." 8 C.F.R. § 281.1(e)(3).

87.    The IFR does not consider which records—including but not limited to grants of deferred action, applications for immigration benefits, or orders of supervision—may demonstrate that an individual's continued presence does not constitute a willful or voluntary failure to depart.

88.    Only upon request do Defendants "provide copies of pertinent documentation and records relevant to the penalty," and even if such materials are requested, Defendants do not have to provide them if they deem "such records are law enforcement sensitive or disclosure is prohibited by law." 8 C.F.R. § 281.1(e)(3).

89.    "In all cases, the designated supervisory immigration officer shall issue a final decision in writing no later than 45 days after the notice of appeal was filed and shall serve it on the" individual via regular mail. 8 C.F.R. § 281.1(e)(2).

90.    "[T]he supervisory officer's decision is the final agency action unless the Secretary of Homeland Security certifies the decision for review" *sua sponte*. 90 Fed. Reg at 27,450.

91.     Under the IFR, individuals are not permitted to request rescission or mitigation of the civil penalties assessed. *Id.* at 27,448.

92.     Under the IFR, individuals are not permitted to request reconsideration or reopening of a penalty decision. *Id.* at 27,450.

93.     "In sum, a civil penalty decision generally becomes final under the IFR's procedures, and DHS can begin collection efforts: (1) 15 days business days [*sic*] after DHS serves the initial decision" via regular mail, "if the [noncitizen] does not contest the decision or fails to respond[;] or (2) no later than 45 days after the [noncitizen] contests the fine." *Id.*

94.     The IFR justifies these draconian changes by repeatedly asserting that the civil penalties at issue are "straightforward" and "readily verifiable." 90 Fed. Reg. at 27,442–46, 27,748, 27,750, 27,752-53. But the IFR fails to consider, much less define, what constitutes a willful or voluntary failure to depart under Sections 1229c and 1324d.

95.     Instead, the IFR asserts, without support, that, "[i]n the vast majority of these cases," all that is needed to impose a civil penalty is "DHS documentary evidence or conduct observed by an immigration officer." *Id*. at 27,450. It does not explain how numerous circumstances—including but not limited to a grant of deferred action, a pending application for an immigration benefit, an order of supervision, or the intention to pursue lawful adjustment of status or other immigration relief—impact the imposition of the fines. Each of those circumstances renders civil penalties inapplicable because an individual's continued presence does not constitute a willful or voluntary violation of the law.

96.     For instance, many legal remedies are available to individuals who have a final order of removal that nonetheless allow them to remain lawfully present in the United States. Those types of relief include, but are not limited to, the grant of deferred action pursuant to a bona fide

determination of eligibility for U non-immigrant status for victims of certain enumerated crimes; current U status; current T non-immigrant status for survivors of human trafficking; deferred action pursuant to an approved Violence Against Women Act ("VAWA") self-petition; deferred action upon approval of a petition for Special Immigrant Juvenile status ("SIJS"); temporary protected status; Deferred Enforced Departure; Continued Presence for trafficking survivors; Deferred Action for Childhood Arrivals ("DACA"); pending immediate relative adjustment under 8 U.S.C. §§ 1225(a) or (i) (INA §§ 245(a) or (i)); lawful permanent residency following a period of U, T, or SIJS status; or being subject to an order of supervision. Nor do Defendants consider that a stateless individual has no ability to depart.

97.    An individual with any of these types of status, or who intends to pursue these legal avenues, does not satisfy the requirement under Sections 1229c and 1324d that a failure to depart be willful or voluntary because that individual remains present in the country either with DHS's own authorization or to pursue immigration relief that would allow them to obtain lawful status and, thus, remain lawfully.

98.    Nor do Defendants consider mitigating factors relating to the individualized circumstances of the individual or their ability to pay the fine when assessing the fine amount under Sections 1229c and 1324d.

