UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARIA L., *et al.*

    *Plaintiffs*,

        v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security; *et al.*

    *Defendants*.

Case No. 1:25-cv-13471-GAO

Hon. George A. O'Toole

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STAY
<u>AGENCY ACTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

    A.    Statutory History. ................................................................................................. 1

    B.    Enforcement Scheme and Enforcement History. ............................................... 2

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT .......................................................................................................................... 4

    I.    Plaintiffs Have Standing to Challenge the Blanket Fine Policy, the IFR, and the Fine Notices. ........................................................................................................... 4

    II.    Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims. .......................... 5

    A.    The Blanket Fine Policy Is Not in Accordance with Law. ....................................... 6

    B.    The Blanket Fine Policy is Arbitrary & Capricious. .................................................. 8

    C.    The IFR Is Arbitrary and Capricious. ....................................................................... 9

    D.    The IFR Is Invalid Because Defendants Did Not Follow the APA's Notice and Comment Procedures. ............................................................................................ 11

    III.    The Individual Plaintiffs and ILRC Have Suffered and Will Suffer Irreparable Harm Absent Preliminary Relief. ....................................................................................... 18

    IV.    The Balance of Equites and Public Interest Favor Staying the IFR, Blanket Fine Policy, and the Fine Notices. ............................................................................................... 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023) .................................................. 15, 16, 17, 18

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758 (2021) ...................... 20

*Am. Ass'n of Colls. for Teacher Edu. v. McMahon*, 770 F. Supp. 3d 822 (D. Md. 2025)............. 9

*Amerijet Int'l v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) .............................................. 9

*Ass'n of Am. Univs. v. Dep't of Def.*, 792 F. Supp. 3d 143 (D. Mass. 2025)......................... 10, 20

*Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106 (D. Mass. 2025) ........................ 11

*Assoc. of Comm. Cancer Ctrs v. Azar*, 509 F. Supp. 3d 482 (D. Md. 2020) ............................... 19

*Azar v. Allina Health Servs.*, 587 U.S. 566 (2019) ....................................................... 14

*Berdiev v. Garland*, 13 F.4th 1125, 1135 (10th Cir. 2021).............................................. 7

*Bryan v. United States*, 524 U.S. 184 (1998)............................................................. 7

*Butte Cnty., Cal. v. Hogen,* 613 F.3d 190, 194 (D.C. Cir. 2010)......................................... 9

*Cabrera v. Dep't of Labor*, 792 F. Supp. 3d 91 (D.D.C. 2025)............................................ 9

*Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020) .............. 5, 12, 13

*Coal. for Humane Immigrant Rights v. Noem*, ___ F. Supp. 3d ___, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) ........................................................................................ 14

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020)................................................. 11

*Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025) ................................. 5

*Doe v. Trump*, 157 F.4th 36 (1st Cir. 2025)............................................................... 4

*Doe v. Trump*, 784 F. Supp. 3d 1297, 1312 (N.D. Cal. 2025)........................................... 9

*E.B. v. Dep't of State*, 583 F. Supp. 3d 58 (D.D.C. 2022) ...................................... 13, 15

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018)................................... 14, 15

*Elec. Priv. Info. Ctr. v. DHS*, 653 F.3d 1 (D.C. Cir. 2011).................................... 15, 17

*Equal Means Equal v. Ferriero*, 478 F. Supp. 3d 105 (D. Mass. 2020)........................ 5

*Ford v. Shalala*, 87 F. Supp. 2d 163 (E.D.N.Y. 1999) ................................................. 19

*Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630 (D.C. Cir. 2017) ................................................ 9

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........................................................... 5

*Housatonic River Initiative v. EPA, New England Region*, 75 F.4th 248 (1st Cir. 2023) ............. 9

*Iacaboni v. United States*, 251 F. Supp. 2d 1015 (D. Mass. 2003) ............................................ 19

*Int'l Bhd. Teamsters v. Pena*, 17 F.3d 1478 (D.C. Cir. 1994) ..................................................... 12

*IRS v. Murphy*, 892 F.3d 29 (1st Cir. 2018) ............................................................................. 6

*Judulang v. Holder*, 565 U.S. 42 (2011) ................................................................................. 8

*Lamoille Valley R.R. Co. v. ICC*, 711 F.2d 295 (D.C. Cir. 1983) ................................................ 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 5

*M.G.U. v. Nielsen*, 325 F. Supp. 3d 111 (D.D.C. 2018) ............................................................ 19

*Mass. Fair Hous. Ctr. v. H.U.D.*, 496 F. Supp. 3d 600 (D. Mass. 2020) ...................................... 4

*Massachusetts v. N.I.H.*, 770 F. Supp. 3d 277 (D. Mass. 2025) ................................................ 19

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ........................................................... 6

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) ........................................................... 15, 17

*Motor Veh. Mnfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ......................... 10

*N.J. Dep't of Envtl. Prot. v. EPA*, 626 F.2d 1038 (D.C. Cir. 1980) ........................................ 11, 19

*Nat'l Council for Adoption v. Blinken*, 4 F.4th 106 (D.C. Cir. 2021) ............................................ 16

*Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906 (D.C. Cir. 1999) ................................................... 10

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025) ................................................................... 20

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................................... 19

*Northern Mariana Islands v. United States*, 686 F. Supp. 2d 7 (D.D.C. 2009) ........................... 19

*Or. Council for Humanities v. U.S. DOGE Serv.*, 794 F. Supp. 3d 840 (D. Ore. 2025) ............... 9

*Pedroza v. Holder*, 435 F. App'x 688 (9th Cir. 2011) ............................................................... 7

*RAICES v. Noem*, 793 F. Supp. 3d 19 (D.D.C. 2025) ............................................................... 14

*Rajah v. Mukasey* 544 F.3d 427 (2d Cir. 2008) ............................................................... 12, 14

*Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973) ............................................................ 18

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ................................................. 20

*Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020) ...................................................... 9

*Safeco Ins. Co. v. Burr*, 551 U.S. 57 (2007) ................................................................. 6

*Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261 (W.D. Mich. 1990) ............................... 19

*Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969) .............................. 18

*Somerville Pub. Sch. v. McMahon*, 139 F.4th 63 (1st Cir. 2025) ............................... 19

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ................................................. 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................... 5

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ........................ 18

*Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014) ........................................ 6

*Vaqueria Tres Monjitas, Inc. v, Irizarry*, 587 F.3d 464 (1st Cir. 2009) ....................... 18

