UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA L., *et al.*<br><br>    *Plaintiffs*,<br><br>        v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; *et al.*<br><br>    *Defendants*. | Case No. 1:25-cv-13471-GAO<br><br>Hon. George A. O'Toole |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS <u>CERTIFICATION</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

  I.  The Trump Administration's Unprecedented Use of Sections 1229c and 1324d. ............... 2

     A.  Defendants' Pre-IFR Procedures for Imposing Penalties. ............................................ 4

     B.  Defendants' Post-IFR Procedures for Imposing Penalties. ........................................... 5

  II.  Defendants Unlawfully Impose Massive Civil Penalties Against Individual Plaintiffs. ..... 5

DESCRIPTION OF PROPOSED CLASS, SUBCLASSES, AND CLAIMS ............................. 6

  I.  Proposed Class. ............................................................................................................. 6

  II.  Subclass 1 ("1324d Subclass"). ..................................................................................... 7

  III.  Subclass 2 ("Post-IFR Subclass"). ............................................................................... 8

ARGUMENT ..................................................................................................................... 9

  I.  The Proposed Class Meets the Requirements of Rule 23(a). ............................................ 9

     A.  The Proposed Class Is So Numerous That Joinder Is Impracticable. ......................... 9

     B.  Common Questions of Law or Fact Apply to the Class and Subclasses. ................. 10

     C.  Individual Plaintiffs' Claims Are Typical of the Proposed Class. ............................ 12

     D.  Individual Plaintiffs Will Adequately Protect Class Members' Interests. ................ 13

  II.  The Proposed Class Meets the Requirements of Rule 23(b)(2). ...................................... 15

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 14

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) .................................................. 14

*Brito v. Barr*, 395 F. Supp. 3d 135 (D. Mass. 2019).................................................................... 13

*Brown v. Am. Honda* (*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*), 522 F.3d 6 (1st Cir. 2008) .................................................................................................................................... 10

*Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257 (1989) ............................................... 16

*D.B.U. v. Trump*, 349 F.R.D. 228 (D. Colo. 2025)...................................................................... 11

*D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025)..................... 13, 14

*Doe v. Noem*, 784 F. Supp. 3d 437 (D. Mass. 2025) ................................................................... 12

*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009) .................................................. 10, 13

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982).............................................................. 13

*Guerrero Orellana v. Moniz*, __ F. Supp. 3d __, __, 2025 WL 3033769 (D. Mass. Oct. 30, 2025) ........................................................................................................................................ 15, 16, 18

*In re Amitiza Antitrust Litig.*, 2025 WL 2690871 (D. Mass. Sept. 19, 2025)............................... 13

*In re Bos. Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275 (D. Mass. 2009) ...................................... 13

*Matamoros v. Starbucks Corp.*, 699 F.3d 129 (1st Cir. 2012)........................................................ 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976)................................................................................... 8

*McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161 (1st Cir. 1987).................................... 10

*Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340 (1st Cir. 2022)............................ 14

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 348 F.R.D. 268 (D. Mass. 2025)............ 14

*Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019)... 10, 11

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ........................................................................... 11

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21 (D. Mass. 2003)..................................... 13

*Pimental v. City of Los Angeles*, 115 F.4th 1062 (9th Cir. 2024)................................................ 16

*Reid v. Donelan*,  297 F.R.D. 185 (D. Mass. 2014) ................................................................ 12, 15

*S.E.C. v. Jarkesy*, 603 U.S. 109 (2024) ................................................................................. 7

*Savage v. City of Springfield*, 2022 WL 2758475 (D. Mass. July 14, 2022) ................................ 14

*Savino v. Souza*, 453 F. Supp. 3d 441 (D. Mass. 2020) ......................................................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........................ 9

*United States v. Bajakajian*, 524 U.S. 321 (1998) ................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 10, 11, 15

**Statutes**

5 U.S.C. § 706 ................................................................................................................. 7, 15

8 U.S.C. § 1229c .......................................................................................................... passim

8 U.S.C. § 1324d .......................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ passim

**Regulations**

8 C.F.R. § 280.1 .............................................................................................................. 4

8 C.F.R. § 280.11 ............................................................................................................ 4

8 C.F.R. § 280.12 ............................................................................................................ 4

8 C.F.R. § 280.13 ............................................................................................................ 4

8 C.F.R. § 281.1 ....................................................................................................... 4, 5, 6

8 C.F.R. part 280 ............................................................................................................. 5

8 C.F.R. § 1003.3 ............................................................................................................ 5

8 C.F.R. § 1240.26 .......................................................................................................... 3

**Other Authorities**

5 *Moore's Federal Practice* § 23.24 .................................................................................. 13

82 Fed. Reg. 8799 (Jan. 30, 2017) .................................................................................... 3

86 Fed. Reg. 7051 (Jan. 20, 2021) .................................................................................. 3

90 Fed. Reg. 1 (Jan. 2, 2025) ......................................................................................... 3

