# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETS

MARIA L., *et al.*,

*Plaintiffs*,

v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security, *et al.*,

*Defendants.*

No. 1:25-cv-13471-GAO

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STAY AGENCY ACTION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 1

I.    The Immigration and Nationality Act ................................................................. 1

II.   Enforcement Procedures ..................................................................................... 3

III.  History of Enforcement of Sections 1229c and 1324d ...................................... 4

IV.   Procedural Posture .............................................................................................. 6

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT ..................................................................................................................... 8

I.    Plaintiffs Lack Standing to Challenge Penalties Assessed under Section 1229c ............... 8

II.   Plaintiffs Are Unlikely to Succeed on the Merits. ............................................. 9

III.  Plaintiffs Have Failed to Establish Irreparable Harm ...................................... 17

IV.   The Balance of the Equities and the Public Interest Tip in Defendants' Favor ................ 18

V.    Any Relief Must be Limited to the Named Plaintiffs. ...................................... 19

CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AFL-CIO v. NLRB,*
    57 F.4th 1023 (D.C. Cir. 2023) ........................................................................ 9, 10

*California v. Kennedy,*
    No. CV 25-12019-NMG, 2025 WL 2807729 (D. Mass. Oct. 1, 2025) ................................. 8

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ........................................................................... 19, 20

*California v. Texas*,
    593 U.S. 659 (2021) ................................................................................ 20

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
    370 F.3d 151 (1st Cir. 2004) ........................................................................ 17

*Dist. 4 Lodge of Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*,
    18 F.4th 38 (1st Cir. 2021) ......................................................................... 19

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016) ............................................................................... 12

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...................................................................... 11, 12, 13

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ............................................................................... 11

*Foxboro Co. v. Arabian American Oil Co.*,
    805 F.2d 34 (1st Cir. 1986) ......................................................................... 18

*Immigrant Defenders Law Center v. Noem*,
    2025 WL 2017247 (9th Cir. Jul. 18, 2025) ........................................................... 20

*Itek Corp. v. First Nat'l Bank*,
    730 F.2d 19 (1st Cir. 1984) ......................................................................... 18

*JEM Broad. Co., Inc. v. FCC*,
    22 F.3d 320 (D.C. Cir. 1994) ..................................................................... 9, 10

*Lance v. Coffman*,
    549 U.S. 437 (2007) ................................................................................. 8

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 8

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ................................................................................ 20

*Maryland v. King*,
  567 U.S. 1301 (2012) ........................................................................... 19

*Matos ex rel. Matos v. Clinton School Dist.*,
  367 F.3d 68 (1st Cir. 2005) ................................................................ 18

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) .......................................................... 9

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Auto. Insurance Co., et al.*,
  463 U.S. 29 (1983) ............................................................................. 12

*Nat'l Mining Ass'n v. Babbitt*,
  172 F.3d 906 (D.C. Cir. 1999) ............................................................ 13

*New Jersey v. Trump*,
  131 F.4th 27 (1st Cir. 2025) ................................................................. 8

*Nken v. Holder*,
  556 U.S.418 (2009) ...................................................................... 18, 19

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ........................................................................... 11

*Roe v. Mayorkas*,
  2023 WL 3466327 (May 12, 2023) ..................................................... 11

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ........................................................................... 20

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ........................................................................... 20

*Tough Traveler, Ltd. v. Outbound Prods.*
  60 F.3d 964 (2d Cir. 1995) ................................................................. 18

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ........................................................................... 19

*U.S. Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*,
  121 F.4th 339 (1st Cir. 2024) ............................................................... 8

*U.S. v. Texas*,
  599 U.S. 670 (2023) ........................................................................... 11

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
  645 F.3d 26 (1st Cir. 2011) ................................................................ 18

**Statutes**

5 U.S.C. § 553 .................................................................................................... 9, 10

5 U.S.C. § 705 ........................................................................................................ 7

8 U.S.C. § 1225 ...................................................................................................... 3

8 U.S.C. § 1229a .................................................................................................... 3

8 U.S.C. § 1229c .............................................................................................. *passim*

8 U.S.C. § 1323 ...................................................................................................... 2

8 U.S.C. § 1324A .................................................................................................... 2

8 U.S.C. § 1324d .............................................................................................. *passim*

8 U.S.C. § 1325 ................................................................................................... 2, 6

**Rules**

Federal Rule of Civil Procedure 65 ....................................................................... 7

**Regulations**

8 C.F.R. § 241.4 ..................................................................................................... 3

8 C.F.R. § 241.5 ..................................................................................................... 4

8 C.F.R. § 265.1 ..................................................................................................... 4

8 C.F.R. § 280 ................................................................................................. *passim*

