UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIA L., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*<br><br>*Defendants*. | Case No. 1:25-cv-13471-GAO<br><br>Hon. George A. O'Toole<br><br>EXPEDITED DISPOSITION REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND STAY OF DETENTION AND DEPORTATION OF PLAINTIFFS MARIA L. AND NANCY M. PURSUANT TO 5 U.S.C. § 705 AND THE ALL WRITS ACT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ....................................................................................................................... 2

      A.    Plaintiffs Maria L. and Nancy M. Are Noncitizens Challenging the
            Government's Illegal Imposition of Excessive Fines. ........................................ 2

      B.    Plaintiffs Have a Credible Fear Defendants Will Deport Them
            Imminently. ...................................................................................................... 3

LEGAL STANDARD ................................................................................................................ 6

ARGUMENT ............................................................................................................................ 8

I.    The Court Should Maintain the Status Quo by Issuing an Order Under the APA to
    Prevent Defendants from Detaining or Removing Plaintiffs. ............................................ 8

      A.    Plaintiffs Will Likely Suffer Irreparable Harm Absent a Stay. ............................ 9

      B.    Plaintiffs Are Likely to Succeed on the Merits. ................................................. 11

      C.    The Balance of the Equities and the Public Interest Weigh in Favor of
            Granting a Stay. ............................................................................................... 12

II.    Alternatively, the Court Should Issue a Stay Under the All Writs Act to Maintain
    the Status Quo and Preserve the Integrity of This Action. ............................................. 12

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.R. v. Noem*,
--- F. Supp. 3d ----, 2025 WL 3228840 (E.D.N.Y. Nov. 19, 2025)......................................1, 14

*ACA Int'l v. Healey*,
457 F. Supp. 3d 17 (D. Mass. 2020) ...............................................................................8

*Al Otro Lado, Inc. v. Nielsen*,
2017 WL 6541446 (S.D. Cal. Dec. 20, 2017)..............................................................10

*Almeida-Leon v. WM Cap. Mgmt., Inc.*,
2024 WL 2904077 (1st Cir. June 10, 2024)....................................................................6

*Am. Ass'n of Univ. Professors v. Rubio*,
--- F. Supp. 3d ----, 2025 WL 2777659 (D. Mass. Sept. 30, 2025) .....................................5, 10

*Arostegui-Maldonado v. Baltazar*,
794 F. Supp. 3d 926 (D. Colo. 2025).............................................................................10

*Bounds v. Smith*,
430 U.S. 817 (1977).........................................................................................................8

*California v. M&P Investments*,
46 F. App'x 876 (9th Cir. 2002) .....................................................................................13

*CASA, Inc. v. Trump*,
793 F. Supp. 3d 703 (D. Md. 2025)..........................................................................1, 5, 9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).....................................................................................................7, 14

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006)......................................................................................11

*Cotoc Yac De Yac v. Hermosillo*,
2025 WL 3564819 (D. Or. Dec. 12, 2025) ......................................................................1

*D'Ambrosio v. Scott*,
2025 WL 1504312 (D. Vt. May 9, 2025) .........................................................1, 8, 9, 12

*Doe v. Noem*,
2025 WL 990635 (D. Mass. Apr. 2, 2025) ......................................................................5

*Doe v. Trump*,
    157 F.4th 36 (1st Cir. 2025).................................................................................................8

*Du v. United States Dep't of Homeland Sec.*,
    2025 WL 1220254 (D. Conn. Apr. 28, 2025).................................................................7, 9, 14

*F.T.C. v. Dean Foods Co.*,
    384 U.S. 597 (1966)...........................................................................................................13

*Immigr. Advocs. Resp. Collaborative v. U.S. Dep't of Just.*,
    No. 25-cv-2279 (D.D.C. July 16, 2025), ECF No. 1 ...............................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).............................................................................................................7

*Kurnaz v. Bush*,
    2005 WL 839542 (D.D.C. 2005) .........................................................................................14

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).............................................................................................................7

*Lehmann v. United States*,
    353 U.S. 685 (1957).............................................................................................................9

*Leuthavone v. Salisbury*,
    2025 WL 1135588 (D.R.I. Apr. 17, 2025)........................................................................9, 13

*Lindstrom v. Graber*,
    203 F.3d 470 (7th Cir. 2000) ...............................................................................................14

*Lozman v. Riviera Beach*,
    585 U.S. 87 (2018).............................................................................................................10

*Mass. Fair Hous. Ctr. v. H.U.D.*,
    496 F. Supp. 3d 600 (D. Mass. 2020) ...................................................................................8

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004).................................................................................................7

*Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc.*,
    734 F.3d 28 (1st Cir. 2013).................................................................................................12

*Ozturk v. Trump*,
    777 F. Supp. 3d 26 (D. Mass. 2025) .....................................................................................5

