IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA L., *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>        Defendants. | Case No. 1:25-cv-13471<br>Judge George A. O'Toole, Jr. |

***AMICUS* BRIEF OF FEDERATION OF AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY AGENCY ACTION**

Matthew James O'Brien
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
Fax: (202) 387-3447
mobrien@fairus.org

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

# CONTENTS

STATEMENT OF INTEREST ................................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

    I.    Congress Made the Civil Penalties for Failing to Depart the United States Mandatory .... 2

    II.   Plaintiffs' Have Unclean Hands ............................................................................... 6

CONCLUSION ............................................................................................................................ 7

## STATEMENT OF INTEREST[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of protecting all Americans against the substantial harms of mass migration and illegal immigration.

The decision in this case will likely have an impact on the ability of the federal government to identify and deal efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR thus has direct and vital interests in the outcome of this case.

## SUMMARY OF ARGUMENT

Congress created civil fines for failing to obey a final order of removal or for failing to adhere to a voluntary departure agreement. When creating those fines, Congress used mandatory language rather than committing the fine to the discretion of immigration officials. In light of this mandatory language, the Plaintiffs are not likely to succeed on the merits of their action. The Interim Final Rule (IFR), Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations, 90 Fed. Reg. 27439 (June 27, 2025), along with any final rule, merely

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

harmonizes Department of Homeland Security (DHS) policies with the statute. Where immigration judges and the Board of Immigration Appeals follow the statute and advise the alien of the fiscal consequences for failing to abide by the voluntary departure agreement, the statutory fines attach. Under recent Supreme Court jurisprudence, agencies must adhere to the text of the statute and lack the freedom to enforce statutes in a manner inconsistent with the text.

Finally, the Plaintiffs are unlikely to succeed because they have unclean hands. Putting aside whether they even have standing to pursue some of their claims, the Plaintiffs by their own admission created the circumstances underlying this lawsuit by their own unlawful conduct. Opposition to Motion to Stay, ECF 32, at pp. 8-9 (arguing that the Plaintiffs lack standing to pursue their 8 U.S.C. §1229c claims). They therefore are estopped from asking this Court for an equitable remedy.

## ARGUMENT

### I. Congress Made the Civil Penalties for Failing to Depart the United States Mandatory

The relevant statutes the Plaintiffs cite make fines mandatory when aliens fail either to comply with a final order of removal or to abide by a voluntary departure agreement. Rules of statutory construction, as acknowledged by the Supreme Court and the First Circuit, make it clear that officials lack discretion when Congress uses mandatory language. Because the IFR merely harmonizes DHS policies with the language of the statute, Plaintiffs cannot succeed on the merits, and this Court should deny their motion to stay agency action.

When an alien fails to abide by a voluntary departure agreement, he "*shall be* subject to a civil penalty of not less than $1,000 and not more than $5,000; and *shall be* ineligible, for a period of 10 years, to receive any further relief under this section." 8 U.S.C. 1229c(d)(1) (emphasis added). Similarly, when an alien is subject to a final order of removal and fails or

2

refuses to adhere to that order, such an alien "*shall pay* a civil penalty of not more than $500 to the Commissioner for each day the alien is in violation of this section." 8 U.S.C. § 1324d(a)(2) (emphasis added).[2]

Congress added both of the relevant statutory provisions when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. 104-208, 110 Stat. 3009-546 (1996). As revealed in the House Report accompanying IIRIRA, Congress thought the penalties necessary to address the "crisis at the land border" and the problem presented by illegal immigration and alien smugglers in 1996. *See* H.R. Rep. No. 104-469 at 106-07. Specifically, Congress wanted to ensure that "[a]liens ordered removed who do not depart on time will be subject to civil penalties and excluded from certain immigration benefits." *Id*. at 108. *See also id*. at 161 ("Section 307 provides that aliens who are ordered removed or granted voluntary departure and do not depart the U.S. on time *are subject* to civil penalties and excludes them from most immigration benefits.") (emphasis added).

"As in all statutory construction cases, we begin with the language of the statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). The civil penalty provisions in each statute all use the word "shall," making the imposition of the civil penalties non-discretionary, since courts interpret the word "shall" as removing discretion from a statute. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171-72 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). *See also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580-81 (2022) (holding that 8 U.S.C. § 1231(a)(6) does not require bond hearings before immigration judges after six months of detention because the

---

[2] Both penalties have been adjusted for inflation. *See* Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations, 90 C.F.R. 27439, 27440.

3

statute gives the government discretion to hold bond hearings by using the word "may"); *Jennings v. Rodriquez*, 583 U.S. 281, 300 (2018) (holding that the word "shall" removes any ambiguity from a statute and imposes a requirement to do the thing commanded); *Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (holding that the word "shall" requires a district judge to refer a redistricting case to a three-judge court); *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020) ("[T]he statute uses the word 'shall,' which generally signals that compliance is mandatory… The word 'shall' usually creates a mandate, not a liberty.") (quotation omitted).

