**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS**

MARIA L., *et al.*,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official
capacity as Secretary of the Department of
Homeland Security, *et al.*,

*Defendants*.

No. 1:25-cv-13471-GAO

## DEFENDANTS' OPPOSED MOTION TO MODIFY THE PROTECTIVE ORDER

### BACKGROUND

Defendants respectfully move to modify the Protective Order that currently governs who may access the personally identifiable information ("PII") of the two named Plaintiffs in this case. Named Plaintiffs—Maria L. and Nancy M.—are two aliens, each subject to a final order of removal and fined under 8 U.S.C. § 1324d for "willfully fail[ing] or refus[ing] to—(A) depart from the United States pursuant to the order, (B) make timely application in good faith for travel or other documents necessary for departure, or (C) present for removal at the time and place required by the Attorney General. . ." 8 U.S.C. § 1324d. Plaintiffs initiated this action on November 20, 2025 and, shortly thereafter, filed a series of motions seeking emergency and preliminary relief: a motion seeking to stay agency action, ECF No. 19; a motion for class certification, ECF No. 21; an emergency motion for a Temporary Restraining Order ("TRO") to stay their detention and removals, ECF No. 34; and a motion to compel the production of—on an expedited basis—the administrative record surrounding rulemaking concerning the assessment of penalties for violation of two immigration

1

statutory provisions. ECF No. 66.  Defendants opposed each of these motions, ECF Nos. 32, 33, 39, and 69.

At the initiation of this lawsuit, Plaintiffs, proceeding under pseudonyms, filed a number of documents *ex parte* and under seal, ECF Nos. 4 and 23. This shielded Maria L. and Nancy M.'s true identities from Defendants, requiring Defendants to respond to Plaintiffs' motions to stay agency action and for class certification without being able to confirm their immigration histories, including the underlying circumstances that led to their removal orders, the dates on which they were ordered removed, and the status of any outstanding applications for change in status.

On December 26, 2025, Plaintiffs filed a motion for a Protective Order governing the treatment of the personally identifiable information ("PII") of the two named Plaintiffs. ECF No. 30. Under the Local Rules, Defendants' response to that motion was due fourteen days later, on January 9, 2026. However, two days before that deadline, on January 7, 2026, Plaintiffs filed an emergency motion for a TRO seeking to stay Plaintiffs' detentions and removals. ECF No. 34. On January 8, 2026, Judge Myong Joun ordered Defendants to respond to the emergency motion by the next afternoon. ECF No. 37.  Because the parties were still negotiating the terms of the Protective Order, Defendants were required to oppose Plaintiffs' emergency motion without knowing the true identities of the named Plaintiffs. Defendants filed their opposition on January 9, 2026. ECF No. 39. Meanwhile, on January 8, 2026, Defendants indicated that they did not oppose Plaintiffs' motion for a Protective Order. ECF No. 38.

On January 9, 2026, Judge Joun temporarily granted Plaintiffs' request to stay the detention and removal of Maria L. and Nancy M., ordering that, "[u]ntil such time that Judge O'Toole is able to review and resolve Plaintiffs' Emergency Motion for a Temporary

2

Restraining Order and Stay of Detention and Removal, Doc. No. 34, Defendants shall not detain or remove Plaintiffs Maria L. and Nancy M." ECF No. 40. The minute entry further stated: "In order to ensure that Defendants are able to comply with this Order, Plaintiff[s'] motion for a protective order, Doc. No. 30, is GRANTED, and subject to that protective order, Plaintiffs shall provide to the Defendants the true names and other identifying information of Plaintiff Maria L. and Nancy M." *Id.*

Undersigned counsel immediately began working with the Defendant Agencies, particularly U.S. Immigration and Customs Enforcement ("ICE"), to implement the Court's order. Doing so required sharing Plaintiffs' PII with three officials—two ICE Assistant Field Office Directors ("AFOD"), as well as the ICE Office Principal Legal Advisor ("OPLA") Deputy Regional Counsel—so they could insert the appropriate banner warnings into Maria L. and Nancy M.'s profiles within ICE's ENFORCE Alien Removal Module ("EARM") database. The Government understood these ICE officials to be "counsel for Defendants" and "agents of counsel for Defendants" under Paragraph 4(a) of the Protective Order. When DOJ counsel communicated this understanding to Plaintiffs' counsel, however, it became clear that the Parties do not read the Protective Order the same way. Plaintiffs' counsel took the position that all agency personnel—including attorneys—are "other persons" under Paragraph 4(c) requiring "prior written consent of Plaintiffs or. . . order of the Court" before they could have access to the PII. On that basis, Plaintiffs' counsel instructed DOJ counsel to withhold the PII from the three ICE officials, whose involvement was required to implement the temporary stay of removal, until Defendants produced Exhibit A forms signed by each.

