UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIA L., *et al.*<br><br>    *Plaintiffs*,<br><br>        v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; *et al.*<br><br>    *Defendants*. | Case No. 1:25-cv-13471-GAO<br><br>Hon. George A. O'Toole |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
<u>MODIFY THE PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

      A.      Defendants Did Not Oppose the Protective Order Despite Understanding
            that Plaintiffs Interpreted it to Limit Disclosure of Plaintiffs' PII. ........................ 2

      B.      Defendants Comply with the Protective Order by Executing Exhibit A. ............... 5

      C.      After Months of Adhering to the PO, Defendants Ask to Dramatically
            Alter It. ................................................................................................................ 6

LEGAL STANDARD.......................................................................................................... 8

ARGUMENT ....................................................................................................................... 8

I.       The Circumstances Under Which the PO Was Entered Have Not Changed. ..................... 8

II.      Defendants' Reading of the PO that They Agreed to Is Unreasonable. ............................ 9

III.    Defendants Have Not Articulated Specific Facts to Support Their Request to
          Dramatically Alter the PO. ................................................................................................ 11

IV.    Defendants' Request to Dramatically Alter the PO Would Render It Meaningless......... 13

V.     Dramatically Altering the PO Will Unfairly Prejudice Plaintiffs. ................................... 15

CONCLUSION.................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. DR/Decision Res., LLC*,
    440 F. Supp. 3d 71 (D. Mass. 2020) ..................................................................................8, 11

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ................................................................................................8, 9

*AT&T Corp. v. Sprint Corp.*,
    407 F.3d 560 (2d Cir. 2005) ..............................................................................................15

*Benitez v. DHS*,
    2026 WL 1362431 (E.D.N.Y. May 15, 2026) ............................................................11, 12, 13

*Blunt v. Lower Merion Sch. Dist.*,
    2009 WL 1259100 (E.D. Pa. May 7, 2009) .........................................................................14

*Buergofol GmbH v. Omega Liner Co., Inc.*,
    2023 WL 3863245 (D.S.D. June 7, 2023) ...........................................................................12

*Bufkin v. Collins*,
    604 U.S. 369 (2025).........................................................................................................10

*CASA, Inc. v. Trump*,
    2025 WL 2263001 (D. Md. Aug. 7, 2025) ..........................................................................14

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*,
    2026 WL 551105 (D.D.C. Feb. 26, 2026) ...........................................................................14

*Doe v. Noem*,
    2025 WL 990635 (D. Mass. Apr. 2, 2025) ..........................................................................11

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012).........................................................................................................10

*Jennings v. Family Mgmt.*,
    201 F.R.D. 272 (D.D.C. 2001)..........................................................................................8, 9

*Massachusetts v. Mylan Labs., Inc.*,
    246 F.R.D. 87 (D. Mass. 2007)....................................................................................11, 14

*Public Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988)...............................................................................................8

**Other Authorities**

Black's Law Dictionary, Counsel (12th ed. 2024) ........................................................................10

8A Wright & Miller, *Fed. Prac. & Proc.* § 2044.1 Modification of Protective
    Orders (3d ed.) ...............................................................................................................15, 16

**INTRODUCTION**

Defendants agreed to the Protective Order in this case (ECF No. 30-1, the "PO") fully aware of its terms. Without making additional attempts to obtain information from Plaintiffs under the terms of the PO, Defendants now seek to eviscerate the PO through modification. Plaintiffs have repeatedly pointed out to Defendants that there is an easy way to comply with the PO—by designating specific individuals who require access to Plaintiffs' personally identifiable information ("PII") under paragraph 4(c) of the PO. Yet, Defendants have not pursued that course of action since January 2026. Instead, Defendants merely speculate that future compliance may be difficult. ECF No. 77 ("Mot."). This speculation does not constitute good cause for Defendants' untimely request to amend the PO they agreed to and have adhered to for months of litigation.

Defendants' Motion is also based on a tortured and unreasonable reading of the PO. The PO is clear that only "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation (Case No. 1:25-cv-13471 (D. Mass.))" may obtain Plaintiffs' PII, PO ¶ 4(a), along with "[o]ther persons only by prior written consent of Plaintiffs or upon order of the Court and on such conditions as may be agreed or ordered," *id.* ¶ 4(c). Defendants propose to interpret "counsel for Defendants (and agents of such counsel)" to include a nearly limitless range of individuals, up to and including "non-attorney personnel employed by the Defendant Agencies whose access to PII is necessary to implement or comply with an order of this Court or whose access to Plaintiff PII is necessary to provide attorneys with the factual background and clarity necessary to litigate this case." Mot. at 16. That reading of the PO is inimical to its purpose: "to protect the true identities of Plaintiffs Maria L. and Nancy M., who are proceeding in this action pseudonymously, by ***restricting disclosure*** of their names and other identifying information to Defendants and third parties." PO ¶ 1 (emphasis added). Under Defendants' reading, any deportation officers, without disclosure to Plaintiffs, may access Plaintiffs' PII, and Plaintiffs would have no recourse if one of those undisclosed individuals were to use that information to effectuate Plaintiffs' detention and deportation. Defendants have not shown why it is necessary for

