# Exhibit J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARIA L., *et al.*

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; *et al.*

*Defendants*.

Case No. 1:25-cv-13471-GAO

Hon. George A. O'Toole

**LEAVE TO FILE GRANTED SEPT. 30, 2026**

**DECLARATION OF CARL BERGQUIST IN SUPPORT OF PLAINTIFFS' MOTION TO STAY AGENCY ACTION**

I, Carl Bergquist, hereby declare under penalty of perjury the following is true and accurate to the best of my knowledge:

1. My name is Carl Bergquist, and I am the general counsel for the Coalition for Humane Immigrant Rights, known as "CHIRLA." I submit this declaration in support of Plaintiffs' Motion to Stay Agency Action, ECF No. 19, currently pending before the Court.

2. CHIRLA is a nonprofit membership-based organization organized and existing under the laws of the State of California. CHIRLA has eight offices in California, including locations in Los Angeles, Compton, and San Bernardino, and a policy office in Washington, D.C. It has more than 150 paid staff, and its members/volunteers contribute hundreds of hours of time each year. CHIRLA's membership includes U.S. citizens; noncitizens, including Deferred Action for Childhood Arrivals ("DACA") recipients; and members of mixed-status families. CHIRLA currently has approximately 52,000 members in California, most of whom reside in the greater Los Angeles area.

3. CHIRLA's mission is to create a more just society that is fully inclusive of immigrants and to advance the civil and human rights of immigrants and refugees, regardless of immigration status. To carry out its mission, CHIRLA operates a variety of programs, ranging from the provision of legal services (including removal defense, DACA renewals, assistance with U visa petitions for victims of crimes, T visa petitions for survivors of trafficking, and naturalization applications and integration training) to civic engagement, community education (including "Know Your Rights," or "KYR" campaigns), community organizing, policy advocacy, and leadership development in immigrant communities.

4. In my role as General Counsel, I have encountered community members facing civil penalties under 8 U.S.C. § 1324d. I have become familiar with the fines issued to community members by speaking with them, reviewing their files, and referring them for assistance within CHIRLA or externally.

5. I am aware of at least ten CHIRLA members and clients who have received these sorts of fines. The fines range from hundreds of thousands of dollars to over $1.82 million.

6. Of the community members who have received these fines, each is currently attempting to obtain lawful status or has been granted permission by the government to remain present in the country. At least four have applied for U visas due to being victims of crimes in the United States, one is seeking asylum, and others were granted prosecutorial discretion many years ago. (Prosecutorial discretion in the context of U.S. immigration enforcement refers to the legal authority of the Department of Homeland Security (DHS)—and specifically its enforcement arms like Immigration and Customs Enforcement (ICE)—to decide how to allocate limited enforcement resources and, in practice, it is the choice of whether or not to enforce the law against a specific individual. Here, prosecutorial discretion refers to the decision by ICE to administratively close a pending removal case in immigration court.)

7. To my knowledge, CHIRLA has not provided legal representation to any of these members regarding their fines but is providing members with advice for proceeding *pro se*.

8. The members who, to date, have filed appeals have all had their appeals denied. The fine notices and appeal denials they have been receiving are mostly identical, with the main difference being the alleged violation underlying the issuance of the fines (for example, a check mark in the box for Section 1324d fines).

9. Several of the impacted individuals have received collections notices from private debt collectors.

10. The fine notices have had widespread impacts. They have uniformly heightened the level of fear experienced by these members who all reside in communities impacted by the federal government's aggressive immigration enforcement that began in June 2025. Despite having varying degrees of protection from such enforcement through pending immigration benefit applications or previous grants of prosecutorial discretion, the notices have made members concerned that they will nonetheless now be arrested, detained and deported. Indeed, at least one member has initiated the "self-deportation process" pursuant to the misleading information that DHS and its component agencies provide with the fines notice, because they are concerned about consequences of remaining in the country with such a large fine looming.

11. Finally, the extreme sums of these fines are well beyond any ability to pay for these members. Their livelihoods, housing, and other possessions are at risk based on the threats by the government, and they and their families therefore face possible financial devastation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Los Angeles, California on the 9th day of June, 2026.



Carl Bergquist