# Exhibit K

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA L., *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; *et al.*<br><br>*Defendants*. | Case No. 1:25-cv-13471-GAO<br><br>Hon. George A. O'Toole<br><br>LEAVE TO FILE GRANTED SEPT. 30, 2026 |

**DECLARATION OF AJAY SINGH IN SUPPORT OF PLAINTIFFS' MOTION TO STAY AGENCY ACTION**

I, Ajay Singh, hereby declare under penalty of perjury the following is true and accurate to the best of my knowledge:

1. My name is Ajay Singh and I submit this declaration in support of Plaintiffs' Motion to Stay Agency Action, ECF No. 19, currently pending before the Court.

2. I am a law student at New York University School of Law ("NYU") and am a member of the NYU Immigrant Rights Clinic. The Immigrant Rights Clinic is part of Washington Square Legal Services at NYU and is directed by Alina Das, counsel of record in this case. I perform work in this matter pursuant to Local Rule 83.5.4(k). As part of my work in this case, I have regularly attended meetings with counsel and developed familiarity with the practices challenged by Plaintiffs.

3. As part of my work on this matter, I helped develop two surveys regarding fines under Sections 1229c and 1324d. The first survey was designed for attorneys representing individuals subject to fines. The other was for individuals who had received such fines and was available in English and Spanish. Both surveys were disseminated to numerous impacted

individuals and their attorneys. We collected anonymous responses to the surveys, with the intent of developing a report on the impact of the fines at issue in this case.

4. Generally, the surveys requested anonymous information on individuals' immigration histories, length of stay in the United States, and the fines they received. The survey for individual fine recipients included qualitative questions regarding the personal impact of the fines.

5. We received responses from 143 attorneys and 52 individuals who had received fines.

6. The preliminary findings from the surveys demonstrate that the majority of individuals subjected to fines under 8 U.S.C. §§ 1229c and 1324d whose cases are described in the surveys are pursuing or have received lawful status in the United States. Many individuals had in fact already obtained immigration relief and/or work authorization but were nevertheless fined by Defendants.

**Attorney Survey Results**

7. Of the 143 attorney respondents, 117 reported that their clients had removal orders, while 30 reported that their clients had voluntary departure orders.

8. Of those with removal orders whose attorneys responded to questions relating to current or pending status (110 respondents), 71% either have some form of immigration status or protection against removal or are pursuing immigration status or protection against removal. The forms of status or protection reported by survey respondents include the following: status under the Violence Against Women Act (VAWA), which allows noncitizens who are victims of abuse by certain U.S. citizen or lawful permanent resident family members to apply for immigration status; U and/or T visas, which provide legal status for victims of specific qualifying crimes or human trafficking, respectively; family-based petitions, which allow eligible relatives of U.S. citizens to obtain lawful permanent residence; and others.

9. Of those with voluntary departure orders whose attorneys responded to questions relating to current of pending status (28 respondents), 82% either have some form of

immigration status or protection against removal or are pursuing immigration status or protection against removal. The forms of status or protection reported by survey respondents include the following: VAWA, U and/or T visas, family-based petitions; and others.

10. Across the 143 respondents, 100 had appealed the fine at the time they filled out the survey. Of the survey respondents who described the basis of their appeal (93 respondents), 94% stated that their clients had not willfully failed to depart following a removal order or voluntarily failed to depart following a voluntary departure order. Each of these respondents reported that the government failed to address their arguments regarding willfulness and voluntariness on appeal.

11. Of the survey respondents who reported whether or not their clients pay taxes (101 respondents), 96% pay annual income taxes.

12. Of the survey respondents who reported their client's income and household size (58 respondents), 52% live under the federal poverty line.

**Individual Survey Results**

13. Each of the 52 individuals who received the fine and responded to the fine recipients survey indicated that they would never be able to pay the amount assessed. Most individual respondents explained that receiving the fine has had devastating consequences for their daily lives. One respondent said that they "have not been able to properly eat or sleep, crying for uncertainty of future everyday, under tremendous stress," all because of the fines. Another respondent indicated that the fines have made her nervous and her "depression has gone out of control"; she fears she will not be able to provide for herself and her daughter. Many others report loss of sleep, inability to eat, and declining health because of the fines. One said that nothing has impacted her like the fine: she cries every day, feels like everything is out of control and worries that the fine will lead to the government seizing everything she and her family own, while she pursues lawful status.

14. Several survey respondents also reported that the fines pushed them to abandon pathways for remaining in the United States while pursuing lawful status. One respondent chose

to leave the country permanently with her two children, both of whom are United States citizens. Two others abandoned pending asylum applications, and several are considering abandoning the prospect of staying in the country while pursuing relief, including a pending motion to reopen, applications for lawful permanent residency, derivative or primary U Visa applications, adjustment of status, or a family-based petition.

15. Many survey respondents reported that the financial and emotional impact of the fines extends to their loved ones, including spouses and children.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on the 15th day of June, 2026.

Ajay Singh