UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIA L., *et al.,*<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, *et al.,*<br><br>*Defendants*. | Case No. 1:25-cv-13471-GAO<br><br>Hon. George A. O'Toole<br><br>**EMERGENCY DISPOSITION REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR LEAVE TO AMEND AND SUPPLEMENT THE COMPLAINT**

In this litigation, Plaintiffs challenge Defendants' policies, practices, and rules used to assess fines on noncitizens, pursuant to 8 U.S.C. §§ 1229c and 1324d, for remaining in the country following an order of removal. On June 27, 2025, Defendants promulgated—without notice and comment—an Interim Final Rule, 90 Fed. Reg. 27439 (June 27, 2025) (the "IFR"), which removed minimal procedural safeguards regarding fines issued under Sections 1229c and 1324d and implemented an illegal process of imposing these fines without individualized consideration of whether the noncitizen had "willfully" or "voluntarily" remained in the country following a final order of removal (the "Blanket Fine Policy"). Defendants issued over 110,000 such fines—totaling well over $84 billion—under the IFR. Plaintiffs' complaint alleged that the imposition of these fines violated the Administrative Procedure Act ("APA") and the Fifth, Seventh, and Eighth Amendments to the U.S. Constitution. *See* ECF No. 1, Compl.

Plaintiffs moved under 5 U.S.C. § 705 for a stay of the Blanket Fine Policy and the IFR and all fines issued thereunder. In an order docketed on October 5, this Court held that Plaintiffs

had established that the IFR was likely contrary to law and stayed the IFR "and all fines issued thereunder" under the APA. ECF No. 114 (the "Stay Order"); *see also* Op. & Order, ECF No. 113 ("Op.").[1] Four days later, despite the Court's holding that Plaintiffs had succeeded in establishing that the IFR was likely contrary to law, Defendants announced they were adopting the IFR as proposed, with one exception to permit "acceptance of a late-filed appeal based on documented mail delivery delays that ICE finds were beyond the [noncitizen's] control." *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 91 Fed. Reg. 65390 (Oct. 14, 2026) (the "Final Rule").[2] The Final Rule took effect on October 14, 2026. *Id.*

Then, on October 26, 2026, DHS published a notice in the Federal Register, *Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) (the "Ratification Notice"). Through the Ratification Notice, DHS purported "to ratify all civil penalties issued under the interim adoption of 8 CFR part 281 from June 27, 2025, through October 13, 2026." 91 Fed. Reg. at 67325. The Ratification Notice violates this Court's Stay Order and also violates the APA for many of the same reasons as the IFR and the Final Rule.

The Final Rule will likely cause irreparable harm to tens of thousands of individuals subject to fines (or more). It does not, however, fix the issues challenged in this lawsuit. Among other things, it incorporates the same flawed evidentiary presumption as the IFR and fails to provide for an individualized evaluation of willfulness or voluntariness.

In short, despite the Stay Order, Defendants have made little to no effort to ensure that the Final Rule constitutes lawful agency action. 5 U.S.C. § 706(2)(A). In fact, they have doubled down

---

[1] Although the Court did not stay the Defendants' broader "Blanket Fine Policy," which existed before, and was incorporated into, the IFR, it found that the Blanket Fine Policy was contrary to law for the same reasons as the IFR. Op. at 13.
[2] Available at: https://www.govinfo.gov/content/pkg/FR-2026-10-14/pdf/2026-21024.pdf.

with the Ratification Notice. Accordingly, the Court should permit Plaintiffs leave to amend and supplement the Complaint. Plaintiffs concurrently move to stay or preliminarily enjoin the Final Rule and Ratification Notice.

## BACKGROUND

In the spring of 2025, Defendants began assessing civil monetary penalties under "long-ignored" provisions of the law, Op. at 1, 8 U.S.C. §§ 1229c and 1324d. Under those statutes, the government may only assess monetary penalties where an individual has been "permitted to depart voluntarily . . . and voluntarily fails to depart," 8 U.S.C. § 1229c(d)(1); and where an individual "subject to a final order of removal . . . willfully fails or refuses to . . . depart from the United States," 8 U.S.C. § 1324d.

