# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARIA L., on behalf of herself and others similarly situated;

NANCY M., on behalf of herself and others similarly situated;

OSCAR N., on behalf of himself and others similarly situated;

IMMIGRANT LEGAL RESOURCE CENTER, 1458 Howard Street, San Francisco, CA 94103;

COALITION FOR HUMANE IMMIGRANT RIGHTS, 2533 West Third Street, Suite 101, Los Angeles, CA 90057,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security;

U.S. DEPARTMENT OF HOMELAND SECURITY;

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;

U.S. CUSTOMS AND BORDER PROTECTION;

RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection;

DAVID VENTURELLA, in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement;

Case No. 1:25-CV-13471-GAO

**FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT FOR VACATUR, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

TODD BLANCHE, in his official capacity as Attorney General of the United States;

U.S. DEPARTMENT OF JUSTICE;

SIRCE OWEN, in her official capacity as Acting Director of the Executive Office of Immigration Review; and

EXECUTIVE OFFICE OF IMMIGRATION REVIEW,

*Defendants*.

## TABLE OF CONTENTS

INTRODUCTION ..... 1

JURISDICTION AND VENUE ..... 7

PARTIES ..... 7

FACTUAL ALLEGATIONS ..... 10

I. Congress Passes Sections 1229c and 1324d to Impose Civil Penalties for Willful and Voluntary Violations of the Law. ..... 10

II. President Trump Imposes Civil Penalties Under Sections 1229c and 1324d for the First Time. ..... 12

III. The Second Trump Administration Abruptly Revives the Civil Fines Program. ..... 14

IV. Defendants Have Unlawfully Imposed Civil Penalties Since Early 2025. ..... 17

V. To Impose Civil Penalties "Swiftly and at Scale," Defendants Promulgate the IFR. ..... 19

VI. After the Court Stays the IFR and All Fines Issued Thereunder, Defendants Issue Nearly Identical Regulations Via the Final Rule. ..... 25

VII. Defendants Claim the Authority to Impose Civil Penalties in Violation of the U.S. Constitution. ..... 28

VIII. Defendants Pursue Collections of Civil Penalties. ..... 31

IX. Individual Plaintiffs Receive Fines for Hundreds of Thousands of Dollars. ..... 34

X. The Lack of Notice and Comment on the IFR Harms ILRC. ..... 40

XI. CHIRLA's Members Received Fines under the IFR and Face an Imminent Risk of Receiving Fines Under the Final Rule. ..... 42

XII. Secretary Mullin Unlawfully "Ratifies" Fines Imposed under the IFR. ..... 44

CLASS ACTION ALLEGATIONS ..... 47

CLAIMS FOR RELIEF ..... 50

PRAYER FOR RELIEF ..... 60

## INTRODUCTION

1. Maria L., Nancy M., and Oscar N. (collectively, the "Individual Plaintiffs"), along with the Immigrant Legal Resource Center ("ILRC") and the Coalition for Humane Immigrant Rights ("CHIRLA"), bring this lawsuit to challenge unlawful civil immigration fine regulations and related practices and to vindicate the rights of the many thousands of people who face exorbitant and illegal civil immigration fines. Individual Plaintiffs are hardworking individuals facing significant personal hardships who, like millions in this country, have been navigating the U.S. immigration system. Many of CHIRLA's members are in a similar situation. With no regard for their individual circumstances or their efforts to pursue a path to legal status, the Department of Homeland Security ("DHS") and its component agency, Immigration and Customs Enforcement ("ICE"), sent Individual Plaintiffs notices informing them they owe huge fines ranging from hundreds of thousands of dollars to roughly $1.8 million.[1] Indeed, Individual Plaintiffs are among the more than 100,000 people whom DHS has fined for allegedly willfully or voluntarily failing to depart the country. Defendants impose these civil penalties without finding, or even considering, whether the fines are appropriate in an individual case. Under new regulations—first published without public input on June 27, 2025 (the Interim Final Rule or "IFR") and then codified without material change in a Final Rule on October 14, 2026—Defendants have deprived and will deprive recipients of these fines of any meaningful opportunity to contest them. Left undisturbed, these fines will drive Individual Plaintiffs, CHIRLA members, and hundreds of thousands of other people living in the U.S. into ruinous debt, in violation of the U.S. Constitution, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").

[1] As explained below, ICE also separately fined Oscar N. $3,000 under 8 U.S.C. § 1229c.

2. None of the Individual Plaintiffs committed a violation of the law that would give rise to these civil penalties, but Defendants imposed the penalties anyway. At all relevant times, each of the Individual Plaintiffs has been in the process of pursuing legal relief that would allow them to obtain lawful status and remain present in the country. Maria L. is pursuing humanitarian relief that, if granted, would allow her to become a lawful permanent resident. Nancy M. had long remained present under an ICE order of supervision before obtaining lawful permanent residence (becoming a green card holder) while this case was pending. Oscar N. has also long remained present under an ICE order of supervision and is pursuing family-based immigration relief that would allow him to become a lawful permanent resident.

3. CHIRLA members M.G. and G.G. are similarly situated to the Individual Plaintiffs. They are each pursuing humanitarian relief that, if granted, would allow them and their minor child to become lawful permanent residents. They are not willfully violating their final orders of removal. But due to Defendants' unlawful civil penalties regulations, policy, and practices, they face an imminent risk of receiving exorbitant civil penalties anyway.

4. The INA authorizes certain monetary civil penalties when a noncitizen willfully fails to depart the country, or otherwise conspires to or takes action to hamper departure, following a final order of removal, 8 U.S.C. § 1324d(a)(1) (INA § 274D(a)(1)) (hereinafter, "Section 1324d"); or when a noncitizen voluntarily fails to depart the country after a voluntary departure order, 8 U.S.C. § 1229c(d)(1) (INA § 240B(d)(1)) (hereinafter, "Section 1229c").[2]

---

[2] This complaint uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (*citing Nasrallah v. Barr*, 590 U. S. 573, 578 n. 2 (2020)).

5. Since the introduction of civil penalties via the enactment of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") in 1996, only President Trump has ever sought to impose civil penalties on noncitizens under these provisions.

6. During President Trump's first Administration, efforts to impose civil penalties were plagued by legal controversy and widely criticized by implementing officials and targeted individuals alike. After reviewing the program, the Biden Administration ultimately concluded that the civil penalties were overly punitive and ineffective and rescinded the delegation memos authorizing ICE to issue these fines.

7. Nonetheless, on the first day of President Trump's second term, January 20, 2025, the President revived the policy and directed Defendants to assess and collect the fines at issue.

8. Defendants resumed imposing civil penalties in the Spring of 2025, deciding that all statutory requirements for a penalty—including whether the alleged violation was willful or voluntary—can be inferred from the mere facts that a removal order exists and that the individual remains in the United States, with no individualized inquiry.

9. Defendants maintain an unlawful policy or practice of imposing fines without individualized consideration of the willfulness or voluntariness of a fine recipient's conduct (the "Blanket Fine Policy"). Among other things, the Blanket Fine Policy relies on an inference that a violation occurs where (a) there is a removal or voluntary departure order and (b) the individual remains present in the country. Notably absent from the analysis is any consideration of whether the individual *willfully* or *voluntarily* failed to depart. The Blanket Fine Policy existed before Defendants issued guidance on civil monetary penalties and has been codified in regulations promulgated by Defendants.

10. Between March 26, 2025, and June 26, 2025, Defendants imposed 12,135 fines.

11. Then, on June 27, 2025, Defendants promulgated the IFR to impose these civil penalties under Sections 1229c and 1324d "swiftly and at [] scale" and to "achieve the Administration's immigration enforcement and border security objectives." *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27439, 27446 (June 27, 2025).

12. Defendants promulgated the IFR without notice and comment or a well-reasoned explanation for the drastic change in policy, adopting overnight a flawed new policy of imposing excessive fines while gutting what process had been available to targeted individuals under prior, longstanding regulations.

13. Defendants failed to give organizations like ILRC notice and the opportunity to comment on the IFR before it was promulgated, leaving them to raise their significant constitutional and legal concerns only after the fact.

14. Under the IFR, Defendants imposed roughly 110,000 civil penalties totaling over $84 billion. On information and belief, Defendants have collected a very small fraction—if any—of the fines they issued under the IFR. Indeed, at least one non-citizen tried to pay his fine but was unable to because he "doesn't have the information necessary to make a payment; the government never provided it to him. The letter he received informing him of the fines he owed had a blank field where there should have been an identification number for the online payments system."[3]

15. The Court stayed the IFR, and all fines issued thereunder, in an order dated September 30, 2026, and docketed on October 5, 2026. ECF No. 114 ("Stay Order"). The Court

---

[3] Bryce Covert, *Immigrant Wants to Pay $368,000 in Fines, But Broken Payment System Won't Let Him*, The Intercept (Aug. 20, 2026), https://theintercept.com/2026/08/20/trump-immigration-civil-fines-deport/ (reporting that several other immigrants have been unable to make any payments toward their fines).

held that the IFR violated the notice-and-comment provisions of the APA and that the IFR and Blanket Fine Policy were contrary to law because "the civil penalties appear to be intended to be imposed without individual consideration and assessment of the willfulness or voluntariness of the behavior in violation of Sections 1229c and 1324d." ECF No. 113 at 13 ("Stay Op."). In particular, the Court held that "[t]here are circumstances in which a noncitizen might remain in the country following a removal order or voluntary departure order without meeting the statutory requirements for civil penalties," for which Defendants fail to account. Stay Op. at 12.

16. Four days later, at 4:15 pm on the Friday before a holiday weekend, Defendants gave notice of a final rule codifying substantially similar regulations to those stayed by the Court. *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 91 Fed. Reg. 65390 (the "Final Rule"), https://www.govinfo.gov/content/pkg/FR-2026-10-14/pdf/2026-21024.pdf. The Final Rule was published and took effect on October 14, 2026.

17. The Final Rule uses the same evidentiary inference challenged by Plaintiffs in the original Complaint. *Compare id.* at 65394 ("DHS believes the statutory prerequisites to issue a penalty will have been met where [a noncitizen] ordered removed or granted voluntary departure is physically present in the United States beyond the time frame specified by the Immigration Judge."), *with, e.g.*, 90 Fed. Reg. 27439, 27453 (June 27, 2025) ("[F]or the failure-to-depart civil penalties, the [noncitizen's] removal order or voluntary departure order, evidence showing that the [noncitizen] was aware of the order and was warned of the consequences of failing to depart, and other evidence (including the lack of departure records) indicating that the [noncitizen] remains in the United States, will generally support an inference that the [noncitizen] is liable for a civil monetary penalty . . . .").

18. On October 26, 2026, DHS published a notice in the Federal Register purporting to ratify all fines issued under the IFR. *Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) (the "Ratification Notice"). However, ratification cannot cure a failure to engage in notice and comment rulemaking. The Ratification Notice, including the procedure it sets out for raising claims of prejudice due to the IFR, is itself a legislative rule that requires notice and comment. Moreover, it violates the Stay Order, which stayed the IFR and all fines issued thereunder. The Ratification Notice seeks to create an end-run around the APA's notice and comment procedures, the Stay Order, and this Court's review of Defendants' actions.

19. Both before and after issuing the IFR, and under the Final Rule, Defendants have imposed and will impose these substantial civil penalties in violation of the plain language of the INA; the Eighth Amendment's prohibition on excessive fines; the Seventh Amendment's jury trial guarantee; the Fifth Amendment to the U.S. Constitution; and the APA.

20. Although each of the Individual Plaintiffs was assessed civil penalties under Section 1324d, none meets the statutory criteria for either willfully failing or refusing to depart and/or conspiring or taking any action designed to prevent departure. *See* 8 U.S.C. § 1324d(a)(1), (2).

