UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARIA L., *et al.*,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, *et al.*,

*Defendants*.

Case No. 1:25-cv-13471-GAO

Hon. George A. O'Toole

**EMERGENCY DISPOSITION REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND STAY OF THE FINAL RULE AND RATIFICATION OF CIVIL PENALTIES AND TO ENFORCE THE COURT'S STAY ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
BACKGROUND .......... 4
LEGAL STANDARD .......... 8
ARGUMENT .......... 8
I. Plaintiffs Have Standing to Challenge the Final Rule and Ratification Notice. .......... 8
II. Plaintiffs Are Likely to Succeed on the Merits of Their Claims. .......... 11
A. The Final Rule Is Not in Accordance with Law. .......... 11
B. The Final Rule Is Arbitrary and Capricious. .......... 14
C. The Ratification Notice Violates the APA and the Stay Order. .......... 17
III. Plaintiffs Have Suffered and Will Suffer Irreparable Harm. .......... 18
IV. The Balance of Equities and Public Interest Favor a Stay. .......... 19
CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. Healey*, 457 F. Supp. 3d 17 (D. Mass. 2020) ... 8

*AFL-CIO v. NLRB*, 57 F.4th 1023 (D.C. Cir. 2023) ... 18

*Am. Fed. of Gov't Emps. v. Kupor*, 2026 WL 2676621 (D. Mass. Sept. 11, 2026) ... 18

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979) ... 9

*Biden v. Nebraska*, 600 U.S. 477 (2023) ... 8

*De Jesus Santos v. Mullin*, 839 F. Supp. 3d 39 (D. Mass. 2026) ... 20

*Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998) ... 17

*Ford v. Shalala*, 87 F. Supp. 2d 163 (E.D.N.Y. 1999) ... 19

*Garcia v. Spaulding*, 324 F. Supp. 3d 228 (D. Mass. 2018) ... 8

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019) ... 17

*Housatonic River Initiative v. EPA*, 75 F.4th 248 (1st Cir. 2023) ... 10, 11

*Iacaboni v. United States*, 251 F. Supp. 2d 1015 (D. Mass. 2003) ... 20

*Levesque v. Block*, 723 F.2d 175 (1st Cir. 1983) ... 17

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ... 17

*M.G.U. v. Nielsen*, 325 F. Supp. 3d 111 (D.D.C. 2018) ... 20

*Massachusetts v. N.I.H.*, 770 F. Supp. 3d 277 (D. Mass. 2025) ... 20

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ... 15, 16

*N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62 (1st Cir. 2018) ... 3, 18

*Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906 (D.C. Cir. 1999) ... 11

*New England Synod v. Dep't of Homeland Sec.*, 824 F. Supp. 3d 118 (D. Mass. 2026) ... 8

*Nken v. Holder*, 556 U.S. 418 (2009) ... 19

*NRDC v. EPA*, 683 F.2d 752 (3d Cir. 1982) ........ 17

*Paulsen v. Daniels*, 413 F.3d 999 (9th Cir. 2005) ........ 17

*Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973) ........ 19

*Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261 (W.D. Mich. 1990) ........ 19

*Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969) ........ 19

*Somerville Pub. Sch. v. McMahon*, 139 F.4th 63 (1st Cir. 2025) ........ 20

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........ 9

*U.S. Steel Corp. v. U.S. Envtl. Prot. Agency*, 595 F.2d 207 (5th Cir. 1979) ........ 3

*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ........ 9

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ........ 19

*United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011) ........ 17

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ........ 8

*Vaqueria Tres Monjitas, Inc. v, Irizarry*, 587 F.3d 464 (1st Cir. 2009) ........ 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........ 8

*Woodby v. INS*, 385 U.S. 276 (1964) ........ 13

*Ye v. United States Dep't of Homeland Sec.*, 2026 WL 2584711 (N.D. Cal. Sept. 1, 2026) ........ 19

**Statutes**

5 U.S.C. § 556 ........ 12

5 U.S.C. § 705 ........ 8

5 U.S.C. § 706 ........ 10, 17

**Rules**

Fed. R. Civ. P. 65 ........ 8

**Regulations**

8 C.F.R. § 281.1 .......... 5, 17

8 C.F.R. §§ 280.1 *et seq.* .......... 5

*Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27439 (June 27, 2025) .......... passim

*Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 91 Fed. Reg. 65390 (Oct. 14, 2026) .......... passim

**Other Authorities**

*DHS Announces More Than $84 Billion in Civil Fines Issued to Illegal Aliens* (Jul. 23, 2026), https://www.dhs.gov/news/2026/07/23/dhs-announces-more-84-billion-civil-fines-issued-illegal-aliens .......... 5

*Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) .......... 2, 7, 8, 17

## INTRODUCTION

Last month, this Court found that Plaintiffs were likely to succeed on their claims that Defendants' massive immigration civil fines program violates the Administrative Procedure Act ("APA") and entered a stay of Defendants' Interim Final Rule ("IFR") and all fines issued thereunder. Now, Plaintiffs seek emergency relief and a stay or injunction of two new actions by Defendants—a nearly identical final rule and a notification that purports to "ratify" the very fines this Court stayed—that flout this Court's decision and order and expose Plaintiffs and putative class members to immense and irreparable harm.

