**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| MARIA L., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | No. 1:25-cv-13471-GAO |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' "EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND STAY OF THE FINAL RULE AND RATIFICATION OF CIVIL PENALTIES AND TO ENFORCE THE COURT'S STAY ORDER"**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. The Immigration and Nationality Act .......... 2

II. Enforcement Procedures .......... 3

III. History of Enforcement of Sections 1229c and 1324d .......... 4

IV. Relevant Procedural History .......... 6

LEGAL STANDARD .......... 8

ARGUMENT .......... 9

I. Plaintiffs Cannot Show Likelihood of Success on the Merits .......... 9

A. Plaintiffs Lack Standing. .......... 9

B. Plaintiffs' APA Challenges to the Final Rule Are Unlikely to Succeed on the Merits. .......... 11

1. *The Final Rule is not contrary to law.* .......... 12

2. *The Final Rule is not arbitrary or capricious.* .......... 13

C. The Ratification Notice Does Not Violate the APA or This Court's Stay Order. .......... 16

II. Plaintiffs Cannot Show Irreparable Harm .......... 18

III. The Balance of the Equities and the Public Interest Favor Defendants .......... 19

IV. The Court Should Appropriately Tailor Any Relief .......... 20

## INTRODUCTION

For the second time in this case, Plaintiffs seek preliminary relief to halt the Federal Government's use of two congressionally authorized civil-penalty provisions of the Immigration and Nationality Act ("INA"). The two statutory provisions at issue—enacted nearly 30 years ago—authorize the Department of Homeland Security ("DHS") to assess civil penalties when an alien willfully fails or refuses to depart the country after receiving a final order of removal, 8 U.S.C. § 1324d(a)(1), or voluntarily fails to depart following a voluntary departure order, *id.* § 1229c(d)(1). Plaintiffs previously asked this Court to suspend an interim final rule ("IFR") that adjusted internal agency procedures for assessing and collecting these penalties. They now challenge, on nearly identical grounds, the Final Rule that, following notice-and-comment, replaced the IFR. *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 91 Fed. Reg. 65390 (Oct. 14, 2026) ("Final Rule"); IFR, 90 Fed. Reg. 27439 (June 27, 2025). They also challenge Defendants' Notice of Ratification of civil penalties imposed under the IFR. *Ratification of Civil Penalties*, 91 Fed. Reg. 67325 (Oct. 26, 2026) (the "Ratification Notice").

Plaintiffs' Motion fails—both for lack of jurisdiction and on the merits—for multiple reasons. First, Plaintiffs are not likely to succeed on their Administrative Procedure Act ("APA") claims, which are the only claims Plaintiffs' Motion advances. None of them have been fined under the Final Rule, and none of them have Article III standing to challenge it (or the Ratification). Plaintiffs' arguments also fail substantively. Plaintiffs' challenges to the Final Rule fail because Defendants issue civil penalties *only* following an individualized determination of whether an alien is willfully and voluntarily present in the United States despite a final order of removal—which Congress has expressly authorized Defendants to do. *See generally* Final Rule; Decl. of Michael E. Metesh (attached hereto). Thus, nothing about the Final Rule is "contrary to law." Moreover, the changes in procedure reflected in the Final Rule followed extensive and reasoned consideration of factors, and public comment, that

promote efficiency, benefit border security, public safety, immigration enforcement, and protect the integrity of immigration laws. Thus, they were not "arbitrary or capricious." As to Defendants' Ratification Notice, Plaintiffs' claims fare no better. The Ratification Notice is not a "rule" or "rule making" under the APA. Nor does it violate this Court's Stay Order, because it does not disrupt the status quo; nor did (or could) the Court's Stay Order preclude the government from rectifying, via ratification, a potential defect in the earlier challenged action.

Plaintiffs also fail to establish irreparable harm, largely for the reasons stated above. Further, the balance of the equities and public interest favor Defendants because the government would suffer irreparable injury if enjoined by a court from effectuating and enforcing statutes enacted by Congress.

## BACKGROUND

### I. The Immigration and Nationality Act

Since its enactment in 1952, the INA has authorized civil penalties for a range of immigration-related violations. *See, e.g.*, 8 U.S.C. §§ 1323, 1324a, 1325(b). These civil monetary penalties serve as a deterrent for future violations of the INA. *See* 90 Fed. Reg. at 27446.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") introduced additional immigration enforcement mechanisms into the INA. Section 1229c introduced civil penalties for any alien who fails to voluntarily depart the United States following a voluntary departure order. *See generally* 8 U.S.C. § 1229c. Specifically, if "an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien . . . shall be subject to a civil penalty of not less than $1,000 and not more than $5,000." *Id.* Section 1324d, also introduced in 1996, provides for the assessment of a fine of "not more than $500 . . . *for each day*" an alien subject to a final order of removal "willfully fails or refuses to" (1) "depart from the United States pursuant to the order," (2) "make timely application in good faith for travel or other documents necessary for departure," or (3) "present for removal" or when an alien subject to a

final order of removal "conspires to or takes any action designed to prevent or hamper the alien's departure" under such an order. *Id.* § 1324d(a) (emphasis added).[1]