99.    After promulgating the IFR, Defendants transformed the Form I-79 Notice of Intent to Fine into a "Notice of Violation and Order Under the Immigration and Nationality Act." The new violation notice contains purported findings that an individual: (1) is "not a citizen or national of the United States"; (2) was either "permitted to depart voluntarily" or subject to a final order of removal; and (3) that they either (a) "failed to voluntarily depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for

travel or other documents necessary for departure"; or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." The violation notice concludes, "IT IS ORDERED that a civil penalty be imposed upon you."

100.    When completing the violation order, the immigration officer merely checks a box next to one or more or the allegations that a noncitizen (a) "failed to voluntarily depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for travel or other documents necessary for departure"; or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." The notice contains no further factual findings or evidence.

101.    The previous process under 8 C.F.R. part 280 remains in place for other civil penalties, including "carrier fines that are issued against entities such as airlines, shipping lines, cruise lines, train and bus companies, and international bridge authorities for various violations under the INA." 90 Fed. Reg. at 27,447–48.

## VI. Defendants Claim the Authority to Impose Civil Penalties in Violation of the U.S. Constitution.

102.    Defendants violate the U.S. Constitution by assessing excessive fines under Section 1324d that can exceed $1.8 million; failing to subject any civil penalties claims to trial by jury; and utilizing administrative processes for all civil penalties without adequate notice or meaningful opportunity to be heard.

103.    Constitutional protections apply to all persons present in the United States, citizens and noncitizens alike. *See, e.g.*, *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Graham v. Richardson*, 403 U.S. 365, 371 (1971).

104.    The Framers of the U.S. Constitution well understood the threat posed by a government that could impose fines disproportionate to any claimed misconduct, exact such

penalties through juryless proceedings, and deny individuals due process of law to extract such penalties. For these reasons, among others, the Framers crafted the Fifth, Seventh, and Eighth Amendments to the U.S. Constitution to protect against potential abuses by a government seeking to impose monetary penalties on its populace.

105.    Experience taught the Framers that a government that could impose excessive fines and fees could seek to "undermine other constitutional liberties." *Timbs v. Indiana*, 586 U.S. 146, 153 (2019). As a result, "the protection against excessive fines has been a constant shield throughout Anglo-American history," *id.*, and was enshrined in the Eighth Amendment's Excessive Fines Clause.

106.    The Framers also formalized the right to a jury trial in the Seventh Amendment. *See, e.g.*, *S.E.C. v. Jarkesy*, 603 U.S. 109 (2024). Without the right to a jury, the Framers feared a government that could "subvert[ ]rights and liberties" through proceedings out of the public eye. *See id.* at 121.

107.    The Framers also prohibited the government from "depriv[ing] a person of [their rights] without affording him the benefit of (at least) those customary procedures to which freemen were entitled by the old law of England." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (Gorsuch, J., concurring in part and concurring in judgment) (quotation omitted).

108.    Today, these constitutional concerns are "scarcely hypothetical." *Timbs*, 586 U.S. at 154. "[T]here are, at the very least, more than two dozen agencies that can impose civil penalties in administrative proceedings." *Jarkesy*, 603 U.S. at 199 (Sotomayor, J., dissenting) (citing, *inter alia*, 8 U.S.C. § 1324d). The Supreme Court has acknowledged the real risk of overreach, noting that "[e]xcessive fines can be used . . . to retaliate against or chill the speech of political enemies."

*Timbs*, 586 U.S. at 153. And "[w]hile incursions on old rights may begin in cases against the unpopular, they rarely end there." *Jarkesy*, 603 U.S. at 167 (Gorsuch, J., concurring).

109.    Disregarding the Framers' intent to protect all persons from such abuses, Defendants assess excessive civil penalties under Sections 1229c and 1324d, without a jury, and via administrative proceedings.