**Statutes**

5 U.S.C. § 553 .............................................................................................. 12, 13, 15

5 U.S.C. § 705 ....................................................................................................... 1, 4

5 U.S.C. § 706 ............................................................................................................. 6

8 U.S.C. § 1229c .................................................................................................. 2, 6, 7

8 U.S.C. § 1324d ..................................................................................................... 2, 6

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110
Stat. 3009-546 ...................................................................................................... 2

**Regulations**

8 C.F.R. § 103.8 ....................................................................................................... 16

8 C.F.R. § 280.1 ................................................................................................. *passim*

8 C.F.R. § 280.11 ..................................................................................................... 16

8 C.F.R. § 280.12 ................................................................................................. 16, 17

8 C.F.R. § 280.13 ..................................................................................................... 17

8 C.F.R. § 280.51 ................................................................................................ 17

8 C.F.R. § 280.53 .................................................................................................. 2

8 C.F.R. § 281.1 ............................................................................................ *passim*

**Other Authorities**

22 Fed. Reg. 9765 (Dec. 6, 1957) ..................................................................... 1, 11

82 Fed. Reg. 8799 (Jan. 30, 2017) ......................................................................... 2

86 Fed. Reg. 7051 (Jan. 20, 2021) ......................................................................... 3

90 Fed. Reg. 1 (Jan. 2, 2025) ................................................................................. 2

90 Fed. Reg. 20357 (May 14, 2025) ...................................................................... 3

90 Fed. Reg. 8443 (Jan. 20, 2025) ......................................................................... 3

90 Fed. Reg. 27439 (June 27, 2025) ............................................................... *passim*

*DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021),
https://tinyurl.com/crxekjj7 ........................................................................... 3, 9

Jack Morphet, *ICE Has Fined Immigrants $6 Billion. Now It's Coming to Collect*, Wall St. J.
(Aug. 26, 2025), https://tinyurl.com/mwc42kde ................................................. 4

*Matter of Zmijewska*, 24 I&N Dec. 87 (BIA 2007) ................................................ 7

# INTRODUCTION

This action challenges Defendants' effort to impose civil penalties up to $1.82 million on tens of thousands of noncitizens with prior orders of removal and voluntary departure orders. ECF No. 1 ("Compl."). Proceeding under provisions of the Immigration and Nationality Act ("INA") no other President has ever utilized, Defendants began assessing civil penalties in the Spring of 2025 based on boilerplate allegations and no evidence. Defendants maintain a policy or practice of imposing those fines without individualized consideration of the willfulness or voluntariness of a fine recipient's conduct (the "Blanket Fine Policy"). To impose these blanket fines quicker and at an even higher volume, on June 27, 2025, Defendants U.S. Immigration and Customs Enforcement ("ICE") and the Executive Office for Immigration Review ("EOIR") violated the Administrative Procedure Act (the "APA") by promulgating an interim final rule without prior notice and without consideration of public comment. 90 Fed. Reg. 27439 (June 27, 2025) (the "IFR"). Prioritizing speed over accuracy, under the IFR, Defendants now explicitly assess these fines based on a mere "inference" of a violation. 90 Fed. Reg. at 27453. Plaintiffs are entitled to a stay of Defendants' policy or practice—the Blanket Fine Policy, the IFR, and the fine notices— because Plaintiffs are likely to succeed on the merits, Plaintiffs will suffer irreparable harm absent a stay, and the balance of the equities and public interest favor a stay. Accordingly, the Court should grant all necessary relief "to preserve status or rights pending conclusion of the review proceedings" 5 U.S.C. § 705.

# STATEMENT OF FACTS

## A.    Statutory History.

After Congress passed the Immigration and Nationality Act ("INA") in 1952, the Attorney General promulgated regulations covering the imposition of fines under the INA. 22 Fed. Reg. 9765, 9807 (Dec. 6, 1957). Both then and now, those regulations require, among other things, notice of fines by personal service; 30 days to contest the fines, with the possibility of a 30-day extension; and appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 280.1 *et seq.* Those regulations controlled for over half a century, and they applied to Sections 1229c and 1324d when

Congress enacted those provisions in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-546 ("IIRIRA").

Under IIRIRA, DHS has the authority to impose civil monetary penalties for various immigration-related violations. Two of those penalties are the subject of this action. First, under 8 U.S.C. § 1229c(d)(1)(A) ("Section 1229c"), the government may impose a penalty on an individual who is "permitted to depart voluntarily . . . and voluntarily fails to depart." Second, under 8 U.S.C. § 1324d(a)(1) ("Section 1324d"), the government may impose a penalty on a person who is subject to a final order of removal and who "willfully fails or refuses to (A) depart from the United States pursuant to the order, (B) make timely application in good faith for travel or other documents necessary for departure, or (C) present for removal at the time and place required" by DHS. The current penalty amounts are $3,000 under Section 1229c and, adjusted for inflation, $998 per day up to a maximum amount of roughly $1.8 million under Section 1324d.[1] 8 U.S.C. § 1229c(d)(1)(A); 8 C.F.R. § 280.53(b)(3); 90 Fed. Reg. 1, 2 (Jan. 2, 2025).

## B. Enforcement Scheme and Enforcement History.

During his First Administration, President Trump directed officials to impose civil penalties for the first time. 82 Fed. Reg. 8799 (Jan. 30, 2017). Civil penalties were sent out via Form I-79B, Notice of Intention to Fine ("intent notice"), which contained blank spaces for specific allegations regarding an individual's alleged conduct that had led to the penalty. Declaration of Ian Head ¶ 16 ("Head Decl."). Before sending out such notices, officials were directed to "ensure that sufficient evidence is gathered and properly documented prior to the assessment of a fine." *Id.*, Ex. A ¶ 5.1. Only a small number of individuals received such notices. *Id.*, Ex. E. Those who did challenge the penalties did so under 8 C.F.R. § 280. *Cf. id.*, Ex. B at 2 (citing 8 C.F.R. § 280.1 *et seq.*).

---

[1] The maximum amount under Section 1324d is calculated by reference to the applicable statute of limitations. As the INA does not have its own statute of limitations, the five-year statute of limitations for an "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture" applies to these fines. *See* 28 U.S.C. § 2462.

President Biden rescinded the policy. 86 Fed. Reg. 7051 (Jan. 20, 2021). Then-DHS Secretary Mayorkas noted "[t]here is no indication that these penalties promoted compliance with noncitizens' departure obligations." *DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021), https://tinyurl.com/crxekjj7 ("*Rescission of Civil Penalties*"). On the first day of his second term, President Trump revived the program. *See* 90 Fed. Reg. 8443 (Jan. 20, 2025). Thereafter, President Trump stated that civil penalties would be utilized for purposes of "garnishment of wages; and the confiscation of savings and personal property, including homes and vehicles." 90 Fed. Reg. 20357, 20358 (May 14, 2025).