90 Fed. Reg. 20357 (May 9, 2025) ................................................................................ 3

90 Fed. Reg. 8443 (Jan. 20, 2025) ................................................................................ 3

*DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021),
    https://tinyurl.com/crxekjj7 ................................................................................... 3

*DHS Announces It Will Forgive Failure to Depart Fines for Illegal Aliens Who Self-Deport
    Through the CBP Home App*, DHS (June 9, 2025), https://tinyurl.com/crxekjj7 ..................... 4

*Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed.
    Reg. 27439 (June 27, 2025) ................................................................................... 1

Jack Morphet, *ICE Has Fined Immigrants $6 Billion. Now It's Coming to Collect*, Wall St. J.
    (Aug. 26, 2025), https://tinyurl.com/mwc42kde ...................................................... 10

## INTRODUCTION

On behalf of themselves and the class and subclasses they seek to represent, Plaintiffs Maria L. and Nancy M. ("Individual Plaintiffs") challenge Defendants' unprecedented, improper, and unconstitutional imposition of civil penalties on noncitizens who remain in the United States following an order of voluntary departure or removal. Beginning in the spring of 2025, Defendants have sent cursory notices to over twenty thousand noncitizens informing them that they owe civil penalties totaling up to $1.82 million each. Many of these noncitizens are pursuing lawful pathways to remaining in the United States or have remained here with the United States' acquiescence or authorization. The statutes Defendants rely on to impose these fines, 8 U.S.C. §§ 1229c (d)(1)(A) and 1324d(a)(1) (respectively, "Section 1229c" and "Section 1324d"), require an individualized assessment of culpability: to face liability, a noncitizen's failure to depart must be willful or voluntary. Yet Defendants have imposed these fines *en masse* based on blanket, unsubstantiated assertions, leaving Individual Plaintiffs and other class members in the dark about the basis for the fines and how to effectively contest them. Prioritizing speed over accuracy, Defendants have—in violation of federal law—promulgated an interim final rule, *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27439 (June 27, 2025) (the "IFR"), that allows them to assess these excessive civil penalties based on a mere "inference" of a violation, and without according Plaintiffs a jury trial. Plaintiffs bring this suit to stop these unlawful practices.

Individual Plaintiffs request that the Court certify the following class and subclass and appoint the Individual Plaintiffs as class and subclass representatives:

Class: All individuals subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after January 20, 2025.

Subclass 1: Any individual subjected to a civil monetary penalty imposed pursuant to Section 1324d on or after January 20, 2025 (the "1324d Subclass").

Subclass 2: Any individual subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after June 27, 2025 (the "Post-IFR Subclass").

1

The proposed class and subclasses meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2). *First*, the proposed class currently exceeds 20,000 members, and the proposed class and subclasses include a large but indeterminate number of future members subject to Defendants' illegal imposition of civil monetary penalties—making joinder impracticable and satisfying the numerosity requirement. *Second*, all members of the proposed class and subclasses share common questions of law and fact due to Defendants' uniform manner of imposing the civil monetary penalties, including under the new hollowed-out procedures established by the IFR. *Third*, Individual Plaintiffs are proper class and subclass representatives because their claims are typical of those of absent class members, and their counsel will adequately and vigorously represent the class. *Fourth*, the proposed class and subclasses satisfy Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class [and subclasses]," including through (1) their policy and practice of imposing civil monetary penalties without an individual determination as to whether the statutory requirements are met and without according the right to a jury trial and (2) their promulgation of the IFR.

## BACKGROUND

**I.    The Trump Administration's Unprecedented Use of Sections 1229c and 1324d.**

Since Congress enacted Sections 1229c and 1324d thirty years ago, the Trump Administration is the only administration to impose civil monetary penalties under either statute. In 1996, Congress amended the Immigration and Nationality Act ("INA") to add Sections 1229c and 1324d, among other provisions, as part of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009 ("IIRIRA"). Section 1229c authorizes a penalty of "not less than $1,000 and not more than $5,000" where a noncitizen is "permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified," 8 U.S.C. § 1229c(d)(1), while Section 1324d authorizes a fine of "not more than $500 . . . for each day" a noncitizen "willfully fails or refuses to" "depart from the United States" pursuant to an order of removal, *id.* § 1324d(a)(1). Maximum penalties have increased over

2

time because of the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584. As a result, maximum penalties under Section 1324d are now $998 per day, 90 Fed. Reg. 1, 2 (Jan. 2, 2025), and the presumptive fine under Section 1229c is $3,000, 8 C.F.R. § 1240.26(l).

During his first term, President Trump ordered the Secretary of the Department of Homeland Security ("DHS") to "ensure the assessment and collections of all fines and penalties . . . from [noncitizens] unlawfully present in the United States." 82 Fed. Reg. 8799, 8800 (Jan. 25, 2017) ("EO 13768"). By the end of the first Trump Administration in 2021, however, ICE had only twenty-six "active fines." 90 Fed. Reg. at 27441. Upon taking office, President Biden rescinded EO 13768, 86 Fed. Reg. 7051 (Jan. 20, 2021), and then-DHS Secretary Alejandro Mayorkas rescinded the delegation memos allowing for the civil penalties issued from 2017 to 2021. *See DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021), https://tinyurl.com/crxekjj7.