8 C.F.R. § 280.11 ................................................................................................... 5

8 C.F.R. § 280.12 ................................................................................................... 5

8 C.F.R. § 280.13 ................................................................................................... 5

8 C.F.R. § 280.53 ................................................................................................... 2

8 C.F.R. § 281 ............................................................................................... 6, 10, 12

8 C.F.R. § 281.3-281.7 ........................................................................................... 6

8 C.F.R. § 1003.1 ................................................................................................... 3

8 C.F.R. § 1240.26 ................................................................................................. 4

8 C.F.R. § 1305 ...................................................................................................... 4

82 Fed. Reg. 8799 (Jan. 30, 2017) ........................................................................ 4

86 Fed. Reg. 7051 (Jan. 20, 2021) ........................................................................ 5

90 Fed. Reg. 8443 (Jan. 20, 2025) ........................................................................ 5

90 Fed. Reg. 27,439 (June 27, 2025) .............................................................. *passim*

## <u>INTRODUCTION</u>

Plaintiffs seek, through preliminary relief in the form of a Section 705 stay under the Administrative Procedure Act ("APA"), to halt the Federal Government's use of two congressionally authorized civil-penalty provisions of the Immigration and Nationality Act ("INA"). The two statutory provisions at issue—passed by Congress nearly thirty years ago—provide for the assessment of civil penalties when an alien willfully fails or refuses to depart the country after receiving a final order of removal, 8 U.S.C. § 1324d(a)(1) (INA § 274D(a)(1)) (hereinafter, "Section 1324d"), or voluntarily fails to depart following a voluntary departure order, 8 U.S.C. § 1229c(d)(1) (INA § 240B(d)(1)) (hereinafter, "Section 1229c"). Plaintiffs ask this Court to suspend both the government's enforcement of these civil penalty statutes and an interim final rule ("IFR") that adjusts internal agency procedures for assessing and collecting these penalties.

This Court should deny Plaintiffs' motion. Plaintiffs cannot succeed on the merits of their claims. The IFR was implemented in a manner consistent with the APA's procedural requirements, is well-reasoned, and provides an adequate rationale for the changes it contains. Plaintiffs' challenge to the civil penalty policy similarly fails, as that policy is consistent with statutes that have been on the books for decades and is likewise well-reasoned.

Nor can Plaintiffs—who waited months after the promulgation of the IFR before filing their motion—establish irreparable harm. Plaintiffs' delay in seeking relief, by itself, casts grave doubt on their assertion of irreparable harm. Additionally, the monetary penalties Plaintiffs complain about cannot establish irreparable harm. Finally, the balance of the equities and public interest tip decisively in Defendants' favor. For these reasons, and the additional reasons explained herein, this Court should deny Plaintiffs' motion for a stay.

## <u>BACKGROUND</u>

## I.    The Immigration and Nationality Act

Since its enactment in 1952, the INA has authorized civil penalties for a range of immigration-related violations. *See, e.g.,* 8 U.S.C. § 1323 (assessing fines if vessels and airlines fail to ensure that aliens have valid documents); 8 U.S.C. § 1324A (assessing penalties against employers for hiring unauthorized workers); 8 U.S.C. § 1325(b) (establishing civil penalties for aliens apprehended while entering the United States at improper time or place). A core purpose for these civil monetary penalties is to serve as a deterrent for future violations of the INA. 90 Fed. Reg. 27,439, 27,446 (June 27, 2025).

In 1996, the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") introduced additional immigration enforcement mechanisms into the INA. Relevant here is the addition of Section 1229c, which introduced civil penalties for any alien who fails to voluntarily depart the United States following the issuance of a voluntary departure order. *See generally,* 8 U.S.C. § 1229c. Specifically, that section provides that, if "an alien is permitted to depart voluntarily under this section and *voluntarily* fails to depart the United States within the time period specified, the alien… shall be subject to a civil penalty of not less than $1,000 and not more than $5,000" (emphasis added). [1]  Similarly, Section 1324d was added in 1996 under IIRIRA and provides for the assessment of a fine of "not more than $500 . . . *for each day*" an alien subject to a final order of removal "*willfully* fails or refuses to": (1) "depart from the United States pursuant to the order," (2) "make timely application in good faith for travel or other documents necessary for departure," or (3) "present for removal" or when an alien subject to a final order of removal "conspires to or takes any action designed to prevent or hamper the alien's departure" under such an order (emphasis added).[2] 8 U.S.C. § 1324d(a). In sum, Sections 1229c and 1324d authorize the government to assess civil

---

[1] Adjusted for inflation, the current penalty under Section 1229c is between $1,992 and $9,970. 8 C.F.R. § 280.53(b)(3).

[2] Inflation adjusted, the penalty for violations of Section 1324d is not more than $998 per day of violation of the statute. 8 C.F.R. § 280.53(b)(3).

monetary penalties when an alien voluntarily fails to depart the country in accordance with a voluntary departure order, or willfully fails to depart the country following a final order of removal.

## II.     Enforcement Procedures

Aliens subject to civil penalties under Sections 1229c and 1324d receive notice of their legal status and departure obligations as part of the proceedings that result in their removal order or voluntary departure order. 8 U.S.C. § 1229a. In the case of removal orders, aliens are adjudicated removable either through formal proceedings conducted pursuant to INA § 240 ("Section 240 proceedings"), or – where Congress has authorized – through expedited removal under INA § 235(b)(1) (8 U.S.C. § 1225). In Section 240 proceedings are adversarial hearings before an immigration judge. 8 U.S.C. § 1229a. During Section 240 proceedings, aliens are afforded the right to counsel at no expense to the government, the opportunity to present evidence, and the ability to seek all available statutory relief, including asylum, adjustment of status, and cancellation of removal. *Id.* at § 1229a(b)(4), (c)(4). A removal order may issue only after DHS has satisfied its evidentiary burden and the Immigration Judge considers and rejects any claim for relief. Aliens who are ordered removed may appeal the order to the Board of Immigration Appeals (BIA) for review. 8 C.F.R. § 1003.1(b). A removal order becomes administratively final either when the BIA dismisses an appeal, or the time period for appeal expires. *Id.* at § 1003.1(d)(7). Additionally, immigration judges are statutorily required to warn aliens of the consequences of failing to comply with removal orders, including potential civil penalties. 8 U.S.C. § 1229a(c)(5). The resulting order therefore reflects a final, adjudicated determination of removability, entered after a formal process prescribed by statute.