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)...........................................................................................................10

*Pres. & Fellows of Harvard College v. DHS*,
   788 F. Supp. 3d 182 (D. Mass. 2025) ...................................................................11

*R.O.A. v. Edlow*,
   2025 WL 3210930 (D. Vt. Sept. 30, 2025)..............................................................8

*Ragbir v. United States*,
   2018 WL 1446407 (D.N.J. Mar. 23, 2018)..........................................8, 10, 13, 14

*Rossello-Gonzalez v. Calderon-Serra*,
   398 F.3d 1 (1st Cir. 2004)....................................................................................13

*Santiago v. Noem*,
   2025 WL 2606118 (W.D. Tex. Sept. 9, 2025).........................................................8

*Stiggle v. Arnone*,
   2014 WL 4230919 (D. Conn. Aug. 26, 2014) ........................................................11

*Tixe v. Hyde*,
   2025 WL 2976761 (D. Mass. Oct. 22, 2025)...........................................................7

**Statutes and Federal Rules**

5 U.S.C. § 705......................................................................................................6, 7

8 U.S.C. § 1229c........................................................................................................3

8 U.S.C. § 1252..........................................................................................................8

8 U.S.C. § 1324d.....................................................................................................2, 3

28 U.S.C. § 1651........................................................................................................6

Fed. R. Civ. P. 65(b)(2)..............................................................................................6

**INTRODUCTION**

Plaintiffs Maria L. and Nancy M. are challenging Defendants' illegal imposition of exorbitant fines on themselves and other noncitizens who have remained in the country after a final order of removal or voluntary departure order. Despite their ongoing attempts to obtain lawful status, there is a significant and imminent risk that Plaintiffs will be detained and deported, as both are subject to orders of removal. This risk is "not speculative": Defendants have repeatedly detained and deported noncitizens who have challenged the government's illegal conduct. *See, e.g.*, *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 726 (D. Md. 2025) ("[T]he fear of retaliation is not speculative; the news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them."). Plaintiffs' detention and deportation would upend the status quo, substantially frustrate the prosecution of this action, and potentially strip this Court of its ability to adjudicate this case. Emergency relief is particularly necessary for Ms. M. who, without a temporary restraining order, could be detained and deported by Defendant Immigration and Customs Enforcement ("ICE") at her upcoming check-in with the agency.

Plaintiffs therefore respectfully ask this Court to maintain the status quo by issuing an order under the Administrative Procedure Act ("APA") that stays their detention for immigration-related reasons or removal. *See D'Ambrosio v. Scott*, 2025 WL 1504312, at *2, *6 (D. Vt. May 9, 2025) (granting stay of removal under the APA). Alternatively, Plaintiffs ask the Court to protect its jurisdiction and maintain the status quo by staying their detention or removal under the All Writs Act. *See Cotoc Yac De Yac v. Hermosillo*, 2025 WL 3564819, at *2 n.1 (D. Or. Dec. 12, 2025) ("Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo."); *A.C.R. v. Noem*, --- F. Supp. 3d ----, 2025 WL 3228840, at *18 (E.D.N.Y. Nov. 19, 2025) (granting stay of removal of named plaintiffs under the All Writs Act).

1

## BACKGROUND

**A.      Plaintiffs Maria L. and Nancy M. Are Noncitizens Challenging the Government's Illegal Imposition of Excessive Fines.**

Named Plaintiffs Maria L. and Nancy M. are two of the millions of hardworking individuals in this country who are navigating the U.S. immigration system. *See* Compl. ¶ 1, ECF No. 1. They are also among the tens of thousands of people whom ICE has exorbitantly fined up to $1.8 million without finding (or even considering) whether the fines are appropriate in their individual cases. *See id.*

Plaintiff Maria L. lives in eastern Massachusetts. *Id.* ¶ 18. She is subject to a final order of removal, but she remains present in the United States to pursue humanitarian immigration relief that would allow her to adjust her status and become a lawful permanent resident (*i.e.*, receive a green card). *Id.* Defendants imposed hundreds of thousands of dollars in civil penalties on Ms. L. under 8 U.S.C. § 1324d(a)(1) ("Section 1324d") for not departing the country after her final order of removal. Defendants did so without making the necessary finding that her failure to leave the country was "willful" or providing her with the requisite process and right to a jury trial to contest these excessive fees. *See id.* ¶¶ 125–36.

Plaintiff Nancy M. lives in southern Florida. *Id.* ¶ 19. She is subject to a final order of removal, but she has permission from ICE to remain in the United States under an order of supervision that requires regular check-ins, which she has always satisfied. *Id.* Ms. M. is present in the United States to pursue family-based immigration relief that would allow her to become a lawful permanent resident. *Id.* Similar to Ms. L., Defendants imposed roughly $1.8 million in civil penalties on Ms. M. under Section 1324d for not departing the country after her final order of removal, despite Defendants failing to make the necessary finding that her failure to leave the country was "willful" and failing to provide her with the requisite process and right to a jury trial to contest these excessive fees. *See id.* ¶¶ 19, 137–47. Ms. M.'s next check-in with ICE is in the near future, at which time there is a significant risk that she may be detained and deported. *See* Declaration of Charles Moore ("Moore Decl.") ¶ 2.