Congress knows how to use both permissive and mandatory language. For example, in IIRIRA § 307 (codified at 8 U.S.C. § 1253), Congress uses both types, stating in (a)(1)(D) that an alien "*shall* be fined under title 18, or imprisoned not more than four years" and in (a)(3) that a "court *may* for good cause suspend the sentence of an alien under this subsection" if certain factors are considered (emphasis added). Further, when debating what became § 1229c, Congress provided the Attorney General significant discretion in specified areas while making the penalties nondiscretionary. *See*, *e.g.*, H.R. Rep. No. 104-469 at 233.

*Jennings* is particularly applicable, as there the Supreme Court was interpreting provisions of the Immigration and Nationality Act (INA). *E.g.* 583 U.S. at 287-88. The provisions discussed in the Supreme Court's decision involve interpretation and application of the same term in this case and for the civil penalties: the word "shall." Speaking about the voluntary removal statute, the Supreme Court recently stated that "identical words and phrases within the same statute should normally be given the same meaning. And, if anything, that maxim may be doubly appropriate where, as here, Congress employed the same term in multiple places at the same time and in the same section of the same public law." *Velazquez v. Bondi*, 604

4

U.S. 721, 726 (2025). That is to say, where Congress used the word "shall" to denote mandatory actions in the INA, it did so consistently throughout that law.

In the IFR, DHS admitted that its regulations were, and are, outdated. 90 Fed Reg. at 27444. As part of this admission, DHS explained that the civil penalties "were designed in 1952 for fines against airlines and carriers that violate certain provisions of the INA" and were not updated after Congress enacted IIRIRA. *Id*. The language of the IFR largely gives effect to the mandatory penalties set forth by Congress, while recognizing that the Supreme Court and other federal courts require DHS to provide aliens due process protections before imposing the fines. *Id*. at 27457-59. Because the word "shall" removes discretion from DHS with respect to the application of fines, DHS must revise and update its policies where those policies fail to reflect the statute. *Cf. Batterton v. Francis*, 432 U.S. 416, 425 (1977) (holding that agencies have discretion where Congress expressly delegates to any agency the authority to interpret particular statutory terms). Because the IFR substantially updates the relevant civil penalty provisions of title 8 of the Code of Federal Regulations to be consistent with IIRIRA, Plaintiffs cannot succeed on the merits of their case.

Both individual Plaintiffs admit they were subject to final removal orders. Complaint, ECF 1, at ¶¶ 1, 18, 19, Motion to Stay, ECF 20, at pp. 7-8. Both admit to remaining in the United States after receiving final orders of removal. *E.g.* Complaint at ¶ 130 (Maria L "remains present in the country to pursue a humanitarian form of immigration relief and then lawful permanent residency") and ¶ 141 (Nacy M. "remains present in the country under an order of supervision with ICE while she awaits processing of an application that would allow her to obtain status as a lawful permanent resident"). *See also* Motion to Stay, ECF 20, at pp. 7-8 (same). These decisions to remain despite the final orders of removal are all that are necessary for the fines to attach. *See,*

*e.g.*, Opposition at pp. 14-15. Plaintiffs thus cannot succeed on the merits, and their motion to stay agency action should be denied.

II.     *Plaintiffs Have Unclean Hands*

The doctrine of unclean hands bars equitable relief for plaintiffs who have "engaged in certain misconduct." *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007). Though not all misconduct qualifies, when it is "directly related to the merits of the controversy between the parties," the courts will refuse to countenance the bad actions. *Id.*; *see also Emigrant Residential, LLC v. Pinti*, 134 F.4th 626, 636 (1st Cir. 2025) ("The doctrine of unclean hands denies equitable relief to one tainted with the inequitableness or bad faith relative to the matter in which it seeks relief."). The doctrine "not only prevents the wrongdoer from enjoying the fruits of his transgression but averts an injury to the public." *Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 815 (1945). Courts apply the doctrine to avoid condoning plaintiffs' inappropriate conduct, since allowing parties to pursue actions when they have created the conditions about which they complain would "make this court the abetter of iniquity." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933) (quotation omitted).

Both individual Plaintiffs, as discussed above, admit they are subject to final orders of removal and that they have deliberately remained in the United States despite those final orders of removal, thus willfully disregarding them. Opposition at pp. 3-4, 14-15. Despite their continuing, willful misconduct, which they have expressed no intention of renouncing, they ask this Court for the equitable remedy of a stay. This Court should refuse to condone their willful misconduct by countenancing that request.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion to stay agency action should be denied.

Dated: January 12, 2026                     Respectfully submitted,

/s/ Matthew J. O'Brien
Matthew James O'Brien
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
mobrien@fairus.org

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 12, 2026, a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                                           /s/ Matthew James O'Brien
                                                           Matthew James O'Brien

                                                           Attorney for *Amicus Curiae*
                                                           Federation for American Immigration Reform