Although Defendants disagreed with this reading of the Protective Order, to ensure immediate compliance with the Court's temporary stay, Defendants directed the two

3

AFODs and the ICE OPLA Deputy Regional Counsel to execute Exhibit A in order to be granted access to Plaintiffs' PII, thus allowing them to enter the do-not-remove warnings within EARM. Undersigned counsel provided the executed Exhibits to Plaintiffs' counsel and Plaintiffs' counsel consented to DOJ counsel sharing Plaintiffs' PII with these three ICE officials.

On May 13, 2026, the Court held an in-person Case Management Conference in Boston. *See* ECF No. 75. At that conference, the Court granted Plaintiffs' Motion for Leave to Proceed by Pseudonym, ECF No. 4, and Motion for Leave to File under Seal, ECF No. 23, to the extent there were outstanding requests following Judge Joun's earlier entry of the Protective Order. ECF No. 75. The Court further indicated that a hearing on the pending motion to stay agency action would be scheduled for July 2026. *Id.*

The exchange between the Parties while the Defendants ensured compliance with the Court's stay of removal made clear that Plaintiffs expect DOJ counsel to seek permission every single time they need to work with attorneys employed by the Defendant Agencies. Although the Defendants acceded to the Plaintiffs' narrow interpretation of Paragraph 4(a) for the limited purpose of ensuring immediate compliance with the Court's order, Defendants now seek a modification of the Protective Order to ensure Defendants can defend the interests of the United States in an efficient manner.

Defendants request the Protective Order be modified to provide that Paragraph 4(a)'s "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation" encompasses the full range of attorneys and support personnel who work for the multiple government agencies that are defendants in this lawsuit and their operational clients and partners, such as the U.S. Citizenship and Immigration Services. Defendants further request that the Court eliminate Paragraph 4(c) as that provision—which requires prior

written consent of Plaintiffs before any "other person" may access PII—serves no purpose under a proper reading of Paragraph 4(a).

## PROTECTIVE ORDER CONSTRUCTION

Paragraph 4 of the Protective Order provides that "counsel for Defendants shall not disclose or permit the disclosure of any Highly Confidential Information" except as specifically set forth in subparagraphs (a)-(c).[1] ECF No. 30-1 at 1. First, Paragraph 4(a) permits unlimited disclosure of plaintiff PII to "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation." Second, Paragraph 4(b) permits disclosure to "[th]e Court and its personnel." Paragraph 4(c) permits disclosure to "[o]ther persons only by prior written consent of Plaintiffs or upon order of the Court and on such conditions as may be agreed or ordered." Paragraph 4 further provides that "[a]ny individual identified under subsection (c) shall be bound by the terms of this protective order and shall sign the attached **Exhibit A** agreeing to be so bound."

Finally, Paragraph 7 provides "[t]his Order shall take effect when entered and shall be binding upon all *counsel of record* for Defendants and persons made subject to this Order by its terms." (emphasis added).

---

[1]Under the Protective Order, the following information is considered "Highly Confidential" PII: "(a) Plaintiffs' true names; (b) Plaintiffs' date of birth and/or age; (c) Plaintiffs' address and general geographic location; (d) Plaintiffs' country of origin; (e) Plaintiffs' Alien Registration Number; (f) The month and day of Plaintiffs' removal orders; (g) The amount of Plaintiffs' fine, the dates of fine service, and all other information contained in notices that could be used to identify Plaintiffs; (h) The penalty tracking numbers related to Plaintiffs' civil penalties and fine notice; (i) The specific immigration relief sought by Plaintiffs and all other details concerning their immigration histories; and (j) Any other PII or information that may be used to identify Plaintiffs' true identities." ECF No. 30-1 at 1-2.

## ARGUMENT

The Parties fundamentally disagree about the meaning of Paragraph 4 and what it requires of Defendants. Plaintiffs take the position that Paragraph 4(a)'s reference to "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation" excludes attorneys who work at the Defendant Agencies ("Agency Counsel") and their agents. Under Plaintiffs' interpretation, Agency Counsel with responsibility for this litigation and their agents are instead classified as "other persons" under Paragraph 4(c), and thus are required to execute Exhibit A and receive written consent of the Plaintiffs or further order of the Court before being permitted to access Plaintiffs' PII.