a broad set of potential individuals to access Plaintiffs' PII. Nor have they offered a limiting principle to ensure only those individuals who truly need Plaintiffs' PII are able to obtain it.

The Court should deny Defendants' motion, keeping in place the PO that has been in effect for months.

## BACKGROUND

### A. Defendants Did Not Oppose the Protective Order Despite Understanding that Plaintiffs Interpreted it to Limit Disclosure of Plaintiffs' PII.

Defendants' purported surprise at Plaintiffs' interpretation of the PO is mystifying, given that Defendants did not oppose the PO after Plaintiffs repeatedly explained their position.

Plaintiffs filed suit on November 20, 2025. ECF No. 1. Shortly thereafter, Plaintiffs moved the Court "for leave to allow them to proceed under pseudonyms" and to enter an order "deeming Plaintiffs' real names and Personally Identifying Information as highly confidential information subject to an 'Attorneys' Eyes Only' designation." ECF No. 4, at 1. Plaintiffs explained that they had a reasonable and legitimate fear that, "[i]f their identities are revealed, they may face retaliation, including detention and deportation." ECF No. 5, at 4–6. Plaintiffs also explained that "Defendants' lack of knowledge about Plaintiffs' individual identity will not unduly hamper their ability to defend against Plaintiffs' classwide claims," because it is not necessary to know Plaintiffs' identities to determine if Defendants violated the law when they assessed massive fines on tens of thousands of non-citizens without making the statutorily required individualized findings for each person. *See id.* at 8–9. Plaintiffs requested that the Court "order the parties to submit a proposed Protective Order that will govern the treatment of Plaintiffs' true names, Personally Identifying Information, and other confidential information." *Id.* at 9. Defendants did not oppose or otherwise respond to that motion. The Court subsequently granted that motion. ECF No. 74.

2

On December 3, Plaintiffs asked Defendants to confer about a protective order and treating Plaintiffs' identities as confidential. Ex. A, Dec. 3–8, 2025 Email Correspondence, at 6–8.[1] Following a call on December 8, Plaintiffs stated they would draft a proposed protective order and "reiterated [their] concern . . . that [Plaintiffs] face the risk of detention and deportation if their identities are revealed to the Defendants in this case." *Id.* at 1.

On December 11, Plaintiffs provided Defendants with a draft protective order. Ex. B, Dec. 11–31, 2025 Email Correspondence, at 10. That draft protective order is the same PO entered in this case. *See* PO, ECF No. 30-1. Defendants responded a week later to ask whether the reference in Paragraph 4(a) to "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation" referred to "agency counsel at the defendant agencies (and their agents)." Ex. B, at 8. Plaintiffs explained that agency counsel and their agents "would be designated under paragraph 4(c) of the PO and would sign Exhibit A agreeing to be bound by the PO," and that the "'Parties Bound' by the PO are limited to 'all counsel of record for Defendants' and those that agree to be bound by signing on to Exhibit A." *Id.* at 7. Plaintiffs also made clear that "we would not object to agency counsel and support personnel having access and being designated under paragraph 4(c) of the PO." *Id.* at 6.

On December 23, the parties again discussed the PO. *Id.* at 5. As Plaintiffs summarized after the call, Defendants represented that the individuals whom Defendants planned to designate under Paragraph 4(c) of the PO were "agency counsel at each of the Defendant agencies, as well as two to three support personnel with the credentials to pull Plaintiffs' files." *Id.* Plaintiffs' counsel further stated: "It sounds like we are in agreement on the substance of the PO, but if you have any proposed changes, please send those to me in track changes." *Id.* Later that day, counsel for the parties spoke again about a separate case management proposal by Defendants. *Id.* at 2–4. Plaintiffs rejected that proposal and requested that Defendants provide their position on the PO. *Id.* at 2. Defendants' counsel responded: "[W]e will not be able to provide a position on the