In the first three months of the civil penalties program, from March 26, 2025, to June 26, 2025, Defendants issued 12,135 fines using 8 C.F.R. part 280. 91 Fed. Reg. at 65395. Defendants rapidly accelerated the civil penalties program by implementing the Blanket Fine Policy and presuming that individuals with removal orders who remained present in the country had committed violations of Sections 1229c and/or 1324d, without individualized consideration. ECF No. 1 ¶ 7 ("Compl."); *see also* Op. at 12 n.7, n.8 (noting that boilerplate forms, experiences of third-party declarants, and escalation of fines all supported a lack of individualized inquiry).

On June 27, 2025, Defendants Department of Homeland Security ("DHS") and Executive Office for Immigration Review ("EOIR") promulgated the IFR to impose fines "swiftly and at [] scale." 90 Fed. Reg. at 27446. The IFR severely curtailed many rights formerly held by fines recipients. In sum, the IFR called for new procedures that allowed for "the issuance of final decisions on civil penalties rather than notices of intent to fine; service of such penalty decisions and orders by regular mail rather than by delivery in person or by certified mail; shortening the

response period from thirty days to fifteen days; eliminating certain procedural provisions, including an in-person interview and certain appellate review; and authorizing DHS to reopen, reconsider, reduce, or rescind penalties at its discretion." Op. at 6 (citing 90 Fed. Reg. 27441–50). Under the IFR, from the period of June 27, 2025, to September 14, 2026, Defendants issued approximately 110,000 fines using the new procedures under 8 C.F.R. part 281. *See* 91 Fed. Reg. at 65395.

On November 20, 2025, Plaintiffs Maria L., Nancy M., and Immigrant Legal Resource Center ("ILRC") initiated this lawsuit. Both Maria L. and Nancy M. received Section 1324d fines under the IFR process while they pursued immigration relief that would allow them to adjust their status and become lawful permanent residents. Compl. ¶¶ 18–19. Both challenged their fines, but their appeals were denied. *Id.* ¶¶ 134, 145. During the litigation, Nancy M. obtained her green card. ECF No. 112-13 ¶ 25.

Plaintiffs moved to stay the Blanket Fine Policy and the IFR, as well as all fines issued thereunder, under the APA. On September 30, 2026, the Court granted Plaintiffs' motion, holding that "plaintiffs have shown a likelihood of success on the merits, irreparable harm, and that the balance of equities and the public interest support preliminary relief." Op. at 20. As to the likelihood of success on the merits, the Court held that the IFR violated the APA's notice-and-comment provisions, *id.* at 17, and, as to both the IFR and the Blanket Fine Policy, "plaintiffs have demonstrated a likelihood of success in establishing that the civil penalties appear to be intended to be imposed without individual consideration and assessment of the willfulness or voluntariness of the behavior in violation of Sections 1229c and 1324d," *id.* at 13. The Court thus entered an order staying "the Interim Final Rule . . . , and all fines issued thereunder." Stay Order at 2.

Days later, Defendants issued the Final Rule, finalizing the IFR with only a minor change. That change "permits acceptance of a late-filed appeal based on documented mail delivery delays that ICE finds were beyond the [noncitizen's][3] control." 91 Fed. Reg. at 65390. The Final Rule continues to describe the assessment of penalties as "straightforward." *E.g.*, *id.* at 65394 n.14 (describing "the straightforward and readily determinable requirements for imposing and enforcing such penalties based on information within DHS's and the [noncitizen's] possession."). It does not explain how the agencies will make individualized assessments. It does not amend the forms used to assess the fines. *Id.* at 65409 ("With respect to the second (willfulness or voluntariness) element, the penalty decision lists whether the [noncitizen] is being issued a civil penalty for willfully failing or refusing to depart the United States, or for instead, voluntarily failing to comply with a voluntary departure order. DHS does not believe that any additional information is required."). It does not specify what allegations support a willful or voluntary violation of the law. It does not describe the impact of the many forms of immigration relief available to an individual after receiving a voluntary departure or removal order. Instead, the Final Rule simply parrots the IFR and Defendants' representations before this Court: "DHS concludes that [a noncitizen's] continued presence in the United States is generally sufficient to establish the willful or voluntary failure to depart required to impose these civil penalties, absent evidence provided by the [noncitizen] on appeal to demonstrate that the [noncitizen] is not liable." 91 Fed. Reg. at 65394; *see also id.* ("DHS believes the statutory prerequisites to issue a penalty will have been met where [a noncitizen] ordered removed or granted voluntary departure is physically present in the United States beyond the time frame specified by the Immigration Judge.").

---

[3] This memorandum of law uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (citing *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020)).