21. Moreover, although Oscar N. was also assessed a civil penalty under Section 1229c, he does not meet the statutory criteria for voluntarily failing to depart within the time specified in a voluntary departure order. 8 U.S.C. § 1229c(d)(1)(A). Fines under Sections 1229c and 1324d are mutually exclusive, but Defendants assessed both fines against Oscar N. anyway. Also, Defendants assessed the Section 1229c civil penalty against Oscar N. more than five years after the entry of the voluntary departure order, in violation of the relevant statute of limitations.

22. CHIRLA's members received fines under Defendants' unlawful policy or practice while the IFR was in effect and now face an imminent risk of fines under the Final Rule, even though they did not, and do not, meet the criteria for willfully failing or refusing to depart or for conspiring or taking action designed to prevent departure. *See* 8 U.S.C. § 1324d(a)(1), (2).

23. In sum, Defendants' actions are unlawful and have harmed Plaintiffs. Judicial intervention is, therefore, required to protect Plaintiffs' rights, grant relief from Defendants' unlawful actions, and vacate the IFR, the Final Rule, and the Ratification Notice.

## JURISDICTION AND VENUE

24. This case arises under the United States Constitution; the APA, 5 U.S.C. § 701 *et seq*.; and the INA, 8 U.S.C. § 1101 *et seq*., and its implementing regulations.

25. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (action to redress deprivation of rights secured by the Constitution of the United States).

26. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Plaintiff Maria L. resides in this district and no real property is involved in this action.

27. Pursuant to Local Rule 40.1, assignment to this Court's Eastern Division is proper because Maria L. resides in an Eastern Division county.

## PARTIES

28. Plaintiff Maria L. is a resident of eastern Massachusetts. She is subject to a final order of removal and remains present in the United States to pursue humanitarian immigration relief that would allow her to adjust her status and become a lawful permanent resident (*i.e.*, receive a green card). Defendants charged her hundreds of thousands of dollars in civil penalties under Section 1324d.

29. Plaintiff Nancy M. is a resident of southern Florida. She was subject to a final order of removal. Ms. M. was present in the United States with the permission of ICE under an order of supervision requiring annual check-ins, and she has fully complied with that order. She remained present in the United States to pursue family-based immigration relief that would allow her to become a lawful permanent resident. Defendants charged her roughly $1.8 million in civil penalties under Section 1324d. During the pendency of this action, Ms. M. obtained lawful permanent residence, meaning she is now a green card holder.

30. Plaintiff Oscar N. is a resident of Rhode Island. He received a voluntary departure order, which later converted to a final order of removal. Mr. N. is present in the United States with the permission of ICE under an order of supervision requiring periodic check-ins, and he has complied with that order since it was put in place. He remains present in the United States to pursue family-based immigration relief that would allow him to become a lawful permanent resident. Defendants charged him $3,000 in civil penalties under Section 1229c after the statute of limitations had expired, and then, after he paid that fine, separately charged him roughly $1.8 million in civil penalties under Section 1324d.

31. Plaintiff Immigrant Legal Resource Center ("ILRC") is a non-profit organization that works with immigrants, community organizations, legal professionals, and policy makers to build a democratic society that values diversity and the rights of all people. ILRC maintains its principal place of business in San Francisco, California. ILRC submitted a public comment to the IFR on July 28, 2025.

32. Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") is a non-profit membership organization whose mission is to achieve a society fully inclusive of immigrants. To further this mission, CHIRLA operates a variety of programs, ranging from the provision of legal

services to civic engagement, community education, community organizing, policy advocacy and leadership development for its members and their communities. CHIRLA maintains its principal place of business in Los Angeles, California. CHIRLA's members received civil penalties under the IFR despite pursuing avenues to lawful status, and other members, including M.G. and G.G., are at imminent risk of receiving civil penalties under the Final Rule.

33. Defendant Markwayne Mullin is the Secretary of Homeland Security and head of the U.S. Department of Homeland Security ("DHS"). He is sued in his official capacity.

34. Defendant DHS is a department of the executive branch of the United States government. DHS and its components, ICE and Customs and Border Protection ("CBP"), are the agencies of the federal government principally charged with coordinating immigration enforcement actions. DHS is responsible for the promulgation of the IFR, the Final Rule, and the Ratification Notice.

35. Defendant ICE is a component of DHS. Among ICE's duties are the administration of civil monetary penalties under the INA and reviewing appeals of such penalties. ICE is also responsible for the promulgation of the IFR and the Final Rule, and for considering all claims submitted pursuant to the Ratification Notice.

36. Defendant CBP is a component of DHS. CBP administers and collects civil monetary penalties under the INA.

37. Defendant Rodney Scott is the Commissioner of CBP. He is sued in his official capacity.

38. Defendant David Venturella is the Senior Official Performing the Duties of Director of ICE. He is sued in his official capacity.

39. Defendant Todd Blanche is the Attorney General of the United States and the head of the U.S. Department of Justice ("DOJ"). He is sued in his official capacity.

40. Defendant DOJ is the head law enforcement agency for the United States government and houses the Executive Office of Immigration Review ("EOIR"). DOJ is also responsible for the promulgation of the IFR and the Final Rule.

41. Defendant Sirce Owen is the Acting Director of EOIR. She is sued in her official capacity.

42. Defendant EOIR is a component of DOJ. EOIR is also responsible for the promulgation of the IFR and the Final Rule.

## FACTUAL ALLEGATIONS

### I. Congress Passes Sections 1229c and 1324d to Impose Civil Penalties for Willful and Voluntary Violations of the Law.

43. Congress passed the INA in 1952. Five years later, the Attorney General promulgated regulations on the "imposition and collection of fines" against noncitizens. 22 Fed. Reg. 9765, 9807 (Dec. 6, 1957). Those regulations were codified as 8 C.F.R. part 280 and applied where "a district director has reason to believe that any person has violated any of the provisions of the Immigration and Nationality Act and has thereby become liable to the imposition of an administrative fine under the Immigration and Nationality Act." *Id.*

44. Those original regulations—setting procedural safeguards on the imposition and collection of fines under the INA—are remarkably similar to the present-day version of 8 C.F.R. part 280. They require that: "Whenever a district director . . . has reason to believe that any person has violated any of the provisions of the [INA] and has thereby become liable to the imposition of an administrative fine under the [INA], he shall cause a Notice of Intention to Fine, Form I-79, to be served" on the individual subject to the fine, 8 C.F.R. § 280.1, by personal service effectuated

by in-person service, mail, or delivery to the individual's office, *id.* § 280.11. Following service, the individual has 30 days to respond, and that deadline can be extended for an additional 30 days for good cause. *Id.* § 280.12. The individual can request an interview. *Id*. Upon receiving the response, an "immigration officer shall prepare a report summarizing the evidence and containing his findings and recommendation[s]," "including [a] recommendation." *Id.* § 280.13(b). The decision is reviewed by the "district director," who informs the individual of the decision and "the reasons for such decision." *Id.* The record upon review includes "the evidence upon which such Notice was based." *Id.* § 280.14. The person then has 30 days to appeal an adverse decision to the Board of Immigration Appeals. *Id.* §§ 280.13, 1003.3(a)(2).

45. In 1996, Congress enacted IIRIRA, which established several new civil penalties.

46. One such penalty, codified in 8 U.S.C. § 1324d, imposes a fine of "not more than $500 . . . for each day" a noncitizen "willfully fails or refuses to" "depart from the United States" after receiving a final order of removal or "conspires to or takes any action designed to prevent or hamper" departure under such an order. A noncitizen receives a final order of removal if DHS finds they are subject to a fast-track procedure called "expedited removal" and do not have a significant possibility of showing eligibility for asylum or related relief, *see* 8 U.S.C. § 1225(b)(1), or if an immigration judge orders them removed following removal proceedings in immigration court, *see id*. § 1229a.

47. Another penalty in IIRIRA concerns voluntary departure, which is an order allowing a respondent in removal proceedings to leave the United States by a date certain, without being subject to a removal order. 8 U.S.C. § 1229c(a). The penalty imposes a fine of "not less than $1,000 and not more than $5,000" against a noncitizen who is "permitted to depart voluntarily

under this section and voluntarily fails to depart the United States within the time period specified." 8 U.S.C. § 1229c(d)(1).

48. Both penalties are subject to the presumptive five-year statute of limitations for civil fines. 28 U.S.C. § 2462.

49. IIRIRA also "established in the general fund of the Treasury a separate account which shall be known as the 'Immigration Enforcement Account'" and provided that any amounts collected from penalties assessed under Sections 1229c and 1324d would be deposited in that account. IIRIRA § 382(b)(1), (b)(1)(2)(B). Congress specified that this account would refund the Executive Branch for immigration enforcement activities. IIRIRA § 382(a)(b)(3)(A).

50. Defendants did not alter the procedures for assessing and collecting civil penalties in the wake of IIRIRA. On the contrary, until promulgating the IFR (a change maintained by the Final Rule), Defendants used the longstanding procedures in 8 C.F.R. part 280 for the collection of all civil penalties in the INA.

## II. President Trump Imposes Civil Penalties Under Sections 1229c and 1324d for the First Time.

51. From 1996 to 2017, no President assessed any fines under Sections 1229c or 1324d.

52. In 2017, during his first term, President Trump issued Executive Order 13768, which ordered the Secretary of DHS to "ensure the assessment and collections of all fines and penalties . . . from [noncitizens] unlawfully present in the United States." 82 Fed. Reg. 8799, 8800 (Jan. 30, 2017).

53. Under that Executive Order, ICE Acting Director Thomas Homan issued ICE Directive 10088.1, which provided ICE's official "policy regarding the assessment and collection of fines and penalties for civil violations of immigration law." *Austin Sanctuary Network v. USCIS*, 2022 WL 4356732, at *1 (S.D.N.Y. Sept. 19, 2022).

54. Starting in August 2018, ICE began issuing fines pursuant to a Notice of Intention to Fine. The civil penalties assessed from 2018 to 2021 used the procedures under 8 C.F.R. part 280 in effect at the time. *Id*.

55. The intent notice used at that time, Form I-79B, contained blank spaces to allow the official issuing the fine to include individualized allegations regarding the alleged punishable conduct.

56. From December 2018 through March 2019, over 75% of mailed notices of intent to fine were returned as undeliverable or were lost in the postal system. According to ICE's records, as of May 20, 2020, it had sent notices to 233 individuals. Of those 233 notices, 23.6% were delivered by the U.S. Postal Service, while 67.8% were not delivered and 12.4% were cancelled.

57. Of the small number of individuals who did receive fines, several challenged the fines as unlawful.

58. By the end of the first Trump Administration, ICE retained twenty-six active civil penalties cases. 90 Fed. Reg. at 27441. ICE records confirmed that the agency had sought to collect on 20 fines totaling $83,628. From these assessed invoices, ICE collected a total of $4,215.

59. On January 20, 2021, President Biden rescinded the executive order underpinning ICE's attempts to impose penalties. *See* 86 Fed. Reg. 7051 (Jan. 20, 2021).

60. DHS Secretary Alejandro N. Mayorkas rescinded the delegation memos that had authorized ICE to issue fines for failure to depart and worked with the U.S. Department of the Treasury (the "Treasury Department" or "Treasury") to cancel existing debts. In announcing the rescission of the policy, Secretary Mayorkas stated that "[t]here is no indication that these penalties promoted compliance with noncitizens' departure obligations. We can enforce our immigration

laws without resorting to ineffective and unnecessary punitive measures." *DHS Announces Rescission of Civil Penalties for Failure-to-Depart*, DHS (Apr. 23, 2021).[4]

61. Under the Biden Administration, DHS did not impose any fines against immigrants for failure to depart—in line with every other administration prior to the first Trump Administration.