Plaintiffs are challenging Defendants' imposition of massive uniform fines on noncitizens who remain in the country following a final removal order or voluntary departure order. Defendants' policy of issuing these exorbitant fines—which can exceed $1.8 million per person, and which are imposed without making statutorily required findings that the noncitizen had "willfully" or "voluntarily" remained in the country following a final order of removal or voluntary departure order ("removal order")—violates the APA and the U.S. Constitution. On June 27, 2025, without notice and comment, Defendants promulgated the IFR, *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27439 (June 27, 2025), which removed minimal procedural safeguards regarding fines issued under Sections 1229c and 1324d and implemented an illegal process of imposing these fines without individualized consideration. Defendants issued over 110,000 fines under the IFR, totaling well over $84 billion, before this Court found that the IFR was likely illegal and granted Plaintiffs' motion for an APA stay of the IFR and all fines issued under it. *See* ECF No. 113 ("Op."); ECF No. 114 ("Stay Order").

Four days after the Court docketed its Stay Order, Defendants Department of Homeland Security ("DHS") and Executive Office for Immigration Review ("EOIR") issued a final rule, effective October 14, 2026, which adopted the IFR in all material respects. *Imposition and*

*Collection of Civil Penalties for Certain Immigration-Related Violations*, 91 Fed. Reg. 65390 (Oct. 14, 2026) (the "Final Rule").[1] The Final Rule adopts the same flawed process and evidentiary presumptions that this Court already found likely violate the APA. In other words, rather than address the myriad issues with the IFR that this Court identified, Defendants issued a Final Rule that violates the text of the Immigration and Nationality Act (the "INA") and the APA in the exact same way as the IFR: "the civil penalties appear to be intended to be imposed without individual consideration and assessment of the willfulness or voluntariness of the behavior in violation of Sections 1229c and 1324d." Op. at 13.

Soon thereafter, DHS published a notification, *Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) (the "Ratification Notice"),[2] that purports to "ratify" the same fines issued under the IFR that the Court found likely to be unlawful and stayed. The Ratification Notice does not only violate the Stay Order by disrupting the status quo; it also independently violates the APA because, among other reasons, DHS has no authority to retroactively cure defects with the IFR. Moreover, it is a legislative rule that itself requires notice and comment rulemaking.

The Final Rule and Ratification Notice should be stayed or preliminarily enjoined. *First*, Plaintiffs are likely to succeed on the merits of their claim that the Final Rule is contrary to law because this Court has already found the IFR likely unlawful, and the Final Rule adopts the IFR in nearly its entirety. The Final Rule relies on the same unlawful evidentiary presumption found in the IFR, inferring that an individual violates Sections 1229c and 1324d based only on the fact that "an individual remains in the country after a final order of removal or voluntary departure

[1] *Available at* https://www.govinfo.gov/content/pkg/FR-2026-10-14/pdf/2026-21024.pdf and attached as Exhibit A.
[2] *Available at* https://www.govinfo.gov/content/pkg/FR-2026-10-26/pdf/2026-21751.pdf and attached as Exhibit B.

order." Op. at 11; *see, e.g.*, 91 Fed. Reg. at 65394. As with the IFR, under the Final Rule, "the civil penalties appear to be intended to be imposed without individual consideration and assessment of the willfulness or voluntariness of the behavior in violation of Sections 1229c and 1324d." Op. at 11, 13. Moreover, the Ratification Notice violates the Stay Order, attempts an unlawful end-run around the IFR's failure to follow the APA's notice and comment requirements, *see U.S. Steel Corp. v. U.S. Envtl. Prot. Agency*, 595 F.2d 207, 214–15 (5th Cir. 1979), and, because it obliges fine recipients to assert prejudice due to the IFR, is a legislative rule that itself requires notice and comment to be lawfully implemented, *see N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018).

*Second*, Plaintiffs face significant irreparable harm under the Final Rule and Ratification Notice, just like they did under the IFR. The fines at issue in this litigation can wreak havoc on any individual targeted by Defendants' civil penalties program, including individual members of Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA"). Defendants threaten the "assessment and possible collection of enormous fines well beyond [the] capacity" of almost any individual to pay. Op. at 18. The fines can exceed $1.8 million, and individuals subject to the fines "face the possible garnishment of their already modest wages, loss of any vehicles and homes, federal collections lawsuits, and other adverse collateral consequences." *Id.* at 19.

*Third*, the balance of equities and public interest favor a stay. As this Court already found as to the IFR, "[g]ranting the stay would not prevent the defendants from imposing fines or pursuing the government's larger immigration goals. Rather, it would only require them to utilize the same procedures that governed the assessment of penalties prior to the IFR." Op. at 19. Instead, Defendants have chosen to implement all the unlawful aspects of the IFR in the Final Rule and now have sought to negate the stay with the Ratification Notice. If anything, the balance of the

equities weighs even *more* in favor of Plaintiffs given Defendants' actions following the Stay Order. Accordingly, the public interest continues to weigh in favor of Plaintiffs.