## II. Enforcement Procedures

Aliens subject to civil penalties under §§ 1229c and 1324d generally receive notice of their legal status and departure obligations as part of the proceedings that result in their removal order or voluntary departure order. 8 U.S.C. § 1229a. In the case of removal orders, aliens are generally adjudicated removable either through proceedings conducted pursuant to INA § 240 (8 U.S.C. § 1229a) ("Section 240 proceedings"), or—where Congress has authorized—through expedited removal under INA § 235(b)(1) (8 U.S.C. § 1225). Section 240 proceedings are adversarial hearings before an immigration judge. *Id.* § 1229a. During Section 240 proceedings, aliens are afforded the right to counsel at no expense to the government, the opportunity to present evidence, and the ability to seek all available statutory relief, including asylum, adjustment of status, and cancellation of removal. *Id.* § 1229a(b)(4), (c)(4). An immigration judge may order an alien removed in Section 240 proceedings only after the immigration judge determines that the alien is removable as charged and adjudicates the alien's claims for relief or protection. *Id.* § 1229a(a), (c)(1)–(3). Aliens who are ordered removed may appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.1(b). A removal order becomes administratively final when either the BIA dismisses an appeal or the time to appeal expires. *Id.* § 1003.1(d)(7). Immigration judges are statutorily required to warn aliens of the consequences of failing to comply with removal orders, including potential civil penalties. 8 U.S.C. § 1229a(c)(5).

Following the entry of a final order of removal, an alien who is not detained, or whom ICE in its discretion releases from physical custody, may be placed on an Order of Supervision ("Supervision Order"), which subjects the alien to continuous and individualized federal oversight while ICE works

[1] Adjusted for inflation, the current penalty under Section 1229c is between $1,992 and $9,970. Per day, the penalty for violations of Section 1324d is not more than $998. 8 C.F.R. § 280.53(b)(3), (14).

towards effectuation of removal by securing travel documents, coordinating transportation, and finalizing removal. *See* 8 C.F.R. §§ 241.4, 241.5. All aliens, including those released under a Supervision Order, are required to keep ICE informed of their residence and report changes in address. *Id.*; *see also id.* § 265.1; 8 U.S.C. § 1305. Once the precursors to removal are effectuated, aliens with a Supervision Order must depart the country or face certain consequences. 8 U.S.C. §§ 1324d, 1253.

Voluntary departure is a limited alternative to a removal order within the framework of a final immigration determination. It may be granted by an immigration judge following a formal finding of removability in a Section 240 proceeding. *See* 8 U.S.C. § 1229c(b)(1); 8 C.F.R. § 1240.26. Under this mechanism, the alien is permitted to depart the United States at personal expense within a strictly defined period in lieu of execution of a removal order. *See* 8 C.F.R. § 1240.26. The alien is warned of the consequences of failing to comply with the voluntary departure order, including that the alien may be liable for a civil penalty. 8 U.S.C. § 1229c(d)(3). Although voluntary departure allows an individual to avoid certain consequences associated with a removal order, including a Supervision Order and certain reentry bars, the process remains subject to government oversight. 8 C.F.R. § 1240.26.

## III. History of Enforcement of Sections 1229c and 1324d

Although Congress authorized the assessment of civil penalties under Sections 1229c and 1324d nearly three decades ago, enforcement has varied across presidential administrations. Penalties under Sections 1229c and 1324d were first pursued in 2018, after Executive Order ("EO") No. 13768, *Enhancing Public Safety in the Interior of the United States*, 82 Fed. Reg. 8799 (Jan. 30, 2017), directed the Secretary of Homeland Security to "ensure the assessment and collection of all fines and penalties . . . from aliens unlawfully present in the United States." *Id.* at 8800. Consistent with that EO, U.S. Immigration and Customs Enforcement ("ICE") issued a directive providing official "policy regarding assessment and collection of fines and penalties for civil violations of immigration law." ICE, Directive No. 10088.1, *Fines and Penalties for Civil Violations of Immigration Law* (June 18, 2018).

ICE began assessing penalties under the procedures then codified at 8 C.F.R. part 280.[2] At the end of the first Trump Administration in 2021, ICE had only 26 active fines under the two authorities. 90 Fed. Reg. at 27447. Former President Biden then rescinded EO 13768 through EO 13993, *Revision of Civil Immigration Enforcement Policies and Priorities*, 86 Fed. Reg. 7051 (Jan. 20, 2021). DHS, in turn, rescinded the decisions to fine and withdrew all active Fine Notices.