110.    Defendants impose the fines under Section 1324d without providing any findings of willfulness, without evidence of wrongdoing, without considering whether the underlying alleged conduct constitutes a violation of Section 1324d, and without any individualized determination of whether the maximum allowable rate under Section 1324d of $998 per day is appropriate in any given case. The Section 1324d civil penalties qualify as fines for purposes of the Eighth Amendment and are disproportionate to the gravity of the alleged violations thereunder. Defendants' Section 1324d fines therefore violate the Excessive Fines Clause of the Eighth Amendment.

111.    While Congress has provided for a presumption that "a civil fine [or] penalty . . . may be recovered in a civil action," 28 U.S.C. § 2461(a), Defendants impose these fines via administrative procedures never sanctioned by Congress. Defendants thereby deny individuals of their right to a jury trial under the Seventh Amendment.

112.    Defendants fail to provide constitutionally adequate notice and opportunity to be heard. The processes available under the IFR are constitutionally insufficient, given the substantial private interests involved, ranging from thousands to roughly $1.8 million dollars; Defendants' modest interests; and the risks of erroneous deprivation, particularly where Defendants fail to assess the statutory factors under Sections 1229c and 1324d. The IFR procedures do not comply with the Fifth Amendment.

**VII.    Defendants Pursue Collections of Civil Penalties.**

113.    Following the imposition of civil penalties through their administrative processes, Defendants attempt to collect through a variety of tactics. Those include collection letters, invoices, wage garnishments, and federal collections lawsuits. At the same time, Defendants promise the fines will be waived only if an individual voluntarily leaves the country.

114.    After DHS issues a violation notice, and often before an administrative appeal is resolved, DHS sends a letter demanding payment within 10 days.

115.    The form version of that document states, in relevant part: "A civil monetary penalty was imposed on you pursuant to . . . the [INA] and 8 C.F.R. Part 281. The circumstances and specific INA provision for this penalty assessment are set forth in the [violation notice] with the above-referenced Penalty Tracking Number and are incorporated by reference herein." The collection letter states that if an individual fails to pay, DHS may seek to collect via "administrative offset of "any eligible Federal and State payments due to you"; refer the debt to a private collection agency; refer the debt to DOJ "to initiate collection litigation"; report "the indebtedness to national credit bureaus, which could adversely affect your credit rating"; and/or "[t]ake this debt into consideration, to the extent permitted by law, in future immigration-related proceedings, including admissibility determinations."

116.    When an individual does not pay, DHS transfers the debt to the Centralized Receivables Service ("CRS") of the Treasury's Bureau of Fiscal Service.

117.    Once the debt has been transferred from DHS to CRS, the Treasury Department sends a separate invoice stating: "Payment in full is due now." The invoice also states that the debt may be increased due to "interest, administrative costs and penalties on past due amounts." The invoice warns that debts may be reported "to the IRS as potential income." The invoice further states: "If you fail to pay the full amount within 60 days of this invoice, [CRS] will refer your

debt(s) to the U.S. Department of Treasury's Cross-Serving program for collection, at which time additional administrative costs that may exceed 32% will be added to your debt(s)."

118.    Debts collected by CRS or Cross-Servicing are required to be certified by the transferring agency as being valid and legally enforceable. 31 C.F.R. § 285.12(i); Treasury Fin. Manual, vol. 1, ch. 3, § 3025.20. CRS therefore relies on individual agencies to verify these debts unless a dispute is filed by the target of the civil penalty. *See* 1 Treasury Fin. Manual, vol. 1, ch. 3, § 3025.30 ("The creditor agency always remains solely responsible for ensuring the continued validity and enforceability of the debt."). Treasury's regulations and internal rules require that a debt be final before collection begins. *See* 31 C.F.R. §§ 285.4(a), 285.12(a). A penalty that is not yet final, whether because the appeal period has not run or an appeal is pending, may not be collected by Treasury. DHS's collection actions before issuing a final order imposing a fine contravene Treasury's regulations.