This time around, Defendants used an amended Form I-79 and assessed civil penalties pursuant to the Blanket Fine Policy. *See* Head Decl. ¶¶ 14, 15. The Form I-79 Defendants used does not contain blank spaces like the old form I-79B, and it includes no specifics about the alleged violations, other than the date of the removal order or voluntary departure order at issue. *Id.* ¶ 14. All forms used by Defendants since January 2025 contain only generic, boilerplate allegations regarding alleged violations. *Id.* ¶ 15. By June, Defendants had issued nearly 10,000 fine notices, but only roughly 100 individuals responded. 90 Fed. Reg. at 27442.

On June 27, 2025, Defendants promulgated the IFR for the stated purpose of imposing civil penalties "swiftly and at scale" and to "achieve the Administration's immigration enforcement and border security objectives." 90 Fed. Reg. at 27446. Defendants promulgated the IFR without notice and comment, adopting overnight a new enforcement scheme that heavily curtailed the process for challenging the fines and substantively changed the nature of the fines. *Compare* 8 C.F.R. §§ 280.1 *et seq.*, *with* 8 C.F.R. §§ 281.1 *et seq.* The IFR replaced 8 C.F.R. § 280 with regulations codified as 8 C.F.R. § 281.1. Among other things, the new regulations changed the intent notice to a violation notice, still without any individualized findings, Head Decl. ¶ 14; shortened the response time from a maximum 60 days to a strict three-week deadline; and removed the right to appeal to the BIA. 8 C.F.R. § 281.1.

By August 2025, Defendants had imposed over 21,500 fines. *See* Jack Morphet, *ICE Has Fined Immigrants $6 Billion. Now It's Coming to Collect*, Wall St. J. (Aug. 26, 2025),

https://tinyurl.com/mwc42kde. Plaintiffs Maria L. and Nancy M. (collectively, "Individual Plaintiffs") are just two of the individuals who received fines. Compl. ¶ 1. Plaintiffs Maria L. and Nancy M. received civil penalties under the IFR, challenged the penalties through the processes available under 8 C.F.R. § 281, and they received adverse decisions sustaining the penalties. Declaration of Maria L. ¶¶ 16–18 ("Maria L. Decl."); Declaration of Nancy M. ¶¶ 22–25 ("Nancy M. Decl."). Plaintiff Immigrant Legal Resource Center ("ILRC") submitted a comment opposing the IFR. Decl. of Alison Kamhi ¶ 8 ("Kamhi Decl."), Ex. A.

Plaintiffs brought suit on November 20, 2025. Compl., ECF No. 1 (Nov. 20, 2025). This motion seeks relief for Plaintiffs' claims related to Defendants' violations of the APA: Count IV (Violation of the APA's Notice-and-Comment Requirement), Count V (The IFR Is Arbitrary and Capricious), Count VI (Agency Action Not in Accordance with Law), and Count VII (Arbitrary and Capricious Agency Action). Compl. ¶¶ 171–196.

## LEGAL STANDARD

The APA permits courts to stay agency action "pending conclusion of the review proceedings" and to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The factors governing preliminary injunctions also govern Section 705 stays. *Mass. Fair Hous. Ctr. v. H.U.D.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020). A stay is appropriate if plaintiffs are "likely to succeed on the merits"; "likely to suffer irreparable harm" absent a stay; and the public interest and the balance of the equities favor a stay. *Doe v. Trump*, 157 F.4th 36, 46 (1st Cir. 2025) (citation and quotation marks omitted).

## ARGUMENT

**I.    Plaintiffs Have Standing to Challenge the Blanket Fine Policy, the IFR, and the Fine Notices.**

To have Article III standing, a plaintiff must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). All Plaintiffs meet this standard.

Individual Plaintiffs satisfy the injury-in-fact, causation, and redressability requirements and therefore have standing to challenge Defendants' actions. Each received a fine that imposes significant monetary harms and raises the risk of future harm through imminent collection and enforcement. Maria L. Decl. ¶¶ 16–18; Nancy M. Decl. ¶ 22–25. Such monetary harms are among the "most obvious" injuries establishing Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Individual Plaintiffs also face the risk of further enforcement in the collection, garnishment, and/or seizure of assets. *See* 90 Fed. Reg. at 20358. Defendants caused these harms and granting the requested relief will provide redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992) (there is "ordinarily little question" a plaintiff has standing when they are "the object of [governmental] action").

For its part, ILRC has standing to challenge the IFR's lack of notice and comment. Organizations are "entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). Defendants promulgated the IFR without prior notice and without considering public comment—including from ILRC. The IFR's lack of notice and comment is a procedural injury to ILRC caused by Defendants. Kamhi Decl. ¶¶ 10–14. *E.g.*, *Equal Means Equal v. Ferriero*, 478 F. Supp. 3d 105 (D. Mass. 2020); *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 42 (D.D.C. 2020) ("*CAIR Coalition*"). Postponing the effective date of the IFR will redress that injury. *See Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2137 (2025) (noting "it would be surprising and unusual if invalidating the regulations did not" provide redress). ILRC need not show any more to establish standing.

## II.    Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims.

Defendants violate the APA through the Blanket Fine Policy, the IFR, and the fines issued thereunder. The Blanket Fine Policy is contrary to law (Count VI) and arbitrary and capricious (Count VII). For its part, the IFR is arbitrary and capricious (Count V) and was promulgated unlawfully, without notice and comment (Count IV). Accordingly, the Court should grant a stay.

## A.    The Blanket Fine Policy Is Not in Accordance with Law.

Since January 2025, before and after the IFR, Defendants assess penalties that routinely reach six figures and sometimes approach two million dollars in violation of Sections 1229c and 1324d. Those statutes penalize failures to depart following a removal order or voluntary departure order only where the alleged conduct is "willful" or "voluntary." 8 U.S.C. §§ 1229c(d)(1)(A), 1324d(a)(1). Defendants impose civil penalties without regard to these statutory requirements, instead basing civil penalty determinations on the existence of a removal or voluntary departure order and continued presence in the country. The Blanket Fine Rule reads the words "willfully" and "voluntarily" out of the respective statutes. But Defendants cannot simply "rewrite clear statutory terms to suit [their] own sense of how the statute should operate." *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 328 (2014). Because it disregards the plain statutory text—penalizing only "willful" and "voluntary" violations of the law—Defendants' Blanket Fine Policy is not in accordance with law (Count VI) and, therefore, violates the APA. 5 U.S.C. § 706(2)(A).