Defendants have revived the policy of imposing civil monetary penalties on noncitizens in President Trump's second term. On January 20, 2025, President Trump issued Executive Order 14159, which directed Defendant Noem to take "all appropriate action to ensure the assessment and collection of all fines and penalties that [DHS] is authorized by law to assess and collect from [noncitizens] unlawfully present in the United States, including [noncitizens] who unlawfully entered or unlawfully attempted to enter the United States." 90 Fed. Reg. 8443, 8444–45 (Jan. 20, 2025). Subsequently, President Trump issued Proclamation 10935. 90 Fed. Reg. 20357 (May 9, 2025) (the "Proclamation"). The Proclamation announced actions to address what the White House described as a "full-scale invasion of [noncitizens] entering and remaining in the country illegally." *Id.* at 20357. These actions included "financial incentives to encourage and assist [noncitizens] illegally in the country to elect to depart from the United States." *Id.* The Proclamation highlighted consequences for noncitizens who do not leave the country, such as "the garnishment of wages; and the confiscation of savings and personal property, including homes and vehicles." *Id.* at 20358. Following the Proclamation, Defendants began imposing civil penalties under Sections 1229c and

1324d in the spring of 2025 without first finding that the recipients were willfully or voluntarily remaining in the country after a final order or voluntary departure order (the "Blanket Fine Policy"). By June 2025, DHS had "issued over 9,000 fine notices to [noncitizens] for a total of almost $3 billion." *DHS Announces It Will Forgive Failure to Depart Fines for Illegal Aliens Who Self-Deport Through the CBP Home App*, DHS (June 9, 2025), https://tinyurl.com/4t33y8bh.

### A.    Defendants' Pre-IFR Procedures for Imposing Penalties.

Before June 27, 2025, the government used the administrative procedures established by 8 C.F.R. part 280 to impose penalties under both section 1229c and section 1234d. 8 C.F.R. §§ 280.1 *et seq.*, 281.1(h)(1). Noncitizens facing penalties received a Form I-79, Notice of Intention to Fine ("intent notice"). *Id.* § 280.1. This form had checkboxes next to several conclusory statements, each stating the elements for imposition of a fine under Section 1229c or 1234d. Decl. of Ian Head ¶¶ 15, 17, Ex. C. For example, the immigration officer who completed Form I-79 for a Section 1324d fine could check boxes stating that the person "willfully failed or refused to" depart from the United States pursuant to an order of removal. *Id.* ¶ 15, Ex. C. Unlike the Form I-79B used during the first Trump Administration, which required the immigration officer to write in facts supporting a finding of willfulness, the notice did not provide any details about the factual basis for those statements. *Id.* ¶ 17, Ex. C.

An authorized DHS employee then served the individual with an intent notice. 8 C.F.R. §§ 280.1, 280.11. The individual had thirty days to respond to the intent notice with a written defense and/or a request for an interview but could request an extension. *Id.* § 280.12–.13. An immigration officer then prepared a report summarizing any information, documents, and statements provided to contest the intent notice and provided an ultimate recommendation. *Id.* § 280.13(b). An officer then reviewed the report and issued a determination. *Id.* This decision similarly consisted of a box checked next to the conclusory allegation that the officer sustained as a basis for imposing the fine and did not reference any factual findings or evidence. Decl. of Ian Head ¶ 18, Ex. D. The decision could be appealed to the Board of Immigration Appeals ("BIA") within 30 days of service of the decision. 8 C.F.R. §§ 280.13(b), 1003.3(a)(2).

B.    **Defendants' Post-IFR Procedures for Imposing Penalties.**

On June 27, 2025, ICE and EOIR promulgated the IFR, substantially altering the regulations governing civil penalties imposed under both Sections 1229c and 1324d. 90 Fed. Reg. 27,439. The new regulations issued under the IFR are codified as 8 C.F.R. part 281. Under the IFR, DHS is no longer required to issue an intent notice and wait for a response prior to issuing a decision. *Compare* 8 C.F.R. § 281.1, *with* 8 C.F.R. § 280.1 *et seq.* The IFR permits an immigration officer to issue a decision and order imposing civil monetary penalties ("violation notice"). 90 Fed. Reg. at 27449. Like the intent notice, the violation notice requires the officer to select a checkbox next to conclusory allegations, and the violation notice does not provide any details about the factual basis for the allegations. Decl. of Maria L., Ex. A; Decl. of Nancy M., Ex. A. The time to respond has been reduced from thirty to fifteen business days. *See* 8 C.F.R. § 281.1(e)(1). If an individual does not appeal, the decision is final. *Id.* § 281.1(c)(2)(v). Any appeal is reviewed by "a supervisory immigration officer who did not issue the original decision." *Id.* § 281.1(e)(2). "There is no further appeal from a final decision and order" issued by a supervisory immigration officer, *id.* § 281.1(f)(1), which "constitutes final agency action," *id.* § 281.1(f)(3).