Following the entry of a final order of removal, ICE may release certain detained aliens from physical custody, but this release is conditioned.  8 C.F.R. § 241.4. Release occurs pursuant to an Order of Supervision ("OSUP"), which subjects the alien to continuous and individualized federal oversight while ICE secures travel documents, coordinates transportation, and arranges removal. *See*

8 C.F.R. § 241.5. All aliens, including aliens released under an OSUP are required to keep ICE informed of their residence and report changes in address. *Id. see also* 8 C.F.R. §§ 1305, 265.1.

Voluntary departure operates as a limited, government-authorized alternative to a removal order within the framework of a final immigration determination. It may be granted by an immigration judge following a formal finding of removability in a Section 240 proceeding. *See* 8 C.F.R. § 1240.26. Under this mechanism, the alien is permitted to depart the United States at personal expense within a strictly defined time period in lieu of execution of a removal order. *See id.* The alien is also warned of the consequences of failing to comply with the voluntary departure order, including that the alien may be liable for a civil penalty. 8 U.S.C. § 1229c(d)(3). Although voluntary departure allows an individual to avoid certain consequences associated with a removal order, including an OSUP and certain reentry bars, the process remains subject to government oversight and rigid deadlines 8 C.F.R. § 1240.26.

## III.    History of Enforcement of Sections 1229c and 1324d

Although Congress authorized the assessment of civil penalties under Sections 1229c and 1324d nearly three decades ago, their enforcement has varied across presidential administrations. Penalties under Sections 1229c and 1324d were not pursued until 2018 when Executive Order 13768, Enhancing Public Safety in the Interior of the United States, 82 Fed. Reg. 8799 (Jan. 30, 2017), directed the Secretary of Homeland Security to "ensure the assessment and collection of all fines and penalties… from aliens unlawfully present in the United States." *Id.* at 8800.  Consistent with that Executive Order, ICE Acting Director Thomas Homan issued ICE Directive 1088.1, which provided ICE's official "policy regarding assessment and collection of fines and penalties for civil violations of immigration law." U.S. Immigration & Customs Enforcement, Directive No. 10088.1, Fines and Penalties for Civil Violations of Immigration Law (June 18, 2018).  In response,

ICE began assessing penalties under the procedures then codified at 8 C.F.R. § 280.[3] At the end of the first Trump administration in 2021, ICE had only 26 active fines under the two authorities. 90 Fed. Reg. at 27,447. On the first day of his term, former President Biden rescinded EO 13768 through Executive Order 13993, Revision of Civil Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 20, 2021). Subsequently, DHS rescinded the active decisions to fine and withdrew all active Fine Notices.

On January 20, 2025, President Trump issued Executive Order 14159, directing the Secretary of Homeland Security to take "all appropriate action to ensure the assessment and collection of all fines and penalties. . . .authorized by law" against aliens unlawfully present in the United States. 90 Fed. Reg. 8443, 8444-45 (Jan. 20, 2025). In response, on January 21, 2025, Acting ICE Director Caleb Vitello signed two internal ICE delegation memos authorizing the enforcement of civil penalties under Sections 1229c and 1324d. Pursuant to these directives, ICE resumed assessing civil penalties for violations of 8 U.S.C. §§ 1229c and 1324d, again, under the procedures codified at 8 C.F.R. § 280. By June 2025, ICE had initiated nearly 10,000 Notices of Intent to Fine ("NIF") using Form I-79.[4]

---

[3] Under the process provided under 8 CFR part 280, individuals subject to civil penalties receive a Notice of Intent to Fine ("NIF") via in-person service or certified mail, 8 C.F.R. § 280.11 (2011); have thirty days to challenge a decision, *id.* § 280.12; can request an in-person interview, *id.*; are entitled to review by "the district director or the Associate Commissioner for Examinations, or the Director for the National Fines Office," *id.* § 280.13(b); can appeal a decision to the Board of Immigration Appeals ("BIA"), *id.*.

[4] The Form I-79 was – until August 2025 - ICE's Notice of Intent to Fine, issued at the outset of the civil-penalty process to set forth the alleged violations and proposed penalty and to provide the recipient an opportunity to contest liability or amount before any final assessment. *See* 8 C.F.R. § 280.12. In August 2025, notice of penalties was changed again to DHS Form 281, Notice of Violation and Order Under the Immigration and Nationality Act. As in the I-79 Form, DHS 281 outlines the rights of respondents to contest the penalty under the provisions listed in 8 C.F.R. § 281.