Plaintiffs have filed this putative class action to stop Defendants' illegal imposition of fines without individualized consideration of the willfulness or voluntariness of a fine recipient's conduct (the "Blanket Fine Policy"). Plaintiffs allege that Defendants' imposition of excessive fines without a jury trial and without due process violates the Fifth, Seventh, and Eighth Amendments. Compl. ¶¶ 171–92. Plaintiffs also allege that Defendants' practices surrounding the imposition of fines, as well as the promulgation of an interim final rule ("IFR") to impose penalties under Section 1324d and 8 U.S.C. § 1229c(d)(1), violate the APA because the rule is arbitrary and capricious and also was adopted without the necessary notice and comment. *Id.* ¶¶ 193–211. Plaintiffs' motion to stay the imposition of these illegal fines is pending, ECF No. 19, as is Plaintiffs' motion for class certification, ECF No. 21.

**B.        Plaintiffs Have a Credible Fear Defendants Will Deport Them Imminently.**

Noncitizen plaintiffs such as Ms. L. and Ms. M. "who criticize federal immigration policy face a significant risk of retaliation by federal immigration officials." Declaration of Alina Das ("Das Decl.") ¶ 3, ECF No. 5-1. The risk of retaliation is particularly acute for named plaintiffs with final orders of removal, including Ms. L. and Ms. M., "because federal immigration officials may quickly detain or deport them before a court can intervene to provide the necessary review and relief." *Id.* Indeed, Plaintiffs' counsel has represented several "individuals with final orders of removal who were abruptly detained at ICE check-ins after making statements critical of ICE," *id.*, or who were deported shortly after becoming named plaintiffs in class actions, *see id.* ¶ 4.

Defendants have made clear they intend to detain and deport people in Plaintiffs' circumstances. *See Establishing Project Homecoming*, 90 Fed. Reg. 20357, 20358 (May 14, 2025) (directing Defendant Secretary Noem to "increase the enforcement and removal operations . . . to remove [noncitizens] who have failed to depart voluntarily"). Government officials have explicitly stated that "[f]inancial penalties like [the ones challenged by Plaintiffs here] are just one more reason why [noncitizens] should use CBP Home to self-deport now *before it's too late*." DHS, *DHS and DOJ Announce Streamlined Process for Fining Illegal Aliens*, (June 27, 2025) (emphasis added),        https://www.dhs.gov/news/2025/06/27/dhs-and-doj-announce-streamlined-process-

3

fining-illegal-aliens. Defendant DHS has announced that those who it unilaterally determines have failed to depart "will be subjected to fines, arrest, deportation and will never be allowed to return." @DHSgov, X (June 17, 2025 12:25pm), https://tinyurl.com/37serzpp. In DHS's own words, those who "stay" are at risk of being "fined $1,000 a day, arrested, and deported without a possibility to return legally." @DHSgov, X (Oct. 21, 2025 3:51pm), https://tinyurl.com/yw9ymtp6. And in response to this lawsuit, DHS emphasized its desire to see civil penalty recipients such as Plaintiffs removed from this country and accused Plaintiffs of filing this action to avoid immigration enforcement. Tom Lotshaw, Law360, *DHS Accused of "Ruinous," Unlawful Immigration Fines* (Nov. 20, 2025) ("It's an easy choice, leave voluntarily . . . or stay and wait till you are fined $1,000 day [sic], arrested, and deported without a possibility to return legally."), https://tinyurl.com/3mk465jm; Landon Mion, Fox News, *Immigrants Fined up to $1.8 Million for Remaining in US Sue Trump Administration* (Nov. 21, 2025) ("The plaintiffs in this case are here illegally and are suing so they can remain in the country illegally without any consequence or penalty."), https://tinyurl.com/yuc5wn6c.

As a result of Defendants' conduct and statements, Ms. L. and Ms. M. reasonably fear that they will be deported by the government while they prosecute this action. As Ms. L. has attested, she is "challenging these fines because I think the government is intimidating people like me who are trying to fight their immigration cases and trying to get immigration status." Declaration of Maria L. ("Ms. L. Decl.") ¶ 4, ECF No. 20-1. She has a deep-seated fear "that the government could retaliate against me for challenging these fines," including by detaining her. *Id.* ¶ 23. Ms. M. is also afraid that, by standing up to Defendants, "the government will retaliate against me— that my detention or deportation will only come faster because I am choosing to fight for justice," and that "being a part of this lawsuit will make the punishment for fighting for my rights only come faster and harder." Declaration of Nancy M. ("Ms. M. Decl.") ¶ 37, ECF No. 20-2.