Defendants, on the other hand, interpret the Protective Order based on its plain language. "Counsel for Defendants (and agents of such counsel") in Paragraph 4(a) naturally encompasses the full range of attorneys and their agents whose involvement in this litigation is required to defend this lawsuit. Under Defendant's reading, "Counsel for Defendants" includes: the Department of Justice ("DOJ") trial attorneys responsible for litigating the case in court and other DOJ attorneys whose approval may be required before filings may be submitted to the Court. Moreover, just as DOJ maintains a hierarchy of attorneys with varying levels of supervisory and approval authority over this litigation, the Defendant Agencies maintain a parallel structure of agency attorneys and leadership who are similarly involved in the conduct of this case. Agency Counsel at the U.S. Department of Homeland Security ("DHS") and its components ICE and U.S. Customs and Border Protection ("CBP"), as well as the Executive Office of Immigration Review ("EOIR") (a component of DOJ) are subject to their own internal review and approval processes. All these attorneys, at both DOJ and the Defendant Agencies, require access to Plaintiff PII in order to fulfill their

respective roles and all fall naturally within the scope of "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation" under paragraph 4(a).

Defendants' understanding of the Protective Order when Defendants did not oppose Plaintiffs' proposed Protective Order is based in the plain text of the document. Crucially, if Paragraph 4(a)'s reference to "Counsel for Defendants (and agents of such counsel) with responsibility for this litigation" and Paragraph 7's "counsel of record for Defendants" referred to the identical group of DOJ attorneys, there is no reason for the Protective Order to use different language in different provisions. The natural reading is that "Counsel for Defendants (and agents of such counsel) with responsibility for this litigation" encompasses a broader set of individuals than "counsel of record"—the undersigned DOJ trial attorneys in this case and other DOJ attorneys who appear in Defendants' signature block on Court filings.

Finally, Plaintiffs have indicated that they expect to receive executed Exhibit A acknowledgments for their review and approval as a condition of compliance with the Protective Order. The Protective Order, however, imposes no such requirement. It neither obligates Defendants to provide executed Exhibit A forms to Plaintiffs, nor establishes any procedure for Plaintiffs to review or approve them—or, indeed, any required timeline. While Defendants did not oppose the Protective Order—as they understood it—in the emergency phases of this litigation, it is apparent through the parties' conferrals that the Protective Order is rife with ambiguities and that Plaintiffs read it to impose requirements on Defendants that are both textually unsupported and operationally unworkable.

Consistent with Federal Rule of Civil Procedure 26(c), which requires the party moving for a protective order to demonstrate "good cause" for the relief sought, *see Ameristar Jet Charter, Inc., v. Signal Composites, Inc.,* 244 F.3d 189, 192 (1st Cir. 2001), a party

seeking to modify a protective order "must demonstrate good cause for modification[,]" *Allscripts Healthcare, LLC v. DR/Decision Res., LCC*, 440 F. Supp. 3d 71, 78 (D. Mass. 2020); *see also Hayes v. McGee*, No. CIV. A. 10-40095-TSH, 2014 WL 198407, at *4 (D. Mass. Jan. 13, 2014). To meet the good cause standard, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements. *Jennings v. Family Mgmt.,* 201 F.R.D. 272, 275 (D.D.C. 2001); *see generally Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir. 1986) (finding of good cause must be based on particular factual demonstration of potential harm, not on conclusory statements). "In overseeing the parties' crafting of these orders, the trial judge has both a great discretion in administering the orders and defining their scope," and "will be given wide deference in the design and administration of such orders." *Hayes,* 2014 WL 198407, at *4 (internal citations omitted). In making the good cause determination, courts "apply a balancing test, weighing the movant's proffer of harm against the adversary's significant interest in preparing for trial." *Hardy v. UPS Ground Freight, Inc.,* Civil Action No. 317-30162-MGM, 2019 WL 13144825, at *5 (D. Mass. Oct. 7, 2019). *See also, Servicios Funerarios GG, S.A. DE C.V. v. Advent Int'l Corp.,* No. CV 23-10684-IT, 2023 WL 6977057, at *2 (D. Mass. Oct. 23, 2023) (Boal, M.J.) (Recognizing that a protective order cannot be used to deprive a party of the counsel it needs to defend itself).

As set forth below, good cause exists to modify the Protective Order. Plaintiffs' interpretation of the Protective Order imposes an unworkable burden on the Government's ability to defend this litigation and implement the Court's own orders, and a modification of the Protective Order is needed to resolve this burden. The Government's need to access its own counsel and agents to mount a defense is fundamental to the fair administration of this litigation.