---

[1] All exhibit citations are to the Declaration of Hasan Shafiqullah ("Shafiqullah Decl.") submitted herewith

protective order until I am able to speak with agency counsel. Therefore, we oppose the protective order as it is currently structured." *Id.* at 1. Plaintiffs' counsel noted that Plaintiffs would, therefore, request that the Court enter the PO and that Defendants' counsel should inform Plaintiffs "if you get a position from agency counsel on the PO." *Id.*

On December 26, Plaintiffs filed a motion for the Court to enter the PO. ECF No. 30. The PO "is intended to protect the true identities of Plaintiffs Maria L. and Nancy M., who are proceeding in this action pseudonymously, by restricting disclosure of their names and other identifying information to Defendants and third parties," because "Plaintiffs reasonably fear retaliatory detention and deportation if their [PII], and other identifying information, is not treated as Highly Confidential Information." PO ¶ 1. The PO identifies eight categories of Plaintiffs' PII that are considered Highly Confidential Information, including Plaintiffs' true names, their date of birth, their Alien Registration Number, and other PII that could be used to identify Plaintiffs' true identities. *Id.* ¶ 2. Paragraph 4 of the PO limits disclosure of this Highly Confidential Information to "(a) Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation (Case No. 1:25-cv-13471 (D. Mass.)); (b) The Court and its personnel; [and] (c) Other persons only by prior written consent of Plaintiffs or upon order of the Court and on such conditions as may be agreed or ordered." Any individual identified under Paragraph 4(c) is required to sign Exhibit A to the PO, acknowledging the PO and agreeing "to comply with and to be bound by all terms" of the PO. *Id.*, Ex. A. The PO also makes clear that "in no event may the information disclosed to any individual be used for purposes of immigration enforcement—*i.e.*, detention and/or deportation—against Plaintiffs." *Id.* ¶ 4.

On December 31, Plaintiffs again contacted Defendants to request their position on the PO. Ex. B, at 1. Defendants did not respond regarding the PO. Shafiqullah Decl. ¶ 4.

4

On January 7, 2026, Plaintiffs sought a temporary restraining order prohibiting Defendants from detaining or removing them. ECF No. 34.[2] Defendants opposed the motion for a temporary restraining order, ECF No. 39, but stated they "*do not oppose* Plaintiffs' Motion for Protective Order (ECF No. 30) or the proposed Protective Order contained therein (ECF No. 30-1)," ECF No. 38 (emphasis added). On January 9, Judge Joun ordered that "Defendants shall not detain or remove Plaintiffs Maria L. and Nancy M.," and accordingly granted Plaintiffs' motion for a protective order "to ensure that Defendants are able to comply with this Order." ECF No. 40.

That evening, Plaintiffs provided Defendants' counsel with Plaintiffs' PII and the redacted declarations previously submitted to the Court *ex parte*, ECF Nos. 20-1, 20-2, 20-3, 22-1, 22-2, 22-3, 35-1, all subject to an "Attorneys' Eyes Only" designation. Ex. C, Jan. 9–24, 2026 Email Correspondence, at 18–19. Two days later, Defendants' counsel stated he had notified Defendants of the PO immediately following its entry. *See id.* at 18.

### B.    Defendants Comply with the Protective Order by Executing Exhibit A.

Despite their repeated complaints about the limited scope of individuals covered by Paragraph 4(a) of the PO, Defendants acknowledge they have been able to litigate this case, abide by Judge Joun's order, and comply with the PO. *See* Mot. at 2–4.

Initially, Defendants planned to effectuate Judge Joun's order by putting in place a "Z Hold" to stay Plaintiffs' detention and deportation. On January 14, 2026, Defendants stated that individuals at Defendants' field offices would be required to put a Z Hold in place and, "because these individuals at the field offices are working in furtherance of our compliance with a Court Order, we view them as agents of Defendant's Counsel with responsibility for this litigation under paragraph 4(a) of the protective order who do not need to sign on to the PO." Ex. C, at 14. Plaintiffs responded that "Paragraph 4(a) does not encompass the Defendants and their staff, given that DHS

---

[2] Because Plaintiffs filed their motion for a PO on December 26, and Defendants did not respond to Plaintiffs' requests for their position on the PO between December 23 and January 7, Defendants' assertion that Plaintiffs "filed an emergency motion for a TRO seeking to stay Plaintiffs' detentions and removals" while the parties were "still negotiating the terms of the Protective Order," Mot. at 2, is incorrect.

personnel are clearly not 'agents of counsel.'" *Id.* at 13. Plaintiffs highlighted that "Defendant can comply with the [PO] by identifying to Plaintiffs' counsel the personnel necessary to input information to implement the Z Hold and having them execute Exhibit A to the PO." *Id.* at 12.