Then, on October 26, 2026, DHS published *Ratification of Civil Penalties*, 91 Fed. Reg. 67325. In the Ratification Notice, Secretary Mullin purports to "ratify" the civil penalties issued under the IFR and thus "purge" any possible defects related to the lack of notice and comment, *id.* at 67325–26, despite the Court's holding that the IFR likely violated the APA's notice and comment requirements, Op. at 13–17. The Ratification Notice establishes a process through which fine recipients who claim prejudice due to the IFR can submit that claim by November 16, 2026. 91 Fed. Reg. at 67326.

DHS and EOIR provided notice of the Final Rule, effective October 14, 2026, on the afternoon of Friday, October 9, 2026. Counsel for Plaintiffs requested Defendants' consent to amend the Complaint on Monday, October 12 and later clarified that Plaintiffs also would add claims related to the Ratification Notice. On October 13 and November 5, Defendants stated that they took no position on Plaintiffs' request to amend and supplement the Complaint.

**ARGUMENT**

Because Defendants have withheld consent, Plaintiffs can amend the Complaint only with leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* A motion for leave to file an amended complaint "requires that a court examine the totality of the circumstances and exercise sound discretion in light of the pertinent balance of equitable considerations." *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962)). The totality of the circumstances supports granting Plaintiffs leave to amend. Therefore, the Court should grant Plaintiffs' motion.

The new claims raised in the First Amended and Supplemental Complaint allege that 1) the Final Rule is contrary to law and arbitrary and capricious for similar reasons as the IFR, which the Court already found likely to be unlawful and 2) the Ratification Notice violates the APA, primarily because it purports to ratify agency action that the Court already found likely to be unlawful, there is no authority for Secretary Mullin to override the IFR's substantive and procedural defects through "ratification," and it is a legislative rule that itself requires notice and comment. *See* Ex. A, Counts VIII–XII. The First Amended and Supplemental Complaint also adds a Plaintiff, Oscar N., who received separate fines under both Sections 1229c and 1324d. *E.g.*, Ex. A ¶ 30.

The claims challenging the Final Rule will be brought by Maria L., Oscar N., and the Coalition for Humane Immigrant Rights ("CHIRLA"), a "nonprofit membership-based organization organized and existing under the laws of the State of California," ECF No. 81-10 ¶ 2.[4] The claims challenging the Ratification Notice will be brought by all Plaintiffs except CHIRLA.

Among other things, CHIRLA provides legal assistance to its members, including by defending against removal proceedings, renewing Deferred Action for Childhood Arrivals ("DACA"), assisting with U and T nonimmigrant status petitions for survivors of domestic violence and trafficking, and applying for naturalization. *Id.* ¶ 3. The fines have significantly impacted CHIRLA's members by "heighten[ing] the level of fear experienced by [] members" and

---

[4] Plaintiffs' motion for class certification is pending. ECF Nos. 21–22; *see also* ECF No. 33 (Defs.' Opp'n); ECF No 49 (Pls.' Reply). Plaintiffs will file a motion for class certification that accounts for the amended complaint.

creating "concern[] that they will nonetheless now be arrested, detained and deported." *Id.* ¶ 10. As of June 2026, at least ten CHIRLA members had received fines under Section 1324d. *Id.* ¶ 5. Each of those members "is currently attempting to obtain lawful status or has been granted permission by the government to remain present in the country" and has not willfully failed to comply with the removal order. *Id.* ¶ 6. And as alleged in the proposed First Amended and Supplemental Complaint, Ex. A ¶¶ 221–22, other similarly situated CHIRLA members with removal orders, including M.G. and G.G., face an imminent risk of receiving a fine under the Final Rule given that Defendants are issuing fines at an extreme pace, with approximately 2,800 fines issued per week under the IFR, 91 Fed. Reg. at 65395, a pace that is reasonably expected to continue under the Final Rule.

Plaintiffs have standing to bring the new claims. Plaintiffs have standing to challenge the IFR. Op. at 9–10. They have standing to challenge the Ratification Notice, which purports to ratify the fines issued under the IFR, for the same reason. Maria L. and Oscar N. also have standing to challenge the Final Rule. Defendants' interpretation of the "continuing violation" doctrine places Maria L. and Oscar N. at imminent risk of receiving a fine under the Final Rule—even though they were previously fined under the IFR—under the theory that "Congress intended for [a noncitizen] to be subject to a continuing or new penalty each day he remains in the United States in violation of a removal order." 91 Fed. Reg. at 65424.