62. While civil fines were no longer enforced against immigrants for failure to depart, statutory authorization for civil penalties remained. The amount of daily fines has increased incrementally over time because of the Civil Penalties Inflation Adjustment Act Improvements Act of 2015, and as a result are now $998 per day under Section 1324d, 90 Fed. Reg. 1 (Jan. 2, 2025), and a presumptive $3,000 total fine under Section 1229c, 8 C.F.R. § 1240.26(l).

63. In announcing the most recent increase to the Section 1324d penalty amount, DHS stated that the adjustment was designed to "improve the effectiveness of civil monetary penalties and [] maintain their deterrent effect." 90 Fed. Reg. at 1.

## III. The Second Trump Administration Abruptly Revives the Civil Fines Program.

64. On January 20, 2025, President Trump issued Executive Order 14159, which directed DHS Secretary Kristi Noem to take "all appropriate action to ensure the assessment and collection of all fines and penalties that [DHS] is authorized by law to assess and collect from [noncitizens] unlawfully present in the United States, including [noncitizens] who unlawfully entered or unlawfully attempted to enter the United States." 90 Fed. Reg. 8443, 8444–45 (Jan. 20, 2025).

---

[4] https://www.dhs.gov/archive/news/2021/04/23/dhs-announces-rescission-civil-penalties-failure-depart.

65. On or about January 21, 2025, Acting ICE Director Caleb Vitello signed two internal ICE delegation memos authorizing the enforcement of civil penalties under Sections 1229c and 1324d.

66. On or about February 18, 2025, Joseph Mazzara, Acting General Counsel for DHS, issued a memorandum to Secretary Noem acknowledging that ICE had begun identifying individuals to fine under Sections 1229c and 1324d. *See also* 90 Fed. Reg. at 27442 (citing ICE Deleg. Order No. 003–2025, *Delegation of Authority to Administer and Enforce Certain Provisions Relating to Civil Penalties for Failure to Depart* (Mar. 17, 2025); ERO Deleg. Order No. DO99–002, *Redelegation of Authority to Administer and Enforce Provisions Relating to Civil Penalties for Failure to Depart* (Mar. 24, 2025)).

67. On May 9, 2025, the White House issued Proclamation 10935, *Establishing Project Homecoming*, 90 Fed. Reg. 20357 (May 9, 2025) (the "Proclamation"). The Proclamation announced certain actions to address what the White House characterized, without support, as a "full-scale invasion of [noncitizens] entering and remaining in the country illegally." *Id.* at 20357. These actions included "financial incentives to encourage and assist [noncitizens] illegally in the country to elect to depart from the United States." *Id.*

68. The Proclamation instructed the DHS Secretary to "conduct a nationwide communications campaign to notify" unspecified noncitizens of "the sweeping consequences" of remaining present in the country. *Id.* at 20358. Among the consequences specifically highlighted by the Proclamation were threats of "the garnishment of wages[] and the confiscation of savings and personal property, including homes and vehicles." *Id.*

69. Defendants began assessing civil penalties under Sections 1229c and 1324d on or around March 26, 2025, using Form I-79, "Notice of Violation and Order Under the Immigration

and Nationality Act." Unlike prior iterations of the Form I-79, the intent notices used by Defendants did not include blank spaces to fill in with the individualized assessments—as required by Sections 1229c and 1324d—explaining how the fined individual had willfully or voluntarily failed to depart.

70. Defendants assess civil penalties under Section 1229c for $3,000 and under Section 1324d at a rate of $998 per day, which can add up to approximately $1.8 million under the applicable five-year statute of limitations.

71. On June 9, 2025, DHS announced it had "issued over 9,000 fine notices to [noncitizens] for a total of almost $3 billion." *DHS Announces It Will Forgive Failure to Depart Fines for Illegal Aliens Who Self-Deport Through the CBP Home App*, DHS (June 9, 2025).[5]

72. As part of its June 9th announcement, DHS asserted that it would "forgive" any civil penalties imposed for any individual who chose to "self-deport through the CBP Home App." *Id.*

73. Of the first 10,000 civil penalties DHS issued, individuals "responded in approximately 100 cases to contest the fine, ask for additional time to respond, or request more information." 90 Fed. Reg. at 27442. DHS has not revealed the number of individuals whose fine notices were delivered.

74. Fines that pre-date the IFR are governed by the procedures in 8 C.F.R. part 280. *See* 8 C.F.R. § 281.1(h). Under those regulations, individuals subject to civil penalties: receive an intent notice via in-person service or certified mail, 8 C.F.R. § 280.11 (2011); have thirty days to challenge a decision, *id.* § 280.12; may receive an additional thirty-day extension upon a showing

[5] https://www.dhs.gov/news/2025/06/09/dhs-announces-it-will-forgive-failure-depart-fines-illegal-aliens-who-self-deport.

of good cause, *id.*; may request an in-person interview, *id.*; are entitled to review by "the district director or the Associate Commissioner for Examinations, or the Director for the National Fines Office," *id.* § 280.13(b); may appeal a decision to the Board of Immigration Appeals ("BIA"), *id.*; and may request "mitigation or remission" of a civil penalty decision, *id.* § 280.51.

**IV. Defendants Have Unlawfully Imposed Civil Penalties Since Early 2025.**

75. Even before promulgating the IFR and the Final Rule (and continuing to this day), Defendants have utilized the Blanket Fine Policy to impose civil penalties erroneously, without an individualized assessment as to whether an individual meets the requirements for having committed a willful or voluntary violation under Sections 1229c or 1324d, and in violation of the Fifth, Seventh, and Eighth Amendments to the U.S. Constitution.

76. DHS may assess penalties for a failure to depart only if the failure to depart is willful (in the case of Section 1324d) or voluntary (in the case of Section 1229c).

77. On information and belief, since early 2025, Defendants have applied a policy or practice of imposing civil penalties without making individualized assessments of willfulness or voluntariness and without considering mitigating evidence. Defendants confirm this policy or practice in the Final Rule: "[A noncitizen's] continued presence in the United States is generally sufficient to establish the willful or voluntary failure to depart required to impose these civil penalties, absent evidence provided by the [noncitizen] on appeal to demonstrate that the [noncitizen] is not liable." 91 Fed. Reg. at 65394.

78. On information and belief, since early 2025, Defendants have applied a policy or practice of affirming civil penalty decisions on appeal without making individualized assessments of willfulness or voluntariness and without considering mitigating evidence.

79. The Board of Immigration Appeals, an agency within EOIR and under the purview of Attorney General Blanche, adopted this policy or practice as to Section 1229c fines in affirming

a fine in *Matter of R-P-L-*, 29 I&N Dec. 859 (BIA 2026), without making an individualized assessment of voluntariness and without considering mitigating evidence.

80. Without making individualized assessments of willfulness or voluntariness, Defendants fail to meet the statutory prerequisites for imposing civil penalties under Sections 1229c or 1324d.

81. By imposing civil penalties without considering evidence of mitigation, Defendants exceed their authority under Sections 1229c and 1324d.

82. Since early 2025, Defendants have applied a policy or practice of finalizing civil penalties determinations without providing evidence and without otherwise corroborating the allegations that an individual has committed a violation of the INA. For example, Defendants have fined individuals with voluntary departure orders that were issued more than five years before Defendants issued a fine, and therefore outside the applicable statute of limitations. This was the case with Plaintiff Oscar N.

83. Since early 2025, Defendants have systematically failed to consider the applicable statute of limitations when imposing civil penalties under either Sections 1229c or 1324d. 28 U.S.C. § 2462.

84. Because the amounts collected for civil penalties under Sections 1229c and 1324d are used for Defendants' immigration enforcement activities, Defendants have a monetary incentive to impose, maintain, and collect civil penalties.

85. Beginning around April 2025, Defendants first imposed these penalties using the Form I-79 intent notice.

86. In contrast to the Form I-79B intent notice used during the first Trump Administration, the Form I-79 intent notice updated around April 2025 contains no blank spaces

for substantive allegations about willfulness or voluntariness. Nor does it provide space for any evidence supporting alleged violations of Sections 1229c or 1324d.

87. Instead, the April 2025 version of the Form I-79 intent notice contains minimal, generic allegations that an individual: (1) is "not a citizen or national of the United States"; (2) was either "permitted to depart voluntarily" or subject to a final order of removal; and (3) either (a) "voluntarily failed to depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for travel or other documents necessary for departure," or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." Aside from this boilerplate, the form does not otherwise provide the basis for an alleged violation of Sections 1229c or 1324d and does not inform the individual why ICE alleges that they have committed a violation. The form concludes, "IT IS INTENDED that: a civil penalty be imposed upon you."

### V. To Impose Civil Penalties "Swiftly and at Scale," Defendants Promulgate the IFR.

88. On June 27, 2025, DHS and DOJ promulgated the IFR, which governs only three of the many types of civil penalties under the INA—including the penalties in Sections 1229c and 1324d. The IFR took effect immediately and without notice and comment under the APA.

89. DHS and DOJ dispensed with notice and comment on the purported basis that the IFR falls within the exceptions to APA procedures for actions involving a "foreign affairs function of the United States," 5 U.S.C. § 553(a)(1), and "rules of agency organization, procedure, or practice," *id.* § 553(b)(A). *See* 90 Fed. Reg. at 27454–56.

90. The IFR replaced the process provided under 8 C.F.R. part 280 with an extraordinarily limited process under a new regulation, 8 C.F.R. part 281. According to the IFR, "immigration court records" were adequate to show notice of requirement to depart and that an individual's "failure to do so" "will ordinarily raise a sufficient inference that the [noncitizen]

willfully or voluntarily failed to depart." The IFR drew this conclusion because it asserted that those records "will typically demonstrate that the [noncitizen] was aware of the obligation to depart." *Id.* at 27443.

91. The IFR therefore substituted the statutory requirement—the determination of whether a failure to depart was willful or voluntary—with mere consideration of the noncitizen's continued presence in the country.

92. The IFR placed the burden on the individual to rebut the stated "inference" of liability for civil penalties, *id.* at 27450, by submitting records.

93. The IFR assumed, without evidence or explanation, that records rebutting liability under Sections 1229c and 1324d will be "in the[] possession" of the individual subject to civil penalties. *E.g.*, *id.* at 27443.

94. The IFR dispensed with the previous requirement that intent notices be delivered via personal service or certified mail in favor of service by regular mail. *Id.* at 27453. The change is notable given that over 75% of mailed notices of intent to fine that were issued from December 2018 through March 2019 had been returned as undeliverable or were lost in the postal system.

95. The IFR allowed any "[i]mmigration officer[] of [DHS], as defined in 8 C.F.R. § 1.2" to issue civil penalties decisions. 8 C.F.R. § 281.1(b). That regulation, in turn, refers to a host of federal employees, including those employed as an "aircraft pilot, airplane pilot," "fingerprint specialist" or "helicopter pilot." 8 C.F.R. § 1.2.

96. Once the notice had been mailed, the IFR contemplated that "[t]he immigration officer's decision and order will inform the [noncitizen] of the statutory basis for the penalty and the amount and type of penalty being imposed, and will include a brief statement of the reasons for the decision." 90 Fed. Reg. at 27449.

97. Individuals then had 15 business days to respond, reduced from a maximum of 60 days under the prior regulations, and there was no longer an opportunity to request an interview. *Id.* at 27450.

98. If an individual responded to the notice within 15 business days, the "appeal will be reviewed by a supervisory immigration officer who did not issue the original decision," and that reviewing officer "shall review the record de novo within 10 days after the notice of appeal is filed." 8 C.F.R. § 281.1(e)(3).

99. The record to be reviewed on appeal included "the immigration officer's decision, evidence contained in the Department's administrative files, and any written filings, briefs, documentary evidence, or other relevant material timely filed." 8 C.F.R. § 281.1(e)(4).