## BACKGROUND

Since spring 2025 (and both before and after the issuance of the IFR), Defendants have imposed fines under Sections 1229c and 1324d without making the statutorily required findings of willfulness or voluntariness.[3] Before issuance of the IFR, Defendants began issuing fines on a revised Form I-79, which contained only generic, boilerplate allegations. Head Decl., Ex. C, ECF No. 20-3. Defendants affirmed the penalties based on equally bare findings, without evidence or substantive factual findings. *See id.*, Ex. D. In this litigation, Defendants conceded that they assess only three factors when imposing a fine: "[one,] do they have that final order of removal; two, do they know about that final order of removal; and then, three, do they remain in the country." July 22, 2026, Tr. at 29. Indeed, Defendants admit that they do not conduct an individualized inquiry until after they have already imposed a penalty, and then only if someone appeals. *See* ECF No. 32 at 16 (noting that "circumstances that would lead an individual to remain in the country following an order of removal" are "accounted for with mechanisms built into the review process for [noncitizens][4] to contest their penalties"). Even in the limited instances when someone does appeal a fine, Defendants decline to address circumstances rebutting an allegation that a failure to depart was willful or voluntary—as was the case with Plaintiffs Maria L., Nancy M., and Oscar N., as well as the declarants who recounted their experiences. ECF Nos. 20-1, 20-2, 112-1, 112-2, 112-3, 112-4, 112-5, 112-6, 112-7, 112-8, 112-9, 112-10, 112-11, 112-12, 112-13; Oscar N. Decl.

---

[3] This Court previously described the statutory and regulatory background of fines issued under Sections 1229c and 1324d for noncitizens who allegedly fail to willfully or voluntarily depart following a removal order. *See* Op. at 2–6.

[4] This memorandum of law uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (citing *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020)).

Between March 26 and June 26, 2025, Defendants issued 12,135 fines. 91 Fed. Reg. at 65395. Individuals who received fines during that period could challenge the fines using the 8 C.F.R. part 280 procedures. *See id.*

Then, on June 27, 2025, Defendants promulgated the IFR to impose these fines "swiftly and at [] scale" and "achieve the Administration's immigration enforcement and border security objectives." 90 Fed. Reg. at 27446. Defendants promulgated the IFR without notice and comment, adopting overnight a new enforcement scheme that heavily curtailed the process for challenging the fines and substantively changed the nature of the fines. *Compare* 8 C.F.R. §§ 280.1 *et seq.*, *with* 8 C.F.R. § 281.1; *see also* Op. at 5–6. Defendants trumpet that, between spring 2025 and July 2026, they issued more than 110,000 fines totaling more than $84 billion. *See* 91 Fed. Reg. at 65395; *DHS Announces More Than $84 Billion in Civil Fines Issued to Illegal Aliens* (Jul. 23, 2026).[5]

On November 20, 2025, Plaintiffs filed a complaint challenging the IFR and fines issued before and after the IFR. ECF No. 1. Plaintiffs then moved under the APA to stay the IFR, Defendants' imposition of fines under Sections 1229c and 1324d without individualized consideration of the willfulness or voluntariness of a recipient's conduct (the "Blanket Fine Policy"), and all fines issued under the Blanket Fine Policy and the IFR. ECF No. 19.

On September 30, 2026, the Court issued an order staying the IFR and all fines issued thereunder. ECF No. 114. The Court first found that the individual Plaintiffs plausibly had standing to move for a stay because their "asserted injuries—the imposition of crippling fines and the potential collateral consequences without individual consideration based on a rule that was

---

[5] *Available at* https://www.dhs.gov/news/2026/07/23/dhs-announces-more-84-billion-civil-fines-issued-illegal-aliens.

promulgated without notice and comment—is likely to be redressed by a favorable judicial decision that vacates the IFR and prohibits the assessment of fines under the current policy." Op. at 9–10. The Court next concluded that Plaintiffs "have demonstrated they are likely to succeed in showing that the IFR was issued without customary notice and comment" and "a likelihood of success on the merits that the IFR and its subsequent *en masse* imposition of civil penalties are contrary to law because the fines are apparently imposed without individual consideration of whether the purported conduct is either willful or voluntary." *Id.* In particular, despite Sections 1229c and 1324d "penaliz[ing] conduct only where it is shown to be willful or voluntary," "[n]either the IFR nor the Blanket Fine Policy appear to make individual assessments regarding the willfulness or voluntariness of the behavior prior to the assessment of fines under the relevant statutes." *Id.* at 11. The Court also found that Plaintiffs would suffer irreparable harm absent a stay: "[t]he plaintiffs here face assessment and possible collection of enormous fines well beyond their capacity to pay" that "would push the plaintiffs … into insolvency," as well as "the possible garnishment of their already modest wages, loss of any vehicles and homes, federal collections lawsuits, and other adverse collateral consequences." *Id.* at 17–19. Last, the Court concluded that the balance of equities and the public interest weighed in favor of a stay because "[g]ranting the stay would not prevent the defendants from imposing fines or pursuing the government's larger immigration goals," but rather "would only require them to utilize the same procedures that governed the assessment of penalties prior to the IFR." *Id.* at 19.