On January 20, 2025, President Trump issued EO 14159, directing DHS to take "all appropriate action to ensure the assessment and collection of all fines and penalties . . . authorized by law" against aliens unlawfully present in the United States. 90 Fed. Reg. 8443, 8444–45 (Jan. 20, 2025). In response, ICE signed two internal delegation memoranda authorizing the enforcement of civil penalties under Sections 1229c and 1324d. ICE then resumed assessing civil penalties for violations of 8 U.S.C. §§ 1229c and 1324d, again, under the procedures codified at 8 C.F.R. part 280. By June 2025, ICE had initiated nearly 10,000 Notices of Intent to Fine using Form I-79.[3]

On June 27, 2025, DHS and the Executive Office of Immigration Review ("EOIR") promulgated an Interim Final Rule titled "Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations." *See* IFR. The IFR explained that the procedures in 8 C.F.R. part 280 were not designed to accommodate the volume of penalties needed to address the number of extant

[2] Under 8 C.F.R. part 280, individuals subject to civil penalties receive a Notice of Intent to Fine via in-person service or certified mail, 8 C.F.R. § 280.11 (2011); have 30 days to challenge a decision, *id.* § 280.12; can request a personal interview, *id.*; are entitled to review by "the district director or the Associate Commissioner for Examinations, or the Director for the National Fines Office," *id.* § 280.13(b); and can appeal a decision to the BIA, *id.*

[3] The Form I-79 was—until August 2025—ICE's Notice of Intent to Fine, issued at the outset of the civil-penalty process to set forth the alleged violations and proposed penalty and to provide the recipient an opportunity to contest liability or amount before any final assessment. *See* 8 C.F.R. § 280.12. In August 2025, for penalties covered by 8 C.F.R. part 281, DHS created DHS Form 281, *Notice of Violation and Order Under the Immigration and Nationality Act* ("DHS 281"). DHS 281 outlines the rights of respondents to contest the penalty under the provisions listed in 8 C.F.R. part 280.

violations. *Id.* at 27442. Accordingly, the IFR adopted revised procedures, 8 C.F.R. part 281 (2025),[4] governing the assessment of civil penalties under 8 U.S.C. §§ 1229c, 1324d, and 1325(b).[5] The IFR explained that the revised procedures would "help deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders consistent with this Administration's focus on securing the border and restoring integrity to our nation's immigration system." *Id.* The IFR set forth the agencies' rationale for the revisions by detailing the underlying procedures that would lead to removal orders and voluntary departure orders, anticipating the defenses one might have to challenge a determination of willful or voluntary violations of those orders, and reasoning through the application of certain presumptions when making an assessment that an individual is subject to a penalty under one of these provisions. *Id.* at 27441–44.

## IV. Relevant Procedural History

Plaintiffs Maria L., Nancy M., and the Immigrant Legal Resource Center ("ILRC") filed a putative class action against DHS and related agencies[6] on November 20, 2025, in which they challenged, under the Constitution and APA, the IFR and penalties issued under it. Compl., ECF 1. In their APA claims, Plaintiffs alleged that the IFR was unlawfully issued without notice-and-comment and was arbitrary and capricious, and that (both before and since the IFR) Defendants "maintain[ed] a policy or practice, not in accordance with law, of imposing civil penalties without making individualized determinations of the statutory factors provided under Sections 1229c and 1324d." *Id.*

---

[4] Changes under 8 C.F.R. § 281 include permitting service of the penalty decision and order by regular mail rather than in person or certified mail; shortening the response period from 30 days to 15 business days; eliminating the option to request an in-person interview; creating a streamlined appeals process for aliens to contest penalties; and authorizing DHS to reopen, reconsider, reduce or rescind penalties in its discretion. *See* 8 C.F.R. § 281.3–.7 (2025); 90 Fed. Reg. at 27443–46.

[5] Section 1325(b) is not at issue.

[6] The Defendants in this case are agencies that hold enforcement and administrative responsibility under the INA: DHS, U.S. Customs and Border Protection ("CBP"), ICE, the U.S. Department of Justice, and EOIR (collectively, "the Agencies"), and their corresponding agency heads.

¶¶ 193–211 (Counts IV–VII). Plaintiffs also sought class certification. ECF 21. According to the Complaint, Plaintiffs Maria L. and Nancy M. had been assessed civil fines under Section 1324d (regarding final orders of removal). Compl. ¶¶ 12, 18–19. The ILRC is an immigration legal advocacy non-profit. *Id.* ¶ 20. Subsequently, Plaintiffs moved to stay "the Blanket Fine Policy, the IFR, and the fines imposed pursuant to those rules and policies" pursuant to 5 U.S.C. § 705, and in the alternative for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. ECF 19. Defendants opposed. ECF 32. On September 30, 2026, the District Court granted Plaintiffs' motion to stay the IFR under § 705. Order, ECF 114. The Court explained its view that Plaintiffs were likely to succeed on the merits of their APA claims that the IFR (i) was unlawfully issued without notice-and-comment and (ii) unlawfully imposed civil penalties "without individual consideration of whether the purported conduct is either willful or voluntary." ECF 113 at 10–17. On the latter point (*id.* at 10–13), the Court found that Defendants did not "provide relevant details" of their individualized consideration (*id.* at 11) and that "initiating nearly 10,000 notices for failure-to-depart civil monetary penalties between March and June 2025 belies an argument that each of those circumstances were individually evaluated" (*id.* at 12). The Court did not opine on Plaintiffs' arbitrary-and-capricious APA claims. *See generally id.*