119.    In or around August 2025, attorneys from DOJ began filing actions in federal court to collect civil penalties purportedly imposed pursuant to Sections 1229c and 1324d. *See, e.g.*, *United States v. Trujillo Acosta*, Compl. ECF No. 1, No. 25-cv-1760 (C.D. Cal. Aug. 11, 2025).

120.    The DOJ complaints seeking collection of civil penalties under the INA are solely based on conclusory allegations that the alleged failures to depart were willful or voluntary.

121.    For example, in one case, the only allegations as to willfulness under Section 1324d are as follows: "On [date], an Immigration Judge entered a final order of removal against Defendant. Pursuant to 8 U.S.C. § 1229a(c)(5), the final removal order was served on Defendant via mail and included notice that a willful failure or refusal to depart from the United States pursuant to the order would subject Defendant to a civil monetary penalty for each day Defendant is in violation of the order. Defendant thereafter has willfully failed or refused to depart from the

United States, in defiance of that order." *United States v. Alvarez-Lopez*, No. 3:25-cv-1071, Compl., ECF No. 1 ¶ 7 (M.D. Fla. Sept. 11, 2025).

122.    The federal complaints seeking collection of civil penalties request judgments in the full amount of penalties DHS imposed.

123.    If judgment is entered in those cases, DOJ could use those judgments to, as President Trump has stated, pursue "the garnishment of wages[] and the confiscation of savings and personal property, including homes and vehicles." 90 Fed. Reg. at 20,358.

124.    In some cases, DHS is garnishing wages pursuant to 31 U.S.C. § 3720D without first bringing a federal collections action.

**VIII.    Individual Plaintiffs Receive Fines for Hundreds of Thousands of Dollars.**

     *a.*  <u>*Maria L.*</u>

125.    Plaintiff Maria L. is a resident of eastern Massachusetts.

126.    Defendants assessed hundreds of thousands of dollars in civil penalties against Ms. L. under Section 1324d using the IFR's procedures.

127.    The violation notice Ms. L. received contained conclusory, boilerplate allegations regarding her alleged willful violation of Section 1324d. The notice had a box checked indicating that a removal order "was made final" and had boxes checked next to one or more of the following: "You willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; and/or "willfully failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]."

128.    The violation notice contained no explanation or evidence of Ms. L.'s supposed willful misconduct.

129.    Ms. L. did not willfully commit a violation of Section 1324d.

130.    Ms. L. remains present in the country to pursue a humanitarian form of immigration relief and then lawful permanent residency.

131.    Ms. L. filed an appeal contesting the civil penalties Defendants imposed and requesting all evidence relevant to the decision.

132.    In addition to challenging the allegations, Ms. L provided information about her individualized circumstances—including significant personal hardship—and her inability to pay the fine.

133.    While her appeal was pending, Ms. L. received an invoice from DHS stating that the "debt is final under 8 C.F.R. Part 281 and payment in full is due now." The invoice further warned of subsequent adverse action, including collection of the purported debt and that the debt may be taken into consideration in future admissibility determinations.

134.    Thereafter, Defendants affirmed the civil penalties in the full amount originally assessed. Defendants' decision stated that the fine was affirmed because Ms. L. is "not a citizen or national of the United States," there was an order of removal, and she committed a willful violation of Section 1324d.

135.    The decision did not otherwise corroborate Defendants' allegations and did not consider the arguments raised in Ms. L.'s appeal.

136.    As a result, Maria L. faces not only the monetary harm of the civil penalties assessed and the burden brought on by the imposition of this purported debt, but also future enforcement targeting her income and any assets.

**b.    _Nancy M._**

137.    Plaintiff Nancy M. is a resident of southern Florida.

138.    Defendants assessed approximately $1.8 million in civil penalties against Ms. M. under Section 1324d using the IFR's procedures.

139.    The violation notice Ms. M. received contained conclusory, boilerplate allegations regarding her alleged willful and conspiratorial violation of Section 1324d. The notice had a box checked indicating that a removal order "was made final" and had boxes checked next to one or more of the following: "You willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; and/or "willfully failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]."