Both Section 1229c and Section 1324d require individualized assessment before imposing civil penalties. Section 1324d penalizes only instances in which individual "*willfully* fails or refuses to" depart following a final order of removal. 8 U.S.C. § 1324d(a)(1), (2) (emphasis added).[2] "[A]s the Supreme Court has repeatedly stated, 'willfully' is a word of many meanings whose construction is often dependent on the context in which it appears." *IRS v. Murphy*, 892 F.3d 29, 35 (1st Cir. 2018) (cleaned up) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 57, 57 (2007)); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) ("In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'"). Courts "look [] to the context in which the word 'willfully' appears in [a statute] to ascertain its meaning." *Murphy*, 892 F.3d at 35. But, "[a]t a minimum, 'willfully' differentiates

---

[2] Section 1324d also penalizes circumstances under which an individual "conspires to or takes any action designed to prevent" departure following a final order of removal. 8 U.S.C. § 1324d(a)(2). The IFR, however, addresses only Section 1324(d)(a)(1) violations. *E.g.*, 90 Fed. Reg. at 27440.

between deliberate and unwitting conduct." *Id.* (quoting *Bryan v. United States*, 524 U.S. 184, 191 (1998)).

Section 1229c, meanwhile, allows for civil penalties when an individual "is permitted to depart voluntarily . . . and *voluntarily* fails to depart the United States within the time period specified." 8 U.S.C. § 1229c(d)(1) (emphasis added). Similar to willfulness, the term "voluntary" is context-specific. Indeed, Defendants acknowledge as much when citing to a BIA opinion finding that an individual's failure to depart was <u>not</u> voluntary. 90 Fed. Reg. at 27443 (citing *Matter of Zmijewska*, 24 I&N Dec. 87, 94 (BIA 2007)); *see also Matter of Zmijewska*, 24 I&N Dec. at 95 ("Assuming the truth of the respondent's allegations regarding her accredited representative's conduct, we find that she has shown that she did not 'voluntarily' fail to depart within the period of voluntary departure granted by the Board."). Federal courts have acknowledged similar circumstances under which an individual's failure to depart is not voluntary. *See Berdiev v. Garland*, 13 F.4th 1125, 1135 (10th Cir. 2021); *Pedroza v. Holder*, 435 F. App'x 688, 690 (9th Cir. 2011). Accordingly, a finding of voluntariness under Section 1229c requires more than continued presence in the country following a voluntary departure order.

Defendants do not conduct an individualized analysis of willfulness or voluntariness required under either statutory provision. Before and after the IFR, the forms used by Defendants contain only generic allegations or findings regarding willfulness and voluntariness. Head Decl. ¶ 14. Officials acting for Defendants merely check boxes containing boilerplate recitations of the law. *Id.* ¶¶ 17, 18. That stands in stark contrast to the only other time since IIRIRA's passage that these penalties have been imposed, when immigration officials were required to gather "sufficient evidence . . . prior to assessment of a fine." *Id.*, Ex. A ¶ 5.1. When they did assess a fine, those officials included individualized allegations regarding the purported violations. *See id.* ¶ 16. Under the IFR, Defendants assess fines based only on: (a) a final order of removal or voluntary departure order, and (b) the individual remaining present in the country. 90 Fed. Reg. at 27453. The IFR states that those two factors will give rise to an "inference" of a violation. *Id.* Even the IFR acknowledges that these criteria will only "*generally* support an inference that the [noncitizen] is

liable for a civil monetary penalty, at least *absent evidence indicating that the [noncitizen's] failure to comply was not voluntary or willful*." *Id.* (emphasis added). But Defendants do not consider that evidence, before imposing a fine or in the rare case an individual challenges the fine. *Id.*; Maria L. Decl. ¶¶ 16, 18; Nancy M. Decl. ¶¶ 23, 25.

There are many circumstances that would lead an individual to remain in the country following an order of removal that would not constitute a willful violation of Sections 1229c or a voluntary violation of Section 1324d.[3] For example, even after a removal order or voluntary departure order, individuals may still pursue immigration relief that will allow them to obtain lawful status. Such is the case for Individual Plaintiffs. Maria L. Decl. ¶ 15; Nancy M. Decl. ¶¶ 10–14. Nancy M. also has explicit permission from ICE to remain under an order of supervision. Nancy M. Decl. ¶ 12. But, by their own admission, Defendants do not consider whether such circumstances are willful or voluntary violations of the law before imposing a fine, 90 Fed. Reg. at 27453, failing to engage in the individualized assessment required by the INA.

**B. The Blanket Fine Policy is Arbitrary & Capricious.**

The Blanket Fine Policy also violates the APA because it is arbitrary and capricious (Count VII). 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if it is not the result of "reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). Where an agency shows "a complete failure to reasonably reflect upon the information contained in the record and grapple with contrary evidence," its decision is unlawful. *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017). The Blanket Fine Policy is arbitrary and capricious for at least two reasons.

---

[3] "For instance, many legal remedies are available to individuals who have a final order of removal that nonetheless allow them to remain lawfully present in the United States. Those types of relief include, but are not limited to, the grant of deferred action pursuant to a bona fide determination of eligibility for U non-immigrant status for victims of certain enumerated crimes; current U status; current T non-immigrant status for survivors of human trafficking; deferred action pursuant to an approved Violence Against Women Act ('VAWA') self-petition; deferred action upon approval of a petition for Special Immigrant Juvenile status ('SIJS'); temporary protected status; Deferred Enforced Departure; Continued Presence for trafficking survivors; Deferred Action for Childhood Arrivals ('DACA'); pending immediate relative adjustment under 8 U.S.C. §§ 1225(a) or (i) (INA §§ 245(a) or (i)); lawful permanent residency following a period of U, T, or SIJS status; or being subject to an order of supervision." Compl. ¶ 96.