II.    **Defendants Unlawfully Impose Massive Civil Penalties Against Individual Plaintiffs.**

No Individual Plaintiff has failed to willfully depart. Maria L. remains present in the country to pursue a humanitarian form of immigration relief and a related application for permanent residence. Nancy M. remains present in the country to pursue an application for permanent residence and under an order of supervision with ICE. Despite the fact that Individual Plaintiffs have not failed to willfully depart, Defendants have assessed them millions of dollars of civil penalties for purported Section 1324d violations, but without providing sufficient process or making any individualized findings.

After issuing the IFR, Defendants imposed hundreds of thousands of dollars in civil penalties against Plaintiff Maria L. and approximately $1.8 million in civil penalties against Plaintiff Nancy M. pursuant to 8 C.F.R. § 281.1. Decl. of Maria L. ¶ 16; Decl. of Nancy M. ¶ 22. The violation notices assessing civil penalties against Maria L. and Nancy M. contained minimal,

generalized allegations regarding their alleged willful and/or conspiratorial violation of Section 1324d, without any information specific to their individual cases—the notices simply had boxes checked next to one or more of the following statements: following a final order of removal, "You . . . willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; "willfully failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." Decl. of Maria L. ¶ 16, Ex. A; Decl. of Nancy M. ¶ 22, Ex. A. Maria L. and Nancy M. timely filed responses contesting the civil penalties on the ground that they had not violated Section 1324d, and they provided information about their individualized circumstances—including significant personal hardships—and their inability to pay the fines. Decl. of Maria L. ¶ 17; Decl. of Nancy M. ¶ 24.

Defendants affirmed the full amount of penalties assessed against Maria L. and Nancy M. Decl. of Maria L. ¶ 18; Decl. of Nancy M. ¶ 25. As with their violation notices, the final decisions for Maria L. and Nancy M. affirmed the penalties because each is "not a citizen or national of the United States," there was an order of removal, and each purportedly willfully violated Section 1324d. Decl. of Maria L. ¶ 18, Ex. B; Decl. of Nancy M. ¶ 25, Ex. B. The final decisions did not otherwise corroborate Defendants' allegations and did not address the arguments raised in the appeals.

## DESCRIPTION OF PROPOSED CLASS, SUBCLASSES, AND CLAIMS

### I. Proposed Class.

Individual Plaintiffs propose to represent a class defined as: All individuals subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after January 20, 2025. Individual Plaintiffs bring the following claims on behalf of the class:

### A. Count II: Seventh Amendment Claim for Deprivation of Right to Jury Trial.

Before and after the IFR, Defendants have had a policy or practice of imposing civil monetary penalties pursuant to Sections 1229c and 1324d through administrative processes without a jury trial. These civil penalties are "common law claims [that] must be heard by a jury,"

*S.E.C. v. Jarkesy*, 603 U.S. 109, 120 (2024), and the failure to provide a jury trial violates all class members' rights under the Seventh Amendment to the U.S. Constitution.

B.     **Count VI: Agency Action Not in Accordance with Law (Violation of the Administrative Procedure Act and 8 U.S.C. §§ 1229c and 1324d).**

Both before and after the IFR, Defendants have assessed civil penalties under the Blanket Fine Policy. Under that practice or policy, Defendants impose civil monetary penalties pursuant to Sections 1229c and 1324d without making an individualized determination of the voluntariness or willfulness of the noncitizen's failure to depart the United States, as required by the plain terms of the statutes. Because the statutes authorize the imposition of civil penalties only as to willful or voluntary failures to depart, the policy of not conducting an individual assessment of the statutory factors is an agency action that is not "in accordance with law." 5 U.S.C. § 706(2)(A).

C.     **Count VII: Arbitrary and Capricious Agency Action (Violation of the Administrative Procedure Act).**

Both before and after the IFR, Defendants have issued notices and assessed civil penalties pursuant to the Blanket Fine Policy, without making individualized determinations of the statutory factors provided in Sections 1229c and 1324d. Because this policy or practice imposes fines without considering whether such fines can lawfully be imposed in an individual case, it is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

## II.     Subclass 1 ("1324d Subclass").

Individual Plaintiffs propose to represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Section 1324d on or after January 20, 2025 ("1324d Subclass"). Individual Plaintiffs bring Count I (for violation of the Eighth Amendment's prohibition on excessive fines) on behalf of the 1324d Subclass.

Both before and after the IFR, Defendants have imposed $998 per day in civil penalties under Section 1324d on all subclass members without conducting any individualized analysis of the subclass members' culpability or ability to pay. The Eighth Amendment's Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as

punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (internal quotation marks omitted). Ultimately, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Id.* at 334. Because Defendants assess civil penalties under Section 1324d without evidence of wrongdoing, without consideration of liability under Section 1324d, and without individualized assessments of proportionality, they are excessive. Moreover, Defendants' policy of assessing penalties under Section 1324d at a rate of $998 per day is always grossly disproportionate to the underlying offense of remaining in the country after an order of removal, regardless of the facts of any particular case. Therefore, Plaintiffs challenge Defendants' assessment of penalties of $998 per day as excessive under the Eighth Amendment.