On June 27, 2025, the Agencies promulgated an Interim Final Rule ("IFR") titled "Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations." 90 Fed. Reg. 27,439-01 (June 27, 2025). In the IFR, the Agencies explained that the procedures within 8 C.F.R. § 280 (2025) were not designed to accommodate the volume of penalties needed to address the number of extant violations. *Id.* at 27,442. Accordingly, the IFR adopted revised procedures, codified at 8 C.F.R. § 281 (2025),[5] governing the assessment of civil penalties under three specific provisions: 8 U.S.C. §§ 1229c, 1324d, and 1325(b).[6] The Agencies further explained that the revised procedures were intended to "help deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders consistent with this Administration's focus on securing the border and restoring integrity to our nation's immigration system." *Id.* The IFR set forth the Agencies' rationale for modifying internal penalty-assessment procedures by detailing the underlying procedures that would lead to removal orders and voluntary departure orders, anticipating the defenses one might have to challenge a determination of willful or voluntary violations of those orders, and reasoning through the application of certain presumptions when making an assessment that an individual is subject to a penalty under one of these provisions. *See id.* at 27,441-44.

## IV. Procedural Posture

Plaintiffs filed a complaint on November 20, 2025, ECF No. 1, challenging the IFR and all penalties issued pursuant to it, as well as the Agencies' assessment of penalties under Sections 1229c and 1324d allegedly without an individualized assessment as to whether the statutory predicates of

---

[5] Major changes under 8 C.F.R. § 281 include permitting service of the penalty decision and order by regular mail rather than in person or certified mail; shortening the response period from 30 days to 15 business days; eliminating the option to request an in-person interview; creating a streamlined appeals process for aliens to contest penalties; and authorizing DHS to reopen, reconsider, reduce or rescind penalties in its discretion. *See* 8 C.F.R. § 281.3-281.7 (2025); 90 Fed. Reg. at 27,443-46.
[6] Section 1325(b) provides for the assessment of civil penalties on aliens apprehended while entering or attempting to enter the United States at an improper time and place.

willfulness or voluntariness are met. ECF No.1 at 36-38.  The individual Plaintiffs are two aliens

with final orders of removal with civil fines assessed by DHS under Section 1324d.  They seek

certification of one class and two subclasses.  The organizational Plaintiff is the Immigration Legal

Resource Center ("ILRC"), an immigration legal advocacy non-profit. The Defendants in this case

are several agencies that hold enforcement and administrative responsibility under the INA: the U.S.

Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S.

Immigration and Customs Enforcement ("ICE"), the U.S. Department of Justice ("DOJ"), and the

Executive Office of Immigration Review ("EOIR") (collectively, "the Agencies"), and their

corresponding agency heads.

Plaintiffs assert the promulgation of the IFR violated the APA as action without observance

of procedure required by law because it took effect without notice and comment (Count IV); the

IFR constitutes arbitrary and capricious agency action (Count V); and Defendants' "policy and

practice" of "imposing civil penalties without making individualized determinations of the statutory

factors provided under Sections 1229c and 1324d" is agency action not in accordance with law

(Count VI) and is arbitrary and capricious (Count VII).[7] ECF No. 1 at 33-38.

On December 9, 2025, nearly a year after President Trump issued Executive Order 14159

and more than five months after the Agencies promulgated the IFR, Plaintiffs moved to stay "the

Blanket Fine Policy, the IFR, and the fines imposed pursuant to those rules and policies" pursuant

to 5 U.S.C. § 705, and in the alternative for a preliminary injunction pursuant to Federal Rule of

Civil Procedure 65. ECF Nos. 19 at 2 & 20 at 26.  Due to Plaintiffs' delay, the Court must now

---

[7] In their Complaint, ECF No. 1, Plaintiffs challenge the constitutionality of agency action, arguing that the Agencies' civil penalties regime violates the Fifth, Seventh, and Eight Amendments (Counts I, II, and III). However, in the motion for a stay presently before the court, Plaintiffs limit their arguments to their challenges brought under the APA. Accordingly, Defendants do not address Plaintiffs' constitutional challenges here.

consider fact-dependent, merits-based arguments on an emergency basis at the very beginning of the case, before the pleadings have closed, before any discovery has occurred, and without the availability of an administrative record.

## LEGAL STANDARD

A stay under Section 705 of the APA is governed by the same standard applicable to the issuance of a preliminary injunction. *California v. Kennedy*, No. CV 25-12019-NMG, 2025 WL 2807729, at *3 (D. Mass. Oct. 1, 2025). Both are "extraordinary and drastic remed[ies] that [are] never awarded as of right." *U.S. Ghost Adventures, LLC* v. *Miss Lizzie's Coffee LLC,* 121 F.4th 339, 347 (1st Cir. 2024). A stay under Section 705 is warranted only when the moving party demonstrates that 1) it is likely to succeed on the merits of his case, 2) it is likely to suffer irreparable harm in the absence of injunctive relief, 3) the "balance of equities" favor it and 4) an injunction is in the public interest. *New Jersey* v. *Trump,* 131 F.4th 27, 33 (1st Cir. 2025).