The threat of deportation for Ms. M. is especially critical, given that she has a check-in with ICE scheduled in the near future. Moore Decl. ¶ 2. Despite the fact that she has complied with her order of supervision for years, *see* Ms. M. Decl. ¶¶ 12–13, there remains a distinct risk that she

4

will be detained at the upcoming check-in and deported. Since May 2025, "ICE has been arresting individuals appearing in immigration courts" and "at their mandatory check-ins with ICE." N.Y.C. Bar Ass'n, *Report on the Trump Administration's 2025 Changes to Immigration Law* at 74 (Oct. 10, 2025), https://www.nycbar.org/wp-content/uploads/2025/03/20221419-TrumpAdminChangesImmigrationLaw.pdf. Defendants have declined to agree not to remove Plaintiffs while this litigation proceeds. *See* Moore Decl. ¶¶ 5–12.

The risk that Ms. L. and Ms. M. will be deported—including possibly in retaliation for bringing this lawsuit—is "not speculative." *CASA*, 793 F. Supp. 3d at 726. In cases before this Court, Defendants have detained and deported individuals who engage in protected First Amendment activity. *See Am. Ass'n of Univ. Professors v. Rubio*, --- F. Supp. 3d ----, 2025 WL 2777659, at *45–51 (D. Mass. Sept. 30, 2025) (finding that government's policy of targeting noncitizens who engaged in pro-Palestinian or anti-Israel speech and association for arrest, detainment, and deportation was viewpoint discrimination in violation of First Amendment). Such conduct is related to Defendants' broader practice of imprisoning and deporting noncitizens who have appeared at courthouses to seek protection. *See* Das Decl. ¶¶ 3–4.[1] The risk of deportation is "particularly acute . . . given possible raids in [plaintiffs'] communit[ies]." *Doe v. Noem*, 2025 WL 990635, at *2 (D. Mass. Apr. 2, 2025). Plaintiffs' respective communities in Massachusetts and Florida have been beset with immigration raids, making the threat of detention and removal all the more likely. *See e.g.*, *Ozturk v. Trump*, 777 F. Supp. 3d 26, 30 (D. Mass. 2025) (describing ICE

---

[1] *See also* ICE Acting Director Caleb Vitello, *Policy Memorandum 11072.3, Interim Guidance: Civil Immigration Enforcement Actions In Or Near Courthouses* (Jan. 21, 2025), https://www.ice.gov/doclib/foia/policy/11072.3_CivilImmEnfActionsCourthouses_01.21.2025.pdf (superseding prior guidance by asserting ICE's authority to conduct immigration enforcement in or near courthouses); Compl., *Immigr. Advocs. Resp. Collaborative v. U.S. Dep't of Just.*, No. 25-cv-2279 (D.D.C. July 16, 2025), ECF No. 1 (challenging policies that resulted in plaintiffs being detained by ICE after appearing at their hearings to request protection or other legal status); Liv Veazey & Max Rivlin-Nadler, HellGate, *'It Felt Like ICE Gone Rogue': The Masked Men of Lower Manhattan* (June 20, 2025), https://hellgatenyc.com/ice-gone-rogue/ (reporting that, starting in May 2025, "ICE agents began making arrests in courthouses, sometimes tackling people after their court hearings. The hallways of the courthouse, which had once been a more neutral space, were now a hunting ground for ICE agents looking to meet detention quotas . . . .").

raid in Massachusetts); ICE, *Largest Joint Immigration Operation in Florida History Leads to 1,120 [] Arrests During Weeklong Operation* (May 1, 2025), https://www.ice.gov/news/releases/largest-joint-immigration-operation-florida-history-leads-1120-criminal-alien-arrests.

In an attempt to counter this threat of detention and deportation, Ms. L. and Ms. M. filed a motion to proceed under pseudonyms on the public docket and to treat their personally identifying information as highly confidential. ECF No. 4. Defendants did not file a timely opposition or otherwise respond to the motion. Plaintiffs intend to provide their names and other identifying information, designated as attorneys' eyes only and subject to strict confidentiality protections, pursuant to a protective order. *See* Memo in Support of Mot. to Proceed Under Pseudonyms, ECF No. 5; Mot. for Protective Order, ECF No. 30. Although Defendants have indicated they are "amenable to the entry of a protective order," ECF No. 33 at 18 n.5, they have yet to agree to such a protective order and have not requested that counsel disclose Plaintiffs' identities. ECF No. 30 ¶ 7. In any event, because a protective order does not guarantee that the local ICE field offices in charge of removal will not independently identify and pursue enforcement action against Ms. L. and Ms. M., Plaintiffs have also asked Defendants if they will agree to a stay of removal to ensure preservation of the status quo pending this litigation. *See* Moore Decl. ¶¶ 5–7, 9. Defendants have not provided their position on this request. *See id.* ¶¶ 10–12.