**I. Agency Counsel Perform Vital Functions that Cannot be Subject to Plaintiffs' Approval**

Agency Counsel perform vital functions in litigation involving federal agencies because they are "in the best position to know or learn the facts involved in a case arising in connection with the activities of their agency as well as to have familiarity with agency practices, statutes, and regulations."  U.S. Dep't Just., Just. Manual § 4-1.430. This role and the division of responsibilities between Civil Division DOJ Counsel and Agency Counsel is outlined in Title 4 of the DOJ Justice Manual. *Id.* § 4-1.000.  While DOJ attorneys bear responsibility for drafting briefs and litigating in court, Agency Counsel carry primary responsibility for factual development. "Agency counsel has primary responsibility throughout the course of the litigation to investigate the facts, draft responses to interrogatories, provide written responses to requests for admissions, and provide draft written responses to requests for production of documents." *Id.* § 4-1.433. Agency counsel also ensure that "every response is accurate and complete," *id.*, and "may review and make timely comments on any briefs to be filed." *Id.* Finally, "[r]ecords of the agency relevant to the case can best be assembled and certifications obtained by agency counsel." *Id.* at § 4-1.430. In short, DOJ litigates the case, but Agency Counsel assemble and assist with verifying the facts of the case.  This crucial role in mounting the Government's defense cannot be made subject to Plaintiffs' approval.

Agency counsel, in turn, rely on the Defendant Agencies' non-attorney operational clients to conduct any necessary investigation to learn all relevant facts. These operational clients are the individuals within the Defendant Agencies who have direct, hands-on access to the records, systems, and institutional knowledge that Agency Counsel need to do their jobs. They run down facts, locate records, verify information, and provide the factual grounding upon which Agency Counsel's work depends. Because these non-attorney

9

operational clients perform their investigative and fact-gathering functions at the direction of and in direct support of Agency Counsel, they are properly understood as "agents of such counsel" within the meaning of Paragraph 4(a). The plain language of the Protective Order does not limit the category of agents to attorneys. It extends to all agents of counsel who have responsibility for this litigation, which necessarily includes the non-attorney operational personnel upon whom Agency Counsel rely to investigate the facts and support the defense. To read Paragraph 4(a) otherwise would be to sever Agency Counsel from the very operational support that makes their participation in the litigation necessary and meaningful.

## II. Plaintiffs' Construction is Unworkable as This Litigation Develops

At this stage, the scope of individuals within the Defendant Agencies who will need access to Plaintiffs' PII in order to support the Government's defense as this litigation progresses cannot be predicted with any precision. Plaintiffs have indicated that they intend to pursue discovery in this matter. To be clear, Defendants do not believe that discovery is necessary or appropriate in this case, but to the extent discovery may nonetheless occur, it may implicate any number of agency personnel such as officers who processed Plaintiffs' removal orders, agents who assessed the underlying civil penalties, supervisors who reviewed enforcement decisions, database administrators who maintain relevant records, and others whose identities and roles will only become apparent as discovery, should it occur, unfolds. Each of these individuals may be called upon to provide declarations, respond to interrogatories, assist in the collection of documents, or otherwise support the Government's litigation efforts, all of which will require access to Plaintiffs' PII.

As this litigation develops, the Government will almost certainly require access to subject matter experts within the Defendant Agencies with particular knowledge and expertise relevant to the specific legal and factual issues Plaintiffs have placed at the center

10

of this case. For example, depending on the nature of the humanitarian relief Maria L. is seeking, the Government may need to consult with Agency Counsel who specialize in asylum law, withholding of removal, or other forms of humanitarian protection in order to properly evaluate and respond to Plaintiffs' claims. Similarly, the legal significance of Nancy M.'s Order of Supervision ("OSUP") and its effect, if any, on the civil penalties assessed against her may require input from Agency Counsel with specialized expertise in supervision orders and their interaction with civil penalty assessment. Other subject matter experts within the Defendant Agencies—such as specialists in civil penalty assessment, removal order processing, or immigration database systems—may likewise prove essential as the litigation unfolds. Defendants cannot identify which subject matter experts will be needed until they are freely able to share Plaintiffs' PII with Agency Counsel and allow that process of factual investigation to proceed. Because Plaintiffs have proceeded pseudonymously and their identifying information has been withheld from the Defendant Agencies without executed Exhibit As and approval from Plaintiffs' counsel, the Defendants have been unable to conduct the basic inquiry necessary to determine what expertise will be required to mount a full defense. Every day that Plaintiffs' restrictive interpretation of the Protective Order remains in place is another day that the Government is prevented from identifying the right experts, reading them in on the relevant facts, and beginning the substantive work of preparing a defense.