Following a call on January 16, Plaintiffs agreed to Defendants' proposal to implement a "stay alert / do not remove alert," instead of a Z Hold, and Plaintiffs asked Defendants to "confirm that individuals entering the information in the ICE database you referenced will sign Exhibit A, agreeing to be bound by the PO." *Id.* at 9. Defendants asserted that "it's not possible" to "implement[] the stay of removal consistent with the [PO], as Plaintiffs interpret it." *Id.* at 7. Defendants' counsel explained that the method for complying with Judge Joun's order would be to place an alert "as a banner notification in the ENFORCE Alien Removal Module (EARM) database." *Id.* That alert would have to be placed by an "Enforcement and Removal Operations (ERO) officer[]." *Id.* As a result, Defendants communicated their intent to move to amend the PO. *See id.* at 8. Plaintiffs suggested—once again—that Defendants could effectuate Judge Joun's order by simply "having those implementing the [alert in ICE's database communicating the stay of removal] sign Exhibit A to the protective order." *Id.* at 6. Days later, rather than move to modify the PO, Defendants followed Plaintiffs' suggestion and identified three individuals who would sign Exhibit A to the PO, allowing them to access Plaintiffs' PII and effectuate Judge Joun's order. *Id.* at 4–5.

**C.    After Months of Adhering to the PO, Defendants Ask to Dramatically Alter It.**

Over two months later, on April 2, 2026, Defendants asked Plaintiffs to provide their position on a motion to amend the PO. Ex. D, Apr. 2–15, 2026 Email Correspondence, at 5–6. Plaintiffs requested that Defendants explain how they intended to ask that the Court modify the protective order. *Id.* at 5. In response, Defendants stated they would ask the Court to "confirm" that the language in Paragraph 4(a) of the PO includes the following:

(i)    appeared DOJ attorneys;
(ii)   supervisory or other Department of Justice attorneys with responsibility for reviewing, approving, or overseeing filings made in this litigation;

6

(iii)    Department of Justice paralegals and other non-attorney staff working under attorney supervision in this litigation;

(iv)    attorneys employed by or detailed to the Defendant Agencies who have supervisory or operational responsibility for this litigation;

(v)     non-attorney personnel employed by the Defendant Agencies whose access to PII is necessary to implement or comply with an order of this Court.

*Id.* at 4.

Given Defendants' broad request to water down the scope of Paragraph 4(a), Plaintiffs asked Defendants to provide the "positions / job titles [you] refer to [] as needing access to the PII at DOJ and the Defendant Agencies." *Id.* at 2. Despite representing they were "working on a response" to this request, Ex. E, Apr. 2–6, 2026 Email Correspondence, at 1, Defendants have since stated they "are unable to provide an exhaustive list of personnel or positions at the defendant agencies who need access to Plaintiff PII," Ex. D, at 1. Further, Defendants have taken the position that category (ii) of their request—supervisory DOJ attorneys—was not limited to "those who directly supervise [the litigation]" but instead "would include individuals like the Deputy Assistant Attorney General and other leadership who are often read in on cases and approve litigation strategy and brief arguments." Ex. E, at 1.

Plaintiffs reiterated to Defendants that "[w]e agree that category (i), DOJ attorneys who have entered an appearance in this case, have access [to Plaintiffs' PII] under the PO." Ex. D, at 1. Plaintiffs further confirmed to Defendants that "we generally agree that DOJ attorneys with direct supervisory responsibility for the litigation would fall within paragraph 4(a) of the PO." *Id.* But given Defendants' efforts to modify Paragraph 4(a) to also cover undefined "other leadership" at DOJ, as well as Defendants' refusal to indicate "which personnel you assert fall within each of categories (ii) – (v)," Plaintiffs continued to oppose Defendants' request. *Id.* Plaintiffs reiterated— as they have throughout this litigation—that "other individuals at DOJ and the other Defendants can access Plaintiffs' PII under paragraph 4(c) of the PO by signing Exhibit A." *Id.*

Defendants did not move to amend the PO for another two months. *See* Mot. Defendants' motion does not provide any further limiting principle to Defendants' request, nor does it explain

why any individual not covered by the current Paragraph 4(a) cannot simply execute Exhibit A, agree to be bound by the PO, and access Plaintiffs' PII.

## LEGAL STANDARD

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "A party to a stipulated protective order seeking to modify the order must demonstrate good cause for modification." *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 440 F. Supp. 3d 71, 78 (D. Mass. 2020). Good cause may be supported by "some relevant change in the circumstances under which the protective order was entered." *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 791 (1st Cir. 1988). As Defendants acknowledge, the "good cause standard" requires the movant to "articulate specific facts to support its request," which "cannot rely on speculative or conclusory statements." Mot. at 8 (citing *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001), and *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)).