CHIRLA has associational standing to challenge the Final Rule. *See Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 265–66 (1st Cir. 2023). Its members have received fines in the past, and other members, including M.G. and G.G., face an imminent risk of receiving fines in the future. Ex. A ¶¶ 219–22; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). The "interests at stake are germane" to CHIRLA's purposes, including promoting immigrants'

rights. *See Housatonic River Initiative*, 75 F.4th at 265. And individual members' participation is not necessary to either the claim asserted or the requested prospective relief. *See id.* (citation omitted). Defendants' conduct—waiting until after the Court issued the Stay Order before issuing the Final Rule and then seeking to "ratify" the penalties subject to the Stay Order—should not be rewarded with delay. Rather, the Court should immediately grant Plaintiffs leave to amend and supplement their complaint to prevent further irreparable harm. *See* Op. at 17–19.

Moreover, the other factors courts weigh when considering whether to grant leave to amend all support granting the motion: there is no undue delay, bad faith or dilatory motive by Plaintiffs in seeking leave to amend at this time; Defendants are not prejudiced by amendment; and Plaintiffs' proposed amendments are not futile.

***First***, there is no undue delay, bad faith, or dilatory motive behind Plaintiffs' request. Plaintiffs have acted promptly to seek leave to amend and supplement their Complaint after Defendants published first the Final Rule and then the Ratification Notice. The reasons for amendment are straightforward: to challenge Defendants' use of the newly enacted Final Rule to continue imposing fines that the Court has described as "exorbitant" through a process the Court called "essentially punitive," *see* Op. at 17, 18; to challenge Defendants' unlawful attempt to transmute the invalid fines issued under the IFR into valid fines through the Ratification Notice; to add a new individual Plaintiff, Oscar N., who received fines under both statutory provisions even though he was not properly subject to either; and to add a new associational plaintiff, CHIRLA. Given that Defendants have not yet answered or otherwise responded to the Complaint, this amendment will not delay the proceedings.

***Second***, Defendants are not prejudiced by amendment. Prejudice is dependent on the facts of a given case, *Weber v. Sanborn*, 526 F. Supp. 2d 135, 142 (D. Mass. 2007), but may be measured

by whether the "timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial tactics and strategy," *Steir v. Girl Scouts of USA*, 383 F.3d 7, 12 (1st Cir. 2004) (quoting *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998)). Defendants have not yet responded to or answered the Complaint and have already stated that their motion to dismiss will be limited to challenging "this Court's Article III jurisdiction over every claim as it relates to § 1229c" and "will make purely legal arguments as to Plaintiffs' Seventh and Eighth Amendment constitutional claims." ECF No. 69 at 5, 6. The proposed amendments do not change anything related to those issues; they simply assert new claims challenging the Final Rule and Ratification Notice based on similar legal theories. Additionally, Defendants have not yet produced the administrative record. Accordingly, there is no prejudice to Defendants in allowing amendments to the Complaint.

***Third***, Plaintiffs' proposed amendments are not futile. The Court has already held that Plaintiffs' APA challenges to the IFR were likely to succeed on the merits. Op. at 10–13. Rather than address the issues identified by the Court, Defendants moved full steam ahead by adopting the Final Rule with only a single, minor change and issuing the Ratification Notice. The Final Rule is unlawful for many of the same reasons the Blanket Fine Policy and IFR are unlawful, and the Court's rationale for staying the IFR should apply equally to the Final Rule. Moreover, among other defects with the Ratification Notice, Secretary Mullin cannot vitiate the IFR's substantive and procedural defects by "ratifying" the fines issued pursuant to it. For these reasons, Plaintiffs' proposed amendments raise meritorious claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs leave to file the proposed First Amended and Supplemental Complaint.

Dated: November 6, 2026

Respectfully submitted,

/s/ Evan Henley
Hasan Shafiqullah*
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

David Bennion*
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan*
Stephen Rees*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson*
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Charles Moore (BBO No. 708061)
Shelby Leighton*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
sleighton@publicjustice.net

Alina Das*
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu

Leila Nasrolahi*
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

* admitted pro hac vice

**CERTIFICATE OF SERVICE**

I certify that, on November 6, 2026, I caused the foregoing document to be filed via the Court's CM/ECF service, which will provide electronic notice to all counsel of record.

*/s/ Evan Henley*
Evan Henley