100. The IFR did not consider which records—including but not limited to grants of deferred action, applications for immigration benefits, or orders of supervision—may demonstrate that an individual's continued presence does not constitute a willful or voluntary failure to depart.

101. Only upon request would Defendants "provide copies of pertinent documentation and records relevant to the penalty," and even if such materials are requested, Defendants did not have to provide them if they deem "such records are law enforcement sensitive or disclosure is prohibited by law." 8 C.F.R. § 281.1(e)(4).

102. "In all cases, the designated supervisory immigration officer shall issue a final decision in writing no later than 45 days after the notice of appeal was filed and shall serve it on the" individual via regular mail. 8 C.F.R. § 281.1(e)(3).

103. "[T]he supervisory officer's decision is the final agency action unless the Secretary of Homeland Security certifies the decision for review" *sua sponte*. 90 Fed. Reg. at 27450.

104. Under the IFR, individuals were no longer permitted to seek appellate review before the Board of Immigration Appeals. *Id.*

105. Under the IFR, individuals were no longer permitted to request rescission or mitigation of the civil penalties assessed. *Id.* at 27448.

106. Under the IFR, individuals were no longer permitted to request reconsideration or reopening of a penalty decision. *Id.* at 27450.

107. "In sum, a civil penalty decision generally bec[ame] final under the IFR's procedures, and DHS [could] begin collection efforts: (1) 15 days business days [*sic*] after DHS serves the initial decision" via regular mail, "if the [noncitizen] does not contest the decision or fails to respond[;] or (2) no later than 45 days after the [noncitizen] contests the fine." *Id.*

108. The IFR justified these draconian changes by repeatedly asserting that the civil penalties at issue are "straightforward" and "readily verifiable." *Id.* at 27442–46, 27748, 27750, 27752–53. But the IFR failed to consider, much less define, what constitutes a willful or voluntary failure to depart under Sections 1229c and 1324d.

109. Instead, the IFR asserted, without support, that, "[i]n the vast majority of these cases," all that is needed to impose a civil penalty is "DHS documentary evidence or conduct observed by an immigration officer." *Id.* at 27450. It did not explain how numerous circumstances—including but not limited to a grant of deferred action, a pending application for an immigration benefit, an order of supervision, or the intention to pursue lawful adjustment of status or other immigration relief—impact liability for the fines. Each of those circumstances renders civil penalties inapplicable because an individual's continued presence does not constitute a willful or voluntary violation of the law.

110. For instance, many legal remedies are available to individuals who have a final order of removal that nonetheless allow them to remain lawfully present in the United States. Those types of relief include, but are not limited to, the grant of deferred action pursuant to a bona fide determination of eligibility for U non-immigrant status for victims of certain enumerated crimes; current U status; a bona fide determination of eligibility for T non-immigrant status for survivors of human trafficking; current T status; deferred action pursuant to an approved Violence Against Women Act ("VAWA") self-petition; deferred action upon approval of a petition for Special Immigrant Juvenile status ("SIJS"); temporary protected status; Deferred Enforced Departure; Continued Presence for trafficking survivors; Deferred Action for Childhood Arrivals ("DACA"); pending immediate relative adjustment under 8 U.S.C. §§ 1225(a) or (i) (INA §§ 245(a) or (i)) for arriving noncitizens; application for lawful permanent residency through consular processing with a Form I-212 application for permission to reapply for admission into the United States after deportation or removal and a Form I-601A provisional waiver of unlawful presence; lawful permanent residency following a period of U, T, or SIJS status or pursuant to an approved VAWA self-petition; or being subject to an ICE order of supervision. Nor did Defendants consider that a stateless individual has no ability to depart.

111. An individual with any of these types of status, or who intends to pursue these legal avenues, does not satisfy the requirement under Sections 1229c and 1324d that a failure to depart be willful or voluntary because that individual remains present in the country either with DHS's own authorization or to pursue immigration relief that would allow them to obtain lawful status and, thus, remain lawfully.

112. Nor did Defendants consider mitigating factors relating to the individualized circumstances of the individual or their ability to pay the fine when assessing the fine amount under Sections 1229c and 1324d.

113. After promulgating the IFR, Defendants transformed the form used to impose fines from Form I-79 into a new DHS Form 281, "Notice of Violation and Order Under the Immigration and Nationality Act." The new violation notice contains purported findings that an individual: (1) is "not a citizen or national of the United States"; (2) was either "permitted to depart voluntarily" or subject to a final order of removal; and (3) that they either (a) "failed to voluntarily depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for travel or other documents necessary for departure"; or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." The violation notice concludes, "IT IS ORDERED that a civil penalty be imposed upon you."

114. When completing the violation order, the immigration officer merely checks a box next to one or more of the boilerplate allegations that a noncitizen (a) "failed to voluntarily depart the United States within the time period specified" or (b) "willfully failed or refused to" "depart," "make timely application for travel or other documents necessary for departure"; or "present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]." The notice contains no further factual findings or evidence.

115. The previous process under 8 C.F.R. part 280 remains in place for other civil penalties, including "carrier fines that are issued against entities such as airlines, shipping lines, cruise lines, train and bus companies, and international bridge authorities for various violations

under the INA," 90 Fed. Reg. at 27447–48, and for fine notices issued under Sections 1229c and 1324d before the June 27, 2025, effective date of the IFR, *id*. at 27449.

### VI. After the Court Stays the IFR and All Fines Issued Thereunder, Defendants Issue Nearly Identical Regulations Via the Final Rule.

116. In an order dated September 30, 2026, and docketed on October 5, 2026, the Court issued an order staying the IFR and all fines issued thereunder. ECF No. 114.

117. Four days after the order was docketed, at 4:15pm on Friday, October 9, 2026, on the eve of a holiday weekend, Defendants gave notice of the Final Rule, titled "Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations," which was published and took effect on October 14, 2026.

118. The Final Rule "finalizes the IFR with one change: it permits acceptance of a late-filed appeal based on documented mail delivery delays that ICE finds were beyond the [noncitizen's] control." 91 Fed. Reg. at 65390. Otherwise, it leaves intact the regulations promulgated by the IFR, 8 C.F.R. part 281.[6]

119. Notably, the Final Rule adopts the approach articulated in the IFR and used by Defendants to assess civil penalties under the IFR: "DHS concludes that [a noncitizen's] continued presence in the United States is generally sufficient to establish the willful or voluntary failure to depart required to impose these civil penalties, absent evidence provided by the [noncitizen] on appeal to demonstrate that the [noncitizen] is not liable." *Id.* at 65394; *see also id.* ("DHS believes the statutory prerequisites to issue a penalty will have been met where a[] [noncitizen] ordered removed or granted voluntary departure is physically present in the United States beyond the time frame specified by the Immigration Judge.").

---

[6] As alleged below, the single change to the appellate process does not cure the numerous procedural due process issues with the IFR and the Final Rule, including the lack of a sufficient appellate review process.

120. The Final Rule does not modify DHS Form 281, "Notice of Violation and Order under the Immigration and Nationality Act," used to impose the fines, which "do[es] not contain any specific allegations regarding why an individual's conduct resulted in the penalty." ECF 113 at 11–12. The Final Rule adopts the same form. 91 Fed. Reg. at 65409 ("With respect to the second (willfulness or voluntariness) element, the penalty decision lists whether the [noncitizen] is being issued a civil penalty for willfully failing or refusing to depart the United States, or for instead, voluntarily failing to comply with a voluntary departure order. DHS does not believe that any additional information is required.").

121. In defending the IFR's changes to the process for assessing fines, Defendants claim that "ICE guidance requires the immigration officer to verify that there are no DHS records of the [noncitizen's] departure from the United States and reviews the [noncitizen's] immigration records for information suggesting that the [noncitizen's] failure to depart was not willful or voluntary."[7] *Id.* at 65394. However, Defendants have issued fines to many individuals who have such immigration records, including Nancy M., who was present under an order of supervision and had a pending application for lawful permanent residence; Maria L., who is pursuing humanitarian relief; and Oscar N., who is present under an order of supervision and has a pending application for family-based relief. Defendants have also imposed fines on lawful permanent residents and at least one United States citizen. And the pace at which Defendants are issuing fines—2,800 per week under the IFR, a pace expected to continue under the Final Rule—belies any claim that Defendants are undertaking an individualized inquiry into willfulness or voluntariness.

---

[7] The Final Rule does not cite what "ICE guidance" supposedly requires an immigration officer to take this action. Defendants have not cited or produced this guidance in this litigation. On information and belief, the fact that Defendants have issued fines to many individuals whose failure to depart was not willful or voluntary shows that such guidance either does not exist or is insufficient to prevent the government from wrongfully imposing such fines.

122. Moreover, Defendants' rationale for the presumption itself demonstrates that they are not examining a noncitizen's willfulness or voluntariness before imposing a fine. For Defendants, the presumption is valid because a removal order was entered following removal proceedings where the noncitizen was either informed of or agreed to their departure order. *See id.* But that fact is of limited relevance to the inquiry. What matters is why the noncitizen failed to depart *after* the removal order, not what they did before it.

123. Noncitizens face many barriers to filing timely appeals of these civil penalties, including lack of notice due to service by regular mail, the truncated timeframe for filing an appeal, language barriers, and difficulty obtaining counsel. Out of approximately 110,000 penalties, DHS received only 3,072 appeals. *Id.* at 65395. Therefore, DHS's failure to make an individualized determination of willfulness or voluntariness is unlikely to be addressed via the appeals process.

124. Moreover, Defendants' appeals process is a mere continuation of the Blanket Fine Policy. Defendants do not meaningfully evaluate a noncitizen's willfulness or voluntariness, despite claiming otherwise in the Final Rule, *see id.* at 65396. Individual Plaintiffs and many other noncitizens appealed their fines and submitted evidence supporting meritorious defenses, but Defendants upheld the fines without addressing that evidence or providing any explanation

125. The form Defendants use to render a decision, DHS Form 281-A, "Appeal Decision and Order under the Immigration and Nationality Act," suffers from the same infirmities as the DHS Form 281 Notice of Violation and Order. It, too, uses checkboxes next to conclusory, boilerplate statements, and does not explain the decision to affirm the fine.

126. The Final Rule states that ICE and CBP are not considering individual factors when determining how much to fine a noncitizen but instead have a "uniform practice of assessing the maximum statutorily authorized penalty amount in each case." *Id.* at 65419. The agencies

explicitly tie the uniform imposition of the maximum possible fines to DHS's desire to "issu[e] these penalties quickly and at the maximum authorized amount to encourage aliens to comply with removal and voluntary departure orders." *Id.*

127. The Final Rule does not meaningfully alter the Blanket Fine Policy or the IFR. Like its predecessors, the Final Rule effectively reads the words "willfully" and "voluntarily" out of the statutes in which they appear.

128. Following the Final Rule, fines under the IFR have remained in effect, and Defendants have continued to attempt to collect fines issued under the IFR, including by sending collections letters.

129. Defendants' interpretation of the "continuing violation" doctrine in the Final Rule also means that they claim authority to impose additional crushing fines on noncitizens under the Final Rule—even though the same individuals (including Plaintiffs Maria L. and Oscar N.) were previously fined under the IFR—under the theory that "Congress intended for [a noncitizen] to be subject to a continuing or new penalty each day he remains in the United States in violation of a removal order." *Id.* at 65424.

130. The Final Rule contends that the fines at issue "are financial in nature" but "not subsistence-level." *Id.* at 65416. Not so: Defendants' imposition of up to $1.8 million in fines—and their efforts to collect these fines through garnishment of wages and seizures of tax refunds and property—threatens Individual Plaintiffs' and putative class members' very subsistence.

## VII. Defendants Claim the Authority to Impose Civil Penalties in Violation of the U.S. Constitution.

131. Defendants violate the U.S. Constitution by assessing excessive fines under Section 1324d that can exceed $1.8 million; failing to subject any civil penalties claims to trial by jury;

and utilizing administrative processes for all civil penalties without adequate notice or meaningful opportunity to be heard.