The Stay Order was docketed on October 5, 2026. Four days later, Defendants issued the Final Rule. The Final Rule adopted the IFR in its near entirety, with only one minor change to "permit[] acceptance of a late-filed appeal based on documented mail delivery delays that ICE finds were beyond the [noncitizen's] control." 91 Fed. Reg. at 65390. The Final Rule otherwise

maintains all aspects of the IFR. It does not explain how the agencies will make individualized assessments. It does not amend the forms used to assess the fines, which do not provide any explanation at all for the fine or the amount. *Id.* at 65409 ("DHS does not believe that any additional information is required."). It does not specify what allegations support a willful or voluntary violation of the law. It does not describe the impact of many forms of relief available to an individual after receiving a removal order. Instead, the Final Rule simply repeats the same refrain that this Court already found is likely illegal: Defendants can *infer* willfulness or voluntariness simply because of a noncitizen's presence in the country following a removal order. *See id.* at 65394 ("DHS concludes that [a noncitizen's] continued presence in the United States is generally sufficient to establish the willful or voluntary failure to depart required to impose these civil penalties, absent evidence provided by the [noncitizen] on appeal to demonstrate that the [noncitizen] is not liable."); *id.* ("DHS believes the statutory prerequisites to issue a penalty will have been met where [a noncitizen] ordered removed or granted voluntary departure is physically present in the United States beyond the time frame specified by the Immigration Judge.").

Then, on October 26, 2026, DHS published the Ratification Notice in the Federal Register, 91 Fed. Reg. 67325. In the Ratification Notice, DHS contends that "[a]lthough it was unnecessary because the IFR was subject to two exceptions to the requirements of the Administrative Procedure Act regarding notice and comment, DHS and EOIR opened the IFR for public comments through July 28, 2025." *Id.* at 67325. It continues that, "To resolve any uncertainty, the Secretary of Homeland Security has decided to ratify all civil penalties issued [under the IFR]." *Id.* The Ratification Notice concludes, "The Secretary of Homeland Security hereby ratifies all final civil penalty decisions . . . issued [under the IFR]." *Id.* at 67326. It then establishes a procedure by which a fine recipient who claims that they have been prejudiced by the IFR "may raise that claim

to ICE to evaluate whether such prejudice has been shown and what remedy, if any, is appropriate." *Id.* It sets a deadline of November 16, 2026, for those claims to be made. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes preliminary injunctions and temporary restraining orders. The standard for both is the same. *ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 23 (D. Mass. 2020). To prevail, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These factors also govern stays under 5 U.S.C. § 705. *See New England Synod v. Dep't of Homeland Sec.*, 824 F. Supp. 3d 118, 139 (D. Mass. 2026); Op. at 7–8.

Under 5 U.S.C. § 705, a court may "issue all necessary and appropriate process" "to preserve status or rights pending conclusion of the review proceedings" "to the extent necessary to prevent irreparable injury." And under the All Writs Act and its inherent authority, "a court may issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977); *see Garcia v. Spaulding*, 324 F. Supp. 3d 228, 235 (D. Mass. 2018) ("A court has inherent authority to construe, interpret, and enforce (or vacate) its own orders.").

## ARGUMENT

### I. Plaintiffs Have Standing to Challenge the Final Rule and Ratification Notice.

One Plaintiff with standing satisfies Article III's case-or-controversy requirement. *See Biden v. Nebraska*, 600 U.S. 477, 489 (2023). Given that this Court found that the initial Plaintiffs had standing to challenge the IFR, Op. at 9–10, the same reasoning applies for their challenge to the Ratification Notice that purports to ratify the IFR and fines imposed under it.

Maria L. and Oscar N. also have standing to challenge the Final Rule because Defendants' interpretation of the "continuing violation" doctrine means that Defendants may impose additional fines on them under the Final Rule. Under Defendants' interpretation, a noncitizen is "subject to a continuing or new penalty each day he remains in the United States in violation of a removal order." *See* 91 Fed. Reg. at 65424.[6] "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). Maria L. and Oscar N. both have a final order of removal and intend to remain in the United States to pursue their respective applications for immigration relief. ECF No. 22-1, Maria L. Decl. ¶¶ 12–15; Oscar N. Decl. ¶¶ 7, 16–18. In other words, they both have "an intention to engage in a course of conduct" that Defendants have determined is "proscribed by statute," and there is a "credible threat" that Defendants will fine them. *See Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (cleaned up)).

CHIRLA also has standing. A membership organization has "standing to sue on behalf of its members when three requisites have been fulfilled: (1) at least one of the members possesses standing to sue in his or her own right; (2) the interests that the suit seeks to vindicate are pertinent to the objectives for which the organization was formed; and (3) neither the claim asserted nor the relief demanded necessitates the personal participation of affected individuals." *United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992). Each of those factors is present here.

*First*, at least one member of CHIRLA is at imminent risk of being subjected to the Final Rule, and that member's future injuries would be redressed by staying, and ultimately vacating,

---

[6] In fact, Defendants have already assessed two separate fines against Oscar N., first under Section 1229c and then under 1324d. Oscar N. Decl. ¶¶ 2–10.

the Final Rule. Salas Decl. ¶¶ 13–16. The threat of harm to CHIRLA's members is imminent, concrete, and particularized. Roughly 110,000 individuals received fines under Sections 1229c and 1324d pursuant to the IFR, at a pace of 2,800 per week. 91 Fed. Reg. at 65396. Defendants fully intend to continue issuing fines at this pace. *Id.* at 65393. The Final Rule utilizes the same procedures as the IFR, including presuming a violation based merely on a removal order and continued physical presence. *Id.* at 65394. "[T]hese updated procedures will allow DHS to impose these civil penalties more swiftly on more [noncitizens]." *Id.* at 65393.