On October 14, 2026, DHS and EOIR issued a Final Rule superseding the IFR. 91 Fed. Reg. 65390. Shortly thereafter, DHS published a Notice of Ratification of certain final penalties issued under the IFR. 91 Fed. Reg. 67325. DHS explained that, although the IFR was not subject to notice-and-comment requirements under the APA, DHS and EOIR had in fact "opened the IFR for public comments" through July 28, 2025 and published the Final Rule (which substantially mirrored the IFR) after considering the comments received. *Id.* The Ratification Notice was published, DHS explained, "[t]o resolve any uncertainty" by "ratify[ing] all civil penalties issued under the interim adoption of 8 CFR part 281 from June 27, 2025, through October 13, 2026." *Id.* & n.1 (citing *Guedes v. ATF*, 920 F.3d 1, 13 (D.C. Cir. 2019)). DHS made clear that any "alien who asserts that he or she has been

prejudiced by the" IFR can raise that claim, and DHS will consider "whether such prejudice has been shown and what remedy, if any, is appropriate." *Id.* at 67326.

On November 6, 2026, Plaintiffs filed an "Emergency Motion for Leave to Amend and Supplement the Complaint" to challenge the Final Rule and Ratification Notice. ECF 121. Without waiting for leave to be granted, Plaintiffs also filed a Motion for Temporary Restraining Order, and Stay of the Final Rule and Ratification Notice, and to "Enforce" the Court's September 30 Stay Order ("TRO Motion"). ECF 122. Like Plaintiffs' initial motion to stay the IFR, the TRO Motion addresses only APA claims. *See generally* ECF 123 ("Mot."). Unlike the initial motion to stay, the TRO Motion rests on claims by Maria L. and new Plaintiff Oscar N., as well as by new Plaintiff organization Coalition for Humane Immigrant Rights ("CHIRLA"). *Id.* at 9; *see also* Proposed Am. Compl., ECF 121-1, ¶¶ 30, 32. The Court since granted Plaintiffs' motion for leave to amend the complaint (ECF 130); however, the Amended Complaint has not, as of this date, been filed.[7]

## LEGAL STANDARD

A temporary restraining order, like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Wash. Tr. Advisors, Inc. v. Arnold*, 646 F. Supp. 3d 210, 217 (D. Mass. 2022). Plaintiffs must establish (1) a substantial likelihood of success on the merits, (2) a high likelihood of irreparable harm in the absence of injunctive relief, (3) that the balance of equities tips in their favor, and (4) that the injunctive relief is in the public interest. *See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). The third and fourth factors "merge" in suits against the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[7] Defendants' operative deadline to file their responsive pleading is November 30, 2026. *See* Fed. R. Civ. P. 15(a)(3); Order, ECF 119. Defendants intend to seek leave to suspend that deadline pending resolution of the instant TRO Motion, which will inform further case proceedings.

To prevail on their "Motion to Enforce," Plaintiffs must show with "clear and convincing evidence" that (1) Defendants had notice of a court order, (2) the order was "clear and unambiguous", (3) Defendants had the ability to comply with the order, and (4) Defendants "violated" the order. *Letourneau v. Aul*, 2024 WL 1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

## ARGUMENT[8]

### I. Plaintiffs Cannot Show Likelihood of Success on the Merits

A. Plaintiffs Lack Standing.

Article III's "case or controversy" requirement requires federal courts to determine, as a threshold matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[P]laintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.* In Plaintiffs' to-be Amended Complaint, claims challenging the Final Rule will be brought by Maria L., Oscar N., and CHIRLA. ECF 121 at 7. Plaintiffs' putative claims challenging the Ratification Notice will be brought by all Plaintiffs *except* CHIRLA. *Id.*

***Maria L., Oscar N., and CHIRLA do not have standing to challenge the Final Rule.*** Individual Plaintiffs Maria L. and Oscar N. do not have standing to challenge the Final Rule because it is undisputed that they have not been fined thereunder (or harmed thereby)—rather, both were fined under the IFR. *See* Proposed Am. Compl. ¶¶ 157 (Maria L.), 182–84 (Oscar N.).

Nor can CHIRLA's challenges to the Final Rule survive. *See* Mot. at 9–11. "There are three requirements for an association, which has not itself suffered injury, to have standing to bring suit on behalf of its members": (a) its members "'would otherwise have standing to sue in their own right'";

[8] Defendants recognize that this Court has endorsed certain of Plaintiffs' arguments that Plaintiffs re-raise here. Defendants continue to oppose those arguments and do so in this filing for preservation.