140.    Ms. M. did not willfully commit a violation of Section 1324d.

141.    She remains present in the country under an order of supervision with ICE while she awaits processing of an application that would allow her to obtain status as a lawful permanent resident.

142.    Ms. M. filed a response contesting the civil penalties Defendants imposed.

143.    Ms. M. responded that the civil penalties were not appropriate because she had not willfully failed to depart.

144.    In addition to challenging the allegations, Ms. M provided information about her individualized circumstances—including significant personal hardship—and her inability to pay the fine.

145.    Defendants affirmed the civil penalties in the full amount originally assessed. Defendants' decision stated that the fine was affirmed because Ms. M. is "not a citizen or national of the United States," there was an order of removal, and she committed a willful violation of Section 1324d.

146.    The decision did not otherwise corroborate Defendants' allegations and did not consider the arguments raised in Ms. M.'s appeal.

147.    As a result, Nancy M. faces not only the monetary harm of the civil penalties assessed and the burden brought on by the imposition of this purported debt, but also future enforcement targeting her income and any assets.

**IX. The Lack of Notice and Comment on the IFR Harms ILRC.**

148.    ILRC is a 501(c)(3) non-profit registered in the State of California with headquarters at 1458 Howard Street, San Francisco, CA 94103.

149.    The mission of ILRC is to work with and educate immigrants, community organizations, and the legal sector to continue to build a democratic society that values diversity and the rights of all people.

150.    ILRC accomplishes its mission by providing technical assistance on immigration law issues; training advocates and pro bono attorneys; publishing advisories and manuals for legal practitioners; advocating for laws and policies that expand the rights of immigrants; conducting education, outreach, and community organizing with immigrant communities; and otherwise developing materials that inform the public on a host of legal issues impacting immigrants.

151.    Among the resources that ILRC develops to fulfill its mission are public comments to federal regulations that affect immigrants.

152.    ILRC regularly submits public comments to proposed rules before they go into effect.

153.    On July 28, 2025, ILRC submitted a public comment opposing the IFR.

154.    In particular, ILRC's public comment on the IFR noted that it was "improperly issued as an interim final rule" because it: (a) is not properly considered a procedural rule when it

"significantly curtails the rights and protections of those impacted"; (b) "signifies a dramatic shift in practice" in choosing to impose civil penalties at scale such that there is a "change in the substantive rights of the public"; and (c) "does not fall under the foreign affairs exception to the APA."

155.    ILRC's comment on the IFR also highlighted concerns under the Eighth Amendment's Excessive Fines Clause, the Fifth Amendment's Due Process clause, and the applicable statute of limitations. And it expressed serious concern that the IFR was discriminatory.

156.    By allowing only post-rulemaking comments, Defendants prevented ILRC from fulfilling its mission.

157.    Had the IFR been issued via regular notice and comment rulemaking, ILRC would have submitted a comment addressing additional concerns about the IFR and would have had an opportunity to influence decision making before a rule was promulgated.

## CLASS ACTION ALLEGATIONS

158.    Individual Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated to enjoin Defendants' actions and to obtain a declaration that Defendants' actions are unlawful.

159.    Individual Plaintiffs seek to certify a class of similarly situated people (the "Class") defined as: All individuals subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after January 20, 2025.

160.    The Individual Plaintiffs also represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Section 1324d on or after January 20, 2025 (the "1324d Subclass").

161.    The Individual Plaintiffs also represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after June 27, 2025 (the "Post-IFR Subclass").

162.    The Class consists of at least 21,500 individuals, and a class action is therefore the only practicable means by which Individual Plaintiffs and Class Members can challenge Defendants' unconstitutional practices.

163.    There are multiple questions of law and fact common to all members of the Class, including whether individuals subjected to civil penalties under Sections 1229c or 1324d are entitled to a jury trial and whether Defendants conduct individualized assessments when assessing and affirming civil penalties.