*First*, Defendants have failed to provide a reasoned basis for declining to conduct individualized assessments of willfulness and voluntariness, *see supra* § II.A. When taking action against individuals, agencies must not "cut[] short the individualized determination required" by law. *See Roe v. Dep't of Def.*, 947 F.3d 207, 228 (4th Cir. 2020). Without individualized consideration, courts cannot be adequately assured that an agency's reasoning is based in fact and upon permissible factors. *E.g.*, *Cabrera v. Dep't of Labor*, 792 F. Supp. 3d 91, 104 (D.D.C. 2025); *Or. Council for Humanities v. U.S. DOGE Serv.*, 794 F. Supp. 3d 840, 890 (D. Ore. 2025); *Doe v. Trump*, 784 F. Supp. 3d 1297, 1312 (N.D. Cal. 2025); *Am. Ass'n of Colls. for Teacher Edu. v. McMahon*, 770 F. Supp. 3d 822, 856 (D. Md. 2025). Defendants conduct no such individualized assessment, instead imposing fines based on merely checking boxes on a form containing only boilerplate allegations. Head Decl. ¶ 17. Such "conclusory statements will not do; an 'agency's statement must be one of *reasoning*.'" *Amerijet Int'l v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (quoting *Butte Cnty., Cal. v. Hogen,* 613 F.3d 190, 194 (D.C. Cir. 2010)).

*Second*, Defendants provided insufficient justification for reviving the fine program. "A 'more detailed justification' may be required . . .  when the agency's new position 'rests upon factual findings that contradict those which underlay [the] prior' position." *Housatonic River Initiative v. EPA, New England Region*, 75 F.4th 248, 270 (1st Cir. 2023). When they chose to pursue these penalties in the Spring of 2025, Defendants did not address data from the first Trump Administration's attempts to impose these fines, showing that service of the fine notices and rates of collection were abysmal. *See, e.g.*, Head Decl., Ex. E. Nor did Defendants address data discussed in rescinding the fines program, *see Rescission of Civil Penalties* (announcing rescission after "reviewing detailed data regarding the issuance of such fines since 2018"). Failure to address this data, which counseled against Defendants' revival of the fines program, is arbitrary and capricious.

### C.  The IFR Is Arbitrary and Capricious.

By disregarding the statutory requirements that any alleged violation be willful or voluntary, the IFR "entirely fail[s] to consider an important aspect of the problem." *See Motor*

*Veh. Mnfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). *See supra* § II.A. On this basis alone, the Court should grant the relief requested here. What's more, the IFR fails to explain a departure from longstanding regulations, includes an evidentiary presumption with no rational connection between the facts found and the choice made, and fails to take into account reliance interests. *See also Ass'n of Am. Univs. v. Dep't of Def.*, 792 F. Supp. 3d 143, 170 (D. Mass. 2025).

*First*, the IFR does not explain either the deviation from regulations that have been in effect since 1957 or the prior rescission of the fines program. "In the context of a policy change, an agency must both display awareness that it is changing position and show that there are good reasons for the new policy." *Id.* (cleaned up). The IFR merely explains away the 8 C.F.R. part 280 regulations as "hav[ing] the potential to become unnecessarily burdensome and cause unnecessary delay," 90 Fed. Reg. at 27444, without elaboration. Defendants cannot defend the abandonment of these longstanding regulations merely on the assertion that the change is required "to achieve the Administration's immigration enforcement and border security objectives." *Id.* at 27446.

*Second*, the IFR creates an "inference" that amounts to an impermissible evidentiary presumption. Although agencies may apply evidentiary presumptions in certain circumstances, such a presumption is "only permissible if there is a sound and rational connection between the proved and inferred facts." *Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 911–12 (D.C. Cir. 1999). Notably, "[i]f there is an alternate explanation for the evidence that is also reasonably likely, then the presumption is irrational." *Id.* at 912. Defendants' "inference" of culpability amounts to an unlawful evidentiary presumption and is no substitute for evidence of a statutory violation. Rather than establish the statutory requirement that any violation be willful or voluntary, Defendants infer liability. 90 Fed. Reg. at 27453. But this presumption is irrational because there is a clear alternate explanation: noncitizens may remain present following a final order of removal for reasons that would not constitute willful or voluntary failure to depart. *See supra* § II.A. By failing to consider these circumstances—indeed, avoiding them altogether—Defendants unlawfully assume liability.

*Third*, the IFR wholly fails to account for reliance interests. "'[L]ongstanding policies may . . . engender[] serious reliance interests' that the agency must take into account when it decides to change that policy." *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 137 (D. Mass. 2025) (quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020)). At a minimum, agencies are "required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents of the Univ. of Cal.*, 591 U.S. at 33. The IFR does not address any such interests stemming from regulations that have been in effect since 1957. *See* 22 Fed. Reg. 9765. Nevertheless, the IFR fundamentally shifts the nature of the penalties at issue; while noncitizens were previously entitled to notice before imposition of fines, *see* 8 C.F.R. § 280.1, the IFR now asserts that immigration proceedings suffice to inform a noncitizen of "the consequences of failing to depart, including that [they] could be subject to civil monetary penalties," 90 Fed. Reg. at 27440. It is reasonable to assume that the public in general relies on the prior regulatory regime, in place for over half a century, to provide notice of the intent to impose the fines at issue. The IFR, however, upends the rule in place since 1957 that a Form I-79 would provide that notice, without considering the reliance interests created by that prior regulatory regime.

For these reasons, among others, the IFR is arbitrary and capricious.

### D.    The IFR Is Invalid Because Defendants Did Not Follow the APA's Notice and Comment Procedures.

The IFR violates the APA's procedural requirements because Defendants failed to give the public notice and an opportunity to comment before the IFR took effect. Compl. ¶¶ 193–96 (Count IV). The IFR contends that both the foreign-affairs and procedural-rule exceptions to the notice-and-comment requirement apply. *See* 90 Fed. Reg. at 27454-56. But those exceptions are "narrowly construed and only reluctantly countenanced." *N.J. Dep't of Envtl. Prot. v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980). The IFR does not fit either exception.

1.      *The Foreign-Affairs Exception Does Not Apply to Domestic Laws Enforced
in the United States Against Noncitizens Present in the United States.*

The foreign-affairs exception to the APA's procedural requirements applies only where a rulemaking involves a "foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). Although the First Circuit has not interpreted this exception, other courts have held that it applies only where (1) the rulemaking "*clearly and directly* involve[s] activities or actions characteristic to the conduct of international relations," *CAIR Coalition*, 471 F. Supp. at 53 (emphasis added); or (2) following APA procedures would "provoke definitely undesirable international consequences," *Rajah v. Mukasey* 544 F.3d 427, 437 (2d Cir. 2008). No matter what test applies, the foreign-affairs exception is narrow. *CAIR Coalition*, 471 F. Supp. at 54 (noting the D.C. Circuit has only applied it when "a rule implements an international agreement"). The foreign-affairs exception does not apply here because the IFR involves implementation of a domestic statute through domestic means.