III.    **Subclass 2 ("Post-IFR Subclass").**

Individual Plaintiffs also propose to represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after June 27, 2025 (the "Post-IFR Subclass"). Individual Plaintiffs bring the following claims on behalf of the Post-IFR Subclass:

A.    **Count III: Fifth Amendment Procedural Due Process Violation.**

The procedures established by the IFR violate the Fifth Amendment's Due Process Clause because they deprive individuals facing civil monetary penalties pursuant to Sections 1229c and 1324d of constitutionally sufficient notice and an opportunity to be heard. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Defendants do not provide either adequate notice or adequate opportunity to be heard because, among other things, the notice is issued as a final decision, the notice does not give the factual basis for Defendants' allegations, there is inadequate time to respond, and Defendants do not ensure an individual receives notice because they send such notices through regular mail. Moreover, there is a significant risk of erroneous deprivation, given Defendants' failure to define the statutory prerequisites for civil

penalties under Sections 1229c and 1324d; failure to consider those required statutory factors; failure to state the reasons for their determination affirming the civil penalties and to indicate the evidence they relied on; insufficient notice; the lack of meaningful appellate review; and Defendants' monetary incentive to affirm civil penalty determinations.

**B.    Count V: Arbitrary and Capricious Agency Action (Violation of the Administrative Procedure Act).**

In adopting the IFR, Defendants acted arbitrarily and capriciously because, among other reasons, they failed to adopt a reasoned explanation for their decision to depart from the prior, long-standing procedures for imposing civil monetary penalties and relied on conclusions and assumptions contrary to the record.

## ARGUMENT

Federal Rule of Civil Procedure 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23(a) "establish[es] four elements that must be present in order to obtain class certification": "numerosity of claims, commonality of legal or factual questions, typicality of representative claims or defenses, and adequacy of representation." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012). If a plaintiff satisfies these four elements along with at least one of Rule 23 (b)'s categories, they may maintain a class action. The proposed class and subclasses here satisfy Rule 23(a) and Rule 23(b)(2).

**I.    The Proposed Class Meets the Requirements of Rule 23(a).**

**A.    The Proposed Class Is So Numerous That Joinder Is Impracticable.**

The proposed class and subclasses satisfy the requirement that the class "be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) sets a low threshold, and a class size greater than forty generally satisfies its requirements. *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Moreover, a court "may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).

The proposed class includes at least 21,500 individuals who have received notices assessing civil monetary penalties pursuant to Sections 1229c and 1324d. *See* Jack Morphet, *ICE Has Fined Immigrants $6 Billion. Now It's Coming to Collect*, Wall St. J. (Aug. 26, 2025), https://tinyurl.com/mwc42kde (stating that DHS had sought to impose fines on 21,500 noncitizens as of August 26, 2025); 90 Fed. Reg. at 27442 (stating that ICE had issued nearly 10,000 notices of intention to fine as of June 13, 2025). As these sources demonstrate, each subclass also comprises thousands of individuals. Apart from the sheer size of the class, joinder is also impracticable because the vast majority of noncitizens who receive these notices are spread across the country (and, in some cases, the world), are unrepresented by counsel, and lack the knowledge and resources to challenge the IFR and Defendants' policies individually. Of the nearly 10,000 noncitizens who received intent notices as of June 13, 2025, only 100 responded to challenge the fine or request more time or information. *Id.* And the class will continue to grow as Defendants implement the IFR and the Blanket Fine Policy to assess more fines.

### B.     Common Questions of Law or Fact Apply to the Class and Subclasses.

The proposed class and subclasses meet the requirement that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is also a "low bar," and courts generally give it a "permissive application." *Brown v. Am. Honda* (*In re New Motor Vehs. Canadian Exp. Antitrust Litig.*), 522 F.3d 6, 19 (1st Cir. 2008). "A question is common if it is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). All questions of law and fact need not be common; only a single common question of law or fact is required. *Wal-Mart*, 564 U.S. at 359. The relevant inquiry is whether a class-wide proceeding can generate common answers that will drive the litigation's resolution. *Id.* at 350. The common answers typically take "the form of 'a particular and sufficiently well-defined set of allegedly illegal policies [or]

10

practices' that work similar harm on the class plaintiffs." *Parent/Professional Advocacy League*, 934 F.3d at 28 (quoting *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014)). The Individual Plaintiffs "are not required to share the same factual circumstances of other class members, particularly where 'questions of law'. . . are 'common to the class.'" *D.B.U. v. Trump*, 349 F.R.D. 228, 237 (D. Colo. 2025) (quoting Fed. R. Civ. P. 23(a)(2)).