## ARGUMENT

**I.    Plaintiffs Lack Standing to Challenge Penalties Assessed under Section 1229c**

Article III's "case or controversy" requirement obligates federal courts to determine, as a preliminary matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman,* 549 U.S. 437, 439 (2007). A plaintiff establishes standing by showing: (1) that it suffered an injury in fact, meaning and concrete and particularized harm that is actual or imminent, rather than hypothetical; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) a non-speculative likelihood that the injury will be redressed by a decision in the plaintiffs' favor. *Lujan* v. *Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992). Here the individual Plaintiffs have not shown an injury incurred under section 1229c because neither of the named Plaintiffs were assessed penalties under this statute and Plaintiffs have been unable to identify an individual who has. The Plaintiffs have suffered no actual harm and their alleged harms are merely hypothetical

harms of unknown individuals. Therefore, the individual Plaintiffs lack standing to challenge section 1229c. The organizational Plaintiff asserts only a procedural injury – the alleged deprivation of notice and comment – which is insufficient to establish Article III standing. Absent a particularized harm to the organization itself that is caused by the challenged action and redressable by the relief sought, a bare procedural violation does not confer standing.

## II.     Plaintiffs Are Unlikely to Succeed on the Merits.

Plaintiffs first argue that the IFR is unlawful because the Agencies did not engage in notice and comment rulemaking before it took effect. ECF No. 1 at 35-36 (Count IV). That argument fails because the IFR falls within two well-established exceptions to the APA's notice and comment requirement: (1) the procedural rule exception, 5 U.S.C. § 553(b)(A), and (2) the foreign affairs exception, 5 U.S.C. § 553(a)(1). *See* 90 Fed. Reg. at 27,454-45.

Under the APA, agencies are not required to provide notice and comment for "rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). The procedural rule exception "covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *JEM Broad. Co., Inc.* v. *FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (citation omitted).  A rule is procedural if it is "primarily directed toward improving the efficient and effective operations of an agency." *Mendoza* v. *Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (citation omitted).

The IFR fits squarely within this exception. It does not create new penalties, expand the scope of liability under either Section 1229c or Section 1324d, or alter the underlying elements required to impose civil penalties under either statutory provision. The required statutory predicates were set by Congress nearly thirty years ago and the willful and voluntary determination requirements remain unchanged. Instead, the IFR modified *internal* agency procedures for assessing and processing penalties in an effort "primarily directed toward improving the efficient and effective

operations of [the Agencies]." *AFL-CIO* v. *NLRB,* 57 F.4th 1023, 1034 (D.C. Cir. 2023) (citation omitted).

All major changes in the civil fine assessment process reflected in this transition from the procedures set forth in 8 C.F.R. § 280 to those in 8 C.F.R. § 281 are procedural in nature. They adjust only the internal agency mechanisms by which the Agencies administer the civil penalties or represent modifications to the manner in which individuals will "present themselves… to the agency." *JEM Broad. Co,* 22 F.3d at 326.  For example, permitting service of process by regular mail rather than personal service does not impact the substantive rights of the respondents, especially considering that aliens, including removable aliens, are generally required to keep ICE apprised of their residential address. Similarly, removing the ability of an alien to request an in-person interview or to appeal a civil penalty decision to the BIA does not eliminate a Constitutionally required protection as the process still allows for the submission of documentary evidence to contest the penalty. The IFR merely simplifies and streamlines the process that applies when an alien contests a penalty decision while continuing to afford the alien with a meaningful opportunity to do so. In sum, each change reflects merely an effort to streamline agency procedure in order to meet Congress' statutory intent.

The IFR also falls within the APA's foreign affairs exception. The APA permits agencies to forgo the notice and comment period for agency rules involving a "foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). The civil penalty provisions addressed by the IFR operate in direct connection with the enforcement of removal and voluntary departure orders. Execution of these orders requires close coordination with foreign governments, including confirming nationality, obtaining travel documents, and arranging travel. 90 Fed. Reg. at 27,455-56. The Agencies' ability to carry out those functions relies on the enforcement of mechanisms tied to compliance with our immigration laws. The IFR facilitates this process by improving the Agencies' ability to enforce

penalties, directly supporting the Government's coordination with foreign countries in effectuating removals and departures. *See U.S.* v. *Texas,* 599 U.S. 670, 679 (2023) (holding immigration enforcement "implicates not only 'normal domestic law enforcement priorities'; but also 'foreign-policy objectives.'" *(quoting, Reno* v. *American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 490–491 (1999)))*; see also, Roe* v. *Mayorkas,* 2023 WL 3466327 (May 12, 2023) (finding that rulemaking surrounding immigration enforcement fell within the foreign affairs exception.) (D. Mass.) (Burroughs, J.).

Plaintiffs challenge the IFR as arbitrary and capricious because (1) "the IFR fails to explain a departure from longstanding regulations," (2) the IFR includes an irrational "evidentiary presumption," and "disregard[s] the statutory requirements that any alleged violation be willful or voluntary; and (3) the IFR failed to take into account reliance interests. ECF No. 20 at 15-17. None of these arguments have merit.

The APA "requires that agency action be reasonable and reasonably explained." *FCC* v. *Prometheus Radio Project,* 592 U.S. 414, 423 (2021). Agency action representing a change in policy is upheld under the deferential "arbitrary or capricious" standard of review when the new policy is permissible under relevant statute, there are good reasons for the new policy, and the agency believes the new policy to be better. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But an agency need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one. *Id.* at 515.