## LEGAL STANDARD

Under Fed. R. Civ. P. 65(b)(2), this Court can issue a temporary restraining order ("TRO") to prevent irreparable injury. "Federal Rule of Civil Procedure 65(b)(2) limits an initial TRO term to fourteen days and an extension to another fourteen days, for a total of twenty-eight days." *Almeida-Leon v. WM Cap. Mgmt., Inc.*, 2024 WL 2904077, at *5 (1st Cir. June 10, 2024).

Under the APA, the Court can enter a stay "to postpone the effective date of an agency action or to preserve status or rights." 5 U.S.C. § 705. Similarly, under the All Writs Act, federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Stays under the APA and the

6

All Writs Act can remain in place for the duration of the litigation. *See* 5 U.S.C. § 705 (authorizing stay under the APA to preserve the status quo and postpone administrative action "pending conclusion of the review proceedings"); *Du v. United States Dep't of Homeland Sec.*, 2025 WL 1220254, at *3 (D. Conn. Apr. 28, 2025) (enjoining government under the All Writs Act "from removing any Plaintiffs or putative class members from the District of Connecticut, and from deporting them from the United States" until the court could "adjudicate the merits of the case").

In addition to this statutory authority under the APA and the All Writs Act, "[i]t is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, courts may exercise ancillary jurisdiction over matters "otherwise beyond their competence" that are "incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

Courts can use their inherent "'authority . . . to make orders to preserve the existing conditions and the subject of the petition' before it." *Tixe v. Hyde*, 2025 WL 2976761, at *2 (D. Mass. Oct. 22, 2025) (O'Toole, J.) (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)). Courts also use their inherent power to stay proceedings to protect the integrity of proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 58 (1991) (Scalia, J., dissenting) ("Some elements of that inherent authority are so essential to the [Article III] judicial Power, that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings." (cleaned up)). Courts therefore have stayed the removal of noncitizen plaintiffs, not under immigration law, but rather as "a component of a federal court's power to preserve the status quo," which "inheres in the judicial function" and "has a constitutional dimension, in that it permits the court to maintain a party's access to the court and preserve the court's ability to adjudicate the case

7

fully and fairly."[2] *Ragbir v. United States*, 2018 WL 1446407, at \*1 (D.N.J. Mar. 23, 2018); *see also Bounds v. Smith*, 430 U.S. 817, 824 (1977) (holding that the Constitution guarantees litigants "meaningful access to the courts").

**ARGUMENT**

In addition to federal courts' inherent authority to issue stays, both the APA and the All Writs Act allow for the Court to maintain the status quo and preserve the Court's ability to adjudicate this proceeding. Either statute provides sufficient grounds for the Court to stay Defendants' detention and removal of Plaintiffs.

**I.       The Court Should Maintain the Status Quo by Issuing an Order Under the APA to Prevent Defendants from Detaining or Removing Plaintiffs.**

The factors governing preliminary injunctions and TROs also govern APA stays. *See Mass. Fair Hous. Ctr. v. H.U.D.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020) (noting that the "same standard governs both" preliminary injunctions and a stay under the APA); *ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 23 (D. Mass. 2020) ("The standard for issuing a temporary restraining order is the same as for a preliminary injunction." (quotation omitted)). Accordingly, a stay under the APA is appropriate if plaintiffs are "likely to suffer irreparable harm" absent a stay; plaintiffs are "likely to succeed on the merits"; and the public interest and the balance of the equities favor a stay. *Doe v. Trump*, 157 F.4th 36, 46 (1st Cir. 2025) (cleaned up).[3]

Other courts have stayed removal under the APA in similar circumstances. *See, e.g.*, *D'Ambrosio v. Scott*, 2025 WL 1504312, at \*2, 6 (D. Vt. May 9, 2025) (granting plaintiff a stay of removal under the APA to allow for the adjudication of his APA claims); *Santiago v. Noem*,

---

[2] Because such stays are not "creature[s] of immigration law," the jurisdiction-stripping provisions of 8 U.S.C. § 1252 do not apply. *Ragbir*, 2018 WL 1446407, at \*1; *see also id.* at \*8 ("A stay is thus a temporary measure, put in place while the actual cause or claim is being adjudicated. A stay is not a challenge to the basis of removal or any action taken by the immigration authorities.").

[3] "When the Government is a party in a lawsuit, the Government's interest *is* the public interest, so the balance of the hardships and public interest merge as one factor." *R.O.A. v. Edlow*, 2025 WL 3210930, at \*2 (D. Vt. Sept. 30, 2025) (cleaned up) (granting preliminary injunction to stay plaintiff's removal while his APA claims proceeded).