Under Plaintiffs' construction of the Protective Order, each such individual would first need to execute an Exhibit A acknowledgment and obtain Plaintiffs' prior written consent before being permitted to see the very information necessary to fulfill those functions. That process would need to be repeated, from scratch, every time a new witness is identified, or a new declaration is needed, or a new custodian of records is located. The

11

result would be a rolling, open-ended negotiation about access to basic facts of this case running parallel to the ordinary course of litigation.

### III. The Government Cannot Identify Which Agency Personnel Need Access to Plaintiffs' A-Files Until Files are Granted and Reviewed by Agency Counsel

Further, without access to Plaintiffs' alien numbers, Agency Counsel cannot locate the immigration records of Maria L. and Nancy M. to verify that their immigration histories have been fully and accurately represented. To mount a defense, Agency Counsel must first locate and assemble the named Plaintiffs' alien files ("A-files") which are records that might exist in either or both paper and electronic form. Paper A-files are maintained at specific physical locations, such as particular field offices or storage facilities, and the identity of the personnel needed to retrieve them depends entirely on where those files happen to be housed. Electronic records are available to whomever has the appropriate credentials for the specific databases in which the records reside. In either case, Defendants cannot determine which specific agency officers will need access to Plaintiffs' PII until the file location process has already been initiated, and that process cannot begin without first providing Plaintiffs' PII, including their alien registration numbers, to DHS personnel to conduct the initial lookup.

### IV. Plaintiffs Cannot Simultaneously Demand Expedited Litigation While Imposing a Prior-Consent Protective Order Regime

The burden that Plaintiffs' construction would impose on the Government's ability to litigate is made more acute by the pace at which Plaintiffs themselves have chosen to pursue this case. Plaintiffs filed a motion to stay agency action and a motion for class certification mere days after filing their complaint. They subsequently filed an emergency motion for a Temporary Restraining Order, requiring Defendants to respond on less than twenty-four hours' notice. Most recently, Plaintiffs filed a motion to compel the

12

administrative record notwithstanding that this litigation has not yet progressed beyond its initial stages and the pleadings have not yet closed. Plaintiffs cannot simultaneously demand that the Government respond to expedited and overlapping motions practice on compressed timelines while also insisting on a protective order regime that requires Defendants to obtain Plaintiffs' advance written approval before Agency Counsel and supporting personnel can access the PII necessary to respond. The fourteen-day response period applicable under the Local Rules leaves no room for the consent-negotiation process that Plaintiffs' construction would require. If Plaintiffs intend to continue litigating at this pace, then the Government must be able to work with Agency Counsel and supporting agency personnel, witnesses, and records custodians without first clearing each individual through Plaintiffs' counsel.

Courts enter protective orders to facilitate litigation, not to erect procedural barriers that give one party effective veto power over the other's ability to prepare its defense. The most efficient and sensible path forward is to recognize that any agency personnel who are supporting this litigation—whether through records retrieval, declarations, discovery, if it occurs, or other assistance—fall within the scope of "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation" under Paragraph 4(a), and the Protective Order should be modified to expressly provide.

### V. Plaintiffs' Construction Impedes Implementation of the Court's Own Orders and Paradoxically Undermines Plaintiffs' Own Interests

The consequences of Plaintiffs' restrictive interpretation extend further still, and paradoxically, cut against Plaintiffs' own interests. The Court's temporary stay of detention and removal is implemented through ICE's EARM database, which allows ICE officers in the field to see, at the point of any potential enforcement action, that a named Plaintiff is subject to a court-ordered stay and must not be detained or removed. The effectiveness of that protection depends directly on the breadth and accuracy of the information entered into

EARM. The more people who are informed of the reason for the stay of detention and removal, the more completely and reliably those do-not-remove flags can be entered, maintained, and communicated across ICE field offices nationwide. Conversely, restricting access to Plaintiff's PII limits the Government's ability to ensure that the Court's order is fully implemented across all relevant systems and personnel. Plaintiffs thus have an interest in permitting broader access to the PII among DHS and ICE personnel, insofar as that access is what gives the Court's temporary stay its operational force. A construction of the Protective Order that impedes the Government's ability to implement the Court's own orders cannot be the correct one.