## ARGUMENT

There is no good cause for Defendants' request to dramatically alter the PO to allow Defendants to disclose Plaintiffs' PII to countless unidentified individuals within Defendant agencies.

## I.      The Circumstances Under Which the PO Was Entered Have Not Changed.

Defendants have not identified any "relevant change in the circumstances under which the protective order was entered." *Public Citizen*, 858 F.2d at 791. There is none. Defendants have known since December 2025—and agreed when they did not oppose the PO—that Paragraph 4(a) of the PO limits disclosure of Plaintiffs' PII to only the "counsel of record for Defendants" in this action, and that all other individuals (including agency counsel and their agents) must be identified under Paragraph 4(c) of the PO and sign Exhibit A agreeing to be bound by the PO. *Supra* at 3–5.

Defendants identify no intervening circumstance since they declined to oppose the PO. Instead, Defendants speculate that, if Plaintiffs later pursue discovery in this case, additional

8

unidentified individuals—whose identities "cannot be predicted with any precision"—"may be called upon" to participate in such discovery.[3] Mot. at 10–12 (hypothesizing about the individuals who may need to be involved in Defendants' potential future discovery efforts). But as Defendants' own cases emphasize, "conjecture and generalization" will not do, *Jennings*, 201 F.R.D. at 275, because "good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements," *Anderson*, 805 F.2d at 7. Yet Defendants' request is not based on anything *other* than their "conjecture and generalization" about which individuals may one day need to access Plaintiffs' PII, and it fails to demonstrate how Defendants might be harmed by having these hypothetical individuals execute Exhibit A to the PO. Indeed, Defendants' motion has no factual support whatsoever, much less any affidavits or declarations supporting Defendants' assertions that executing Exhibit A would be too burdensome for undisclosed individuals who may in the future need access to Plaintiffs' PII. Defendants must provide more than their counsel's conclusory say-so for there to be good cause to modify the PO to which Defendants had agreed.

## II.    Defendants' Reading of the PO that They Agreed to Is Unreasonable.

Defendants' assertion that they did not oppose the PO because they supposedly parsed its language and believed "Counsel for Defendants" in Paragraph 4(a) was broader than "counsel of record" in Paragraph 7, *see* Mot. at 7, does not pass the smell test. For one, the parties had several conversations on precisely this point, with Plaintiffs explaining that Paragraph 4(a) was limited to "counsel of record for Defendants" and that agency counsel at Defendant agencies (as well as agents of agency counsel) must sign Exhibit A and agree to be bound by the PO. *See supra* at 3–5. There is no material difference between "Counsel for Defendants . . . with responsibility for this litigation (Case No. 1:25-cv-13471 (D. Mass.))" and "counsel of record for Defendants," PO ¶¶ 4(a), 7, particularly given that defense counsel has referred to *themselves* as "counsel for

---

[3] Defendants' purported concern about discovery is at odds with their steadfast refusal to conduct a Rule 26(f) conference, despite their obligation to conduct one "as soon as practicable." Fed. R. Civ. P. 26(f)(1); *see* Ex. F, Mar. 31–Apr. 30, 2026 Email Correspondence, at 1–2. At a minimum, this Court should stay Defendants' motion unless and until it authorizes discovery in this case.

Defendants," ECF No. 50, at 2. Defendants' interpretation is also nonsensical: it would make the PO only "binding upon all counsel of record for Defendants," but it would allow anybody who Defendants believe should be covered by Paragraph 4(a)—including agency counsel and employees at Defendant agencies who assist agency counsel—to access Plaintiffs' PII *without* being bound by the PO.

Indeed, Defendants' reading of Paragraph 4(a) to include all agency lawyers and agency staff defies common sense and ignores the context of the remainder of the PO. Paragraph 4(a) refers to "Counsel for Defendants (and agents of such counsel) who have responsibility for this litigation." The common understanding of the term "counsel" is "One or more lawyers who, having the authority to do so, give advice about legal matters; esp., a courtroom advocate." Black's Law Dictionary, Counsel (12th ed. 2024). Combined with the phrase "who have responsibility for this litigation," Paragraph 4(a) clearly refers to such "courtroom advocates." Defendants' reading of Paragraph 4(a) is not only implausible, but it would render Paragraph 4(c) superfluous, as Defendants concede, because all Defendants' representatives would be deemed to have "responsibility for this litigation."[4] *See* Mot. at 15; *see also Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (explaining that the canon against surplusage "favors that interpretation which *avoids* surplusage"); *Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("The canon against surplusage can be meaningful when a competing interpretation would avoid superfluity."). Paragraph 4(c) is essential precisely because Paragraph 4(a) does not permit all agency counsel and staff to access Plaintiffs' PII.