132. Constitutional protections apply to all persons present in the United States, citizens and noncitizens alike. *See, e.g.*, *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Graham v. Richardson*, 403 U.S. 365, 371 (1971).

133. The Framers of the U.S. Constitution well understood the threat posed by a government that could impose fines disproportionate to any claimed misconduct, exact such penalties through juryless proceedings, and deny individuals due process of law to extract such penalties. For these reasons, among others, the Framers crafted the Fifth, Seventh, and Eighth Amendments to the U.S. Constitution to protect against potential abuses by a government seeking to impose monetary penalties on its populace.

134. Experience taught the Framers that a government that could impose excessive fines and fees could seek to "undermine other constitutional liberties." *Timbs v. Indiana*, 586 U.S. 146, 153 (2019). As a result, "the protection against excessive fines has been a constant shield throughout Anglo-American history," *id.*, and was enshrined in the Eighth Amendment's Excessive Fines Clause.

135. The Framers also formalized the right to a jury trial in the Seventh Amendment. *See, e.g.*, *S.E.C. v. Jarkesy*, 603 U.S. 109 (2024). Without the right to a jury, the Framers feared a government that could "subvert[ ] rights and liberties" through proceedings out of the public eye. *See id.* at 121.

136. The Framers further prohibited the government from "depriv[ing] a person of [their rights] without affording him the benefit of (at least) those customary procedures to which freemen

were entitled by the old law of England." *Sessions v. Dimaya*, 584 U.S. 148, 176 (2018) (Gorsuch, J., concurring in part and concurring in judgment) (quotation omitted).

137. Today, these constitutional concerns are "scarcely hypothetical." *Timbs*, 586 U.S. at 154. "[T]here are, at the very least, more than two dozen agencies that can impose civil penalties in administrative proceedings." *Jarkesy*, 603 U.S. at 199 (Sotomayor, J., dissenting) (citing, *inter alia*, 8 U.S.C. § 1324d). The Supreme Court has acknowledged the real risk of overreach, noting that "[e]xcessive fines can be used . . . to retaliate against or chill the speech of political enemies." *Timbs*, 586 U.S. at 153. And "[w]hile incursions on old rights may begin in cases against the unpopular, they rarely end there." *Jarkesy*, 603 U.S. at 167 (Gorsuch, J., concurring).

138. Disregarding the Framers' intent to protect all persons from such abuses, Defendants assess excessive civil penalties under Sections 1229c and 1324d, without a jury, and via administrative proceedings.

139. Defendants impose the fines under Section 1324d without providing any findings of willfulness, without evidence of wrongdoing, without considering whether the underlying alleged conduct constitutes a violation of Section 1324d, and without any individualized determination of whether the maximum allowable rate under Section 1324d of $998 per day is appropriate in any given case. The Section 1324d civil penalties qualify as fines for purposes of the Eighth Amendment and are disproportionate to the gravity of the alleged violations thereunder. Defendants' Section 1324d fines therefore violate the Excessive Fines Clause of the Eighth Amendment. *See Ye v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2026 WL 2584711, at *6–8 (N.D. Cal. Sept. 1, 2026).

140. While Congress has provided for a presumption that "a civil fine [or] penalty . . . may be recovered in a civil action," 28 U.S.C. § 2461(a), Defendants impose these

fines via administrative procedures never sanctioned by Congress. Defendants thereby deny individuals of their right to a jury trial under the Seventh Amendment.

141. Defendants fail to provide constitutionally adequate notice and opportunity to be heard. The notice given and processes available under the Blanket Fine Policy, IFR, and Final Rule are constitutionally insufficient, given the substantial private interests involved, ranging from thousands to roughly $1.8 million; Defendants' modest interests; and the risks of erroneous deprivation, particularly where Defendants fail to assess the statutory factors under Sections 1229c and 1324d. The Blanket Fine Policy, IFR, and Final Rule procedures do not comply with the Fifth Amendment. *See Ye*, 2026 WL 2584711, at *8–9.

## VIII. Defendants Pursue Collections of Civil Penalties.

142. Following the imposition of civil penalties through their administrative processes, Defendants attempt to collect through a variety of tactics. Those include collection letters, invoices, seizure of tax refunds, administrative wage garnishments, and federal collections lawsuits. At the same time, Defendants promise the fines will be waived only if an individual voluntarily leaves the country.

143. After DHS issues a violation notice, and often before the deadline to file an administrative appeal passes or before an administrative appeal is adjudicated, DHS sends a letter demanding payment within 10 days.

144. The form version of that document states, in relevant part: "A civil monetary penalty was imposed on you pursuant to . . . the [INA] and 8 C.F.R. Part 281. The circumstances and specific INA provision for this penalty assessment are set forth in the [violation notice] with the above-referenced Penalty Tracking Number and are incorporated by reference herein." The collection letter states that if the recipient fails to pay, DHS may seek to collect via "administrative offset of "any eligible Federal and State payments due to you"; refer the debt to a private collection

agency; refer the debt to DOJ "to initiate collection litigation"; report "the indebtedness to national credit bureaus, which could adversely affect your credit rating"; and/or "[t]ake this debt into consideration, to the extent permitted by law, in future immigration-related proceedings, including admissibility determinations."

145. When an individual does not pay, DHS transfers the debt to the Centralized Receivables Service ("CRS") of the Treasury Department's Bureau of Fiscal Service.

146. Once the debt has been transferred from DHS to CRS, the Treasury Department sends a separate invoice stating: "Payment in full is due now." The invoice also states that the debt may be increased due to "interest, administrative costs and penalties on past due amounts." The invoice warns that debts may be reported "to the IRS as potential income." The invoice further states: "If you fail to pay the full amount within 60 days of this invoice, [CRS] will refer your debt(s) to the U.S. Department of Treasury's Cross-Serving program for collection, at which time additional administrative costs that may exceed 32% will be added to your debt(s)."

147. Debts collected by CRS or Cross-Servicing are required to be certified by the transferring agency as being valid and legally enforceable. 31 C.F.R. § 285.12(i); Treasury Fin. Manual, vol. 1, ch. 3, § 3025.20. CRS therefore relies on individual agencies to verify these debts unless a dispute is filed by the target of the civil penalty. *See* 1 Treasury Fin. Manual, vol. 1, ch. 3, § 3025.40 ("The creditor agency always remains solely responsible for ensuring the continued validity and enforceability of the debt."). Treasury's regulations and internal rules require that a debt be final before collection begins. *See* 31 C.F.R. §§ 285.4(a), 285.12(a). A penalty that is not yet final, whether because the appeal period has not run or an appeal is pending, may not be collected by Treasury. DHS's collection actions before issuing a final order imposing a fine contravene Treasury's regulations.

148. In other circumstances, DHS bypasses the CRS process and directly engages a third-party collections agency to pursue the debt.

149. In or around August 2025, attorneys from DOJ began filing actions in federal court to collect civil penalties purportedly imposed pursuant to Sections 1229c and 1324d. *See, e.g.*, Compl., *United States v. Trujillo Acosta*, No. 25-cv-1760, ECF No. 1 (C.D. Cal. Aug. 11, 2025).

150. The DOJ complaints seeking collection of civil penalties under the INA are solely based on conclusory allegations that the alleged failures to depart were willful or voluntary.

151. For example, in one case, the only allegations as to willfulness under Section 1324d are as follows: "On [date], an Immigration Judge entered a final order of removal against Defendant. Pursuant to 8 U.S.C. § 1229a(c)(5), the final removal order was served on Defendant via mail and included notice that a willful failure or refusal to depart from the United States pursuant to the order would subject Defendant to a civil monetary penalty for each day Defendant is in violation of the order. Defendant thereafter has willfully failed or refused to depart from the United States, in defiance of that order." *United States v. Alvarez-Lopez*, No. 3:25-cv-1071, Compl., ECF No. 1 ¶ 7 (M.D. Fla. Sept. 11, 2025).

152. The federal complaints seeking collection of civil penalties request judgments in the full amount of civil monetary penalties DHS imposed, plus interest and additional penalties.

153. If judgment is entered in those cases, DOJ could use those judgments to, as President Trump has stated, pursue "the garnishment of wages[] and the confiscation of savings and personal property, including homes and vehicles." 90 Fed. Reg. at 20358.

154. In some cases, DHS is garnishing wages pursuant to 31 U.S.C. § 3720D, which allows garnishment without first obtaining a federal collections judgment. In other cases, the Department of Treasury, on behalf of DHS, seizes noncitizens' tax refunds through the Treasury

Offset Program. Defendants' conduct to date regarding the collection of civil penalties belies the Final Rule's statement that "DOJ's Civil Division or another authorized litigating component must bring an action in federal court to obtain a judgment and pursue any lien against assets or confiscation of savings, and the [noncitizen] has an opportunity to request a federal court hearing on the enforceability of the debt," which the Final Rule argues "provides due process before the U.S. Government seeks to obtain a judgment on an uncollected debt and before it can confiscate [a noncitizen's] property or savings," such that "nothing in this rule deprives [a noncitizen] of the ability to challenge the imposition of particular civil penalty assessments or collection methods that the [noncitizen] regards as disproportionate, excessive, or in violation of due process during a federal court hearing." 91 Fed. Reg. at 65398. To the contrary, Defendants have regularly collected or attempted to collect on fines without first filing suit, including by garnishing putative class members' wages under 31 U.S.C. § 3720D, seizing putative class members' tax refunds, or engaging third-party collections agencies to pursue the debt.

155. Departing the United States does not provide relief. CBP has awarded contracts to four collections agencies to pursue the collection of civil immigration fines from people deported from the United States to Mexico, Guatemala, or Honduras. Michael Wriston et al., *CBP Formally Hires Contractors to Collect Fines From People It Has Deported*, Project Salt Box (Aug. 17, 2026), https://www.projectsaltbox.com/p/cbp-formally-hires-contractors-to. CBP has identified no way for people without a bank account to pay. *Id*.

## IX. Individual Plaintiffs Receive Fines for Hundreds of Thousands of Dollars.

### *a. Maria L.*

156. Plaintiff Maria L. is a resident of eastern Massachusetts.

157. Defendants assessed hundreds of thousands of dollars in civil penalties against Ms. L. under Section 1324d using the IFR's procedures.

158. The violation notice Ms. L. received contained conclusory, boilerplate allegations regarding her alleged willful violation of Section 1324d. The notice had a box checked indicating that a removal order "was made final" and had boxes checked next to one or more of the following: "You willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; and/or "willfully failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]."

159. The violation notice contained no explanation or evidence of Ms. L.'s supposed willful misconduct.

160. Ms. L. did not willfully commit a violation of Section 1324d.

161. Ms. L. remains present in the country to pursue a humanitarian form of immigration relief and then lawful permanent residency.

162. Ms. L. filed an appeal contesting the civil penalties Defendants imposed and requesting all evidence relevant to the decision.

163. In addition to challenging the allegations, Ms. L. provided information about her individual circumstances—including significant personal hardship—and her inability to pay the fine.

164. While her appeal was pending, Ms. L. received an invoice from DHS stating that the "debt is final under 8 C.F.R. Part 281 and payment in full is due now." The invoice further warned of subsequent adverse action, including collection of the purported debt and that the debt may be taken into consideration in future admissibility determinations.

165. Thereafter, Defendants affirmed the civil penalties in the full amount originally assessed. Defendants' decision stated that the fine was affirmed because Ms. L. is "not a citizen or national of the United States," there was an order of removal, and she committed a willful violation of Section 1324d.

166. The decision did not otherwise corroborate Defendants' allegations and did not consider the arguments raised in Ms. L.'s appeal.