CHIRLA members M.G. and G.G. are two noncitizens who face a substantial risk of receiving a fine issued under the Final Rule. Salas Decl. ¶¶ 14–16. They have a final order of removal. *Id.* ¶ 14. They have not yet received a fine. *Id.* ¶ 16. They have a pending petition for U nonimmigrant status that would allow them to become lawful permanent residents. *Id.* ¶ 15. Many other noncitizens have received fines under similar circumstances. *See, e.g.*, ECF No. 112-2 (derivative of pending petition for T nonimmigrant status); ECF No. 112-3 (pending petition for U nonimmigrant status); ECF No. 112-5 (pending petition for U nonimmigrant status). The risk that M.G. and G.G. will be targeted by the Final Rule and issued fines is significant and imminent.

*Second*, the interests asserted by CHIRLA in this lawsuit are germane to the organization's overall objectives. If the "interests at stake" are "related to the [plaintiff's] core purposes," an organization has standing to sue on behalf of its members. *Housatonic River Initiative v. EPA*, 75 F.4th 248, 265 (1st Cir. 2023). Among CHIRLA's core purposes is the advancement of immigrants' civil rights, Salas Decl. ¶ 3, which are implicated by the Final Rule.

*Third*, neither the claim asserted nor the relief demanded requires the participation of CHIRLA's individual members because the lawsuit seeks forward-looking APA, declaratory, and

injunctive relief that would "inure to the benefit of those members . . . [who are] actually injured." *See Housatonic River Initiative*, 75 F.4th at 265 (quotation omitted).

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

### A. The Final Rule Is Not in Accordance with Law.

Section 706(a) of the APA instructs reviewing courts to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Like the IFR and the Blanket Fine Policy, the Final Rule is "not in accordance with the law because [it] effectively read[s] the words 'voluntarily' and 'willfully' out of the relevant statutory provisions." Op. at 10. Like the IFR, fines under the Final Rule "are apparently imposed without individual consideration of whether the purported conduct is either willful or voluntary." *Id.* Like the IFR, the Final Rule flips the typical burden of proof, requiring that the individual rebut Defendants' impermissible inference of a violation. And like the IFR, the Final Rule fails to comport with Sections 1229c and 1324d's voluntariness or willfulness requirements. The Final Rule is, therefore, not in accordance with law and violates the APA.

To impose fines *en masse*, the Final Rule uses the same unlawful evidentiary presumption as the IFR. An evidentiary presumption is "only permissible if there is a sound and rational connection between the proved and inferred facts, and when proof of one fact renders the existence of another fact *so probable* that it is sensible and timesaving to assume the truth of the inferred fact until the adversary disproves it." *Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 911–12 (D.C. Cir. 1999) (cleaned up). The Final Rule does not employ such a permissible presumption. Under the Final Rule, "DHS concludes that [a noncitizen's] continued presence in the United States is generally sufficient to establish the willful or voluntary failure to depart required to impose these civil penalties, absent evidence provided by the [noncitizen] on appeal to demonstrate that the [noncitizen] is not liable." 91 Fed. Reg. at 65394. But, as the Court held, "[t]here are circumstances

in which a noncitizen might remain in the country following a removal order or voluntary departure order without meeting the statutory requirements for civil penalties." Op. at 12. Those include individuals pursuing humanitarian relief, like Maria L.; those pursuing family-based relief, like Oscar N.; those under orders of supervision while pursuing lawful status, like Nancy M.; those who are unable to depart, like third-party declarant O.I.; and many others. *See* ECF Nos. 20-1, 20-2, 112-1, 112-2, 112-3, 112-4, 112-5, 112-6, 112-7, 112-8, 112-9, 112-10, 112-11, 112-12, 112-13; Oscar N. Decl. ¶¶ 17–18.

The Final Rule gestures at some of these circumstances, suggesting that "ICE guidance requires the immigration officer to . . . review[] the [noncitizen's] immigration records for information suggesting that the [noncitizen's] failure to depart was not willful or voluntary." 91 Fed. Reg. at 65394. If this guidance exists—it has never been cited in this litigation and was referenced for the first time in the Final Rule—it is inadequate. The guidance purportedly factors in whether, for example, a noncitizen is pursuing "certain immigration benefits under the Violence Against Women Act ("VAWA")." *Id.* But of course, that guidance did not prevent Defendants from imposing fines on VAWA recipients and other similarly situated individuals in the past. ECF No. 112-9 ¶ 3; 112-11 ¶ 8. And the Final Rule does not even mention other important circumstances, like the family-based relief that ultimately allowed Nancy M. to obtain her green card during the pendency of this case, ECF No. 112-13 ¶¶ 10–12, 16, 25. Further, the Final Rule's vague statement that ICE officers will consider these individual circumstances is contradicted by the Final Rule's admissions that "DHS cannot be expected to know about a [noncitizen's] individual circumstances that prevented the [noncitizen] from departing" and "DHS would

generally not have knowledge of such circumstances." 91 Fed. Reg. at 65422–23. As a result, the evidentiary inference in the Final Rule is contrary to law.[7]

Moreover, Defendants' failure to adequately examine an individual's willfulness or voluntariness is evident from the language of the Final Rule itself. The Final Rule continues to describe the assessment of penalties as "straightforward." *See* Op. at 11 ("The IFR repeatedly asserts that the assessment of penalties is 'straightforward' and readily verifiable with DHS's own documentary evidence."). The Final Rule uses the term "straightforward" twenty-nine times. *See, e.g.*, 91 Fed. Reg. at 65393 ("[T]hese civil penalties typically turn on routine and straightforward factual and legal determinations."); *see also* Op. at 11 (noting that IFR repeats "straightforward" more than twenty times).