(b) the interests it seeks to protect are "'germane'" to the organization's purpose; and (c) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Council of Ins. Agents & Brokers v. Juarbe–Jimenez*, 443 F.3d 103, 108 (1st Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). On the first element, Plaintiffs claim that "at least one member of CHIRLA is at imminent risk of being subjected to the Final Rule," and present claims from "M.G. and G.G. [who] are two noncitizens who face a substantial risk of receiving a fine issued under the Final Rule." Mot. at 10. As discussed *supra*, however, a plaintiff who has only been fined under the IFR has not been injured by the Final Rule and therefore does not have standing to challenge it. M.G. and G.G., who have not been fined at *all*, have even weaker claims to standing. *See* Salas Decl., ECF 123-1, ¶¶ 14, 16. If they did, then any alien present in the United States facing an undefined "risk" of civil penalties would have standing to challenge the rule. *But see FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383, 391–92 (2024); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

While the Court should stop there, Plaintiffs claim that the "advancement of immigrants' civil rights" is a sufficient core purpose to meet the second element, but such an alleged purpose, even assuming it could be sufficient to meet the second element, is not proven simply because CHIRLA happens to have members fined under the IFR, or who fear future fines under the Final Rule. Proposed Am. Compl. ¶ 6. Last, Plaintiffs rely on their broad "forward-looking" APA claims and declaratory and injunctive relief to meet the third prong. Mot. at 10–11. The APA, however, is not forward-looking (5 U.S.C. § 706), and does not authorize the Court to permanently enjoin Defendants from taking new agency actions in the future (*e.g.*, *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020)). Moreover, insofar as CHIRLA's standing is predicated upon the assessment of civil penalties, individual members' participation is required to determine, *inter alia*, the terms of the alien's removal order, its status, any pending applications for change in status, and an individualized inquiry into whether the aliens' failure to depart is voluntary or willful.

***The individual Plaintiffs and IRLC do not have standing to challenge the Ratification Notice.*** Plaintiffs bootstrap their standing arguments for their challenges to the IFR into arguments for standing to challenge the Ratification, contending that "the same reasoning applies." Mot. at 8. Defendants incorporate their argument that IRLC lacks standing to challenge the IFR and therefore the Ratification Notice. ECF 32 at 9. Further, neither the individual Plaintiffs nor IRLC can explain they have been harmed by the Ratification Notice, which makes clear that any "alien who asserts that he or she has been prejudiced by the" IFR can raise that claim, and DHS will consider "whether such prejudice has been shown and what remedy, if any, is appropriate." 91 Fed. Reg. at 67326.

B. Plaintiffs' APA Challenges to the Final Rule Are Unlikely to Succeed on the Merits.

The APA instructs federal courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is "quite narrow"; a reviewing court "may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." *Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (quoting *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009)). The court must uphold an agency's decision if it is: (1) devoid of legal errors; and (2) "supported by any rational review of the record." *Mahoney v. Del Toro*, 99 F.4th 25, 34 (1st Cir. 2024) (quoting *Atieh*, 797 F.3d at 138).

Largely mirroring their arguments as to the IFR, Plaintiffs assert that the Final Rule is (1) contrary to law, because it imposes fines without individual consideration of willfulness or voluntariness, and (2) arbitrary and capricious, because it fails to consider important aspects of the problem and lacks a satisfactory explanation. Mot. at 11–17. Neither premise is correct.

1. *The Final Rule is not contrary to law.*

Plaintiffs argue that the Final Rule is "contrary to law for the same reasons as the IFR," Mot. at 14, because it does not contemplate individualized consideration of an alien's circumstances, *see generally id.* at 11–14. Plaintiffs, however, are mistaken.

As an initial matter, the Final Rule does not alter the statutory criteria or the individualized assessment that applies when DHS is determining, in the first instance, whether an alien is subject to a civil penalty. Moreover, contrary to Plaintiffs' claims, the Final Rule fully accounts for the individualized nature of the civil penalty assessment, including the willfulness and voluntariness requirements. Before issuing a penalty, ICE guidance requires the immigration officer to review the alien's immigration records for information suggesting that the alien's failure to depart was not willful or voluntary. 91 Fed. Reg. at 65394.[9] As DHS explained in the IFR (analysis that it incorporated into the Final Rule), this will in almost every case be routine, straightforward, and turn on facts "readily verifiable" in documents already within DHS's possession. 90 Fed. Reg. at 27442. DHS's inquiry, in turn, involves verifying the potential applicability of (1) any "automatic stays" resulting from motions to reopen; (2) "certain immigration benefits under the Violence Against Women Act"; (3) for aliens on an order of supervision, "efforts the alien has made to secure travel documents at DHS's request"; (4) whether DHS has "affirmatively approved the alien for deferred action"; (5) whether a court (or DHS) has granted a stay of removal; and (6) whether DHS or EOIR has granted the alien protection that excuses the alien's failure to depart while the alien maintains that protection, including temporary protected status, protection under the Convention Against Torture, and withholding of removal under INA 241(b)(3), 8 U.S.C. § 1231(b)(3). *Id.*