164.    There are multiple questions of law and fact common to all members of the 1324d Subclass, including whether Defendants conduct individualized assessments when assessing and affirming civil penalties, whether civil penalties under Section 1324d are fines under the Eighth Amendment, and whether fines imposed at a rate of $998 per day are excessive.

165.    There are multiple questions of law and fact common to all members of the Post-IFR Subclass, including whether the procedures available under the IFR provide for constitutionally adequate notice and opportunity to be heard, and whether Defendants conduct individualized assessments when assessing and affirming civil penalties pursuant to 8 C.F.R. part 281.

166.    Plaintiffs' claims are typical of the claims of the Class. That typicality stems from the fact that Defendants broadly impose civil penalties under Sections 1229c and 1324d without an individualized consideration of willfulness or voluntariness and without a jury trial. Additionally, the Individual Plaintiffs and the 1324d Subclass all face the same daily penalty,

imposed at the maximum rate. And the representative Individual Plaintiffs and the Post-IFR Subclass are subject to the same procedures provided under the IFR without adequate procedural safeguards.

167.    Individual Plaintiffs, like every other Class Member, are injured by the same unlawful and unconstitutional practices.

168.    Individual Plaintiffs will fairly and adequately represent the interests of the Class. Individual Plaintiffs do not have conflicts with the unnamed members of the proposed Class.

169.    Individual Plaintiffs and Class Members are represented by attorneys from Public Justice, RAICES, NYU Immigrant Rights Clinic, The Legal Aid Society, Free Migration Project, and Covington & Burling LLP. Counsel has experience litigating complex class action matters raising constitutional challenges and has experience in immigration law as well as extensive knowledge of the details of Defendants' practices and of the relevant law.

170.    Defendants have acted and failed to act in a manner that applies generally to the Class as a whole, rendering class-wide relief appropriate.

**CLAIMS FOR RELIEF**

**COUNT I**
**Excessive Fines Clause**
**U.S. Const., Amend. VIII; 5 U.S.C. § 706(2)(B)**
**(Individual Plaintiffs and the 1324d Subclass Members Against All Defendants)**

171.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–170.

172.    Defendants assess and attempt to impose civil penalties "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

173.    The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fines

Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Ultimately, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Id.* at 334.

174.    The civil penalties at issue here qualify as fines for purposes of the Excessive Fines Clause because they "serve[], at least in part, to punish." *Austin v. United States*, 509 U.S. 602, 618 (1993).

175.    Defendants assess civil penalties under Section 1324d without evidence of wrongdoing, without consideration of liability under Section 1324d, and without individualized assessments.

176.    The $998 per diem penalty is grossly disproportionate to the gravity of the alleged violation of Section 1324d.

177.    Alternatively, the civil penalties amounts assessed in Individual Plaintiffs' cases are excessive because Individual Plaintiffs did not willfully fail to depart and because, if sustained, they would prove ruinous and would deprive Plaintiffs of their livelihood.

178.    By imposing excessive fines, Defendants have violated the rights of the Individual Plaintiffs and the 1324d Subclass under the Eighth Amendment.

**COUNT II**
**Right to Jury Trial**
**U.S. Const., Amend. VII; 5 U.S.C. § 706(2)(B)**
**(Individual Plaintiffs and Class Members Against All Defendants)**

179.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–178.

180.    Defendants utilize administrative proceedings to impose civil penalties, "contrary to constitutional right, power, privilege, or immunity" under the Seventh Amendment to the U.S. Constitution. 5 U.S.C. § 706(2)(B).

181.    "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const., Amend. VII.

182.    When the federal government seeks to impose civil penalties like those at issue here, "it is well established that [such] common law claims must be heard by a jury." *S.E.C. v. Jarkesy*, 603 U.S. 109, 120 (2024).