***First***, the IFR—which concerns civil penalties imposed by domestic immigration law on noncitizens who are, by definition, within the United States—does not even begin to satisfy the "activities or actions" test. The IFR does not involve activities or actions characteristic of foreign relations at all, much less clearly and directly. The IFR alters U.S. regulations around civil penalties that apply to people in the United States. Specifically, the IFR allows DHS to mail penalty notices by regular U.S. mail to addresses in the United States and restricts the preexisting right to review of penalty determinations by U.S. government officials in various ways. No foreign government is involved, either directly or indirectly; no actions on foreign territory are involved; and no treaties are involved. *See Int'l Bhd. Teamsters v. Pena*, 17 F.3d 1478 (D.C. Cir. 1994) (applying exception to rule implementing an international agreement). There is no meaningful tie between the IFR and any activity characteristic of relations with foreign states.

The IFR never argues otherwise. *See* 90 Fed. Reg. at 27454–56. Rather, the IFR asserts that its provisions are "part of . . . efforts to reduce unlawful migration" and points to unspecified "negotiations with other countries" to which "measures like [the] IFR" are purportedly "critical."

*Id.* at 27455. Similarly, the IFR contends it "will enable the United States to better achieve the total and efficient enforcement of U.S. immigration law and," thus, fulfill a foreign-policy goal. *Id.* at 27456. But none of that can transform wholly domestic activities and actions in the IFR into ones "characteristic of international relations." *E.B. v. Dep't of State*, 583 F. Supp. 3d 58, 66 (D.D.C. 2022). Indeed, the IFR explicitly states it is meant to "facilitate DHS's ability to more effectively use statutorily authorized civil monetary penalties," 90 Fed. Reg. at 27454, a purpose which has less to do with foreign affairs than other rules the courts have held must undergo notice and comment. *See E.B.*, 583 F. Supp. 3d at 66 (procedures for adjudicating diversity visa petitions); *CAIR Coal.*, 471 F. Supp. 3d at 55-57 (restriction on asylum at the U.S.-Mexico border).

Conclusory assertions, such as those in the IFR, that a rule "implicates . . . the President's foreign policy agenda" or "in some way affect[s] ongoing negotiations with other countries" are insufficient to trigger the foreign-affairs exception for good reason: the exception could "swallow[]" notice-and-comment whole if mere "downstream effects on foreign affairs" sufficed to evade the APA. *CAIR Coal.*, 471 F. Supp. 3d at 55–56. In short, the IFR does not clearly and directly involve foreign relations, and the Court should decline to apply the foreign-affairs exception here.

**Second**, the IFR does not satisfy the "undesirable circumstances" test, if it applies at all. As an initial matter, the test is constitutionally suspect; unlike the "activities or actions" test, the alternative "definitely undesirable international consequences" test is "unmoored from the legislative text." *Id.* at 53. It is instead "lifted" from a piece of legislative history. *Id.* That distinction matters, because the undesirable-consequences test would permit invocation of the foreign-affairs exception in rare cases in which a rule does *not* involve a foreign-affairs function. Rather, it would permit agencies to use the exception whenever the downstream effects of a rule went beyond some unknown level of significance. That result cannot be squared with Congress's focus on a "foreign-affairs *function*" rather than foreign-affairs *consequences*. 5 U.S.C. § 553(a)(1). And given that legislative history cannot override clear bounds in statutory text, *see,*

*e.g., Azar v. Allina Health Servs.*, 587 U.S. 566, 579–80 (2019), this Court should only apply the "activities and actions" test.

In any event, the undesirable-consequences test also precludes Defendants' reliance on the foreign-affairs exception. To satisfy that test, the consequences must "flow[] from the application of notice and comment review." *Rajah*, 544 F.3d at 437. Defendants must thus show "definitely undesirable international consequences" would occur if they had "announc[ed] a proposed rule" and then engaged in notice and comment rather than issuing an IFR. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 776 (9th Cir. 2018).

Defendants cannot make that showing. In the context of a rule imposing domestic civil penalties, the notion that announcing a proposed rule and soliciting comments would somehow affect international relations is deeply implausible. That notion is made even more implausible by the surrounding context. Defendants have issued countless anti-immigrant policies as part of their stated effort to "address shared challenges to border security and illegal immigration." 90 Fed. Reg. at 27454.[4] Against that backdrop, a modest delay in enacting changes to the civil penalty regime could hardly affect international relations.

Unsurprisingly, nothing in the IFR comes close to showing that notice-and-comment procedures would have provoked definitely undesirable international consequences. The IFR asserts that "immediate" and "quick and robust action" is needed "to encourage other countries to cooperate with" efforts to reduce migration and satisfy foreign policy goals. 90 Fed. Reg. at 27455–56. But it does not, and cannot, explain how the immediate publication of a *proposed* rule stating Defendants' intent to issue the same policies would prevent those outcomes. Absent such an explanation—and evidence to support it—the foreign-affairs exception cannot apply. *See, e.g., E.*

---

[4] To name a few, those other policies include the (illegal) override of the INA's mechanisms for humanitarian protection, *see RAICES v. Noem*, 793 F. Supp. 3d 19 (D.D.C. 2025) (granting plaintiffs partial summary judgment), *appeal pending*, D.C. Cir. No. 25-5243, and the (often illegal) imprisonment of more than 100,000 people, *see, e.g., Coal. for Humane Immigrant Rights v. Noem*, ___ F. Supp. 3d ___, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) (granting a stay of agency action), *appeal pending*, D.C. Cir. No. 25-5289.

*Bay*, 932 F.3d at 776 (evidence needed where "the connection between" foreign-policy consequences "and the immediate implementation of the Rule is not apparent"); *E.B.*, 583 F. Supp. 3d at 63 (agencies require "factual basis to support" claim of undesirable consequences).