The proposed class shares several common questions of law and fact, including whether (1) Defendants' practice of imposing civil monetary penalties for violations of the INA using an administrative process without a jury trial violates the Seventh Amendment; (2) Defendants have a policy or practice of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d; and (3) this policy and practice, the Blanket Fine Policy, violates the Administrative Procedures Act ("APA") as an action that is contrary to law and/or arbitrary and capricious. The proposed 1324d subclass also shares common questions of law and fact, including whether (1) civil penalties under the INA are fines under the Eighth Amendment and (2) fines imposed under Section 1324d without individualized assessments of willfulness or proportionality are excessive and/or whether a daily fine of $998 is grossly disproportionate to the offense of remaining in the United States after an order of removal. Finally, the post-IFR subclass shares the common questions of, among other things, whether (1) the procedures available under the IFR provide for constitutionally adequate notice and opportunity to be heard; and (2) the IFR is an arbitrary and capricious agency action. The Court's determination of any of these issues will necessarily "resolve an issue that is central to the validity" of each class member or subclass member's claim. *Wal-Mart*, 564 U.S. at 350.

Both before and after the IFR, Defendants have followed the same playbook to impose fines under both Section 1229c and Section 1324d: they issue cursory notices and decisions that provide no factual basis for their determination that a noncitizen has committed a voluntary or willful violation and include no individualized analysis of the noncitizen's circumstances. Decl. of Ian Head ¶¶ 17–18, Exs. C–D. They impose fines using an administrative process that gives noncitizens no opportunity to demand a jury. *Id.* ¶ 20. And for Section 1324d fines, they impose

them without evidence of wrongdoing, without consideration of liability under Section 1324d, without individualized assessments of proportionality, and in the grossly disproportionate amount of $998 per day. *See id.* ¶¶ 9, 18–19.

For the post-IFR class, the IFR itself supplies a well-defined set of policies or practices applicable to the entire subclass. On its face, it continues the same practices that Plaintiffs allege violate the Seventh and Eighth Amendments. Plaintiffs further allege that the procedures established by the IFR violate the subclass members' right to due process and that the IFR itself runs afoul of the Administrative Procedure Act as an agency action that is arbitrary and capricious.

These challenged policies and practices provide the basis for the injury to every member of the proposed class and the proposed Section 1324d and post-IFR subclasses. *See Savino v. Souza*, 453 F. Supp. 3d 441, 452–53 (D. Mass. 2020) (declaratory and injunctive relief can provide an "indivisible remedy"). Plaintiffs' class-wide allegations—that Defendants violate the Constitution and the Administrative Procedure Act—hinge on *how* Defendants impose fines and not, for example, on whether Defendants have proven that any particular class member has violated Section 1229c or 1324d. Therefore, they present pure questions of law, "resolvable irrespective of distinctions" among class members, *Reid v. Donelan*, 297 F.R.D. 185, 190 (D. Mass. 2014), and warrant class-wide relief.

### C.    Individual Plaintiffs' Claims Are Typical of the Proposed Class.

"'[P]laintiff[s] can meet [the typicality] requirement by showing that [their] injuries arise from the same events or course of conduct as do the injuries of the class, and that [their] claims are based on the same legal theory as those of the class.'" *Doe v. Noem*, 784 F. Supp. 3d 437, 469 (D. Mass. 2025) (quoting *In re Bos. Sci. Corp. Secs. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009); *see also D.V.D. v. DHS*, 778 F. Supp. 3d 355, 384 (D. Mass. 2025) (same) (quoting *Garcia-Rubiera*, 570 F.3d at 460). Courts construe the typicality requirement liberally. *In re Amitiza Antitrust Litig.*, 2025 WL 2690871, at *17 (D. Mass. Sept. 19, 2025). "'The typicality requirement is not highly demanding' because 'the claims only need to share the same essential characteristics,

12

and need not be identical.'" *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 24–25 (D. Mass. 2003) (quoting 5 *Moore's Federal Practice* § 23.24(4)). A named plaintiff has a typical claim if they and the putative class members have similar, not antagonistic interests. *In re Amitiza Antitrust Litig.*, 2025 WL 2690871, at *17. The commonality and typicality requirements "tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, the Individual Plaintiffs' claims are typical of, if not identical to, the claims of the class and subclass members they represent because they arise out of Defendants' uniform practices in imposing fines pursuant to Sections 1229c and 1324d in the same manner using the same form, Decl. of Ian Head ¶¶ 14–15, 17–20; Decl. of Maria L. Ex. A; Decl. of Nancy M. Ex. A, and are based on the same legal theories, *Doe*, 784 F. Supp. 3d at 469. All class members and subclass members have identical interests in asserting their rights under the Constitution and the APA. Their claims arise from the same course of conduct: for all class members, from the manner in which DHS imposes civil penalties pursuant to Sections 1229c and 1324d; for the post-IFR subclass, from the promulgation of the IFR; and for the 1324d subclass, from Defendants' assessment of civil penalties under that statute. Importantly, though class members have had fines imposed under two different statutes, both before and after the IFR, Defendants have applied identical procedures to issue fines under both statutes. Plaintiffs' challenges to those procedures do not depend on the statute under which the fine was imposed. This means that Individual Plaintiffs' claims are also typical of the claims of those class members who received fines under 1229c. For these reasons, Individual Plaintiffs can "fairly and adequately pursue the interests of the absent class members without being sidetracked by [their] own particular concerns." *Brito v. Barr*, 395 F. Supp. 3d 135, 147 (D. Mass. 2019) (citations and internal quotation marks omitted).