Here, the IFR reflects careful reasoning and a considered account of the history of the relevant civil penalties. Through the IFR, the Agencies acknowledge that civil penalties under 8 U.S.C. sections 1229c and 1324d were not assessed prior to 2018 and that enforcement was discontinued between 2021 and 2025, and then explain why renewed enforcement—using revised procedures—is warranted.

A change in administration "is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations." *Motor Vehicle Manufacturers Association of the United States, Inc.* v. *State Farm Mutual Automobile Insurance Company, et al.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring). When an agency changes course, it need only "provide a reasoned explanation for the change." *Encino Motorcars, LLC* v. *Navarro,* 579 U.S. 211, 221 (2016). That explanation must reflect awareness of the change, but it does not trigger any heightened standard of review. *Fox Television Stations,* 556 U.S. at 514-15.

The IFR meets those requirements because that reasoned explanation is fully laid out in the text of the IFR. It explains that the prior procedures codified at 8 C.F.R. § 280 were not designed for the enforcement of INA violations at the scale the Agencies are trying to address today, and why, history showed, those procedures proved unworkable. 90 Fed. Reg. 27,439 at 27442. The IFR then reasons through how for the three civil penalties at issue the new procedures under 8 C.F.R. § 281 better align with the objectives of the civil penalty statutes and facilitate enforcement. For example, the Agencies explained the streamlined process for determining violations of §§ 1229c and 1324d permits efficient administration of civil penalties at scale, while preserving due process through a built-in notice, review, and appeal mechanism embedded in the assessment procedure. The IFR outlines "the sound and rational connection between the proved and inferred facts," *Nat'l Mining Ass'n* v. *Babbitt,* 172 F.3d 906, 911–12 (D.C. Cir. 1999), through its explanation of the reporting requirements of individuals under removal orders and voluntary departure orders. 90 Fed. Reg. at 27,443. This explanation reflects the Agencies' awareness of prior practice, consideration of previous experience in enforcing these provisions, and reasonable judgment as to how the civil penalty enforcement program can best be implemented. *Fox Television Stations*, 556 U.S. at 515.

The APA does not require agencies to retain inadequate or unnecessary procedures, and Plaintiffs' disagreement with the Agencies' reasoned judgment does not render the IFR arbitrary and

capricious. Because the IFR acknowledges the change in approach and explains why the revised procedures are reasonable and lawful, Plaintiffs are unlikely to succeed on their arbitrary and capricious claim.

Plaintiffs' claim that the IFR eliminates individualized consideration of an alien's willful or voluntary continued presence in the U.S. is incorrect. ECF No. 22 at 15-16. The procedures outlined in the IFR adheres to the statutory requirement that civil penalties be imposed only where an alien's continued presence in the United States is willful or voluntary, and structures how that determination is made and reviewed within an administrative process.

Next, Plaintiffs note that "noncitizens may remain present for these circumstances following a final order of removal for reasons that would not constitute willful or voluntary failure to depart" and claim that the IFR does not account for these circumstances. *Id.* at 16. That is incorrect. Civil penalties are assessed against an alien only after the conclusion of formal immigration proceedings where the individual is present and the issuance of a final order of removal, or after a voluntary departure order has been issued pursuant to an immigration judge's discretion. 90 Fed. Reg. at 27,440. These proceedings typically conclude with the immigration judge outlining the alien's departure obligations and providing notice of the consequences of noncompliance. *Id.* Importantly, however, the IFR expressly considers that a failure to depart may not be willful or voluntary in every case. In other words, the Agencies do not consider an alien's mere presence in the country after a departure order as definitive proof of willful or voluntary defiance of the order. The IFR expressly recognizes that a failure to depart may not be willful or voluntary where circumstances beyond an individual's control prevent compliance, and it preserves mechanisms for such circumstances to be raised and considered in the administrative process. *See* 90 Fed. Reg. at 27,443. The IFR specifies that an alien may challenge assessed fines when, for instance, "(1) the alien did not receive notice of the removal order because it was sent to the wrong address… (2) the alien was not advised of his

obligation to depart or of the consequences of failing to depart; or (3) the alien was prevented from

departing because of circumstances such as hospitalization, incarceration, or because an embassy

declined to issue a passport or travel documents." *Id.* In these circumstances, the alien respondents

may demonstrate, through evidence, that their failure to depart was not voluntary or willful. *Id.* This

extinguishes Plaintiffs' contentions that the enforcement procedures outlined in the IFR fail to

account for the situations in which a violation of an order of removal or voluntary departure order

does not amount to violations of Sections 1229c and 1324d.

Plaintiffs' claim that "even after a removal order or voluntary departure order, individuals

may still pursue immigration relief that will allow them to obtain lawful status," ECF No. 20 at 14, is

similarly unavailing. Whether an alien remains in country to pursue other forms of immigration relief

is not a defense under the statutes and does not change the underlying determination that one

willfully or voluntarily violated §§ 1229c or 1324d. The civil penalty policy Plaintiffs challenge

applies the statutory standards set by Congress and provides a reasonable mechanism to determine

whether a violation was voluntary or willful.