8

2025 WL 2606118, at *2–3 (W.D. Tex. Sept. 9, 2025) (granting plaintiff a stay of deportation to allow the court to meaningfully assess his habeas petition alleging violation of his rights under the Constitution and APA). This Court should do the same here, because all three factors for a stay under the APA—likelihood of Plaintiffs suffering irreparable harm absent a stay, likelihood of success on the merits, and the public interest and the balance of the equities—weigh in favor of issuing such a stay so that Plaintiffs can continue pursuing their APA claims.

### A.    Plaintiffs Will Likely Suffer Irreparable Harm Absent a Stay.

The irreparable harm requirement is "perhaps the single most important prerequisite for the issuance of a preliminary injunction." *D'Ambrosio*, 2025 WL 1504312, at *2 (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024)). Here, the threat of removal is imminent: ICE has been detaining and deporting noncitizens at their check-ins, and Ms. M.'s check-in is coming up shortly. *See* Moore Decl. ¶¶ 2–3. Ms. L. and Ms. M. also both face the serious risk that they will be detained and removed at any point, either due to their participation in this lawsuit in particular or as part of an ICE raid of their communities. *See supra* at 3–6; *see also CASA*, 793 F. Supp. 3d at 726 ("[T]he fear of retaliation [with detention and deportation] is not speculative.").

Plaintiffs' detention and/or removal would result in irreparable harm. To begin, the harm from deportation alone would be irreparable. *See, e.g.*, *Du*, 2025 WL 1220254, at *3 ("Plaintiffs surely will suffer irreparable harm absent injunctive relief. First, Plaintiffs are in immediate danger of deportation."); *D'Ambrosio*, 2025 WL 1504312, at *3 ("The United States has been Mr. D'Ambrosio's home for eight years. Being removed from his community, likely permanently, surely constitutes irreparable harm."); *Leuthavone v. Salisbury*, 2025 WL 1135588, at *2 (D.R.I. Apr. 17, 2025) ("Denying a stay of removal now would impose a harm that cannot be undone later. . . . His ties to his family and community in the United States would be severed . . . ."). As the Supreme Court has long acknowledged, "[t]o banish [a noncitizen] from home, family, and adopted country is punishment of the most drastic kind," *Lehmann v. United States*, 353 U.S. 685,

691 (1957) (Black, J., concurring), and "deportation is a particularly severe penalty," *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (quotation omitted).

Further, detention and deportation could be ruinous for Plaintiffs' ability to engage with counsel and serve as lead plaintiffs litigating this action. *See* Moore Decl. ¶ 4; *see also Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 949 (D. Colo. 2025) (finding threat of irreparable harm and staying transfer or removal of noncitizen habeas petitioner because "forcing him to litigate his case many states away from his lawyers would meaningfully deprive him of counsel's ability to aid in his representation for the duration of these habeas proceedings" (cleaned up)). Losing the ability to litigate their meritorious claim would irreparably harm Plaintiffs—particularly over the following days and weeks as Plaintiffs prepare their reply briefing in support of their motions to stay administrative action and for class certification, and otherwise respond to a motion to dismiss that Defendants claim is forthcoming. *See* ECF No. 33 at 18; *Ragbir*, 2018 WL 1446407, at *12 ("Without a stay of removal, it is doubtful that Mr. Ragbir would be able to meaningfully participate in the adjudication of his petition.").

Finally, a stay of Plaintiffs' detention and deportation is necessary to protect Plaintiffs' First Amendment rights. By filing this action, Plaintiffs exercised their right to petition the government for redress, one of the "most precious of the liberties safeguarded by the Bill of Rights." *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018). Plaintiffs' free speech rights are just as weighty as those of citizens. *See Am. Ass'n of Univ. Professors*, 2025 WL 2777659, at *1 ("No one's freedom of speech is unlimited, of course, but these limits are the same for both citizens and non-citizens alike."). Exposing noncitizen plaintiffs such as Ms. M. and Ms. L. to potential detention and removal would create "an unnecessary risk of chilling the willingness of [noncitizens] from litigating important issues like the ones raised in this case." *Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017). If Defendants detained Plaintiffs now, after they filed this action, it would chill the rights of countless others facing the same unlawful practices. Such noncitizens would be deterred from exercising their constitutional rights and from litigating meritorious claims challenging their civil penalties, for fear that doing so would

put them at risk of detention and deportation. This chilling effect would be irreparable. *See, e.g.*, *Stiggle v. Arnone*, 2014 WL 4230919, at *2 (D. Conn. Aug. 26, 2014) ("[A] plaintiff alleging the violation of a constitutional right ordinarily satisfies the irreparable harm requirement automatically because a presumption of irreparable injury flows from an alleged violation of constitutional rights." (cleaned up)); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) ("[M]oving parties must also establish they are or will be engaging in constitutionally protected behavior to demonstrate that the allegedly impermissible government action would chill allowable individual conduct.").