Plaintiffs may nonetheless contend that broader access to their PII among the Defendant Agencies creates an unacceptable risk of retaliatory detention or removal. That concern, however, is directly addressed by a provision that remains intact in the Protective Order regardless of how Paragraph 4(a) is construed. The Protective Order expressly provides that, "for the avoidance of doubt, in no event may the information disclosed to any individual in connection with this litigation be used to initiate additional immigration enforcement actions— i.e., detention and/or deportation—against Plaintiffs." ECF No. 30-1, ¶ 4. That prohibition is categorical and applies to every individual who receives Plaintiffs' PII under the Protective Order. Plaintiffs therefore cannot credibly argue that permitting Agency Counsel and their non-attorney agents to access PII for litigation purposes exposes them to greater enforcement risk.

While Defendants were able to implement the Court's temporary stay order by directing two ICE AFODSs and an ICE OPLA Deputy Regional Counsel to execute Exhibit A, that stopgap solution does not address the broader litigation ahead. As this case moves forward, Defendants will need Agency and other DOJ Counsel to be meaningfully involved

in this litigation, as they are in every case involving a federal government agency. Agency Counsel cannot confirm Plaintiffs' immigration histories, advise on the legal implications of those immigration histories, or help assemble the administrative record without access to Plaintiffs' PII and without the ability to confer with other personnel employed or contracted by the Defendant Agencies, including non-attorneys.

### VI. Because Paragraph 4(a) Encompasses All Litigation-Related Personnel, Paragraph 4(c) Serves No Purpose and Should be Eliminated

The foregoing makes clear that Paragraph 4(a), properly construed, encompasses the full range of individuals who will need access to Plaintiffs' PII in order to defend this litigation. If paragraph 4(a) is read as broadly as its plain language requires, there is simply no remaining category of person to whom Paragraph 4(c) would apply in the context of this litigation. Paragraph 4(c) was never intended to function as a gatekeeping mechanism over the Government's own counsel and their agents. Because Defendants' proposed construction of Paragraph 4(a) leaves no residual category of litigation-related personnel for Paragraph 4(c) to govern, the most sensible resolution is to eliminate Paragraph 4(c) entirely, as reflected in the redlined Protective Order attached. Doing so removes the source of ambiguity without altering the Protective Order's core protective purpose, which is fully preserved by the categorical anti-enforcement prohibition and the confidentiality obligations that bind all recipients of Plaintiffs' PII under Paragraph 7.

### REQUEST FOR MODIFICATION

The ambiguity regarding Paragraph 4 of the Protective Order can be resolved through a modification of the document. Defendants propose the definition of "Counsel for Defendants" in Paragraph 4(a) to expressly include: "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation (Case No. 1:25-cv-13471 (D. Mass.), including: (i) appeared DOJ attorneys or DOJ attorneys whose name appears on

15

Defendants' signature block; (ii) supervisory or other Department of Justice attorneys with responsibility for reviewing, approving, or overseeing filings made in this litigation; (iii) Department of Justice paralegals and other non-attorney staff working under attorney supervision in this litigation; (iv) attorneys employed by or detailed to the Defendant Agencies who have supervisory or operational responsibility for this litigation; and (v) non-attorney personnel employed by the Defendant Agencies whose access to PII is necessary to implement or comply with an order of this Court or whose access to Plaintiff PII is necessary to provide attorneys with the factual background and clarity necessary to litigate this case."

Defendants further request that the Court eliminate Paragraph 4(c) of the Protective Order in its entirety. As set forth above, Paragraph 4(a), properly construed, encompasses the full range of individuals who will need access to Plaintiffs' PII to defend this litigation.

A redlined version of the Protective Order reflecting the proposed revisions is attached.

Dated: June 5, 2026                Respectfully submitted,

                                   BRETT A. SHUMATE
                                   Assistant Attorney General
                                   Civil Division

                                   KRISTINA A. WOLFE
                                   Assistant Director
                                   Federal Programs Branch

                                   */s/ Alexander Severance*
                                   ALEXANDER SEVERANCE (KS Bar No 27618)
                                   Trial Attorney
                                   U.S. Department of Justice,
                                   Civil Division, Federal Programs
                                   1100 L Street, N.W.
                                   Washington, DC  20005
                                   Tel: (202) 598-3123
                                   Email: alexander.j.severance@usdoj.gov

16

## CERTIFICATE OF SERVICE

I, Alexander J. Severance, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/  *Alexander Severance*

Dated: June 5, 2026                                                    Trial Attorney

1