---

[4] Defendants also assert that the PO "imposes no [] requirement" that there be "review and approval" of individuals who execute Exhibit A of the PO pursuant to Paragraph 4(c). Mot. at 7. To the extent Defendants argue the text of the PO does not speak to "review and approval," they are mistaken. Paragraph 4(c) clearly states that individuals shall be designated thereunder "only by prior written consent of Plaintiffs or upon order of the Court and on such conditions as may be agreed or ordered." PO ¶ 4(c).

**III.    Defendants Have Not Articulated Specific Facts to Support Their Request to Dramatically Alter the PO.**

Defendants have not provided any evidence that the individuals included in their weakened version of Paragraph 4(a) need access to Plaintiffs' PII for Defendants to litigate this case. *See Massachusetts v. Mylan Labs., Inc.*, 246 F.R.D. 87, 91 (D. Mass. 2007) (denying request for modification where "expansive sharing of confidential information would do nothing to advance the present litigation"). Here, there is limited utility to Defendants' request for unfettered access to Plaintiffs' PII. *See Benitez v. DHS*, 2026 WL 1362431, at *6–7 (E.D.N.Y. May 15, 2026) ("[C]ases challenging immigration policies tend to hinge more on 'pure question[s] of law' than on particular facts."); *see also Doe v. Noem*, 2025 WL 990635, at *3 (D. Mass. Apr. 2, 2025) ("The value for Defendants in learning information about [Plaintiff] Doe in defending Plaintiffs' legal challenge is extremely limited."). Defendants have articulated no reason why they need to broadly disseminate Plaintiffs' PII when Plaintiffs challenge Defendants' policy or practice.

Nor does the posture of this case support Defendants' request. Briefing is complete on all the issues currently pending before the Court, including Plaintiffs' motions for an APA stay and for class certification; Defendants cannot possibly need Plaintiffs' PII now to defend against these motions. Nor is a modification necessary to ensure that Defendants can comply with Judge Joun's order, as Defendants have been able to adhere to the current PO—including identifying to Plaintiffs the few additional individuals who needed access to Plaintiffs' PII and having them execute Exhibit A to the PO—to ensure Plaintiffs are not detained or deported. *See supra* at 5–6. Defendants also have not identified any possible need that any other individual might have for Plaintiffs' PII to prepare Defendants' forthcoming motion to dismiss (which their instant motion does not mention). Defendants' speculation that some additional, unidentified individuals may at some point need access to Plaintiffs' PII is wholly insufficient to support dramatically altering the PO. *See Allscripts*, 440 F. Supp. 3d at 78 (denying request to modify protective order where movant "fail[ed] to proffer a persuasive reason for its speculation" that a modification was necessary).

11

Further, Defendants have not identified any burden to having individuals not covered by Paragraph 4(a) execute Exhibit A pursuant to Paragraph 4(c). This failure is unsurprising, given that provisions requiring individuals to acknowledge a protective order and agree to be bound by its terms are common, not burdensome, and ensure compliance with the order. *See, e.g.*, *Buergofol GmbH v. Omega Liner Co., Inc.*, 2023 WL 3863245, at \*10 (D.S.D. June 7, 2023) ("Requiring individuals to acknowledge and agree to be bound by the protective order prior to receiving protected information helps to ensure that such information is not misused, and it does so in a non-burdensome way.").[5]

Defendants complain (without any supporting declaration) that they cannot locate Plaintiffs' immigration records without additional, unidentified individuals obtaining Plaintiffs' PII. *See* Mot. at 12. But Defendants have never asked Plaintiffs to consent to any of these supposed individuals executing Exhibit A and obtaining Plaintiffs' PII for such purposes. *See* Shafiqullah Decl. ¶ 10. Given that Plaintiffs have readily consented to every individual Defendants identified, pursuant to Paragraph 4(c), as requiring access to Plaintiffs' PII (*see supra* at 6), and represented to Defendants that "we would not object to agency counsel and support personnel having access and being designated under paragraph 4(c) of the PO," Ex. B, at 6, Plaintiffs are not attempting to use the PO to prevent Defendants from "mount[ing] a defense," Mot. at 9–12. Defendants cannot seriously contend this information is truly necessary when they have never attempted to obtain this information using the PO process that has been in place for months.