167. As a result, Maria L. faces not only the monetary harm of the civil penalties assessed and the burden imposed by this purported debt, but also future enforcement targeting her income and any assets and the specter of adverse consequences in the adjudication of her pending immigration benefits applications.

***b. Nancy M.***

168. Plaintiff Nancy M. is a resident of southern Florida.

169. Defendants assessed approximately $1.8 million in civil penalties against Ms. M. under Section 1324d using the IFR's procedures.

170. The violation notice Ms. M. received contained conclusory, boilerplate allegations regarding her alleged willful and conspiratorial violation of Section 1324d. The notice had a box checked indicating that a removal order "was made final" and had boxes checked next to one or more of the following: "You willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; and/or "willfully failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security]."

171. The violation notice contained no explanation or evidence of Ms. M.'s supposed willful misconduct.

172. Ms. M. did not willfully commit a violation of Section 1324d.

173. At the time Defendants issued the fine, she remained present in the country under an order of supervision with ICE while she awaited processing of an application that would allow her to obtain status as a lawful permanent resident. She has since obtained lawful permanent residence, meaning she is now a green card holder.

174. Ms. M. filed a response contesting the civil penalties Defendants imposed.

175. Ms. M. responded that the civil penalties were not appropriate because she had not willfully failed to depart.

176. In addition to challenging the allegations, Ms. M. provided information about her individual circumstances—including significant personal hardship—and her inability to pay the fine.

177. Defendants affirmed the civil penalties in the full amount originally assessed. Defendants' decision stated that the fine was affirmed because Ms. M. is "not a citizen or national of the United States," there was an order of removal, and she committed a willful violation of Section 1324d.

178. The decision did not otherwise corroborate Defendants' allegations and did not consider the arguments raised in Ms. M.'s appeal.

179. As a result, Nancy M. faces not only the monetary harm of the civil penalties assessed and the burden imposed by this purported debt, but also future enforcement targeting her income and any assets.

***c. <u>Oscar N.</u>***

180. Plaintiff Oscar N. is a resident of Rhode Island.

181. Mr. N. received a voluntary departure order in 2010 after an immigration judge denied his application for humanitarian immigration relief. Neither the immigration judge's decision nor the decision by the Board of Immigration Appeals upholding the immigration judge's decision contained any warnings that Mr. N. would be subject to civil penalties if he failed to depart.

182. Defendants assessed $3,000 in civil penalties against Mr. N. under Section 1229c, which he paid.

183. Defendants later separately assessed approximately $1.8 million in civil penalties against him under Section 1324d.

184. Defendants assessed both civil penalties using the IFR's procedures.

185. The immigration judge's order granting Mr. N.'s voluntary departure automatically converted to a removal order. But under no circumstances could it simultaneously serve as both a grant of voluntary departure and an order of removal. It thus could not simultaneously serve as a predicate for fines under both Sections 1229c and 1324d. Rather than choosing one statutory provision, Defendants fined him under both. This was unlawful.

186. Both violation notices that Mr. N. received contained conclusory, boilerplate allegations regarding his alleged voluntary violation of Section 1229c and alleged willful and conspiratorial violation of Section 1324d. For the 1229c civil penalty, the notice had a box checked "You failed to voluntarily depart the United States within the time period specified." For the 1324d civil penalty, the notice had a box checked indicating that a removal order "was made final" and had boxes checked next to one or more of the following: "You willfully failed or refused to depart from the United States pursuant to the order"; "willfully failed or refused to make a timely application in good faith for travel or other documents necessary for departure"; and/or "willfully

failed or refused to present for removal at the time and place required by the Attorney General [or Secretary of Homeland Security].”

187. The violation notices contained no explanation or evidence of Mr. N.’s supposed voluntary or willful misconduct.

188. Mr. N. did not commit a voluntary violation of Section 1229c.

189. Mr. N. did not commit a willful violation of Section 1324d.

190. At the time Defendants issued the fines, he remained present in the country under an order of supervision with ICE while he awaited processing of a family-based immigration application that would allow him to obtain status as a lawful permanent resident.

191. Mr. N. first filed a response to the 1229c fine contesting the $3,000 in civil penalties Defendants imposed.

192. Mr. N. responded that the civil penalties were not appropriate because he had not voluntarily failed to depart.

193. Defendants affirmed the $3,000 in civil penalties. Defendants’ decision stated that the fine was affirmed because he was not a citizen or national of the United States, was permitted to depart the United States voluntarily, and had voluntarily failed to depart the United States within the specified time period.

194. The decision did not otherwise corroborate Defendants’ allegations and did not consider the arguments raised in Mr. N.’s appeal.

195. After receiving the final order denying his appeal, Mr. N. felt that he had no choice but to pay the fine amount. He made a $3,000 payment to ICE in order to avoid adverse economic and immigration consequences.

196. Although Defendants had already fined Mr. N. under Section 1229c, and although Mr. N. paid the full fine under 1229c, Defendants then assessed a separate fine of approximately $1.8 million against Mr. N. under Section 1324d.

197. Mr. N. filed a response contesting these Section 1324d civil penalties.

198. Mr. N. responded that the civil penalties were inappropriate because he had not willfully failed to depart and raised multiple other objections to the $1.8 million fine.

199. In addition to challenging the allegations, Mr. N. provided information about his individual circumstances and inability to pay the fine.

200. Defendants affirmed the Section 1324d civil penalties in the full amount originally assessed. Defendants' decision stated that the fine was affirmed because Mr. N. is "not a citizen or national of the United States," there was an order of removal, and he committed a willful violation of Section 1324d.

201. The decision did not otherwise corroborate Defendants' allegations and did not consider the arguments raised in Mr. N.'s appeal.

202. As a result, Oscar N. faces not only the monetary harm of the civil penalties assessed and already paid under Section 1229c and the burden imposed by this purported debt under Section 1324d, but also future enforcement targeting his income and any assets and the specter of adverse consequences in the adjudication of his pending immigration benefits applications.

## X. The Lack of Notice and Comment on the IFR and on the Ratification Notice Harms ILRC.

203. ILRC is a 501(c)(3) non-profit registered in the State of California, headquartered at 1458 Howard Street, San Francisco, CA 94103.

204. The mission of ILRC is to work with and educate immigrants, community organizations, and the legal sector to continue to build a democratic society that values diversity and the rights of all people.

205. ILRC accomplishes its mission by providing technical assistance on immigration law issues; training advocates and pro bono attorneys; publishing advisories and manuals for legal practitioners; advocating for laws and policies that expand the rights of immigrants; conducting education, outreach, and community organizing with immigrant communities; and otherwise developing materials that inform the public on a host of legal issues impacting immigrants.

206. Among the resources that ILRC develops to fulfill its mission are public comments to federal regulations that affect immigrants.

207. ILRC regularly submits public comments to proposed rules before they go into effect.

208. On July 28, 2025, ILRC submitted a public comment opposing the IFR.

209. In particular, ILRC's public comment on the IFR noted that it was "improperly issued as an interim final rule" because it: (a) is not properly considered a procedural rule when it "significantly curtails the rights and protections of those impacted"; (b) "signifies a dramatic shift in practice" in choosing to impose civil penalties at scale such that there is a "change in the substantive rights of the public"; and (c) "does not fall under the foreign affairs exception to the APA."

210. ILRC's comment on the IFR also highlighted concerns under the Eighth Amendment's Excessive Fines Clause, the Fifth Amendment's Due Process clause, and the applicable statute of limitations. And it expressed serious concern that the IFR was discriminatory.

211. By allowing only post-rulemaking comments, Defendants prevented ILRC from fulfilling its mission.

212. Had the IFR been issued via regular notice and comment rulemaking, ILRC would have submitted a comment addressing additional concerns about the IFR and would have had an opportunity to influence decision making before a rule was promulgated.

213. ILRC was also deprived of any opportunity to comment on the Ratification Notice.

214. As discussed below in Section XII, the Ratification Notice was itself a legislative rule that required notice and comment rulemaking.

215. Had the Ratification Notice been issued via regular notice and comment rulemaking, ILRC would have submitted a comment addressing concerns about the Ratification Notice and would have had an opportunity to influence decision making before the Ratification Notice went into effect.

## XI. CHIRLA's Members Received Fines under the IFR and Face an Imminent Risk of Receiving Fines Under the Final Rule.

216. Founded in 1986, CHIRLA is one of the largest and most established immigrant-rights organizations in California. CHIRLA is a membership organization composed of diverse immigrant families and individuals who participate in CHIRLA's programs, receive its legal services, and engage in collective advocacy. CHIRLA's mission is to achieve a just society fully inclusive of immigrants by organizing and serving individuals, institutions, and coalitions to build power, transform public opinion, and change policies to achieve full human, civil, and labor rights.

217. CHIRLA has approximately 52,000 members. While its membership is concentrated in California and particularly in the greater Los Angeles area, CHIRLA has members throughout the United States, including in Massachusetts.

218. To carry out its mission, CHIRLA operates a variety of programs, ranging from the provision of legal services (including removal defense, DACA renewals, assistance with U visa petitions for victims of crimes, T visa petitions for survivors of trafficking, and naturalization applications and integration training) to civic engagement, community education (including "Know Your Rights," or "KYR" campaigns), community organizing, policy advocacy, and leadership development in immigrant communities.

219. Many CHIRLA members have removal orders or voluntary departure orders and remain present in the United States pursuant to orders of supervision, to pursue humanitarian relief, or for other reasons that demonstrate that they are not willfully or voluntarily failing to depart. Some of these members have nonetheless received fines under Section 1324d pursuant to the IFR.

220. At least forty CHIRLA members and clients received fines under Section 1324d pursuant to the IFR. CHIRLA has provided members and clients with advice for challenging the fines but has not represented them in their appeals. Each member or client received fines on the same standardized form, DHS Form 281. Each member or client who appealed their fines had their appeals denied using the same standardized form, DHS Form 281-A.

221. CHIRLA has additional members with removal orders or voluntary departure orders who remain present in the United States pursuant to orders of supervision, to pursue humanitarian relief, or for other reasons that demonstrate that they are not willfully or voluntarily failing to depart. These members face an imminent risk of receiving fines under the Final Rule. Defendants issued approximately 110,000 fines under the IFR and intend to continue what they describe as the "robust" application of civil penalties. 91 Fed. Reg. at 65392, 65395, 65401, 65405.

222. For example, members M.G. and G.G. are at imminent risk of receiving fines under the Final Rule. M.G. and G.G. entered the country lawfully with their minor child in 2024 and

submitted a petition for humanitarian immigration relief in early 2026 because they were victims of a violent crime. That petition is still pending. Later in 2026, due to an error outside of their control, they missed a hearing in their immigration court proceeding, and the immigration judge issued an order of removal. Under Defendants' Blanket Fines Policy, embodied in the Final Rule, they are now at imminent risk of receiving a fine under Section 1324d in the amount of $998 per day.

### XII. Secretary Mullin Unlawfully "Ratifies" Fines Imposed under the IFR.

223. On October 26, 2026, DHS published a notice in the Federal Register, *Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) (the "Ratification Notice").

224. In the Ratification Notice, DHS contends that "[a]lthough it was unnecessary because the IFR was subject to two exceptions to the requirements of the Administrative Procedure Act regarding notice and comment, DHS and EOIR opened the IFR for public comments through July 28, 2025." 91 Fed. Reg. at 67325.

225. The Ratification Notice further states that, after considering the comments received in response to the IFR, DHS and EOIR published a Final Rule that has "no material difference for the purposes of the civil penalties that had already been assessed prior to the publication of the Final Rule." *Id.*

226. The Ratification Notice continues that, "To resolve any uncertainty, the Secretary of Homeland Security has decided to ratify all civil penalties issued under the interim adoption of 8 CFR part 281 from June 27, 2025, through October 13, 2026." *Id.*

227. The Ratification Notice concludes, "The Secretary of Homeland Security hereby ratifies all final civil penalty decisions, as defined in 8 CFR 281.1(f)(3), issued pursuant to the procedures codified at 8 CFR part 281 from June 27, 2025, through October 13, 2026, except for

those that have been reversed on appeal, are currently pending appeal, or have otherwise been reopened and rescinded pursuant to 8 CFR 281.1(f)(1)." *Id.* at 67326.