Indeed, the forms used by Defendants to assess and affirm penalties under the Final Rule—the same as under the IFR—remain conclusory and lack any indication that an individualized assessment occurs. The Final Rule states that willfulness and voluntariness are established by the form "list[ing] whether the [noncitizen] is being issued a civil penalty for willfully failing or refusing to depart the United States, or for instead, voluntarily failing to comply with a voluntary departure order." 91 Fed. Reg. at 65409. "DHS does not believe that any additional information is required." *Id.* However, the forms, which consist of checkboxes next to boilerplate legal

---

[7] The effect of this unlawful presumption is exacerbated because the Final Rule flips the usual burden of proof from the government to the fine recipient, claiming that "the noncitizen, not DHS, is in the best position to produce such evidence [rebutting willfulness or voluntariness] and may do so during the available appeals process before DHS." 91 Fed. Reg. at 65409. But by using the terms "willfully" and "voluntarily," which relate to an individual's intent, Sections 1229c and 1324d place the burden of proof on the agency imposing the fines. Defendants must meet a "clear and convincing evidence standard" in the immigration context. *Woodby v. INS*, 385 U.S. 276, 277 (1966). And under the APA, the burden of proof lies with the "proponent of a rule or order." 5 U.S.C. § 556(c). Defendants do not justify their departure from these principles.

conclusions, *e.g.*, ECF No. 20-3 Exs. C–D, lack any individualized assessment of willfulness or voluntariness.

Defendants' blanket issuance of the maximum possible fine underscores the lack of individualized inquiry. The Final Rule explicitly states that ICE and CBP do not consider individual factors when assessing the amount of a fine to issue but instead have a "uniform practice of assessing the maximum statutorily authorized penalty amount in each case." 91 Fed. Reg. at 65419. These are the same "en masse imposition[s] of civil penalties" that "are apparently imposed without individual consideration of whether the purported conduct is either willful or voluntary" that this Court previously found were likely illegal. Op. at 10.

Finally, the sheer volume of fines demonstrates Defendants' failure to conduct an individualized inquiry. The Court previously found that "initiating nearly 10,000 notices for failure-to-depart civil monetary penalties between March and June 2025 belies an argument that each of those circumstances were individually evaluated for willfulness or voluntariness." *Id.* at 12. The IFR itself led to the issuance of 110,000 fines, tripling Defendants' pre-IFR pace. 91 Fed. Reg. at 65395 (noting that "DHS increased the number of civil penalties issued from approximately 930 per week under the pre-IFR process to nearly 2,800 per week under the IFR process"). That staggering pace cannot permit an individualized assessment for each penalty. Instead, it indicates that Defendants use an automated—or automatic—process to assess the fines.

In sum, the Final Rule is contrary to law for the same reasons as the IFR.

### B. The Final Rule Is Arbitrary and Capricious.

The Final Rule is not only "not in accordance with the law," 5 U.S.C. § 706(2)(A), it is also arbitrary and capricious. By disregarding the statutory requirements that any alleged violation be willful or voluntary, the Final Rule—like the IFR—is "arbitrary and capricious" because it

"entirely fail[s] to consider an important aspect of the problem." *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see supra* § II.A. This failure alone is sufficient to find the Final Rule likely violates the APA.

The Final Rule is also arbitrary and capricious because, like with the IFR before it, Defendants fail to provide a satisfactory explanation for their action. *See State Farm*, 463 U.S. at 43 ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (cleaned up)); *see also id.* (agency action is arbitrary and capricious when it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise"). For example, Defendants' justification for the Final Rule's evidentiary presumption is contradictory and irrational. Defendants argue their presumption is justified because noncitizens received due process in immigration court before receiving a removal order and should have been informed "of departure obligations and penalties," including the fines at issue in this case. *Id.* at 65394. But for fines under Sections 1229c and 1324d, what matters is not if a noncitizen received due process *during* their immigration proceeding or was informed of the fine in their removal order, but rather if they willfully or voluntarily disobeyed the removal order *after* it was issued. The immigration proceedings leading up to a removal order, and whatever warnings a noncitizen may have received with their removal order, are of limited relevance to whether the Final Rule's processes for the initial assessment of liability under Sections 1229c and 1324d and reviewing subsequent appeals (if any) are sufficient.