That is not all. For aliens subject to a final order of removal or voluntary departure order who have a factual basis for challenging the issuance of civil penalties, the Final Rule provides for consideration of other individualized facts, to the extent any are relevant:

> [T]o the extent that an alien contests the voluntary or willful nature of his or her failure to depart due to circumstances beyond the alien's control (e.g., hospitalization, incarceration, inability to obtain travel documents, lack of notice of a removal or

[9] Plaintiffs, without basis, surmise that the guidance does not, in fact, exist. Mot. at 12. *But see* Ex. A to Metesh Decl.

> voluntary departure order), . . . the alien . . . *may [produce such evidence] during the available appeals process before DHS*.

91 Fed. Reg. at 65409 (emphasis added).

These measures—particularly when properly viewed in conjunction with other procedural safeguards afforded during initial removal proceedings (*id.*; *see also supra* at 3–4)—demonstrate that DHS conducts individualized assessments before issuing penalties under the Final Rule and thereby complies fully with all applicable law. These measures also undercut Plaintiffs' claims that DHS is applying an evidentiary presumption of liability based solely on the alien's continued presence in the United States or shifting the burden to aliens to rebut penalty assessments. Mot. at 11 & n.7.

In its Memorandum Opinion accompanying the September 30 Stay Order, the District Court found relevant that Defendants had not provided "details" about their individualized consideration. ECF 113 at 11. Although it is not their burden to do so (*see New Jersey* v. *Trump*, 131 F.4th 27, 33 (1st Cir. 2025)), Defendants have now provided the "details" the Court viewed to be material to its decision to stay the IFR. *See, e.g.*, Metesh Decl. ¶¶ 31–55.

2. *The Final Rule is not arbitrary or capricious.*

Nor is the Final Rule "arbitrary and capricious" under the APA, as Plaintiffs contend. Mot. at 14–17. Agency action should not be set aside as arbitrary and capricious unless the agency relied on inappropriate factors, ignored a critical issue, or reached a decision flatly contradicted by the evidence or otherwise implausible. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The "touchstone" of arbitrary and capricious review is "reasoned decisionmaking." *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019) (citation omitted). Thus, an agency must articulate a rational connection between the facts found and the choice made, but its decision need not achieve "ideal clarity" when its path may reasonably be discerned. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974). Moreover, agencies are free to change their existing policies, if they "provide a reasoned explanation for the change, display awareness that they are

changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025). The "reasoned explanation" standard requires an agency only to show that there are "good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one." *Id.* Rather, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id.* Thus, "the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.*

Applying these well-established principles to this case, the Final Rule easily survives scrutiny. *First*, the penalty-assessment procedure outlined in the Final Rule—and codified at 8 C.F.R. § 281.1—is clearly "permissible." *Fox Television*, 556 U.S. at 515. Congress authorized DHS to assess civil penalties against aliens who willfully fail to depart after a removal order and aliens who voluntarily remain after a voluntary departure order; it did not, however, prescribe procedures for DHS to follow in assessing or adjudicating challenges to those penalties. *See* 91 Fed. Reg. at 65390–91. Accordingly, Sections 1324d and 1229c give DHS and EOIR discretion to employ procedures they reasonably conclude are appropriate for implementing the statutorily authorized penalties. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (cleaned up)).

*Second*, contrary to Plaintiffs' contention (Mot. at 15), the agencies have provided "good reasons" for the policy announced by the Final Rule. *Fox Television*, 556 U.S. at 515. As explained therein, the government's decision to promulgate revised procedures for the imposition and collection of civil fines is intended to address the increasing number of aliens who remain in the United States

despite being subject to final removal or voluntary departure orders. 91 Fed. Reg. 65390. In fiscal year 2024 alone, EOIR issued more than 282,000 final removal orders, only about 10% of which were executed. *Id.* In addition, the prior Administration's policies, including its border policies, have caused a dramatic increase in the immigration court caseload in recent years. *Id.* at 65390–91. In the second quarter of FY 2025, there were nearly 4 million pending immigration court proceedings, many of which will result in removal or voluntary departure orders once adjudicated. *Id.* at 65391. The Final Rule's procedures have "reduced agency resource burdens by streamlining the civil penalty process and ha[ve] allowed DHS to exercise its statutorily authorized civil penalty authority at scale" in response to the large number of aliens who have unlawfully remained in the United States. *Id.* at 65400. The streamlined processes further enable DHS to encourage greater compliance and provide DHS with another tool to disincentive *future* unlawful entries. *Id.*[10]