183.    Congress has not authorized Defendants to adjudicate cases involving alleged violations of Sections 1229c and 1324d in administrative proceedings.

184.    By assessing and adjudicating the civil penalties at issue through agency proceedings, Defendants have violated the rights of the Individual Plaintiffs and the Class to a jury trial under the Seventh Amendment to the U.S. Constitution.

<u>**COUNT III**</u>
<u>**Procedural Due Process**</u>
**U.S. Const., Amend. V; 5 U.S.C. § 706(2)(B)**
**(Individual Plaintiffs and Post-IFR Subclass Members Against All Defendants)**

185.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–184.

186.    The APA, 5 U.S.C. § 706(2)(B), provides that courts "shall . . . hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege or immunity."

187.    Defendants are prohibited from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. Amend. V.

188.    The IFR deprives Individual Plaintiffs of constitutionally sufficient notice and a constitutionally sufficient opportunity to be heard under the Due Process Clause of the Fifth Amendment.

189.    By issuing Individual Plaintiffs violation notices, Defendants' actions implicate Individual Plaintiffs' property rights. Due to Defendants' actions, Individual Plaintiffs have been deprived of the ability to control their savings, income, and other assets without governmental interference.

190.    Individual Plaintiffs have a significant private interest in the amount of civil penalties assessed by Defendants. Defendants' interest, in contrast, is minimal.

191.    There is a significant risk of erroneous deprivation, given Defendants' failure to define the statutory prerequisites for civil penalties under Sections 1229c and 1324d; failure to consider those required statutory factors; failure to state the reasons for their determination affirming the civil penalties and to indicate the evidence they relied on; insufficient notice; the lack of meaningful, appellate review; and Defendants' monetary incentive to affirm civil penalty determinations.

192.    Defendants therefore violate the Fifth Amendment rights of the Individual Plaintiffs and the Post-IFR Subclass.

## COUNT IV
### Violation of the APA's Notice-and-Comment Requirement
**5 U.S.C. § 706(2)(D)**
**(All Plaintiffs Against All Defendants)**

193.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–192.

194.    Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "without observance of procedure required by law" 5 U.S.C. § 706(2)(D).

195.    With narrow exceptions not applicable here, the APA requires agencies to engage in public notice and comment before a rule takes effect. 5 U.S.C. § 553(b)–(c).

196.    The IFR violates the APA because it took effect on June 27, 2025, without public notice and comment.

## COUNT V
### The IFR Is Arbitrary and Capricious
5 U.S.C. § 706(2)(A)
**(Individual Plaintiffs and Post-IFR Subclass Members Against All Defendants)**

197.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–196.

198.    Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

199.    Among other reasons, the IFR is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision, which represents a change in the agency's longstanding policy; failed to take into account reliance interests; offered explanations for their decision that run counter to the evidence before the agency; relied on conclusions and assumptions contrary to the record; and failed to consider important aspects of the problem.

## COUNT VI
### Agency Action Not in Accordance with Law
8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)
**(Individual Plaintiffs and Class Members Against All Defendants)**

200.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–199.

201.    Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

202.    Defendants' actions are contrary to the statutory language in Sections 1229c and 1324d.

203.    Defendants violate the APA by maintaining a policy or practice, not in accordance with law, of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d. This policy or practice is incorporated into the IFR but also existed before Defendants issued the IFR.

204.    As part of this policy or practice, Defendants unlawfully assess civil penalties without defining willfulness or voluntariness; by erroneously treating civil penalties as "straightforward," "routine," and "readily verifiable"; by illogically concluding that immigration court records and physical presence in the country suffice to establish a violation of Sections 1229c and 1324d; without addressing the applicable statute of limitations; by placing the burden of proof to rebut an "inference" of liability on the individual respondent; and by failing to consider mitigating factors.

205.    Therefore, Defendants' policy or practice, as well as the notices issued thereunder, should be vacated.

<u>**COUNT VII**</u>
<u>**Arbitrary and Capricious Agency Action**</u>
**8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)**
**(Individual Plaintiffs and Class Members Against All Defendants)**

206.    Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–205.

207. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

208. Defendants' actions are arbitrary and capricious in light of the statutory language in Sections 1229c and 1324d.

209. Defendants violate the APA by maintaining an arbitrary and capricious policy or practice of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d. This policy or practice is incorporated into the IFR but also existed before Defendants issued the IFR.

210. As part of this policy or practice, Defendants unlawfully assess civil penalties without defining willfulness or voluntariness; by erroneously treating civil penalties as "straightforward," "routine," and "readily verifiable"; by illogically concluding that immigration court records and physical presence in the country suffice to establish a violation of Sections 1229c and 1324d; without addressing the applicable statute of limitations; by placing the burden of proof to rebut an "inference" of liability on the individual respondent; and by failing to consider mitigating factors.

211. Therefore, Defendants' policy or practice, as well as the notices issued thereunder, should be vacated.

## PRAYER FOR RELIEF

A. WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this matter;

2. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure; appoint Plaintiffs Maria L. and Nancy M. as representatives of the Class,

the 1324d Subclass, and the Post-IFR Subclass; and appoint undersigned counsel as class counsel;

3. Order Defendants to promptly identify all members of the Class, the 1324d Subclass, and the Post-IFR Subclass to class counsel and to notify all Class Members (and their attorneys of record, if any) of their status as Class Members in this action;

B. As remedies for each of the causes of action asserted above, Individual Plaintiffs and proposed Class Members—and ILRC as to points 1, 2, 3, 4, 9, and 10, below—request that this Court:

1. Declare the IFR, and all fines issued pursuant to it, unconstitutional and unlawful;

2. Stay the IFR and all fines issued pursuant to it under 5 U.S.C. § 705;

3. Issue all necessary and appropriate process under 5 U.S.C. § 705 to prevent irreparable injury and preserve status and rights as to individuals issued fines under the IFR;

4. Vacate, and set aside the IFR and all fines issued pursuant to it under 5 U.S.C. § 706(2);

5. Declare unlawful and unconstitutional and vacate and set aside Defendants' policy or practice of imposing civil penalties without a jury trial in violation of the Seventh Amendment;

6. Declare unlawful and unconstitutional and vacate and set aside Defendants' policy or practice of imposing civil penalties under section 1324d without an individual determination of culpability or the proportionality of the fine in violation of the Eighth Amendment's Excessive Fines Clause;

7. Declare unlawful, arbitrary and capricious, and contrary to law and vacate and set aside Defendants' policy or practice of imposing fines without an individualized determination of the statutory factors in violation of the APA;

8. Permanently enjoin Defendants, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, or giving effect to the unlawful policies and/or practices challenged herein as to the 1324d subclass;

9. Award costs and fees for this action, including attorneys' fees; and

10. Award such further relief as this Court deems just and proper.

Dated: November 20, 2025

Respectfully submitted,

Hasan Shafiqullah[**]
Evan Henley (BBO No. 688663)[*]
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

Richard Caldarone[**]
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
P.O. Box 786100
San Antonio, TX 78278
(210) 960-3206
richard.caldarone@raicestexas.org

David Bennion[**]
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath Sudarshan[**]
Stephen Rees[**]
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson[**]
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com


*Counsel for Plaintiffs*

*/s Charles Moore*
Charles Moore (BBO No. 708061)
Mariam Elbakr[**]
Shelby Leighton[**]
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
melbakr@publicjustice.net
sleighton@publicjustice.net

Alina Das[**]
Ajay Singh[†]
Ximena Valdarrago[†]
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu
as11021@nyu.edu
xfv201@nyu.edu

Leila Nasrolahi[**]
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

[*] admission pending
[**] motion for admission pro hac vice
forthcoming
[†] law student rendering assistance pursuant
to Local Rule 83.5.4(k)