### 2. The Procedural-Rule Exception Does Not Apply.

The IFR also briefly contends that the exception to notice-and-comment procedures for "rules of agency organization, procedure, or practice" applies. 5 U.S.C. § 553(b)(A); *see* 90 Fed. Reg. at 27454. The First Circuit has never applied a "procedural-rule" exception.[5] But even if the rule were to apply, an agency may not forego notice and comment simply because it issues a rule clad in procedural garb. Rather, a rule is procedural under § 553 only if it is "'primarily directed toward improving the efficient and effective operations of an agency.'" *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014)). "[T]he distinction between substantive and procedural rules is one of degree depending upon whether the substantive effect is sufficiently grave so that notice and comment are needed to safeguard the policies underlying the APA." *Elec. Priv. Info. Ctr. v. DHS*, 653 F.3d 1, 5–6 (D.C. Cir. 2011) (quotations omitted)). "'[T]he critical feature of a rule that satisfies the so-called procedural exception is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'" *AFL-CIO*, 57 F.4th at 1034. "Where a rule imposes substantive burden[s], encodes a substantive value judgment, trenches on substantial private rights or interests, or otherwise alters the rights or interests of parties," the procedural-rule exception does not apply. *Id.* (cleaned up). The IFR is not a mere procedural rule for three reasons.

**First**, some of the IFR's provisions facially alter substantive rights. The change from issuing an intent notice (informing the recipient that Defendants intend to impose a penalty) to instead directly issuing a decision and order imposing a penalty deprives noncitizens of notice that

---

[5] Although the exception is quoted in *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 168-70 (1st Cir. 2021), that opinion turns on the separate exception in 5 U.S.C. § 553(a)(B) for so-called "interpretative rules." The IFR does not claim it is interpretative in nature.

a penalty may be imminent. *Compare* 8 C.F.R. §§ 103.8, 280.1, 280.11, *with id.* § 281.1(b)–5(c); *see* Maria L. Decl., Ex. A; Nancy M. Decl., Ex. A. That change does not alter *how* noncitizens contest penalties before an agency. Rather, it deprives noncitizens of the right to pre-penalty notice and of the ability to prepare for the imposition of a penalty. It is therefore substantive in nature. *See AFL-CIO*, 57 F.4th at 1038 ("provision delaying certification of election results" was substantive because it "curtail[ed] the protective effect on employees of" electing "a representative of their choosing"); *cf. Nat'l Council for Adoption v. Blinken*, 4 F.4th 106, 114 (D.C. Cir. 2021) (rule that "exposes [entities] to enforcement actions" requires notice and comment).

Moreover, contrary to the IFR's assertion, its provisions also alter "the substantive criteria for issuing penalties." 90 Fed. Reg. at 27454. The IFR's unwarranted assumption that the willfulness or voluntariness of a failure to depart effectively reads those words out of the statute, creating a strict-liability regime. *See supra* § II.A.

**Second**, the remaining provisions of the IFR, while procedural on their face, are substantive in nature because they impose enormous burdens on noncitizens and make sweeping changes to noncitizens' rights. If "the time allotted is so short as to foreclose effective opportunity to make one's case on the merits," a proposed rule must be subject to notice and comment. *See Lamoille Valley R.R. Co. v. ICC*, 711 F.2d 295, 328 (D.C. Cir. 1983). That is unquestionably the case here. The IFR shortens the time for noncitizens to respond to a penalty notice from up to 60 days to only fifteen business days. *See* 8 C.F.R. §§ 280.12, 281.1(e)(1). At the same time, the IFR removes the requirement that notices be served either in person or by certified or registered mail, instead allowing service by regular mail. *See id.* §§ 103.8(a)(1)(i) & (a)(2), 280.11, 281.1(d). The nominal period of fifteen days is, in reality, even shorter, because the period runs from the mailing of the notice. 8 C.F.R. § 281.1(c)(i); 8 C.F.R. § 103.8(b).

During those fifteen days, or less, the IFR forces noncitizens to decipher the notice (which is full of legal jargon and in English only); understand the potential defenses to a penalty (which are not listed on the notice); figure out what facts are most relevant to their defenses; track down supporting documentary evidence (which will often be from months or years earlier); and write a

complete response (in English). The only other alternative is for the noncitizen to find a lawyer to do most of this work—and that is, of course, possible only if the noncitizen has sufficient wealth or is fortunate enough to have someone immediately take their case *pro bono*. Neither option will be remotely plausible for most noncitizens. And while the IFR asserts that its truncated timetable provides "ample time," it provides no basis for, or evidence to support, that self-serving assertion. 90 Fed. Reg. at 27454; *see id.* at 27446.

Of course, that is not the only facially "procedural" change in the IFR—and the other changes effectively remove every potential avenue for noncitizens to challenge a penalty *except* by filing a response within the truncated period in front of the agency that imposed the penalty in the first place. The IFR removes the ability for noncitizens to seek an interview with DHS before a penalty is imposed. *Compare* 8 C.F.R. § 280.12 (pre-IFR procedure), *with id.* § 281.1. The IFR removes noncitizens' ability to request mitigation or remission of a penalty. *Compare id.* §§ 280.12, 280.51 *with id.* § 281.1. And it eliminates a noncitizen's right to appeal a penalty to the BIA—an agency housed outside DHS that could previously serve as a check on penalty determinations. *See id.* § 280.13. Now, a DHS supervisor reviews any written submission made by a noncitizen, and "[t]here is no further appeal." *Id.* § 281.1(f)(1).

The noncitizen's one and only chance to contest a penalty under the IFR is thus to take the effectively impossible step of compiling and filing a complete defense within less than fifteen business days. The result is that, although the IFR's changes "might be termed procedural," they "substantively affect" noncitizens "to a degree sufficient to implicate the policy interests animating notice-and-comment rulemaking.'" *Mendoza*, 754 F.3d at 1024 (quotations omitted).

***Third***, the IFR "encodes a substantive value judgment." *AFL-CIO*, 57 F.4th at 1034. Both the American media and the American public have focused on immigration and the balance between security and the need to safeguard immigrants' rights. *See Elec. Priv. Info. Ctr.*, 653 F.3d at 6 (public concern and media coverage suggests a rule is substantive). The normal notice-and-comment procedure would doubtless have produced significant debate. Instead, the IFR prejudges the issue, unilaterally finding that its provisions will "deter future unlawful entries, consistent with

the Administration's objective of fully securing the border" while also providing "a meaningful opportunity to challenge the decision"—an assertion the IFR never explains. 90 Fed. Reg. at 27446, 27452; *see also id.* at 27446 (contending, without evidence, that noncitizens "who enter the United States unlawfully pose a significant strain on DHS resources and American communities and pose a threat to public safety and border security"). The IFR thus impermissibly picks sides in an ongoing debate over substantive policy without notice and comment. *See AFL-CIO*, 57 F.4th at 1042 (provision narrowing who could be selected as an election observer "encodes a substantive value judgment about the type of observers that best serve . . . policy goals"); *Texas v. United States*, 809 F.3d 134, 177 (5th Cir. 2015) ("receipt of [] benefits . . . encodes a substantive value judgment") (quotation omitted), *aff'd by an equally divided court*, 579 U.S. 547 (2016).