## D.    Individual Plaintiffs Will Adequately Protect Class Members' Interests.

Finally, Individual Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy is satisfied if (1) there is no conflict between the interest of the named Plaintiffs and the class members and (2) counsel chosen by the named Plaintiffs are

qualified and able to litigate the claims vigorously." *D.V.D.*, 778 F. Supp. 3d at 385 (citations omitted); *see also Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

"The class representatives must be part of the class, possess the same interest, and suffer the same injury as class members." *Savage v. City of Springfield*, 2022 WL 2758475, at *14 (D. Mass. July 14, 2022) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)); *see also Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345–36 (1st Cir. 2022) (stating that the standard is not "perfect symmetry of interest"). Because the Individual Plaintiffs allege the same injuries—arising from the same conduct by Defendants—and seek the same relief as the putative class and subclass members, they are adequate class and subclass representatives. Though Defendants assessed fines against both Individual Plaintiffs pursuant to Section 1324d and the post-IFR procedures, Individual Plaintiffs are also adequate representatives for class members who face Section 1229c and/or pre-IFR fines because, as explained above, any such differences between plaintiffs and class members "does not mean the representative is inadequate if the gestalt of the plaintiffs' claims is the same." *See Adkins v. Morgan Stanley*, 307 F.R.D. 119, 140 (S.D.N.Y. 2015). Individual Plaintiffs are committed to representing the class's interests. Decl. of Maria L. ¶¶ 27–29; Decl. of Nancy M. ¶¶ 37–39.

"Adequacy of counsel may be judged by counsel's work to identify and investigate claims, its experience in handling class actions, complex litigation, and similar claims, its knowledge of the relevant law, and the resources it has committed to the class." *Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 348 F.R.D. 268, 277 (D. Mass. 2025) (citations omitted). Individual Plaintiffs are represented by Public Justice, The Legal Aid Society, Refugee and Immigrant Center for Education and Legal Services (RAICES), Free Migration Project, the New York University Immigrant Rights Clinic, and Covington & Burling LLP. Collectively, counsel have substantial experience in immigration and constitutional law, civil fines litigation, APA litigation, and class actions. *See* Decl. of Charles Moore; Decl. of Hasan Shafiqullah; Decl. of Richard Caldarone; Decl. of David Bennion; Decl. of Alina Das; Decl. of Ranga Sudarshan. Counsel have also "devoted significant resources to this case" and are committed to adequately prosecute the class

action before this Court. *See Reid*, 297 F.R.D. at 194; *see also, e.g.*, Decl. of Charles Moore ¶ 13; Decl. of Hasan Shafiquallah ¶ 11; Decl. of Ranga Sudarshan ¶ 13–14. For the same reasons, counsel satisfy Rule 23(g)'s requirements, and the Court should appoint them as class counsel.

## II.    The Proposed Class Meets the Requirements of Rule 23(b)(2).

Rule 23(b)(2) requires that plaintiffs show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has explained that "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted). That is the case here.

*First*, on behalf of the post-IFR subclass, plaintiffs seek a declaration that the IFR is unlawful. That is sufficient under Rule 23(b)(2) because declaratory relief is possible only as to the subclass as a whole; the IFR is either unlawful or it is not. *See Guerrero Orellana v. Moniz*, __ F. Supp. 3d __, __, 2025 WL 3033769, at *13 (D. Mass. Oct. 30, 2025) (certifying a Rule 23(b)(2) class because a declaration that the government's policy was unlawful would provide relief to the entire class, even if court lacked jurisdiction to issue a class-wide injunction). Likewise, Plaintiffs seek to vacate and set aside the IFR and the notices issued pursuant to it under 5 U.S.C. § 706, which would provide relief to each member of the subclass because they would no longer be subject to the IFR or required to pay fines that were assessed in violation of their legal rights.[1]

*Second*, on behalf of the entire class, Plaintiffs seek a declaration that the imposition of civil penalties through an administrative process without a jury trial violates their Seventh Amendment rights. Because Defendants did not provide a jury trial to *any* member of the class, Decl. of Ian Head ¶ 20, that is conduct that applies generally to the entire class, and, as with the IFR, it can be declared unconstitutional as to the class as a whole. *See Guerrero Orellana*, 2025

---

[1] For this claim, Plaintiffs seek only declaratory relief and to vacate and set aside the IFR and related notices under 5 U.S.C. § 706. They do not seek a class-wide injunction against Defendants.

WL 3033769, at *13. Additionally, as to the Section 1324d subclass, Plaintiffs seek to enjoin Defendants from enforcing any fine notices issued without a jury trial or from imposing new fines without a jury trial, an injunction that applies to the entire subclass.