Plaintiffs cannot establish cognizable reliance interests that would constrain the Agencies'

policy choice.  Plaintiffs' chief complaint is "the IFR fundamentally shifts the nature of the penalties

at issue" by modifying the notice procedure in assessing the fines. ECF No. 22 at 17. The changes in

notice procedure amount to a modification to allow service through regular mail, a fewer number of

days for individuals to contest penalty decisions, and an elimination of the in-person interview

option when contesting the fine. 90 Fed. Reg. at 27,446. However, the Agencies explicitly

considered these changes to procedure and explained that "[the Agencies] believe[] that these

changes are consistent with due process" because "[t]he revised process protects an alien's ability to

contest the fine and better ensures that DHS can efficiently reach a final decision." *Id.* Accordingly,

any reliance interests individuals may have had in the previous framework under 8 C.F.R. § 280 were

expressly considered by the Agencies and found to be outweighed by the efficient and consistent administration of these statutorily authorized penalties.

Next, Plaintiffs challenge Defendants' "Blanket Fine Policy," which Plaintiffs define as the government's "policy or practice of imposing [civil fines pursuant to Sections 1229c and 1324d] without individualized consideration of the willfulness or voluntariness of a fine recipient's conduct," ECF No. 1 at 7. They assert this "policy" is not in accordance with applicable law (Count VI), but this assertion rests on a mischaracterization of procedures applied in enforcing Sections 1229c and 1324d.

Plaintiffs argue that the Agencies' policy of imposing penalties under Sections 1229c and 1324d is not in accordance with the law because it does not provide for an "individualized assessment" of voluntariness or willfulness before the assessment of fines, as is required by statute. ECF No. 20 at 12. This argument fails. As an initial matter, the Agencies do make an individualized assessment in each case. Sections 1229c and 1324d authorize civil penalties when an alien voluntarily fails to depart or willfully fails to comply with a removal order. In applying those statutes, immigration officials assess whether the facts of a particular case support a finding of voluntariness or willfulness and document that determination in the Notice of Violation and Order Under the Immigrational and Nationality Act ("DHS Form 281"). Plaintiffs argue that the statute requires something more—such as written factual allegations beyond the determination that the failure to depart was willful or voluntary. ECF No. 20 at 13-14. The statutory text imposes no such requirement; neither statute mandates a specific procedure that must occur before the assessment of the fine. Congress required only that the Agencies find a determination of willfulness or voluntariness for each case. That is precisely what the Agencies do when they apply reasonable evidentiary inferences to the facts of each case and provide aliens the opportunity to contest that determination.

Plaintiffs assert that there are "circumstances that would lead an individual to remain in the country following an order of removal that would not constitute a willful violation of Sections 1229c or a voluntary violation of Section 1324d." ECF No. 20 at 14. As discussed in in § 2.B. supra, these circumstances are accounted for with mechanisms built into the review process for aliens to contest their penalties when they remained in the country due to factors beyond their control. It is in accordance with the law.

Plaintiffs challenge the civil penalty policy as arbitrary and capricious on two grounds. First, they argue that the Agencies failed to conduct individualized assessments of willfulness or voluntariness and instead rely on standardized language in the I-79 Form. ECF No. 20 at 15. Second, Plaintiffs assert that the agencies lacked a reasoned basis for resuming civil-penalty enforcement. *Id.* Both arguments fail. The IFR explains that the Agencies make individualized determinations based on objective, case-specific records, and it provides a detailed and rational explanation for both the decision to resume civil-penalty enforcement and the adoption of revised procedures to administer that enforcement effectively.

The Agencies also explain through the IFR why this enforcement approach was necessary. Prior procedures proved unworkable and undermined the effective enforcement of the relevant statutory penalties. 90 Fed. Reg. at 27,442. The new approach still allows aliens to contest assessed penalties through review of the initial determination and the ability for DHS to reconsider, reduce, or rescind the fine when in the best interests of the parties, allowing for enforcement at scale while ensuring that due process is observed. *Id.* at 27,451. Plaintiffs' disagreement with this enforcement policy does not make it arbitrary and capricious. The Agencies acknowledged the problems with the previous approach and articulated a reasonable basis for the new policy. As such, Plaintiffs are unlikely to succeed on this claim.

## III.    Plaintiffs Have Failed to Establish Irreparable Harm

Plaintiffs' motion should also be denied because Plaintiffs have not demonstrated that they will suffer irreparable harm absent preliminary relief. The burden of demonstrating irreparable harm "rests squarely upon the movant." *Charlesbank Equity Fund II* v. *Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004).  Plaintiffs claim that they have suffered and will suffer irrepealable harm in the absence of preliminary relief, ECF No. 20 at 24, but the Individual Plaintiffs and the Organizational Plaintiff fail to demonstrate how the monetary and procedural harms they assert constitute irreparable harm necessitating the issuance of a stay or preliminary injunction. Their claim of irreparable harm is further undercut by the length of time they waited before challenging the Agency action through this lawsuit.