### B.    Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs need only show their likelihood of success on a single claim to establish the appropriateness of preliminary relief. *Pres. & Fellows of Harvard College v. DHS*, 788 F. Supp. 3d 182, 209 (D. Mass. 2025). As explained in Plaintiffs' motion to stay administrative action, Plaintiffs are likely to succeed on the merits of their APA claims, because Defendants violated the APA by: (1) imposing civil penalties not in accordance with law, by refusing to assess the necessary statutory requirements that any violation be willful or voluntary; (2) arbitrarily and capriciously impose such fines without consideration of the statutory factors; (3) promulgating an IFR that is arbitrary and capricious; and (4) promulgating an IFR without following the APA's notice and comment procedures. *See* Memo in Suport of Mot. to Stay at 5–18, ECF No. 20.[4]

Defendants' opposition to Plaintiffs' motion to stay administrative action focuses on (3) and (4), arguing that the IFR is exempt from notice and comment under the foreign-affairs or the procedural-rules exceptions and is not arbitrary and capricious. *See* Opp. to Mot. to Stay at 9–15, ECF No. 32. But as Plaintiffs already explained (and will further address in their reply), the IFR does not fit into either narrow exception to the APA's notice-and-comment requirement: the

---

[4] Plaintiffs have also brought constitutional claims challenging Defendants' issuance of fines and the means by which Defendants assess those fines. Compl. ¶¶ 171–92. Plaintiffs are likely to succeed on the merits of those claims as well, but for present purposes, Plaintiffs' likelihood of success on their APA claims is more than sufficient to support a temporary stay of their removal so they can continue to pursue their APA claims.

foreign-affairs exception does not apply because the IFR involves implementation of a domestic statute through domestic means, *see* Memo in Support of Mot. to Stay at 12–15, and the procedural-rules exception does not apply because the IFR is not a mere procedural rule but rather alters Plaintiffs' and putative class members' substantive rights, *see id.* at 15–18. The IFR is also arbitrary and capricious because it disregards the relevant statutory requirements that any alleged failure to depart be willful or voluntary. *See id.* at 9–11.

To the extent Defendants address the other ways in which they allegedly violated the APA—both before and after the IFR was adopted—by imposing fines without considering whether violations were willful or voluntary, *see* Opp. to Mot. to Stay at 15–16, their arguments do not hold water. For instance, Defendants argue that "the Agencies do make an individualized assessment in each case," *id.* at 15, but Defendants do not address the evidence cited by Plaintiffs (including Plaintiffs' own declarations) that this is not the case, *see* Memo in Support of Mot. to Stay at 7–8. Moreover, Defendants offer no evidence of their own—either in the form of testimony or documents—to counter Plaintiffs' evidentiary record. Therefore, the record before the Court shows an unlawful practice, countered only by Defense counsel's say-so.

### C.    The Balance of the Equities and the Public Interest Weigh in Favor of Granting a Stay.

The potential detention or deportation of Ms. M. or Ms. L. could have devastating consequences for themselves and their ability to prosecute this action. *See supra* § I.A. Plaintiffs' requested relief "appropriately balance[s] the equities and serve[s] the public interest," because "[a]lthough the Government has an interest in swiftly executing removal orders, the court's order would only temporarily prevent [Plaintiffs'] removal during the adjudication of [their] claim[s] for relief." *D'Ambrosio*, 2025 WL1504312, at *4.

## II.    Alternatively, the Court Should Issue a Stay Under the All Writs Act to Maintain the Status Quo and Preserve the Integrity of This Action.

In the alternative, the Court may use its authority under the All Writs Act to maintain the status quo and protect its ability to adjudicate this action. The All Writs Act is a "residual source of authority to issue writs that are not otherwise covered by statute," *Ortiz-Bonilla v. Federacion*

*de Ajedrez de Puerto Rico, Inc.*, 734 F.3d 28, 37 (1st Cir. 2013) (quotation omitted), and it should be broadly construed to "achieve all rational ends of law," *California v. M&P Investments*, 46 F. App'x 876, 878 (9th Cir. 2002) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)). "Acting pursuant to [the All Writs Act], a federal court may issue an injunction as a means to preserve its jurisdiction." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004). The All Writs Act is "routinely invoked by courts to maintain the status quo pending the resolution of cases." *Leuthavone v. Salisbury*, 2025 WL 1135588, at *2 (D.R.I. Apr. 17, 2025) (issuing stay of removal "to maintain the status quo and preserve the Court's ability to adjudicate the habeas petition"); *see also F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (noting that, in the administrative law context, the All Writs Act allows a court "to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels").