Notably, in the *Benitez v. DHS* litigation, Defendants are subject to a protective order similar to the PO here. *See* Ex. G, Protective Order, No. 2:26-cv-02082, ECF No. 40-1 (E.D.N.Y. May 11, 2026). The *Benitez* protective order, like the PO here, treats "the names of any parties or declarants proceeding under pseudonym" as "Protected Material—Attorneys' Eyes Only," and it

---

[5] Defendants wrongly imply that Plaintiffs "expect to receive executed Exhibit A acknowledgments." Mot. at 7. For clarity, the PO does not require Defendants to share copies of Exhibit A, it just requires, upon consent from Plaintiffs, individuals covered by Paragraph 4(c) to execute Exhibit A. Nonetheless, Plaintiffs did request signed Exhibit As previously, and Defendants complied without protest. *See* Ex. C, at 1–3.

limits the disclosure of their personally identifiable information to Defendants' "[c]ounsel . . . including . . . associated Department of Justice personnel who agree to be bound by the protective order necessary to assist counsel in this Action, such as litigation assistants, paralegals, law students, and litigation support, information technology, information or records management, investigative, secretarial, or clerical personnel." *Id.* ¶¶ 1(c), 9(a). Others who may eventually need to access the *Benitez* Plaintiffs' PII, including "[c]urrent employees of the parties (including organizational counsel) assisting with respect to this Action" and "[w]itnesses, potential witnesses, and deponents," must execute Exhibit A to the *Benitez* protective order and agree to be bound by it. *Id.* ¶¶ 9(b), (e). There is no good cause for Defendants to be excused from the same basic protection here, which is in place for the same reason. *See Benitez*, 2026 WL 1362431, at *6–7, 9.

## IV.    Defendants' Request to Dramatically Alter the PO Would Render It Meaningless.

Defendants' request is so vague and broad that it would vitiate the purpose of the PO, which is "to protect the true identities of Plaintiffs . . . by restricting disclosure of their names and other identifying information to Defendants and third parties." PO ¶ 1. Defendants' proposed modifications to Paragraph 4(a) of the PO would permit the opposite, allowing disclosure of Plaintiffs' PII to seemingly every conceivable employee at DOJ and Defendant agencies who might be tangential to this case. *See* ECF No. 77-1. And Defendants propose to strike Paragraph 4(c) and Exhibit A in their entirety from the PO, *see id.*, thus erasing a key tool of the PO that ensures there is a paper trail of the individuals who agreed to abide by the PO before accessing Plaintiffs' PII—and provides Plaintiffs with a means to redress a violation of the PO (by moving for sanctions against the individual who violated the PO despite executing Exhibit A).

Defendants have repeatedly declined to identify which individuals would be covered by their proposed version of Paragraph 4(a). *See supra* at 7–8. Nor does Defendants' motion offer any limiting principle to ensure that only individuals who truly need access to Plaintiffs' PII are able to access it. This Court has rejected a similar request to modify a protective order to allow for the type of "amorphous and wide-ranging disclosure" that Defendants request, which contravenes the

13

very purpose of the PO's limitation on who can access Plaintiffs' PII. *Mylan Lab'ys*, 246 F.R.D. at 91 ("The defendants' well-taken fear here is that such broad disclosure would eviscerate the effectiveness of the protective order."). As other courts have noted, "limiting who can access" highly sensitive PII helps to "mitigate the concerns raised by Plaintiffs" about improper use of their PII, including "[a]ny attempt to use the information to harass or embarrass." *Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 7083238, at *5 (D. Md. Jan. 22, 2021) ("Allowing disclosure of PII with these types of protections is consistent with previous decisions by this court and others."); *see also Blunt v. Lower Merion Sch. Dist.*, 2009 WL 1259100, at *2 (E.D. Pa. May 7, 2009) (describing how a protective order's provisions limiting disclosure of PII "to a very limited group of persons involved in the litigation . . . . are significant protections that severely limit the scope of persons that will have access to the protected information and minimize the potential for unauthorized release of the information").

Moreover, Defendants' request to dramatically widen the scope of individuals who can access Plaintiffs' PII increases the risk that an individual will wrongly use it. Plaintiffs' "fear of retaliation is not speculative." *CASA, Inc. v. Trump*, 2025 WL 2263001, at *13 (D. Md. Aug. 7, 2025) ("[T]he news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them."). Defendant DHS, for example, posted the home address of Kilmar Abrego Garcia's wife, who had sued to challenge the illegal deportation of Mr. Garcia—forcing her to move into a safehouse and fear for her family's safety. *See* Chris Walker, *Abrego Garcia's Wife Moves Into Safe House After DHS Shares Her Address on X*, Truthout (Apr. 24, 2025), https://tinyurl.com/35b42rfb. Defendant ICE has also improperly obtained non-citizens' sensitive PII: the Internal Revenue Service violated the Internal Revenue Code "approximately 42,695 times by disclosing last known taxpayer addresses to ICE," and it "provided confidential taxpayer addresses to ICE in response to requests from ICE that the IRS now admits were legally deficient." *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 2026 WL 551105, at *3, *6 (D.D.C. Feb. 26, 2026). Defendant DOJ, meanwhile, "appears to have inadvertently provided Congress with sealed grand jury materials in the classified documents case against President Donald Trump,