228. The Ratification Notice establishes a procedure by which a fine recipient who claims that they have been prejudiced by the IFR "may raise that claim to ICE to evaluate whether such prejudice has been shown and what remedy, if any, is appropriate." *Id.* It sets a deadline of November 16, 2026, for those claims to be made, *id.*, including by Individual Plaintiffs. It does not articulate the standard under which claims of prejudice will be measured or identify what type of information Defendants will deem important when evaluating claims of prejudice.

229. As authority for Secretary Mullin's purported ratification, the Ratification Notice cites only one decision, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019), for the proposition that, "Under established case law, any agency may, through ratification, 'purge[ ] any residual taint or prejudice left over from' a potential defect in a prior governmental action." *Id.* at 67325–26.

230. *Guedes* and the decisions cited therein do not support the proposition that an agency can "purge" "a potential defect in a prior governmental action." *See id.* Rather, they relate to the ability of a duly appointed official to "ratify" the actions of an allegedly invalidly appointed official and thus "purge[] any residual taint or prejudice left over from the allegedly invalid appointment." *Guedes*, 920 F.3d at 13 (citing *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 708 n.5 (D.C. Cir. 1996)).

231. A validly appointed official's ability to ratify another's acts flows from basic agency law principles. *See Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 212–13 (D.C. Cir. 1998). This principle has no application where the defect is the failure to follow notice and comment. *See* 91 Fed. Reg. at 67326 (explaining that Secretary Mullin is ratifying civil penalties issued under the IFR to resolve any uncertainty created by DHS and EOIR's failure to

provide an opportunity for notice and comment in advance). Defendants cannot "ratify" the IFR's invocation of the "foreign affairs" and "procedural rule" exceptions to notice and comment, which the Court already held were likely inapplicable. Stay Op. at 13–17.

232. Defendants' acceptance of comments after the IFR's effective date does not cure their unlawful failure to comply with 5 U.S.C. § 553 and offer notice and comment. *See, e.g.*, *Levesque v. Block*, 723 F.2d 175, 187 (1st Cir. 1983) ("[A] rule found invalid for failure to provide for notice and comment cannot be saved by providing for comment after promulgation."). Approving this argument "would lead in the long run to depriving parties affected by agency action of any way to enforce their § 553 rights to pre-promulgation notice and comment." *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 214 (5th Cir. 1979); *see also United States v. Johnson*, 632 F.3d 912, 929 (5th Cir. 2011) (post-promulgation comments do not excuse non-compliance with APA procedures); *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) ("It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later."); *NRDC v. EPA*, 683 F.2d 752, 768 (3d Cir. 1982) ("[T]he provision of post-promulgation notice and comment procedures cannot cure the failure to provide such procedures prior to the promulgation of the rule at issue.").

233. Moreover, the Ratification Notice, and the procedure it sets out for raising claims of prejudice due to the IFR, is itself a legislative rule that requires notice and comment. *See N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018). Its new procedure for raising claims of prejudice is nowhere outlined in 8 CFR part 281 or the INA. And if noncitizens fail to submit claims or make the required—yet undefined—showing of prejudice, their fines will be deemed "ratified." The Ratification Notice thus "'creates rights, assigns duties, or imposes obligations, the

basic tenor of which is not already outlined in the law itself.'" *Id.* (quoting *La Casa Del Convalciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992)).

234. The Ratification Notice also violates the Stay Order, which stayed the IFR and all fines issued thereunder. A stay "preserve[s] the status quo until the merits are determined." *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 837 F. Supp. 3d 169, 211 (D. Mass. 2026). The Ratification Notice upsets the status quo here by purporting to "ratify" fines that are stayed unless the fine recipient timely claims prejudice through an undefined process.

235. The Ratification Notice seeks to create an end-run around the APA's notice and comment procedures, the Stay Order, and this Court's review of Defendants' actions. Defendants have no lawful authority to issue the Ratification Notice, and they cite none.

236. Defendants harm Individual Plaintiffs and the IFR Subclass by purporting to "ratify" their fines unless they make an undefined showing of prejudice. Moreover, Defendants harm ILRC by seeking to obviate ILRC's ability to redress its injury caused by the lack of notice and comment both before the IFR's effective date and then before the Ratification Notice took effect.

**CLASS ACTION ALLEGATIONS**

237. Individual Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated to enjoin Defendants' actions and to obtain a declaration that Defendants' actions are unlawful.

238. Individual Plaintiffs seek to certify a class of similarly situated people (the "Class") defined as: All individuals subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after January 20, 2025.

239. The Individual Plaintiffs also represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Section 1324d on or after January 20, 2025 (the "1324d Subclass").

240. The Individual Plaintiffs also represent a subclass defined as: Any individual subjected to a civil monetary penalty imposed pursuant to Sections 1229c or 1324d between June 27, 2025, and October 13, 2026 (the "IFR Subclass").

241. Oscar N. also represents a subclass defined as: Any individual who has made a payment in full or partial satisfaction of a civil monetary penalty imposed pursuant to Sections 1229c or 1324d on or after January 20, 2025 (the "Payment Subclass").

242. The Class consists of over 122,135 individuals, and the IFR Subclass consists of approximately 110,000 individuals. A substantial percentage of these individuals are also members of the 1324d Subclass. On information and belief, the Payment Subclass has more than 40 members, as it is likely that more than .03% of Class Members have made a payment to Defendants. A class action is therefore the only practicable means by which Individual Plaintiffs and Class Members can challenge Defendants' unconstitutional and unlawful practices.

243. There are multiple questions of law and fact common to all members of the Class, including whether individuals subjected to civil penalties under Sections 1229c or 1324d are entitled to a jury trial, whether Defendants conduct individualized assessments when assessing and affirming civil penalties, and whether Defendants' notices and procedures comport with due process.

244. There are multiple questions of law and fact common to all members of the 1324d Subclass, including whether Defendants conduct individualized assessments when assessing and affirming civil penalties, whether civil penalties under Section 1324d are fines under the Eighth Amendment, and whether fines imposed at a rate of $998 per day are excessive.

245. There are multiple questions of law and fact common to all members of the IFR Subclass, including whether the procedures available under the IFR provide for constitutionally

adequate notice and opportunity to be heard, and whether Defendants conduct individualized assessments when assessing and affirming civil penalties pursuant to 8 C.F.R. part 281.

246. There are multiple questions of law and fact common to all members of the Payment Subclass, including whether—if Defendants assessed civil penalties in an unlawful manner—individuals who made payments after being assessed civil penalties are entitled to the return of those payments.

247. Individual Plaintiffs' claims are typical of the claims of the Class. That typicality stems from the fact that Defendants broadly impose civil penalties under Sections 1229c and 1324d without an individualized consideration of willfulness or voluntariness and without a jury trial. Individual Plaintiffs and the 1324d Subclass all face the same daily penalty, imposed at the maximum rate for the maximum period. Additionally, the Individual Plaintiffs and the IFR Subclass are subject to the same procedures provided under the IFR, which lack adequate safeguards. Finally, Oscar N. and each member of the Payment Subclass made a payment toward a civil penalty that was assessed without an individualized consideration of willfulness or voluntariness and without a jury trial.

248. Individual Plaintiffs, like every other Class Member, are injured by the same unlawful and unconstitutional practices.

249. Individual Plaintiffs will fairly and adequately represent the interests of the Class. Individual Plaintiffs do not have conflicts with the unnamed members of the proposed Class.

250. Individual Plaintiffs and Class Members are represented by attorneys from Public Justice, NYU Immigrant Rights Clinic, The Legal Aid Society, Free Migration Project, and Covington & Burling LLP. Counsel has experience litigating complex class action matters raising

constitutional challenges and has experience in immigration law as well as extensive knowledge of the details of Defendants' practices and of the relevant law.

251. Defendants have acted and failed to act in a manner that applies generally to the Class as a whole, rendering class-wide relief appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### Excessive Fines Clause
### U.S. Const., Amend. VIII; 5 U.S.C. § 706(2)(B)
### (Individual Plaintiffs and 1324d Subclass Members Against All Defendants)

252. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–251.

253. Defendants assess and attempt to impose civil penalties "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

254. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quotation omitted). Ultimately, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *Id.* at 334.

255. The civil penalties at issue here qualify as fines for purposes of the Excessive Fines Clause because they "serve[], at least in part, to punish." *Austin v. United States*, 509 U.S. 602, 618 (1993).

256. Moreover, the Final Rule states that "DHS believes that robust application of these civil penalties will deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders." 91 Fed. Reg. 65392. The deterrent nature of a fine "is sufficient

to bring the forfeiture within the purview of the Excessive Fines Clause." *Bajakajian*, 524 U.S. at 329 & n.4; *see Austin*, 509 U.S. at 610 (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989)).

257. Defendants assess civil penalties under Section 1324d without evidence of wrongdoing, without consideration of liability under Section 1324d, and without individualized assessments. Indeed, the Final Rule states that "ICE and CBP are applying a *uniform* practice of assessing the *maximum* statutorily authorized penalty amount in each case." 91 Fed. Reg. at 65419 (emphasis added).

258. The $998 per diem penalty is grossly disproportionate to the gravity of the alleged violation of Section 1324d.

259. Alternatively, the civil penalties amounts assessed in Individual Plaintiffs' cases are excessive because Individual Plaintiffs did not willfully fail to depart and because, if sustained, they would prove ruinous and would deprive Individual Plaintiffs of their livelihood.

260. By imposing excessive fines, Defendants have violated the rights of the Individual Plaintiffs and the 1324d Subclass under the Eighth Amendment to the U.S. Constitution.

**COUNT II**
**Right to Jury Trial**
**U.S. Const., Amend. VII; 5 U.S.C. § 706(2)(B)**
**(Individual Plaintiffs and Class Members Against All Defendants)**

261. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–260.

262. Defendants utilize administrative proceedings to impose civil penalties, "contrary to constitutional right, power, privilege, or immunity" under the Seventh Amendment to the U.S. Constitution. 5 U.S.C. § 706(2)(B).

263. "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const., Amend. VII.

264. When the federal government seeks to impose civil penalties like those at issue here, "it is well established that [such] common law claims must be heard by a jury." *Jarkesy*, 603 U.S. at 120.

265. Congress has not authorized Defendants to adjudicate cases involving alleged violations of Sections 1229c and 1324d in administrative proceedings.

266. By assessing and adjudicating the civil penalties at issue through agency proceedings, Defendants have violated the rights of the Individual Plaintiffs and the Class to a jury trial under the Seventh Amendment to the U.S. Constitution.

## COUNT III
## Procedural Due Process
## U.S. Const., Amend. V; 5 U.S.C. § 706(2)(B)
## (Individual Plaintiffs and Class Members Against All Defendants)

267. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–266.

268. The APA, 5 U.S.C. § 706(2)(B), provides that courts "shall . . . hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege or immunity."

269. Defendants are prohibited from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const., Amend. V.

270. The Blanket Fine Policy, IFR, and Final Rule deprive Individual Plaintiffs of constitutionally sufficient notice and a constitutionally sufficient opportunity to be heard under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

271. By assessing civil penalties against Individual Plaintiffs, Defendants' actions implicate their property rights. Due to Defendants' actions, Individual Plaintiffs have been or will be deprived of the ability to control their savings, income, and other assets without governmental interference.

272. Individual Plaintiffs have a significant private interest in the amount of civil penalties assessed by Defendants. Defendants' interest, in contrast, is minimal.