Defendants' explanation of how they apply the presumption further highlights its irrationality. The Final Rule claims that ICE's guidance instructs officers "that [noncitizens] with approved (or in some cases tentatively approved) applications for VAWA protections, T-visas,

and U-visas for [noncitizens] who are victims of human trafficking or certain crimes should not be issued a civil fine," 91 Fed. Reg. at 65394, 65399, thus acknowledging that noncitizens entitled to these statutory protections have not willfully or voluntarily failed to comply with a removal order. Of course, to obtain these protections, a noncitizen must first apply for them. Still, under the Final Rule, Defendants claim the authority to impose civil penalties on these same individuals during the pendency of their applications, up to the point when DHS approves them. *See, e.g.*, *id.* at 65399; *see also* ECF No. 112-2 (letter sent by ICE to derivative of petition for T nonimmigrant status in response to fine invoice dispute stating, "Although there appears to be an application pending with USCIS . . . to obtain derivative nonimmigrant status, the determination of that application does not impact [] civil liability for not complying with the requirements of section 274D of the INA."). The Final Rule does not explain why or how DHS's approval of an application could retroactively transform the nature of a noncitizen's continued presence in the United States following a removal order, which would be irrational in any event. And it does not contain any mechanism for the rescission of a civil penalty following DHS's approval of an application—not that rescission of the fine would undo the harm caused by its imposition.

To the extent that Defendants offer any evidence in support of the evidentiary presumption, *see supra* § II.A, the facts only highlight that they lack a reasoned justification for the change. *See State Farm*, 463 U.S. at 43 (agency action is arbitrary and capricious where the agency "offered an explanation for [their] decision that runs counter to the evidence before the agency"). For example, the Final Rule insists that "the risk of imposing these civil fines in error is low given the straightforward nature of these civil penalty determinations." *Id.* at 65398. Yet Defendants report that noncitizens prevailed in 25 percent of adjudicated appeals, *id.* at 65396, and that ICE "mistakenly issued penalties" even before the IFR and Final Rule "spe[d] up the process of issuing

and finalizing ICE civil penalty decisions," *id.* at 65402–03. These facts are not consistent with a low error rate, yet Defendants issued the Final Rule without attempting to reduce their error rate.

**C. The Ratification Notice Violates the APA and the Stay Order.**

Like the Final Rule, the Ratification Notice violates the APA. It also violates the Stay Order. *First*, the Court already determined the IFR likely violated the APA because Defendants failed to comply with notice and comment requirements. Op. at 13–17. The Ratification Notice brushes the Court's ruling and the APA's requirements aside. An agency cannot cure its failure to offer notice and comment before a rule's effective date by accepting and considering comments after the fact. *See United States v. Johnson*, 632 F.3d 912, 929 (5th Cir. 2011) (post-promulgation comments do not excuse non-compliance with APA procedures); *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) ("It is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later."); *NRDC v. EPA*, 683 F.2d 752, 768 (3d Cir. 1982) ("[T]he provision of post-promulgation notice and comment procedures cannot cure the failure to provide such procedures prior to the promulgation of the rule at issue."); *see also Levesque v. Block*, 723 F.2d 175, 187 (1st Cir. 1983) ("It has generally been held that a rule found invalid for failure to provide for notice and comment cannot be saved by providing for comment after promulgation.").[8] And Defendants cannot overcome this fatal flaw in the IFR by "ratifying" the fines issued under it.[9] *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024) ("'[T]he

---

[8] Here, no "real public reconsideration of the issued rule" occurred. *See Levesque*, 723 F.2d at 188. "The Final Rule has no material difference from the IFR . . . ." 91 Fed. Reg. at 67325.

[9] DHS's lone citation of authority utterly fails to support its action. It relates to the ability of a duly appointed official to "ratify" the actions of an allegedly invalidly appointed official and thus "purge[] any residual taint or prejudice left over from the allegedly invalid appointment." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019). This principle, which flows from the law of agency, *see Doolin Sec. Sav. Bank v. Office of Thrift Supervision*, 139 F.3d 203, 212–13 (D.C. Cir. 1998), has no application whatsoever in this context.

reviewing court'—not the agency whose action it reviews—is to 'decide all relevant questions of law.'" (quoting 5 U.S.C. § 706)). The Ratification Notice is both contrary to law and arbitrary and capricious.

*Second*, the Ratification Notice is invalid because, like the IFR, it is a legislative rule that DHS implemented without notice and comment. *See N.H. Hosp. Ass'n*, 887 F.3d at 70. Its new procedure for raising claims of prejudice is outlined nowhere in 8 C.F.R. § 281.1 or the INA. And if noncitizens fail to submit claims or make the required showing of prejudice, DHS will "ratify" their fines. The Ratification Notice thus "creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself." *N.H. Hosp. Ass'n*, 887 F.3d at 70 (quotation omitted); *see* Op. at 16 ("[T]he critical feature of a rule that satisfies the so-called procedural exception is that it covers agency actions that do not themselves alter the rights or interests of parties." (quoting *AFL-CIO v. NLRB*, 57 F.4th 1023, 1034 (D.C. Cir. 2023))).

*Third*, the Stay Order stayed the IFR and "all fines issued thereunder." Stay Order at 2. The stay "suspend[s] *administrative* alteration of the *status quo*" for these fines. *See Am. Fed. of Gov't Emps. v. Kupor*, 2026 WL 2676621, at *6 (D. Mass. Sept. 11, 2026) (O'Toole, J.) (emphasis in original) (citation omitted). DHS attempts to alter the status quo by "ratifying" the very fines that the Court stayed. The Court should enjoin the Ratification Notice to rebuff this direct attack on the Stay Order.