The government has also offered "good reasons" to justify the procedural framework endorsed in the Final Rule. *Fox Television*, 556 U.S. at 515. *First*, personal service requires burdensome manual efforts to locate the alien, which requires significant DHS resources to ensure officer safety. IFR, 90 Fed. Reg. at 27444. Certified mail has become costly and time-intensive, requiring the individual preparation of mailing in each case, and costing approximately $23.53 for each civil penalty. *Id. Second*, the former 30-day response period adds to a growing backlog of cases, which diverts time and resources away from other critical immigration efforts, and ultimately delays collection efforts. 91 Fed. Reg. at 65393, 65414. *Third*, critical immigration enforcement functions would be impeded by diverting already limited resources towards conducting in-person interviews, especially if many aliens

[10] By contrast, the previous procedures were designed in 1952 for fines against airlines and carriers violating certain provisions of the INA, which did not align with the "straightforward and readily determinable nature of these particular penalties and the context in which they arise." IFR, 90 Fed. Reg. at 27444. Underscoring the previous cumbersome procedures, although a significant number of civil penalties were issued under the prior system, "very few aliens have contested them." *Id.* at 27445.

request such interviews. *Id.* at 65400, 65415. *Finally*, the additional steps associated with a BIA appeal impeded enforcement priorities and could increase the BIA's backlog of cases. *Id.* at 65417.

In sum, the Final Rule is not arbitrary and capricious because it explains any presumptions that attach once an alien receives a final order of removal following immigration proceedings, because it allows officers to exercise discretion, and because all changes in procedures are intended to address the increasing number of aliens who unlawfully remain in the United States following final orders of removal or voluntary departure orders. Thus, Plaintiffs fail to establish success on the merits.[11]

C. The Ratification Notice Does Not Violate the APA or This Court's Stay Order.

Plaintiffs challenge the Ratification Notice on three grounds. None have merit.

*First*, Plaintiffs argue that the Ratification Notice "brushes the Court's ruling and the APA's requirements aside" insofar as it purports to "cure" the lack of notice-and-comment that supposedly rendered the IFR unlawful. Mot. at 17–18. There is no "brushing aside": an agency may, in fact, cure a procedural defect in an earlier action by subsequently ratifying it; the ratification "purges any residual taint or prejudice." *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019); *see* 91 Fed. Reg. at 67325 n.1. Courts have "consistently declined to impose formalistic procedural requirements" for ratifications by agencies. *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 184 (D.D.C. 2016) (citing cases). Courts have also not limited the kinds of alleged defective administrative actions that ratification may cure. *See id.* (rejecting plaintiff's argument that ratification cannot cure deficiencies in agency rulemaking). The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness," *Fox Television*, 556 U.S. at 513, and the Supreme Court has "rejected courts' attempts to impose judge-made procedur[es] in addition to the

[11] In a single sentence, Plaintiffs contend that the government "failed to consider an important aspect of the problem" because it does not offer individualized inquiries. Mot. at 14–15 (citation omitted). For the reasons discussed at length above, however, that factual predicate is false.

APA's[.]" *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685 (2020) (citation omitted).[12] The Ratification Notice is neither contrary to law nor arbitrary and capricious.

*Second*, Plaintiffs argue that the Ratification is a legislative rule that *itself* requires notice-and-comment. Mot. at 18. Plaintiffs cite its "new procedure for raising claims of prejudice," which they characterize as a new substantive rule. *Id.* (quoting *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018)). That, however, simply misunderstands the doctrine of ratification. A decisionmaker can affirm and ratify previous acts, but ratification may not cause "prejudice[] by retroactive effect," 1 Floyd R. Mechem, *Treatise on the Law of Agency* § 486 (2d ed. 1914), or cause "inequit[y]" to third parties under "materially changed" circumstances, Restatement (Second) of Agency § 89 (1958). The Ratification Notice incorporates those concerns by allowing aliens to present claims of prejudice to DHS for appropriate action. 91 Fed. Reg. at 67326. The remainder of the Ratification "relates back in time to the date of the act by the agen[cy]," *Advances Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016), does not have "future effect," 5 U.S.C. § 551(4), does not formulate, amend, or repeal a rule, *id.* § 551(5), and does not otherwise require notice-and-comment.

---

[12] Plaintiffs argue that an agency can never "cure its failure to offer notice and comment before a rule's effective date by accepting and considering comments after the fact." Mot. at 17 (citing *United States Steel Corp v. EPA*, 595 F.2d 207 (5th Cir. 1979); *United Sates v. Johnson*, 632 F.3d 912 (5th Cir. 2011); *Paulsen v. Daniels*, 413 F.3d 999 (9th Cir. 2005); *NRDC v. EPA*, 683 F.2d 752 (3d Cir. 1982)). Plaintiffs' position overstates the law and does not address whether an agency may ratify completed actions after a final rule has been issued. The lone First Circuit decision Plaintiffs cite, *Levesque v. Block*, 723 F.2d 175 (1st Cir. 1983), also undercuts their argument. There, the First Circuit recognized that "an agency may be able to present evidence of a level of public participation and a degree of agency receptivity that demonstrate that a 'real public reconsideration of the issued rule has taken place,'" and upheld a final rule that followed an interim rule's comment period. *Id.* at 188–89. In *Little Sisters*, the Supreme Court reviewed the same sequence at issue here, in which the subject agencies issued interim final rules, invited comment, and subsequently promulgated final rules. 591 U.S. at 672. There, as here, "[t]hough the final rules left the exemptions largely intact, they also responded to post-promulgation comments, explaining their reasons for neither narrowing nor expanding the exemptions beyond what was provided for in the IFRs." *Id.* at 672–73. The Court held that the IFRs' requests for comments satisfied the APA's rulemaking requirements and refused to add a judge-made "open-mindedness" requirement. *Id.* at 684–86.