### III. The Individual Plaintiffs and ILRC Have Suffered and Will Suffer Irreparable Harm Absent Preliminary Relief.

When "the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *Vaqueria Tres Monjitas, Inc. v, Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). Here, however, Plaintiffs have suffered numerous irreparable harms, including the imposition of hundreds of thousands of dollars in fines, and the issuance of the IFR without considering ILRC's comment on it.

The civil penalties at issue risk further irreversible harm beyond simple monetary payments. *See* Maria L. Decl. ¶ 18; Nancy L. Decl. ¶¶ 26, 27. Those harms include, to name a few: garnishment of wages and bank accounts; seized assets, including vehicles and homes; reports to the IRS of unreported income; and adverse determination regarding future admissibility determinations. 90 Fed. Reg. at 20358; Compl. ¶¶ 113–24. Each involves a substantial deprivation beyond the mere—albeit astronomical—monetary penalty imposed. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993) (the right to one's home); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 341–42 (1969) (protections against garnishment); *Raper v. Lucey*, 488 F.2d 748, 753 (1st Cir. 1973) (motor vehicles). The irreparable harm does not end there, as Individual Plaintiffs live under the constant threat of collections, imposing "economic

and emotional" instability, *Ford v. Shalala*, 87 F. Supp. 2d 163, 178 (E.D.N.Y. 1999), and an attendant "financial planning burden," *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990). *See also* Maria L. Decl. ¶¶ 20, 21; Nancy L. Decl. ¶¶ 31, 32.

The Individual Plaintiffs have also suffered procedural harm in the lost opportunity for meaningful consideration of whether the alleged violations are in fact willful. "A party experiences actionable harm when 'depriv[ed] of a procedural protection to which he is entitled' under the APA." *Northern Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17 (D.D.C. 2009). Declining to consider whether civil penalties were actually appropriate, *see supra* § II.A, Defendants determined Individual Plaintiffs should be penalized. Individual Plaintiffs now have no recourse such that their lost rights cannot be restored absent preliminary relief.

ILRC has likewise suffered irreparable procedural harm. *E.g.*, *Assoc. of Comm. Cancer Ctrs v. Azar*, 509 F. Supp. 3d 482, 501 (D. Md. 2020). Notice and comment procedures are designed "to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage." *N.J. Dep't of Envtl. Prot.*, 626 F.2d at 1049. Once the IFR took effect, Defendants became "far less likely to be receptive to comments." *See Northern Mariana Islands*, 686 F. Supp. 2d at 18. As a result, ILRC lost the ability to influence the outcome of the rulemaking process, a function central to its mission, and that harm cannot be undone.

## IV. The Balance of Equites and Public Interest Favor Staying the IFR, Blanket Fine Policy, and the Fine Notices.

The final two factors—the balance of hardships and the public interest—merge when the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This merged factor strongly favors Plaintiffs. The public has a fundamental interest in ensuring that Defendants comply with the law. *See, e.g.*, *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025); *Massachusetts v. N.I.H.*, 770 F. Supp. 3d 277, 326 (D. Mass. 2025). The public also has substantial interests in ensuring that agencies follow required procedures and consider public input, *see Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1039 (D. Mass. 2003), and that Defendants "respect[] the rights of immigrants." *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 124 (D.D.C. 2018).

Defendants, meanwhile, have a minimal interest in applying the IFR and the Blanket Fine Policy, or in enforcing the fine notices. A stay would not prevent Defendants from issuing civil penalties under the INA; it would only require them to use the same procedures that governed those penalties for decades before Defendants promulgated the IFR. *See, e.g.*, *New York v. Trump*, 133 F.4th 51, 71 (1st Cir. 2025) (injunction barring only "broad, categorical freezes" in funding rather than "all freezes in funding" does not irreparably harm the government); *Ass'n of Am. Univs.*, 792 F. Supp. 3d at 181 ("harm of continuing [an] approach … that has endured for decades" is "minimal"). The requested preliminary relief would simply require that Defendants do what the law requires—consider willfulness and voluntariness—and decline to collect on unlawful fine notices. Moreover, there is no reason to conclude that forestalling collection efforts now would deprive Defendants of anything more than insignificant amounts. *Cf.* Head Decl., Ex. E.

Defendants' desire for speed above all else, *see* 90 Fed. Reg. at 27445, 27446, 27447, 27450, 27451, 27452 n. 44, 27456, cannot override the constitutional and statutory concerns raised here. That same inclination led Defendants to violate the law by ignoring the APA's procedural requirements in the first place, *see id.* at 27454–56, and to read the elements of willfulness and voluntariness right out of the relevant statutes, *see id.* at 27443. Defendants "cannot suffer harm from" being ordered to refrain from engaging in "unlawful practice[s]." *See Ass'n of Am. Univs.*, 792 F. Supp. 3d at 181 (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). After all, our legal system "does not permit agencies to act unlawfully even in pursuit of . . . ends" they deem desirable. *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 766 (2021).

## CONCLUSION

For the foregoing reasons, the Court should stay the Blanket Fine Policy, the IFR, and the fines imposed pursuant to those rules and policies. Alternatively, the Court should grant preliminary injunctive relief enjoining the enforcement of Section 1324d fine notices and preliminary relief declaring enforcement of all fine notices unlawful.

Dated: December 9, 2025

Hasan Shafiqullah[*]
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

Richard Caldarone[*]
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
P.O. Box 786100
San Antonio, TX 78278
(210) 960-3206
richard.caldarone@raicestexas.org

David Bennion[*]
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan[*]
Stephen Rees[*]
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson[*]
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Respectfully submitted,

*/s Charles Moore*
Charles Moore (BBO No. 708061)
Mariam Elbakr[*]
Shelby Leighton[*]
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
melbakr@publicjustice.net
sleighton@publicjustice.net

Alina Das[*]
Ajay Singh[†]
Ximena Valdarrago[†]
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu
as11021@nyu.edu
xfv201@nyu.edu

Leila Nasrolahi[*]
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

[*] admitted pro hac vice
[†] law student rendering assistance pursuant
to Local Rule 83.5.4(k)

## CERTIFICATE OF SERVICE

I certify that, on December 9, 2025, I caused the aforementioned document to be served via email on counsel for Defendants, who has consented to e-service of these filings, at the following email address: Alexander.J.Severance@usdoj.gov.

*/s Charles Moore*
Charles Moore