*Third*, as to the Section 1324d subclass, Plaintiffs seek a declaration that the $998 daily fines imposed under Section 1324d are excessive in violation of the Eighth Amendment, and they seek an order enjoining the enforcement of the fines. Plaintiffs' legal theory is that the civil penalties at issue are fines under the Eighth Amendment, and the imposition of *any* fine without a finding of culpability or an assessment of the proportionality of the fine to the offense violates the Excessive Fines Clause, regardless of the amount of the fine. *See Pimental v. City of Los Angeles*, 115 F.4th 1062, 1070–71 (9th Cir. 2024) (reversing grant of summary judgment on Eighth Amendment claim where city provided no rationale for a $63 late fee). And Defendants have a subclass-wide policy or practice of not making an individualized factual determination as to culpability under section 1324d before imposing in fines under that section, Decl. of Ian Head ¶¶ 17–19; Decl. of Maria L. Ex. B; Decl. of Nancy M. Ex. B, let alone conducting an individualized assessment of whether the fine is "proportionated to the wrong" in a particular case or whether the fine is "so large as to deprive [the fine recipient] of his livelihood," *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 271 (1989) (listing seven factors that can be considered in determining whether a fine is "grossly disproportionate" to the gravity of the offense, including case-specific factors like "the nature or essence of the underlying offense," "the relation of the offense to other illegal activities," and the "harm caused by the underlying conduct"). Additionally, Plaintiffs argue that charging the maximum fine of $998 per day to each subclass member is *always* "grossly disproportionate" to the underlying offense of remaining in the country after an order of removal, regardless of any individual facts about willfulness or ability to pay. If the Court agrees that fines imposed without consideration or explanation of culpability and proportionality are excessive under the Eighth Amendment, and/or that a daily fine of $998 is grossly disproportionate to the offense of remaining in the United States after an order of removal, it can provide complete

16

relief to the entire 1324d subclass by declaring unlawful and vacating Defendants' policy or practice and the excessive fines issued as a result.

*Fourth*, as to the entire class, Plaintiffs seek a declaration that Defendants' policy of imposing fines without an individualized determination of the statutory factors provided under Sections 1229c and 1324d is arbitrary and capricious and contrary to law, and they seek to vacate and set aside that policy and the fines issued pursuant to it under 5 U.S.C. § 706. As with the Eighth Amendment claim, Plaintiffs are not challenging the imposition of individual fines but are instead challenging Defendants' class-wide policy of imposing fines without individual determinations that the statutory factors were violated. Head Decl. ¶¶ 17–19; Decl. of Maria L., Exs. A & B; Decl. of Nancy M., Exs. A & B. Thus, if the Court finds that Defendants' policy is arbitrary and capricious and/or contrary to law, declaring the policy unlawful and vacating it would provide relief to the entire class. Additionally, as to the Section 1324d subclass, Plaintiffs seek to enjoin Defendants from enforcing fines or imposing new fines pursuant to the policy of not making individualized determinations. Like the declaratory and APA relief, that injunction would apply to the entire Section 1324d subclass by relieving them from fines issued without an individualized determination.

It is true that the relief sought by Plaintiffs will not necessarily prevent Defendants from ultimately imposing fines on some members of the class. But it will still provide class members the relief they seek because Defendants would be permitted to impose fines only if they follow the constitutionally and statutorily mandated procedures, including an individualized finding of culpability after a jury trial and an explanation of why fines imposed under Section 1324d are not excessive. Thus, if Plaintiffs obtain the relief they seek, all class members will have a new opportunity to individually oppose any fines based on the individual facts of their case, and that relief is sufficient to provide a basis for certifying the class under Rule 23(b)(2). *See Guerrero Orellana*, 2025 WL 3033769, at *13 (rejecting argument that class could not be certified because, after receiving a declaratory judgment, each class member would have to seek individual habeas relief).

In short, Plaintiffs challenge the IFR and other policies of Defendants that apply equally across the class and subclasses and that can be remedied for the entire class with the relief Plaintiffs seek. For that reason, the requirements of Rule 23(b)(2) are met.

## CONCLUSION

Plaintiffs and the proposed class and subclasses satisfy the four elements of Rule 23(a) and the requirements of Rule 23(b)(2). Plaintiffs' motion for class certification should be granted.

Dated: December 9, 2025

Hasan Shafiqullah[*]
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

Richard Caldarone[*]
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
P.O. Box 786100
San Antonio, TX 78278
(210) 960-3206
richard.caldarone@raicestexas.org

David Bennion[*]
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan[*]
Stephen Rees[*]
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson[*]
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Respectfully submitted,

/s Charles Moore
Charles Moore (BBO No. 708061)
Mariam Elbakr[*]
Shelby Leighton[*]
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
melbakr@publicjustice.net
sleighton@publicjustice.net

Alina Das[*]
Ajay Singh[†]
Ximena Valdarrago[†]
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu
as11021@nyu.edu
xfv201@nyu.edu

Leila Nasrolahi[*]
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

[*] admitted pro hac vice
[†] law student rendering assistance pursuant to Local Rule 83.5.4(k)

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on December 9, 2025, I caused the aforementioned document to be served via email on counsel for Defendants, who has consented to e-service of these filings, at the following email address: Alexander.J.Severance@usdoj.gov.

<u>*/s Charles Moore*</u>
Charles Moore