The Individual Plaintiffs assert as irreparable harm the imposition of monetary fines, but financial costs are not irreparable where they can be recouped. The irreparable harm prong of the injunctive relief standard requires the movant to show that they are at risk of suffering harm that cannot be remedied through monetary relief. *Matos ex rel. Matos* v. *Clinton School Dist.,* 367 F.3d 68, 73 (1st Cir. 2005); *see also Foxboro Co.* v. *Arabian American Oil Co.,* 805 F.2d 34, 36 (1st Cir. 1986) ("We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue.") (citing *Itek Corp.* v. *First Nat'l Bank,* 730 F.2d 19, 22 (1st Cir. 1984)). Regardless of the size of the fines assessed against the two named Plaintiffs, this asserted monetary harm is the type of harm that can be remedied if Plaintiffs' challenge to the government's civil penalty program ultimately proves successful. If the challenged penalties are found unlawful, the Court may vacate them or order appropriate relief setting them aside, restoring the Plaintiffs to their position before the penalties were imposed.

The organizational Plaintiff – ILRC – similarly cannot establish irreparable harm because it's asserted injury, the "lost ability to influence the outcome of the rulemaking process," ECF No. 20 at 19, is incorrect. ILRC submitted comment in July 2025. When the final rule is eventually

promulgated, ILRC will have availed themselves of the procedural mechanism built into agency rulemaking for advocacy organizations to "influence the outcome of the rulemaking process," precluding any harm ILRC alleges to have incurred.

Both the Organizational and Individual Plaintiffs' claims of irreparable harm are also undercut by their months-long delay in bringing their motion, whether styled as a motion for an interim stay under the APA or a motion for a preliminary injunction. A plaintiff's "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Voice of the Arab World, Inc.* v. *MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1st Cir. 2011) (*quoting Tough Traveler, Ltd.* v. *Outbound Prods.* 60 F.3d 964, 968 (2d Cir. 1995). Where, as here, a plaintiff waits months before seeking injunctive relief, that delay weighs heavily against a finding that the alleged harm is imminent or irreparable. The statutory provisions that authorize the assessment of the penalties have existed for decades, the re-implementation of the enforcement of the provisions started in January 2025, and the IFR that Plaintiffs challenge was issued in June 2025. Plaintiffs, however, waited until the end of November to file suit and until December to file their motion, and now ask the Court for what amounts to an emergency injunction to halt the government's use of this important enforcement program. Plaintiffs' decision to wait this long before bringing suit undermines their claim that immediate judicial intervention is necessary.

## IV.    The Balance of the Equities and the Public Interest Tip in Defendants' Favor.

Preliminary relief also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken* v. *Holder*, 556 U.S.418, 435 (2009) (holding that "[t]hese factors merge when the Government is the opposing party"). As the First Circuit has recognized, "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Dist. 4 Lodge of Int'l Ass'n of*

*Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)). Here, Plaintiffs seek an order that would prohibit the Government from assessing and collecting civil penalties pursuant to long-standing statutory provisions enacted by Congress and implemented through a lawful regulatory framework. Enjoining that enforcement would undermine Congress's chosen means of ensuring compliance with removal and voluntary-departure orders and would not serve the public interest through the effective administration of the immigration laws.

## V.    Any Relief Must be Limited to the Named Plaintiffs.

For the reasons set forth above, this Court should deny Plaintiffs' motion.  If, however, the Court grants relief, that relief should be limited to the named Plaintiffs, Maria L and Nancy M.

Plaintiffs request that this Court prohibit Defendants from assessing any penalties under Sections 1229c and 1324d pending resolution of this case on the merits, which, apart from being improper for the reasons explained above, would extend relief to individuals who are neither parties to this litigation nor members of the organizational Plaintiff. But as the Supreme Court recently made clear, federal courts are not authorized to issue universal injunctions—injunctions that extend relief beyond the parties to the litigation. *Trump v. CASA, Inc.*, 606 U.S. 831, 856 (2025). "Under [the complete-relief] principle, the question is not whether an injunction offers compete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.")). *See also, Immigrant Defenders Law Center* v. *Noem*, 2025 WL 2017247 at *14 (9th Cir. Jul. 18, 2025) (extending *CASA*-like principles prohibiting universal injunctions to stays under APA section 705).

Plaintiffs have sought, but not yet obtained, class certification. *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] properly conducted class action … can come about in federal courts in just one way—through the procedure set out in Rule 23."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-500 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm[.]"). Defendants will separately be opposing Plaintiffs' (premature) motion for class certification, but to the extent the Court issues a Section 705 stay or a preliminary injunction, any such stay or injunction should be limited to the named individual Plaintiffs or any class that the Court may certify over Defendants' opposition. And because ILRC has not identified any of its members no relief should flow to ILRC other than the narrowest relief necessary to remedy any injury ILRC has identified as an organization.

Accordingly, any equitable remedy should apply only to the named parties. *See California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract" (citations omitted)); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" (citation omitted)).

## CONCLUSION

Plaintiffs' motion to stay agency action should be denied.

Dated: January 6, 2026                    Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General
                                          Civil Division

                                          BRAD P. ROSENBERG
                                          Special Counsel
                                          Federal Programs Branch

_/s/ Alexander Severance_
ALEXANDER SEVERANCE (KS Bar No 27618)
_Trial Attorney_
U.S. Department of Justice,
Civil Division, Federal Programs
1100 L Street, N.W.
Washington, DC  20005
Tel: (202) 353-5677
Email: alexander.j.severance@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

  I, Alexander. J. Severance, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

           /s/ *Alexander Severance*
           Alexander J. Severance
Dated: January 6, 2026       Trial Attorney