By seeking a stay under the All Writs Act, Plaintiffs do not need to show a likelihood of success on the merits. Rather, there need only be a "proceeding . . . the integrity of which is being threatened by someone else's action or behavior." *Klay v. United Healthgroup*, Inc. 276 F.3d 1092, 1102 (11th Cir. 2004). Here, the threatened detention and/or deportation of Plaintiffs would imperil these proceedings such that the Court should temporarily stay their removal.

Absent a stay of removal in this case, there is an imminent risk that Defendants will detain and deport Ms. L. and Ms. M. *See supra* at 3–6. Such a result would risk upending the status quo and make it difficult, if not impossible, for them to litigate their case while detained or deported to a foreign country. *See* Moore Decl. ¶ 4. Both Plaintiffs fled their home countries due to concerns over their safety there. Ms. L. Decl. ¶ 6; Ms. M. Decl. ¶ 6. If returned to those countries, at worst, Plaintiffs may have to live in hiding; at best, Plaintiffs' ability to participate in decision-making necessary to prosecute this case would be substantially reduced. The Court's ability to continue this proceeding would be substantially hindered, if not entirely extinguished, as a result. *See Ragbir*, 2018 WL 1446407, at *12 ("Without a stay of removal, it is doubtful that Mr. Ragbir would be able to meaningfully participate in the adjudication of his petition.").

13

For her part, if detained, Ms. M. would face the additional burden of maintaining treatment for her life-threatening condition. Ms. M. Decl. ¶ 33. Detention and deportation, therefore, would threaten not only her liberty, but her life as well. Accordingly, a temporary stay will "protect[] the integrity of [this] proceeding" by ensuring that the Court can still right the wrongs that Plaintiffs allege they suffered. *Chambers*, 501 U.S. at 58 (1991) (Scalia, J., dissenting); *see also Ragbir*, 2018 WL 1446407, at *1 (discussing the power of courts to stay a removal "to maintain a party's access to the court and preserve the court's ability to adjudicate the case fully and fairly").

Courts have repeatedly issued injunctions under the All Writs Act to stay physical removal or other action that will hinder the court's ability to adjudicate the merits of a plaintiff's claim. In the prior year alone, at least two district courts have invoked the All Writs Act to stay the detention or deportation of class action plaintiffs who—like Plaintiffs here—are not challenging their removal in particular, but nonetheless faced a risk of deportation that could have stripped the issuing court of its jurisdiction. *See, e.g.*, *A.C.R.*, 2025 WL 3228840, at *18 (in class action challenging rescission of a deferred-action program for young persons with Special Immigrant Juvenile Status, court issued injunction under All Writs Act "prohibiting the government from removing the Individual Plaintiffs from the continental United States during the pendency of this litigation"); *Du*, 2025 WL 1317944 (in class action challenging termination of visa status, court issued injunction under the All Writs Act enjoining the government "from removing any Plaintiffs or putative class members from the District of Connecticut, and from deporting them from the United States"). Nor is this a new form of relief for noncitizens challenging the government's conduct. *See, e.g.*, *Kurnaz v. Bush*, 2005 WL 839542, at *2 (D.D.C. 2005) (limiting the government's ability to transfer Guantanamo detainees to foreign counties due to the likelihood that "once such transfer is effected the court would lose its jurisdiction" over the detainee's underlying challenge to his detention); *Lindstrom v. Graber*, 203 F.3d 470, 474–76 (7th Cir. 2000) (stating that the All Writs Act would justify an order staying a man's extradition, since extradition would terminate the district court's jurisdiction over his habeas challenge to the extradition).

**CONCLUSION**

Plaintiffs are not, as Defendants have publicly claimed, "suing so they can remain in the country illegally without any consequence or penalty." *Supra* at 4. They are suing to stop Defendants' illegal imposition of excessive fines, which violates the Constitution and the APA. Plaintiffs are seeking only a temporary—not a permanent—stay of their removal to preserve the status quo, prevent Plaintiffs from suffering irreparable harm, and ensure the Court can adjudicate this controversy. Accordingly, Plaintiffs Maria L. and Nancy M. respectfully request that the Court stay their detention for immigration-related reasons or deportation during the pendency of this proceeding.

15

Dated: January 7, 2026

Respectfully submitted,

/s/ Charles Moore

Hasan Shafiqullah*
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

Richard Caldarone*
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
P.O. Box 786100
San Antonio, TX 78278
(210) 960-3206
richard.caldarone@raicestexas.org

David Bennion*
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan*
Stephen Rees*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson*
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Charles Moore (BBO No. 708061)
Mariam Elbakr*
Shelby Leighton*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
melbakr@publicjustice.net
sleighton@publicjustice.net

Alina Das*
Ajay Singh†
Ximena Valdarrago†
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu
as11021@nyu.edu
xfv201@nyu.edu

Leila Nasrolahi*
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

* admitted pro hac vice
† law student rendering assistance pursuant
to Local Rule 83.5.4(k)

16