14

an apparent violation of a judicial order blocking the agency from disclosing such information." Benjamin S. Weiss, *DOJ May Have Disclosed Secret Grand Jury Material to Congress, Violated Judicial Gag Order in Trump Classified Documents Case*, Courthouse News Serv. (Mar. 25, 2026), https://tinyurl.com/3rnshrbd. Maintaining the PO to carefully circumscribe who can access and use Plaintiffs' PII is necessary to guard against Defendants' improper disclosure of Plaintiffs' sensitive information and the harm that may result from such violations of the PO.

## V.    Dramatically Altering the PO Will Unfairly Prejudice Plaintiffs.

Watering down the PO now, after Plaintiffs have provided their PII to Defendants—in good faith reliance on the PO entered by the Court—will unfairly prejudice Plaintiffs. "It is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (quotation omitted). Wright & Miller explains that this reliance element is a "central concern":

> Another central concern is whether the material in question was produced in reliance on the protective order. Among the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. Where that has happened, changing the ground rules later is to be avoided because protective orders that cannot be relied upon will not foster cooperation through discovery.

8A Wright & Miller, *Fed. Prac. & Proc.* § 2044.1 Modification of Protective Orders (3d ed.). Defendants should not be allowed to unilaterally increase the scope of individuals who can access Plaintiffs' PII months after Plaintiffs provided this information in reliance on the far more limited provisions that Defendants did not oppose—and after Defendants backed away from the expansive scope of Paragraph 4(a) they now ask the Court to implement. *See supra* at 5–7.

It is also troubling that Defendants propose to weaken the PO's restrictions on Defendants' use of Plaintiffs' PII to retaliate against Plaintiffs with detention or deportation. *See* ECF No. 77-1, at 3 (proposing to modify the PO by adding language that only information disclosed "in connection with this litigation" cannot be used "to initiate additional" immigration enforcement

actions). Worse, to downplay this risk of retaliation, Defendants misrepresent that this provision "remains intact in the Protective Order," Mot. at 14, a statement that ignores their proposed modification to this exact provision. Defendants then proceed to quote to the Court their proposed modification of this language, not the actual language in the PO. *Compare id.* ("The Protective Order expressly provides that, 'for the avoidance of doubt, in no event may the information disclosed to any individual *in connection with this litigation* be used *to initiate additional* immigration enforcement *actions*—i.e., detention and/or deportation—against Plaintiffs.'" (emphasis added)), *with* PO ¶ 4 ("For the avoidance of doubt, in no event may the information disclosed to any individual be used for purposes of immigration enforcement—i.e., detention and/or deportation—against Plaintiffs."). Defendants' failure to correctly represent the terms of the PO to the Court underscores the need to maintain the PO as written.

Finally, Defendants' conduct violates the very purpose of Rule 1 and protective orders in general. Protective orders are designed to "facilitate the speedy and inexpensive disposition of litigation by avoiding discovery disputes." 8A Wright & Miller, *Fed. Prac. & Proc.* § 2044.1. The Rules of Civil Procedure should be used "to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, not to burden Plaintiffs and the Court with Defendants' effort to relitigate language in the PO that Defendants declined to oppose months ago.

## CONCLUSION

Defendants' Motion to Modify the Protective Order should be denied.

16

Dated: June 22, 2026

Hasan Shafiqullah[*]
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

Kristy Blumeyer-Martinez[*]
Refugee and Immigrant Center for
Education and Legal Services (RAICES)
P.O. Box 786100
San Antonio, TX 78278
(210) 469-4218
Kristy.blumeyermartinez@raicestexas.org

David Bennion[*]
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan[*]
Stephen Rees[*]
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson[*]
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Respectfully submitted,

*/s Charles Moore*

Charles Moore (BBO No. 708061)
Mariam Elbakr[*]
Shelby Leighton[*]
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
melbakr@publicjustice.net
sleighton@publicjustice.net

Alina Das[*]
Ajay Singh[†]
Ximena Valdarrago[†]
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu
as11021@nyu.edu
xfv201@nyu.edu

Leila Nasrolahi[*]
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

[*] admitted pro hac vice
[†] law student rendering assistance pursuant to Local Rule 83.5.4(k)

17