273. There is a significant risk of erroneous deprivation, given Defendants' failure to state the alleged facts underlying their decision to assess civil penalties; failure to define the statutory prerequisites for civil penalties under Sections 1229c and 1324d; failure to consider those required statutory factors; failure to state the reasons for their determination affirming the civil penalties and to indicate the evidence they relied on; and, as to the IFR and Final Rule, insufficient notice; the lack of meaningful, appellate review; and Defendants' monetary incentive to affirm civil penalty determinations.

274. Defendants therefore violate the rights of the Individual Plaintiffs and the Class under the Fifth Amendment to the U.S. Constitution.

**COUNT IV**
**Violation of the APA's Notice-and-Comment Requirement: IFR**
**5 U.S.C. § 706(2)(D)**
**(Individual Plaintiffs and ILRC Against All Defendants)**

275. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–274.

276. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "without observance of procedure required by law" 5 U.S.C. § 706(2)(D).

277. With narrow exceptions not applicable here, the APA requires agencies to engage in public notice and comment before a rule takes effect. 5 U.S.C. § 553(b)–(c).

278. The IFR violates the APA because it took effect on June 27, 2025, without public notice and comment.

279. Therefore, the IFR, and the notices of fines issued thereunder, should be vacated.

**COUNT V**
**The IFR Is Arbitrary and Capricious**
**5 U.S.C. § 706(2)(A)**
**(Individual Plaintiffs and IFR Subclass Members Against All Defendants)**

280. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–279.

281. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

282. Among other reasons, the IFR is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision, which represents a change in the agency's longstanding policy; failed to take into account reliance interests; offered explanations for their decision that run counter to the evidence before the agency; relied on conclusions and assumptions contrary to the record; and failed to consider important aspects of the problem.

283. Therefore, the IFR, and the notices of fines issued thereunder, should be vacated.

**COUNT VI**
**The Blanket Fine Policy Is Contrary to Law**
**8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)**
**(Individual Plaintiffs and Class Members Against All Defendants)**

284. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–283.

285. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

286. Defendants' actions are contrary to the statutory language in Sections 1229c and 1324d.

287. Defendants violate the APA by maintaining a policy or practice not in accordance with law, the Blanket Fine Policy, of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d. This policy or practice is incorporated into the IFR and Final Rule but also existed before Defendants issued the IFR and Final Rule.

288. As part of this Blanket Fine Policy, Defendants unlawfully assess civil penalties without defining or determining willfulness or voluntariness; by erroneously treating civil penalties as "straightforward," "routine," and "readily verifiable"; by illogically concluding that immigration court records and physical presence in the country suffice to establish a violation of Sections 1229c and 1324d; without addressing the applicable statute of limitations; by placing the burden of proof to rebut an "inference" of liability on the individual respondent; and by failing to consider mitigating factors.

289. Therefore, Defendants' Blanket Fine Policy, as well as the notices of fines issued thereunder, should be vacated.

**COUNT VII**
**The Blanket Fine Policy Is Arbitrary and Capricious**
**8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)**
**(Individual Plaintiffs and Class Members Against All Defendants)**

290. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–289.

291. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

292. Defendants' actions are arbitrary and capricious in light of the statutory language in Sections 1229c and 1324d.

293. Defendants violate the APA by maintaining an arbitrary and capricious policy or practice, the Blanket Fine Policy, of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d. This policy or practice is incorporated into the IFR and Final Rule but also existed before Defendants issued the IFR and Final Rule.

294. Among other reasons, the Blanket Fine Policy is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision, which represents a change in the agency's longstanding policy; failed to take into account reliance interests; offered explanations for their decision that run counter to the evidence before the agency; relied on conclusions and assumptions contrary to the record; and failed to consider important aspects of the problem.

295. Therefore, Defendants' Blanket Fine Policy, as well as the notices of fines issued thereunder, should be vacated.

## COUNT VIII
## The Ratification Notice Is Contrary to Law
## 8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)
## (Individual Plaintiffs, IFR Subclass Members, and ILRC Against All Defendants)

296. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–295.

297. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

298. Section 706 of the APA also provides that courts "shall . . . hold unlawful and set aside agency action" that is "without observance of procedure required by law" 5 U.S.C. § 706(2)(D).

299. With narrow exceptions not applicable here, the APA requires agencies to engage in public notice and comment before a rule takes effect. 5 U.S.C. § 553(b)–(c).

300. The IFR violated the APA because it took effect on June 27, 2025, without public notice and comment.

301. Defendants violated the APA by issuing the Ratification Notice. Secretary Mullin does not have the authority to "ratify" fines issued under regulations that were unlawfully promulgated without notice and comment.

302. Therefore, the Ratification Notice should be vacated.

**COUNT IX**
**The Ratification Notice Is Arbitrary and Capricious**
**8 U.S.C. § 1324d(a); 5 U.S.C. § 706(2)(A)**
**(Individual Plaintiffs, IFR Subclass Members, and ILRC Against All Defendants)**

303. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–302.

304. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

305. Section 706 of the APA also provides that courts "shall . . . hold unlawful and set aside agency action" that is "without observance of procedure required by law" 5 U.S.C. § 706(2)(D).

306. With narrow exceptions not applicable here, the APA requires agencies to engage in public notice and comment before a rule takes effect. 5 U.S.C. § 553(b)–(c).

307. The IFR violated the APA because it took effect on June 27, 2025, without public notice and comment.

308. Defendants violated the APA by issuing the Ratification Notice, which is arbitrary and capricious.

309. Among other reasons, the Ratification Notice is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision; offered explanations for their decision that run counter to the evidence before the agency; relied on conclusions and assumptions contrary to the record; and failed to consider important aspects of the problem.

310. Therefore, the Ratification Notice should be vacated.

## COUNT X
## Violation of the APA's Notice-and-Comment Requirement: Ratification Notice
## 5 U.S.C. § 706(2)(D)
## (Individual Plaintiffs and ILRC Against All Defendants)

311. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–310.

312. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "without observance of procedure required by law" 5 U.S.C. § 706(2)(D).

313. With narrow exceptions not applicable here, the APA requires agencies to engage in public notice and comment before a rule takes effect. 5 U.S.C. § 553(b)–(c).

314. The Ratification Notice is a legislative rule requiring notice and comment.

315. The Ratification Notice violates the APA because it took effect on October 26, 2026, without public notice and comment.

316. Therefore, the Ratification Notice should be vacated.

**COUNT XI**
**The Final Rule Is Contrary to Law**
**5 U.S.C. § 706(2)(A)**
**(Maria L., Oscar N., and CHIRLA Against All Defendants)**

317. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–316.

318. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

319. Defendants' actions are contrary to the statutory language in Sections 1229c and 1324d.

320. The Final Rule violates the APA by imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d.

321. Under the Final Rule, Defendants issue civil penalties without defining willfulness or voluntariness; by erroneously treating civil penalties as "straightforward," "routine," and "readily verifiable"; by illogically concluding that immigration court records and physical presence in the country suffice to establish a violation of Sections 1229c and 1324d; without addressing the applicable statute of limitations; by placing the burden of proof to rebut an "inference" of liability on the individual respondent; and by failing to consider mitigating factors.

322. Therefore, the Final Rule, as well as the notices of fines issued thereunder, should be vacated.

**COUNT XII**
**The Final Rule Is Arbitrary and Capricious**
**5 U.S.C. § 706(2)(A)**
**(Maria L., Oscar N., and CHIRLA Against All Defendants)**

323. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–322.

324. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

325. Among other reasons, the Final Rule is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision, which represents a change in the agency's longstanding policy; failed to take into account reliance interests; offered explanations for their decision that run counter to the evidence before the agency; relied on conclusions and assumptions contrary to the record; and failed to consider important aspects of the problem.

326. Therefore, the Final Rule, as well as the notices of fines issued thereunder, should be vacated.

**PRAYER FOR RELIEF**

A. WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction over this matter;
2. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure; appoint Plaintiffs Maria L., Nancy M., and Oscar N. as representatives of the Class and the 1324d Subclass; appoint Maria L., Nancy M., and Oscar N. as representatives of the IFR Subclass; appoint Oscar N. as the representative of the Payment Subclass; and appoint undersigned counsel as class counsel;

3. Order Defendants to promptly identify all members of the Class, the 1324d Subclass, the IFR Subclass, and the Payment Subclass to class counsel and to notify all Class Members (and their attorneys of record, if any) of their status as Class Members in this action;

B. As remedies for Counts I to X, Individual Plaintiffs and proposed Class Members—and ILRC as to points 1, 2, 3, 4, 10, 11, 12, 13, 14, and 15 below—request that this Court:

1. Declare the IFR, and all fines issued pursuant to it, unconstitutional and unlawful;
2. Stay the IFR and all fines issued pursuant to it under 5 U.S.C. § 705;
3. Issue all necessary and appropriate process under 5 U.S.C. § 705 to prevent irreparable injury and preserve status and rights as to individuals issued fines under the IFR;
4. Vacate and set aside the IFR and all fines issued pursuant to it under 5 U.S.C. § 706(2);
5. Declare unlawful and unconstitutional and vacate and set aside Defendants' policy or practice of imposing civil penalties without a jury trial in violation of the Seventh Amendment;
6. Order Defendants to refund all payments made in full or partial satisfaction of civil penalties under Section 1229c or 1324d assessed on or after January 20, 2025;
7. Declare unlawful and unconstitutional and vacate and set aside Defendants' policy or practice of imposing civil penalties under section 1324d without an individualized determination of culpability or the proportionality of the fine in violation of the Eighth Amendment's Excessive Fines Clause;

8. Declare unlawful, arbitrary and capricious, and contrary to law and vacate and set aside Defendants' policy or practice of imposing fines without an individualized determination of the statutory factors in violation of the APA, and vacate and set aside all fines issued pursuant to this policy;
9. Permanently enjoin Defendants, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, or giving effect to the unlawful policies and/or practices challenged herein as to the 1324d subclass;
10. Declare the Ratification Notice, and all fines ratified pursuant to it, unlawful;
11. Stay the Ratification Notice and all fines ratified pursuant to it under 5 U.S.C. § 705;
12. Issue all necessary and appropriate process under 5 U.S.C. § 705 to prevent irreparable injury and preserve status and rights as to individuals issued fines ratified pursuant to the Ratification Notice;
13. Vacate and set aside the Ratification Notice and all fines ratified pursuant to it under 5 U.S.C. § 706(2);
14. Award costs and fees for this action, including attorneys' fees; and
15. Award such further relief as this Court deems just and proper.

C. As remedies for Counts XI and XII, Maria L., Oscar N., and CHIRLA request that this Court:

1. Declare the Final Rule, and all fines issued pursuant to it, unconstitutional and unlawful;
2. Stay the Final Rule and all fines issued pursuant to it under 5 U.S.C. § 705;

3. Issue all necessary and appropriate process under 5 U.S.C. § 705 to prevent irreparable injury and preserve status and rights as to individuals issued fines under the Final Rule;
4. Vacate and set aside the Final Rule and all fines issued pursuant to it under 5 U.S.C. § 706(2);
5. Award costs and fees for this action, including attorneys' fees; and
6. Award such further relief as this Court deems just and proper.

Dated: November 6, 2026

Respectfully submitted,

/s Evan Henley
Hasan Shafiqullah*
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

David Bennion*
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan*
Stephen Rees*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Charles Moore (BBO No. 708061)
Shelby Leighton*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
sleighton@publicjustice.net

Alina Das*
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu

Leila Nasrolahi*
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

Addison Thompson*
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

* admitted pro hac vice

**CERTIFICATE OF SERVICE**

I certify that, on November 6, 2026, I caused the foregoing document to be filed via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

*/s Evan Henley*
Evan Henley