## III. Plaintiffs Have Suffered and Will Suffer Irreparable Harm.

When "the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009). Plaintiffs have suffered—and will continue to face—numerous irreparable harms, including the imposition of hundreds of thousands of dollars in fines and the threat of future fines. *See, e.g.*, Salas Decl. ¶¶ 6, 12–13.

As this Court has already recognized, the civil penalties at issue here risk further irreversible harm beyond monetary loss. *See* Op. at 17. Those harms include garnishment of wages and bank accounts; seized assets, including vehicles and homes; and adverse determinations regarding future admissibility determinations. *See* 90 Fed. Reg. 20357, 20358 (May 9, 2025); ECF No. 1, Compl. ¶¶ 113–24; Salas Decl. ¶¶ 12, 16. Each involves a substantial deprivation. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993) (the right to one's home); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 341–42 (1969) (protections against garnishment); *Raper v. Lucey*, 488 F.2d 748, 753 (1st Cir. 1973) (motor vehicles).

Fine recipients, many of whom are in economically precarious positions, Salas Decl. ¶ 12, live under the constant threat of collections, imposing "economic and emotional" instability, *Ford v. Shalala*, 87 F. Supp. 2d 163, 178 (E.D.N.Y. 1999), and an attendant "financial planning burden," *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990); *see also Ye v. U.S. Dep't of Homeland Sec.*, 2026 WL 2584711, at *10 (N.D. Cal. Sept. 1, 2026) (enjoining fine under 8 U.S.C. § 1324d after finding "material irreparable harm" where the plaintiff faces "irreparable credit damage and the stress of impending financial instability"); ECF No. 20-1, Maria L. Decl. ¶¶ 20–21; Salas Decl. ¶ 12.

Finally, Plaintiffs who were previously fined under the IFR continue to face injury based on Defendants' "continuing violation" theory. *See supra* § I. Plaintiffs face the threat of new and additional penalties each day they remain in the United States. These financial burdens similarly constitute material irreparable harm.

## IV. The Balance of Equities and Public Interest Favor a Stay.

The final two factors, balance of equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court has held that these factors favor a stay of the IFR. Op. at 19–20. The same rationale applies here.

The public has a fundamental interest in ensuring that Defendants comply with the law. *See, e.g.*, *Somerville Pub. Sch. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025); *Massachusetts v. N.I.H.*, 770 F. Supp. 3d 277, 326 (D. Mass. 2025). The public also has substantial interests in ensuring that agencies follow required procedures and consider public input, *see Iacaboni v. United States*, 251 F. Supp. 2d 1015, 1039 (D. Mass. 2003), and that Defendants "respect[] the rights of immigrants," *M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 124 (D.D.C. 2018). This factor should weigh particularly heavily in favor of a stay given that Defendants seemingly rushed to publish the Final Rule shortly after this Court declared the IFR—which the Final Rule essentially adopts wholesale—was likely unlawful, and Defendants then issued the Ratification Notice attempting to "ratify" fines issued under that same illegal IFR.

While Defendants have asserted a general interest in enforcing federal immigration law, ECF No. 32 at 19; July 22, 2026, Tr. at 34, "the Government has no public interest in perpetuating unlawful agency action," *De Jesus Santos v. Mullin*, 839 F. Supp. 3d 39, 59 (D. Mass. 2026) (quotation omitted). That is precisely what Defendants seek to do here. As the Court previously held, a stay would not prevent Defendants "from imposing fines or pursuing the government's larger immigration goals," so long as their actions comply with the law. Op. at 19. Instead, Defendants chose to forge ahead with the IFR's unlawful procedures in the Final Rule and attempt to ratify their unlawful fines with the Ratification Notice. The public interest favors a stay or injunction of the Final Rule, all penalties issued thereunder, and the Ratification Notice.

## CONCLUSION

For the reasons stated above, the Court should enter a temporary restraining order staying the Final Rule and Ratification Notice for a period of fourteen days and, after a hearing on this motion, stay or enjoin the Final Rule and Ratification Notice during the pendency of this action.

Dated: November 6, 2026

Respectfully submitted,

/s Evan Henley
Hasan Shafiqullah*
Evan Henley (BBO No. 688663)
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org

David Bennion*
Free Migration Project
426 E. Allegheny Ave, Unit 306
Philadelphia, PA 19134
(646) 441-0741
david.bennion@freemigrate.org

Ranganath T. Sudarshan*
Stephen Rees*
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
rsudarshan@cov.com
srees@cov.com

Addison Thompson*
Covington & Burling LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000
athompson@cov.com

*Counsel for Plaintiffs*

Charles Moore (BBO No. 708061)
Shelby Leighton*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
sleighton@publicjustice.net

Alina Das*
NYU Immigrant Rights Clinic
Washington Square Legal Services
245 Sullivan Street, 5th Floor
New York, NY 10012
(212) 998-6430
alina.das@nyu.edu

Leila Nasrolahi*
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joy Chen (BBO No. 714192)
Covington & Burling LLP
One International Place, Suite 1020
Boston, MA 02110
(617) 603-8800
jchen@cov.com

* admitted pro hac vice

**CERTIFICATE OF SERVICE**

I certify that, on November 6, 2026, I caused the foregoing document to be served via email on all counsel of record through the CM/ECF system.

*/s Evan Henley*
Evan Henley