*Third*, Plaintiffs seek to enforce the Court's Stay Order, which, they contend, the Ratification Notice violates. Mot. at 18. But this argument conflates the status quo the Stay Order preserved with the pre-IFR world Plaintiffs seek to restore. The Court's Opinion addressed the IFR's lack of pre-issuance comment. ECF 113 at 10. The Court did not preclude the agencies from issuing a Final Rule that added additional explanation and satisfied notice-and-comment. And the Ratification Notice seeks only to re-confirm the propriety of previously issued fines in cases where there has been no prejudice to the alien. 91 Fed. Reg. at 67326. If an alien asserts that "he or she has been prejudiced by the interim regulations," they can raise that claim to DHS, which then must consider it and determine what relief is appropriate. *Id.* That is entirely consistent with this Court's order, which stayed the IFR and fines issued under the IFR, and under which the agencies could still take action to promulgate a final rule that addressed the concerns identified in the Court's opinion. ECF 113, 114.

## II. Plaintiffs Cannot Show Irreparable Harm

Plaintiffs' claim of irreparable harm also fails. "A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter*, 555 U.S. at 22 (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences. *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312 (1982). Additionally, "the key word in this consideration is irreparable." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") Further, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* "The necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies . . . if money damages will fully alleviate harm, then the harm cannot be said to be irreparable." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir. 1989*); see also Ross–Simons*

*of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) ("It is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" (citation omitted)).

Plaintiffs argue they "have suffered—and will continue to face—numerous irreparable harms, including the imposition of hundreds of thousands of dollars in fines and the threat of future fines." Mot. at 18. As Defendants explained in opposition to Plaintiffs' motion to stay the IFR, financial costs are not irreparable where they can be recouped. *See* ECF 32 at 17 (citing cases). Plaintiffs' subjective fears of *future* fines that could potentially be imposed under the Final Rule are speculative and cannot satisfy this element of the preliminary injunction prong. *Winter*, 555 U.S. at 22; *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004); *see, e.g.*, Salas Decl. ¶ 13 (unnamed CHIRLA members are "reasonably expected to face a fine" under the Final Rule).

## III. The Balance of the Equities and the Public Interest Favor Defendants

Preliminary relief also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435. To begin, "any time [the Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quotation marks and citation omitted). Further, "the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (citing cases); *see Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989). "The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [Congress] established, and permits and prolongs a continuing violation of United States law." *Nken*, 556 U.S. at 436. "[A]t least 15 million people are in the United States illegally, many of whom entered (or illegally overstayed) just in the last few years." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1 (Mem.) (2025) (Kavanaugh, J., concurring). The recent influx has "cost taxpayers billions of dollars at the Federal, State, and local levels." 90 Fed.

Reg. at 8443. Here, Plaintiffs ask the Court to interfere with the Government's congressionally authorized assessment and collection of civil penalties. This interference is not in the public interest.

## IV. The Court Should Appropriately Tailor Any Relief

If the Court is inclined to enter preliminary relief, it should be tailored. "[T]he question is not whether an injunction offers compete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *CASA, Inc.*, 606 U.S. at 852 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *Immigrant Defs. L. Ctr. v. Noem*, 2025 WL 2017247, at *14 (9th Cir. July 18, 2025); *id.* (extending *CASA*-like principles prohibiting universal injunctions to stays under APA § 705). The Court has denied Plaintiffs' motion for class certification. ECF 130. Any relief should be tailored to the named individual plaintiffs. As to the organizational plaintiffs, because they have not identified any of their members, no relief should flow to them other than the narrowest relief necessary to remedy any injury they have identified as organizations.

## CONCLUSION

Plaintiffs' Motion should be denied.

Dated: November 16, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

MARIANNE F. KIES
KRISTINA WOLFE
Assistant Branch Directors
Civil Division, Federal Programs Branch

*/s/ Lindsey E. Gilman*
Lindsey E. Gilman
Alexander J. Severance
Trial Attorneys
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L Street, N.W.

Washington, DC 20005
Tel: (202) 598-3123
Email: Lindsey.E.Gilman@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Lindsey E. Gilman, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Lindsey E. Gilman*

Dated: November 16, 2026

Trial Attorney